IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,              ) | |
|                                                                 ) | |
|           Plaintiff,                                       ) | |
|                                                                 ) | |
| vs.                                                          ) | NO. CR 05-924 RB |
|                                                                 ) | |
| LARRY LUJAN, KACEY LAMUNYON, and ) | |
| EUGENIO MEDINA                                  ) | |
|                                                                 ) | |
|           Defendants.                                   ) | |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on the Government's Motion for Production of DNA Samples, Hair Samples, and Major Case Prints (Doc. 26), filed on Thursday, July 26, 2005 and Defendants' Motion to Continue Hearing submitted to the Court, orally, on Thursday, October 6, 2005. Defendants (Larry Lujan, Kacey Lamunyon and Eugenio Medina) each filed responses to the Government's Motion for Production, the Government filed a reply to those responses, and I heard evidence relating to, and argument on, both motions. Having considered the submissions, arguments of counsel, testimony, and being otherwise fully advised, I rule on these motions as follows.

**I. Government's Motion for Production.**

The Government moves for an order to compel Defendants to each produce DNA samples, hair samples, and major case prints. As discussed below, the Government's motion is granted in full.

**A. DNA Samples.**

The Fourth Amendment proscribes "unreasonable searches and seizures" by the Government.

U.S. CONST. amend. IV.  There is, however, no "general constitutional 'right to privacy.'"  *See Katz v. United States*, 389 U.S. 347, 350-51 (1967).  Fourth Amendment protections extend only to individuals' constitutionally protected privacy interests.  *See id*.

It is clear that "the right to be free from unwanted DNA testing implicates a Fourth Amendment right."[1]  *Esnault v. Burnett*, 83 Fed. Appx. 279, 283 (10th Cir. 2003) (citing *United States v. Kimler*, 335 F.3d 1132, 1146 (10th Cir. 2003)).  Accordingly, the Government's request for DNA samples must, therefore, constitute a *reasonable* "search."  *Schmerber v. California*, 86 U.S. 757, 770 (1966) (compelled blood test) (emphasis added) ("[s]earch warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where *intrusions of the human body* are concerned"); *Marshall v. Columbia Lea Reg. Hosp.*, 345 F.3d 1157, 1171-72 (10th Cir. 2003) (citing *Schmerber*).  *See also Boling v. Romer*, 101 F.3d 1136, 1340 (10th Cir. 1996) (finding compelled DNA sample to be a "search and seizure" and, therefore, absent warrant must fall within exception to warrant requirement).

To be "reasonable," the Government's request must be premised on a showing of probable cause.  *Marshall*, 345 F.3d at 1172 (compelled blood test must be premised on showing of probable cause).  The Court finds, as discussed *infra* Part I.C., that the Government's request for DNA samples is supported by probable cause.

The Court notes that the Government's request for a mouth swab from each Defendant is a reasonable manner to procure Defendants' DNA.  The Fourth Amendment's "reasonableness test"

---

[1] Indeed, it bears noting that the Tenth Circuit has recognized that DNA samples constitute a "search and seizure" even in the context of *convicted* inmates.  *See, e.g.*, *Boling v. Romer*, 101 F.3d 1136, 1340 (10th Cir. 1996) ("we hold that . . . obtaining and analyzing the DNA or saliva of an inmate convicted of a sex offense is a *search and seizure* implicating the Fourth Amendment" (emphasis added)).  There can be little doubt, therefore, that the Government's Motion implicates the Fourth Amendment rights of the Defendants.

mandates a "a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Allen v. Bd. of Commr's*, 773 F. Supp. 1442, 1448 (D. Kan. 1991). The Tenth Circuit has noted that saliva tests are not an "unreasonable" manner to conduct an otherwise constitutionally valid search of an individual's DNA. *See Boling*, 101 F.3d at 1340 (saliva tests involve a "minimal intrusion" of bodily integrity). Hence, obtaining Defendants' DNA through a swab of their mouth is a "'sufficiently productive mechanism'" by which to conduct the "search" compared to the scope of the "intrusion on [Defendants'] constitutional right." *See Jackson v. Central Jackson Corr.*, No. 91-2234, 1992 WL 236921 (10th Cir. Sept. 21, 1992) (quoting *Delaware v. Prouse*, 440 U.S. 648, 659 (1979) and citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

Lastly, the Court notes that the DNA samples raise no Fifth Amendment concerns. The Fifth Amendment's privilege against self-incrimination "protects an accused only from being compelled to *testify* against himself, or otherwise provide the [government] with evidence of a *testimonial or communicative nature*." *Schmerber*, 384 U.S. at 761 (holding that "withdrawal of blood and use of the analysis in question . . . did not involve compulsion to these ends") (emphasis added). Simply put, "DNA samples are not testimonial in nature." *Boling*, 101 F.3d at 1340. *Cf. Schmerber*, 384 U.S. at 761 (noting that "the withdrawal of blood and use of the analysis in question . . . did not involve compulsion [for purposes of the Fifth Amendment privilege against self-incrimination]); *Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th Cir. 1994) (urine samples not testimonial in nature).

**B. Hair Samples.**

The Government moves for production of hair samples from all Defendants and a pubic hair sample from Defendant Lujan. As discussed *supra*, the Fourth Amendment's protection against "unreasonable searches and seizures" extends only to constitutionally protected privacy interests. *See Katz*, 389 U.S. at 350-51. It is also clear that "[t]he overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State." *Schmerber*, 384 U.S. at 1004.

Yet, it is unclear whether compelled hair samples fall within the ambit of Fourth Amendment protections. *Accord United States v. Bullock*, 71 F.3d 171, 175 (5th Cir. 1995) (recognizing that "[c]ourts are divided on the question of whether taking a hair sample rises to the level of a Fourth Amendment search or seizure"); *Schaill by Kross v. Tippecanoe County Sch. Corp.*, 864 F.2d 1309, 1312, n.1 (7th Cir. 1988) (same). *Compare In Re Grand Jury Proceedings (Mills)*, 686 F.2d 135, 137-40 (3d Cir. 1982), *cert. denied*, 459 U.S. 1020 (forced facial and scalp hair sample in grand jury proceeding not "search and seizure"), *with Bouse v. Bussey*, 573 F.2d 548, 550 (9th Cir. 1977) (forced plucking of pubic hair by agent without warrant violates Constitution). *See also United States v. Weir*, 657 F.2d 1005, 1007 (8th Cir. 1981) (forced plucking of facial hair constitutes "search and seizure" but not "unreasonable"); *United States v. D'Amico*, 408 F.2d 331, 332-33 (2d Cir. 1969) (removal of hair sample a "seizure" but not "unreasonable"). *See also United States v. DeParias*, 805 F.2d 1447, 1456-57 (11th Cir.1986), *cert. denied*, 482 U.S. 916 (1987); *United States v. Anderson*, 739 F.2d 1254, 1256-57 (7th Cir.1984).

Regardless of whether hair samples fall within the Fourth Amendment, the Court finds that the Government's request for hair samples is reasonable. As discussed *infra* Part I.C., the

Government's motion as to hair samples is supported by probable cause. *See Bullock*, 71 F.3d at 175 (finding it unnecessary to decide whether a hair sample is a "search" because Government made probable cause showing and the search was otherwise "reasonable" under *Schmerber*).

Moreover, the hair samples requested are "reasonable" in that they involve a limited, minimal intrusion on Defendants' bodily integrity compared with the Government's justification in seeking the samples. *See infra* Part I.C. (Government's motion supported by probable cause). *See also Clark v. Tinnin*, 731 F. Supp. 2d 998, 1006 (D. Colo. 1990). Also, there is no indication that the Government requires more than a small snippet of hair from each Defendant.

Finally, the Court notes that there is no Fifth Amendment right implicated by the requested hair samples: "[h]air samples . . . are real and physical evidence, non-testimonial in nature." *United States v. Dougall*, 919 F.2d 932, 935 (5th Cir. 1990).

**C. Probable Cause.**

At a hearing on this motion, the Government proffered sworn testimony to evidence that their motion, requesting samples of Defendants' DNA and head hair samples and for a sample of Defendant Lujan's pubic hair, is supported by "probable cause." John Ordonez, a criminal investigator with the Doña Ana County Sheriff's Department and the case agent assigned to the crimes at issue in this case, testified at the October 6, 2005 hearing.

Detective Ordonez testified that he was present the day the victim's body was discovered in Doña Ana County, New Mexico. He also testified regarding the collection of evidence from two vehicles and two residences, as well as the site where the body was found. Detective Ordonez testified that authorities have collected fingerprints, hair and various bodily fluids. Notably, he

5

testified to statements given by Defendants that link each of them to the victim, as well as to the aforementioned vehicles and residences. Detective Ordonez testified further that Defendants Lamunyon and Medina each made statements indicating that Defendant Lujan had sexual encounters, one involving the victim, in each of the seized vehicles.

Based on the detective's sworn testimony, the Court finds that there is probable cause justifying the Government's motion. That is, the agent's sworn testimony set forth facts that "would lead a prudent person to believe there is a fair probability" that the requested DNA and hair samples from the Defendants will produce evidence linking the Defendants to the crimes they are accused of committing. *See United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).

Accordingly, the Government's motion, as to their request for DNA and head hair samples from all Defendants, and a pubic hair sample from Defendant Lujan, is granted.

**D. Major case prints.**

The Government moves to obtain Defendants' major case prints to compare to fingerprints investigators have lifted (and anticipate lifting) from various pieces of physical evidence, including evidence from two vehicles and two residences, connected to this case. *See id.*[2]

Defendants' Fourth Amendment right to be free from "unreasonable searches and seizures" is not implicated by the Government's request for "major case prints." Simply put, there is no reasonable expectation of privacy in one's fingerprints. *See Cupp v. Murphy*, 412 U.S. 291, 295 (1973) (describing fingerprints as "mere physical characteristics" that are "constantly exposed to the public"); *United States v. Dionisio*, 410 U.S. at 14 (recognizing that there is no constitutionally

---

[2]Fingerprints obtained in a routine booking do not include palm prints or prints of a subject's finger tips. *See* Govt.'s Mot. for Produc. at ¶5.

6

protected privacy interest in physical characteristics regularly and routinely held out to the public); *Katz*, 389 U.S. at 351 ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). As the Supreme Court explained, "[f]ingerprinting involves none of the probing into an individual's private life and thoughts that marks an interrogation or search." *Davis v. Mississippi*, 394 U.S. 721 (1969).

Likewise, there is no Fifth Amendment right at stake with regards to the major case prints. *United States v. Snow*, 82 F.3d 935, 943 (10th Cir. 1996) (citing *United States v. Peters*, 687 F.2d 1295, 1297 (10th Cir. 1982) (en banc)). Fingerprinting, of any sort, is "nontestimonial in nature" and, therefore, does not implicate Defendants' right against self-incrimination. *See id.* (holding the fingerprinting card compiled when Defendant was taken into custody to be admissible evidence because fingerprints may be used as "part of proof of identification"). *Accord Schmerber*, 384 U.S. at 763-64 (holding that Fifth Amendment privilege from self-incrimination "offers no protection against compulsion to submit to fingerprinting . . .").

Accordingly, because there is "no constitutionally protected right not to be finger printed," the Government's motion requesting Defendants' major case prints is granted.

**II.  Defendants' Motion to Continue Hearing.**

Defendants moved to continue the hearing on the Government's production motion. They maintain that because the Government did not provide them with statements referenced and relied upon by Detective Ordonez in his testimony, Defendants could not meaningfully cross-examine the Government's witness.

The Court finds, however, finds Detective Ordonez's testimony as to his personal knowledge

of the physical evidence gathered in this case, as well as to Defendants' own statements made to Detective Ordonez and his investigative team, sufficient for a finding of probable cause. Given the limited nature of the October 6, 2005 hearing and considering, as I do, that the Government's requests are supported by probable cause, the Court finds that Defendants' motion is moot. Accordingly, the Defendants' motion is denied.

**IT IS SO ORDERED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**