## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

        Plaintiff,

v.                                 No. CR 05-924 RB

LARRY LUJAN,
KACEY LAMUNYON,
and EUGENIO MEDINA,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

On July 10, 2007, the grand jury returned the Third Superseding Indictment (Doc. 144) in this case, charging Defendants Larry Lujan, Kacey Lamunyon and Eugenio Medina with (1) "Kidnapping Resulting in Death," in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2, and (2) "Tampering with a Witness Resulting in Death," in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2.  The Third Superseding Indictment also includes a Notice of Special Findings against Mr. Lujan.  The United States filed a Notice of Intent to Seek a Sentence of Death (Doc. 146) against Mr. Lujan on July 12, 2007.

This matter comes before the Court on the following motions:

1.     United States' Motion and Incorporated Memorandum Regarding Mental Health Evidence (Doc. 168, filed Sept. 7, 2007);

2.     Defendant Lujan's Motion for Bill of Particulars (Doc. 173, filed September 10, 2007);

3.     Defendant Lujan's Motion for Notice by the Government Pursuant to Rule 12(b)(4)(B) and Incorporated Memorandum (Doc. 174, filed September 10, 2007);

4.     Defendant Lujan's Motion for Disclosures Specific to Death Penalty Issues (Doc. 175, filed Sept. 9, 2007);

5. Defendant Lujan's Motion for Disclosure of Information Concerning the Decision to Seek the Death Penalty and Incorporated Memorandum (Doc. 176, filed Sept. 10, 2007);

6. Defendant Lujan's Motion for Disclosure of Information Relating to DNA Evidence and Testing and Incorporated Memorandum (Doc. 177, filed September 10, 2007);

7. Defendant Lujan's Motion for Early Disclosure of Material Covered by the Jencks Act or Rule 26.2 of the Federal Rules of Criminal Procedure and Incorporated Memorandum (Doc. 178, filed September 10, 2007);

8. Defendant Lujan's Motion for Disclosure of Exculpatory Information and Incorporated Memorandum (Doc. 179, filed September 10, 2007);

9. Defendant Lujan's Motion for Discovery and Inspection Concerning Government's Use of Informants, Operatives, and Cooperating Individuals and for Disclosure of Exculpatory Evidence Concerning Government's Use of Informants, Operatives, and Cooperating Individuals (Doc. 180, filed September 10, 2007);

10. Defendant Lujan's Motion for Disclosure of Information Concerning the Reliability and Integrity of the Government's Investigation and Incorporated Memorandum (Doc. 181, filed September 10, 2007);

11. Defendant Lujan's Motion for Discovery and Inspection of Matters Pursuant to Rule 16 (Doc. 183, filed September 10, 2007);

12. Defendant Lujan's Motion for Disclosure of Rough Interview Notes and Incorporated Memorandum (Doc. 184, filed September 10, 2007);

13. Defendant Lujan's Motion for Discovery of Information and Materials Concerning Aggravating Sentencing Factors and Incorporated Memorandum (Doc. 185, filed Sept. 10, 2007); and

14. Defendant Lujan's Corrected Motion for Disclosure of Information Concerning "Jailhouse Informants" and Incorporated Memorandum (Doc. 186, filed September 10, 2007).

Defendant Lamunyon moved to join in all discovery motions filed by his co-defendants (Doc. 170), a request I granted. *See* Order (Doc. 188). On September 27, 2007, the United States filed a Response to Defendant Lujan's Motion for Disclosure of Information Relating to DNA Evidence and Testing and Incorporated Memorandum (Doc. 195). The United States subsequently

filed an Omnibus Response (Doc. 198) to address the remaining discovery motions.  Mr. Lujan filed

replies in support of some of the motions.  On December 5, 2007, I heard argument on the motions.

At the hearing, Defendant Medina joined in his co-defendants' arguments regarding the motions.

The hearing as to the discovery motions pertaining to the capital phase of the trial was continued

until December 19, 2007, at which time I heard argument on the capital discovery motions.  On

January 4, 2008, the United States filed a Supplemental Response to Defendant Lujan's Motion for

Disclosure of Information Concerning Aggravated Sentencing Factors and Incorporated

Memorandum (Doc. 226).  Having considered the motions, briefs, arguments, and relevant authority,

I find that the various discovery requests should be granted and denied as discussed herein.

## I.      OVERVIEW OF GENERAL LAW ON DISCOVERY

Many of the requests in the various motions overlap and rely on more than one legal

principle.  Therefore, before addressing each of the motions individually, I will provide an overview

of the various legal foundations that inform my decisions on each discovery motion.

### A.      *Brady*

The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83, 87 (1963), "that the suppression

by the prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the

prosecution."  To establish a *Brady* violation, the accused must show that (1) the prosecution

suppressed evidence; (2) the evidence was favorable to the accused; and (3) the evidence was

material to the defense.  *See Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007).  There is no

*Brady* violation where the defendant knew or should have known of the material, exculpatory

information or where the information was available to him from another source.  *United States v.

Graham*, 484 F.3d 413, 417 (6th Cir. 2007).  Nevertheless, even where the defendant never

requested exculpatory evidence, the government has a duty to volunteer exculpatory evidence.  *See Kyles v. Whitley*, 514 U.S. 419, 433 (1995).  The Constitution, however, does not demand an open file policy.  *See id.* at 437.  *See also Smith v. Secretary Dep't of Corrections*, 50 F.3d 801, 823 (10th Cir. 1995) (noting that *Brady* does not require prosecution to divulge every possible shred of evidence that could conceivably benefit defendant).  "[T]he government typically is the sole judge of what evidence in its possession is subject to disclosure" and it acts at its own peril by failing to comply adequately with an order requiring disclosure of *Brady* material.  *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

The "touchstone of materiality is a 'reasonable probability' of a different result," which exists "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Kyles*, 514 U.S. at 434 (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).  Thus, to be "material," a defendant does not need to show that the evidence, if disclosed, would have resulted in his acquittal; rather, he must show only that "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 434-35.  In evaluating a *Brady* claim, a court must consider the cumulative effect of all material withheld by the government.  *See id.* at 436-37.  The prosecution thus has the responsibility "to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached.  This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Id.* at 437.

The Constitution, however, "does not grant criminal defendants the right to embark on a 'broad or blind fishing expedition among documents possessed by the Government.'" *United States v. Mayes*, 917 F.2d 457, 461 (10th Cir. 1990) (quoting *Jencks v. United States*, 353 U.S. 657, 667

(1957)).  A defendant's mere allegation that the requested information might be material does not entitle him to an unsupervised search of the government's files.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987).  The *Brady* rule is not an evidentiary rule that grants broad discovery powers to a defendant, because there "is no general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  *See also United States v. Agurs*, 427 U.S. 97, 109-10 (1976) ("[T]here is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case.  The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense.") (internal quotations and citations omitted), *reversed on other grounds by Bagley*, 473 U.S. 667; *Downs v. Hoyt*, 232 F.3d 1031, 1037 (9th Cir. 2000) ("*Brady* does not require a prosecutor to turn over files reflecting leads and ongoing investigations where no exonerating or impeaching evidence has turned up.").

      *Brady* only requires disclosure of information in the government's possession or knowledge, whether actual or constructive.  *United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999); *Smith*, 50 F.3d at 825 n.36 (noting that, because district attorney's office had actual knowledge that there was separate investigation by authorities in separate county, it was reasonable to impute knowledge possessed by separate county to prosecution).  While a prosecutor cannot avoid his *Brady* obligations by keeping himself in ignorance or compartmentalizing information, *see Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984), neither does the government have an affirmative duty under *Brady* to seek out information that is not in its or its agents' possession.  *See Graham*, 484 F.3d at 415-18 (stating there is no affirmative duty to discover information in possession of independent, cooperating witness and not in government's possession); *United States v. Moore*, 25 F.3d 563, 569 (7th Cir. 1994) (concluding *Brady* was not violated where both parties learned after

trial that government witness had previous conviction for obstruction of justice and government did not possess knowledge of this information until after trial); *United States v. Baker*, 1 F.3d 596, 598 (7th Cir. 1995) ("Certainly, *Brady* does not require the government to conduct discovery on behalf of the defendant."); *Flores*, 540 F.2d at 437 (noting that government has no duty to fish through public records equally accessible to defense to collate information).

*Brady* is nonetheless interpreted broadly in order to encourage prosecutors to carry out their "duty to *learn* of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *United States v. Combs*, 267 F.3d 1167, 1174-75 (10th Cir. 2001) (quoting *Kyles*, 514 U.S. at 437-38) (emphasis added by Tenth Circuit). "Information possessed by other branches of the federal government, including investigating officers, is typically imputed to the prosecutors of the case." *Beers*, 189 F.3d at 1304. The Tenth Circuit in *Beers* held, however, that the state's knowledge and possession of potential impeachment evidence cannot be imputed to a federal prosecutor for purposes of *Brady* where there is no joint investigation by federal and state officials. *See id. See also United States v. Romo*, 914 F.2d 889, 899 (7th Cir. 1990) (holding that court did not err in denying request to compel prosecutors to make various inquires of local police in absence of showing by defendant that specific material, exculpatory information existed of which government knew). The *Beers* court, however, left open the question of whether knowledge possessed by state officials would be imputed to the federal prosecutor where the federal government participated in a joint investigation with state officials. *See Beers*, 189 F.3d at 1304 n.2.

At least one court has held that a duty to search files maintained by governmental agencies closely aligned with the prosecution may be triggered when there is a reasonable prospect or notice of finding exculpatory evidence. *See United States v. Brooks*, 966 F.2d 1500, 1502-04 (D.C. Cir. 1992). The Tenth Circuit quoted this holding from *Brooks* and indicated its approval, but ultimately

6

declined to definitively resolve the issue. *See Combs*, 267 F.3d at 1175. It is therefore an open question in this circuit as to the extent of the government's duty to investigate files of state agencies participating in a joint investigation with federal officials.

**B.     Giglio**

Impeachment evidence falls under *Brady* when the reliability of a given witness may be determinative of a defendant's guilt or innocence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). *Brady* obligates the prosecution to disclose "evidence affecting credibility." *Id.*

**C.     The Jencks Act**

The Jencks Act requires the government to disclose to criminal defendants any statement made by a government witness that is "in the possession of the United States" once that witness has testified. 18 U.S.C. § 3500(a) & (b). The Act "manifests the general statutory aim to restrict the use of such statements to impeachment." *Palermo v. United States*, 360 U.S. 343, 349 (1959). The purpose of the Act is to protect the government's files from unwarranted disclosure and to allow defendants access to materials usable for impeachment purposes. *See United States v. Smaldone*, 544 F.2d 456, 460 (10th Cir. 1976).

In pertinent part, the Act provides as follows:

(a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpena [sic], discovery, or inspection until said witness has testified on direct examination in the trial of the case.

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500.

The Jencks Act further defines a witness "statement" as (1) a written statement made by the witness and signed or otherwise adopted or approved by him; (2) a stenographic, mechanical, electrical, or other recording or transcription thereof, that is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or (3) a statement or transcription made by the witness to a grand jury. *Id.* § 3500(e). The defendant has the burden to show that particular materials qualify as "statements" and that the purported statements relate to the subject matter of the witness's testimony. *Smaldone*, 544 F.2d at 460.

The Jencks Act narrowly defines "statements." *Id.* at 461. The government is not required under the Act to produce an agent's informal description of witness testimony. *See Palermo*, 360 U.S. at 355 & n.12 (holding that agent's brief summary of witness's statements prepared after interview did not constitute "statements" under Jencks Act); *Smaldone*, 544 F.2d at 461. Statements made by a witness and summarized by a third person, however, can be Jencks material, but only if the witness has signed or otherwise adopted or approved them. *See Campbell v. United States*, 365 U.S. 85, 93-94 (1961); *United States v. Jordan*, 316 F.3d 1215, 1252 (11th Cir. 2003) (explaining that interviewer's raw notes, and anything prepared from notes (such as FBI 302) are not Jencks Act statements of witness unless they are substantially verbatim and contemporaneously recorded, or were signed or otherwise ratified by witness); *United States v. Gates*, 557 F.2d 1086, 1089 (5th Cir. 1977) (stating that notes are not Jencks Act statements until shown to and affirmed by witness).[1] A witness adopts a statement if it is read back to and verified, approved, or acknowledged as true

---

[1] If the agent who made the notes, however, is called as a witness, the statements may constitute Jencks material, depending on the scope of the agent's testimony on direct examination. *See Jordan*, 316 F.3d at 1252.

by the witness.  *See United States v. Jackson*, 850 F.Supp. 1481, 1508 (D. Kan. 1994). On the other

hand, substantially verbatim transcriptions made contemporaneously with a witness's oral statement

require no adoption or approval to be Jencks material.  *See* 18 U.S.C. § 3500(e)(2).

Rule 26.2 contains the substance of the Jencks Act.  *See* Fed. R. Crim. P. 26.2, advisory

committee notes.  Rule 26.2 also provides for production of statements of defense witnesses at trial

in essentially the same manner as required for statements of government witnesses.  *See id.*

### D.    Rule 16

Rule 16(a)(1)(E) sets out the types of information that the government must disclose to the

defendant, upon his request:

> books, papers, documents, data, photographs, tangible objects, buildings or places,
> or copies or portions of any of these items, if the item is within the government's
> possession, custody, or control and:
> (I) the item is material to preparing the defense;
> (ii) the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

A defendant must make a prima facie showing of materiality before he is entitled to obtain

requested discovery.  *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).  "Neither

a general description of the information sought nor conclusory allegations of materiality suffice; a

defendant must present facts which would tend to show that the Government is in possession of

information helpful to the defense."  *Id.*  The term "defense" means an argument in response to the

prosecution's case-in-chief, *i.e.*, an argument that refutes the government's claims that the defendant

committed the crime charged.  *See United States v. Armstrong*, 517 U.S. 456, 462 (1996).  To show

materiality, the evidence must bear some abstract logical relationship to the issues in the case such

that pretrial disclosure would enable the defendant significantly to alter the quantum of proof in his

favor.  *United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993).  This materiality requirement

is not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Id.* at 351 (internal quotations omitted). Nevertheless, ordering the production by the government of discovery without any preliminary showing of materiality is inconsistent with Rule 16. *Mandel*, 914 F.2d at 1219; *Jordan*, 316 F.3d at 1250 (noting that defendant must make specific request for item together with explanation for how it will be helpful to defense).

Rule 16(a)(1)(E) only applies where the documents are within the federal government's actual possession, custody, or control. *See United States v. Dominguez-Villa*, 954 F.2d 562, 566 (9th Cir. 1992). A document is within the possession of the government, if the prosecutor has knowledge of it and access to it, and a "prosecutor will be deemed to have knowledge of and access to anything in the possession, custody or control of any federal agency participating in the same investigation of the defendant." *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989). State-gathered evidence only becomes subject to Rule 16(a)(1)(E)'s disclosure obligation "when it passes into federal possession." *United States v. Fort*, 472 F.3d 1106, 1118 (9th Cir. 2007).

Rule 16(a)(2) limits the scope of discoverable materials: "this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2). Rule 16(a)(2) also clarifies that Rule 16 does not authorize the disclosure of statements made by prospective witnesses, except as provided in 18 U.S.C. § 3500. The term "government agent" has been construed as including non-federal personnel whose work contributes to a federal criminal case, such as local law enforcement officers. *See Fort*, 472 F.3d at 1113, 1119-20. Local police reports thus qualify for the Rule 16(a)(2) discovery

exemption when they are turned over to the federal prosecutor for use in a federal investigation. *See id.* at 1109, 1119-20. Rule 16(a)(2) also exempts FBI reports (Form 302s) from disclosure. *See id.* at 1119 (citing *Jordan*, 316 F.3d at 1227 n.17).

  **E.**  **Rule 57(b)**

  Federal Rule of Criminal Procedure 57(b) is often cited for the court's inherent authority to regulate procedures beyond the scope of the rules themselves, so long as they are consistent with those rules. *See, e.g., United States v. Edelin*, 134 F.Supp.2d 45, 48 (D.D.C. 2001). Rule 57(b) provides: "A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." Fed. R. Crim. P. 57(b).

  **F.**  **18 U.S.C. § 3432**

  18 U.S.C. § 3432 provides that a capital defendant must "at least three entire days before commencement of trial be furnished with a copy of the indictment and a list of the veniremen, and of the witnesses to be produced on the trial for proving the indictment, stating the place of abode of each veniremen and witness, except that such list of the veniremen and witnesses need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person."

**II.**  **ANALYSIS**

  **A.**  **United States' Motion and Incorporated Memorandum Regarding Mental Health Evidence (Doc. 168)**

  The United States requests the Court to require Defendant Lujan to give notice of his intent to introduce mental health evidence bearing on either guilt or punishment under Federal Rule of Criminal Procedure 12.2(b) by January 4, 2008. The United States generally requests the following in its proposed order: (1) Mr. Lujan must file the notice if he intends to introduce mental health

evidence, including lay testimony or expert testimony based on a review of records rather than a personal examination, and the notice should include (a) the names and qualifications of his mental health experts and (b) a brief general summary of topics to be addressed so that the Government can determine the appropriate type of rebuttal expert; (2) if he intends to introduce such evidence at the penalty phase, he must submit to an examination by an expert of the Government's choosing under Rule 12(c)(1)(B) not later than February 22, 2008, the report must be placed under seal with the Court, and the expert cannot discuss his examination unless and until the results are released; (3) within 10 days after the Government's expert has completed his examination, the defense expert must disclose to the Government's expert all of the medical records upon which the defense expert relied; and (4) if the jury finds Mr. Lujan guilty, he must file a notice confirming or disavowing his intent to offer mental health evidence at the penalty phase not later than one business day after the return of the guilty verdict, and if he intends to introduce such evidence, the Government's expert's report will be immediately released to both parties upon the filing of the pleading.  The proposed order also provides procedures for the parties to agree to the tests the Government's expert is to perform.  The United States relies, in part, on *United States v. Beckford*, 962 F. Supp. 748 (E.D. Va. 1997), and *United States v. Edelin*, 134 F.Supp.2d 45 (D.D.C. 2001), for its proposed procedures.

Mr. Lujan objects to many of the proposed procedures and asserts that the *Beckford* and *Edelin* cases predate the amendments to Rule 12.2, and thus, should not be followed here.  He also argues that the requirements of Rule 12.2 and the Court's Scheduling Order are sufficient to accommodate the government's discovery rights, that the steps set forth in Rule 12.2 should be followed in the order presented, that his notice should be due on May 15, 2008, and that the examination by the government should not be conducted until after the guilt phase of trial, assuming it is necessary.

1.      **Law**

    a.      **Rule 12.2**

Federal Rule of Criminal Procedure 12.2 governs notice of an insanity defense and of expert evidence of a mental condition.  The purpose of the rule is to give the government time to prepare to meet the issues and to avoid delays during trial.  *See* Fed. R. Crim. P. 12.2, advisory committee notes.  Rule 12.2(a) states that, if a defendant intends to assert an insanity defense, the defendant must notify the government in writing within the time provided for filing a pretrial motion or at any later time the court sets and file the notice with the clerk.  Once the defendant provides notice of an insanity defense, "the court must, upon the government's motion, order the defendant to be examined under 18 U.S.C. § 4242."  Fed. R. Crim. P. 12.2(c)(1)(B).

Rule 12.2(b), which governs notice of expert evidence of a defendant's mental condition, states the following:

> If a defendant intends to introduce expert evidence relating to a mental disease or defect or any other mental condition of the defendant bearing on either (1) the issue of guilt or (2) the issue of punishment in a capital case, the defendant must – within the time provided for filing a pretrial motion or at any later time the court sets – notify an attorney for the government in writing of this intention and file a copy of the notice with the clerk.  The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders.

Fed. R. Crim. P. 12.2(b).  If the defendant provides such notice, "the court may, upon the government's motion, order the defendant to be examined under procedures ordered by the court."  Fed. R. Crim. P. 12.2(c)(1)(B).  Where the evidence is solely to be used in the penalty phase, the results and reports of the government's expert's examination "must be sealed and must not be disclosed to any attorney for the government or the defendant unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing

proceedings expert evidence on mental condition." Fed. R. Crim. P. 12.2(c)(2). After disclosure of the government's expert report, the defendant must disclose to the government "the results and reports of any examination on mental condition conducted by the defendant's expert about which the defendant intends to introduce expert evidence." Fed. R. Crim. P. 12.2(c)(3). Failure to give notice, to submit to an examination as ordered, or to disclose reports may result in exclusion of the defendant's expert evidence. *See* Fed. R. Crim. P. 12.2(d).

### b.      Constitutional Considerations

Compelling a mental examination of the defendant by the government may implicate rights under the Fifth and Sixth Amendments. *See Beckford*, 962 F.Supp. at 760. The Supreme Court recognized that use of a defendant's statements from a court-ordered pretrial psychiatric examination during a capital penalty trial may compromise a defendant's Fifth Amendment right against compelled self-incrimination. *See Estelle v. Smith*, 451 U.S. 454, 458-59, 462 (1981) (holding that defendant's privilege against self-incrimination was violated when he was not advised of *Miranda* rights during court-ordered examination). In so holding, the *Estelle* Court stated, "A criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." *Id.* at 468. The Supreme Court also held that the defendant's Sixth Amendment right to counsel was violated when defense counsel was not notified in advance that the psychiatric examination would encompass the issue of future dangerousness and the defendant was denied the opportunity to consult with his attorneys about his participation in the psychiatric examination. *See id.* at 470-71. The Supreme Court expressly acknowledged that "a different situation arises where a defendant intends to introduce psychiatric evidence at the penalty phase." *Id.* at 472.

14

The Supreme Court has "never extended *Estelle*'s Fifth Amendment holding beyond its particular facts." *Penry v. Johnson*, 532 U.S. 782, 795 (2001). Indeed, subsequent cases have indicated that a defendant waives the privilege if the defendant introduces expert testimony on his or her mental condition. *See*, *e.g.*, *Powell v. Texas*, 492 U.S. 680, 684 (1989) (noting that language in *Estelle* and progeny provides support for argument that defendant's use of psychiatric testimony constitutes waiver of Fifth Amendment privilege). In *Buchanan v. Kentucky*, 483 U.S. 402 (1987), the Supreme Court distinguished *Estelle* because, unlike in *Estelle*, the capital defendant had placed his mental state at issue in defense of the capital charges. *See id.* at 422-24. The Supreme Court in *Buchanan* held that if a defendant requests a psychiatric examination to prove a mental-status defense, then at the very least, he waives the right to raise a Fifth Amendment challenge to the prosecution's use of evidence obtained through that examination to rebut the defense. *Id.* at 422-23. The Tenth Circuit has similarly held that, where a defendant raises an insanity defense, the Fifth Amendment is not violated by ordering a psychiatric examination or admitting testimony regarding the examination. *See United States v. Madrid*, 673 F.2d 1114, 1121 (10th Cir. 1982).

In sum, a defendant must be given *Miranda* warnings before a court-issued mental examination. When a defendant raises a mental-status defense, however, he waives his Fifth Amendment privilege, he may be subject to a pretrial examination, and his statements can be used in rebuttal. *See Edelin*, 134 F.Supp.2d at 50-51. Likewise, a defendant has a Sixth Amendment right to have his counsel notified of the scope and nature of the examination before it takes place. *See Powell*, 492 U.S. at 685; *Buchanan*, 483 U.S. at 424-25. Where, however, the decision to introduce mental health information at the penalty phase is made upon the advice of counsel, the Sixth Amendment is not violated when the defendant is thereupon subject to a government evaluation. *See Edelin*, 134 F.Supp.2d at 50.

### 2.    Proposed procedures

#### a.    Notice deadline

Mr. Lujan contends that notice under Rule 12.2 is not required until at least May 15, 2008, the last deadline set for pretrial motions (the motion in limine deadline).  The United States argues that an earlier deadline is best to insure the examination can be completed without interfering with the trial.

Rule 12.2(b) governs the timing of a defendant's notice: "the defendant must – within the time provided for filing a pretrial motion or at any later time the court sets – notify" the United States.  Fed. R. Crim. P. 12.2(b).  I am not persuaded by Mr. Lujan's argument that the Court is precluded from setting a deadline before the motion in limine deadline.  The rule does not specify what "a pretrial motion" means and there is nothing in the rule to support the argument that the term means only the last pretrial motion deadline.  The Court has considerable discretion in scheduling its pretrial and trial matters, and I am unconvinced that, by setting the motion in limine deadline in May 2008, I am now precluded from ordering an earlier deadline for the Rule 12.2(b) notice.  After all, it is within the Court's discretion to set an earlier motion in limine deadline, if it so desired.

Nevertheless, although the Court retains discretion to set an earlier notice deadline, I agree with Mr. Lujan that a deadline of May 15, 2008, is appropriate.  The purpose of pretrial notice is to avoid unnecessarily delaying the capital sentencing proceedings.  Three months before trial seems like sufficient time to conduct any mental health examination by the Government, while at the same time providing the defense enough time to explore and determine whether it intends to present a mental health defense.  *Cf. United States v. Wilson*, 493 F.Supp.2d 348, 353, 357 (E.D.N.Y. 2006) (notice required within three months of trial); *United States v. Minerd*, 197 F.Supp.2d 272, 277 (W.D. Pa. 2002) (notice ordered less than three weeks before commencement of jury selection);

*Edelin*, 134 F.Supp.2d at 58 (only one month between notice and beginning of jury selection).

### b.    Contents of Rule 12.2(b) Notice

The United States requests that the Rule 12.2(b) notice contain the names and qualifications of Mr. Lujan's mental health experts and a brief general summary of topics to be addressed so that it can determine the appropriate type of rebuttal expert it will need.  Mr. Lujan objects to the notice containing this information and to including experts whose testimony would be based on a review of records rather than a personal examination of him.  He contends that the information could indicate the nature of his mental condition, which is not subject to disclosure until the time contemplated by Rule 12.2(c)(3) for disclosure of defense expert's results and reports.

Rule 12.2(b) requires "meaningful notice."  *United States v. Johnson*, 362 F.Supp.2d 1043, 1079 (N.D. Iowa 2005); *United States v. Sampson*, 335 F.Supp.2d 166, 243 (D. Mass. 2004).  The need for meaningful notice, however, must be balanced with the defendant's Sixth Amendment right not to have his effective assistance of counsel compromised, which could potentially occur if defense counsel  were required to reveal strategy or disclose materials he provided to experts.  *See Sampson*, 335 F.Supp.2d at 243.  The courts that have considered the scope of the requisite notice since the adoption of the 2002 amendments have generally limited what the notice must include to simply the kinds of mental health professionals who have evaluated the defendant and the specific nature of any testing that the defense experts would perform or have performed.  *See Wilson*, 493 F.Supp.2d at 351-53 (rejecting further disclosure in notice such as names, areas of expertise, and curricula vitae of experts); *Johnson*, 362 F.Supp.2d at 1080 (indicating that meaningful notice requires identification of kinds of experts and nature of tests that experts will perform).  These courts reasoned that this information is sufficient "meaningful notice" to enable the government to choose the type of expert it needs without forcing the defendant to disclose the specific nature of his

17

proffered mental condition before the time contemplated by Rule 12.2. *See Wilson*, 493 F.Supp.2d at 352-53; *Sampson*, 335 F.Supp.2d at 243.

The reasoning of the *Wilson*, *Johnson*, and *Sampson* courts is both sound and fair. I therefore conclude that the notice must include the kinds of mental health experts Mr. Lujan anticipates calling at the penalty phase and the nature of the tests those experts have performed or may be expected to perform, but that the notice need not include the names or qualifications of the experts or a summary of the information the experts will provide. *See Wilson*, 493 F.Supp.2d at 353. Notice as described herein should be sufficient to allow the government to find mental health experts from the same field without requiring early disclosure of defense experts "results and reports."

As to the type of evidence, Rule 12.2(b) applies to expert evidence, not lay evidence of a mental condition. *See* Fed. R. Crim. P. 12.2(b) ("Notice of Expert Evidence of a Mental Condition"). Rule 12.2(b) notice thus does not encompass notice of lay evidence of mental condition. *See Wilson*, 493 F.Supp.2d at 352-53 (refusing to require defendant to identify lay witnesses). Nevertheless, given that Rule 12.2(b) does not limit the notice to experts who have personally examined a defendant, the notice should include experts who are basing their opinion on a review of records, rather than a personal examination, so long as the expert will be providing evidence of a mental condition bearing on guilt or punishment. *See Edelin*, 134 F.Supp.2d at 51-52.

### c.      Timing of examination

The United States asks that its examination of Mr. Lujan occur no later than February 22, 2008. Mr. Lujan argues that a court-ordered examination prior to completion of the guilt phase is premature. He argues that to avoid any leaks of information and to protect his rights, the Court should wait until after he is found guilty before ordering any examination. He relies on the decision in *United States v. Taveras*, 233 F.R.D. 318 (E.D.N.Y. 2006).

18

In *Taveras*, the court ruled that, where the capital defendant only intended to present expert mental condition evidence in the punishment phase, the government could not have its expert examine the defendant until after he was found guilty. *See id.* at 321-22. The court delayed the examination to avoid the potential for leaks, to avoid the hassle of determining taint team procedures, and to focus on the adjudication of guilt. *See id.* at 322. The court did not believe this procedure would create significant delay. *Id.*

Rule 12.2(c)(1)(B) plainly permits a court to order a pretrial examination of a capital defendant by government experts, and many courts have permitted the government to examine a capital defendant prior to trial. *See, e.g.*, *Wilson*, 493 F.Supp.2d at 360; *Haworth*, 942 F.Supp. at 1409. The primary reason for pretrial examination is to avoid the risks associated with delay: difficulty in securing jurors in the first instance, greater likelihood that evidence from guilt phase will fade from jurors' memories; and an increased chance that jurors will become unavailable during a break between guilt and penalty phases. *See Wilson*, 493 F.Supp.2d at 359-60 (quoting *Beckford*, 962 F.Supp. at 763). The committee notes to Rule 12.2 specifically state that "the better practice is to require pretrial notice of that intent so that any mental examinations can be conducted without unnecessarily delaying capital sentencing proceedings." Fed. R. Crim. P. 12.2, 2002 amendments (citing with approval *Beckford*, 962 F.Supp. at 754-64; *Haworth*, 942 F.Supp. at 1409). The 2002 amendments leave to the court's discretion the procedures to be used for a court-ordered examination of the defendant's mental condition. *See* Fed. R. Crim. P. 12.2(c)(1)(B). The courts that have ordered pretrial examinations have developed taint team procedures in order to prevent leaks of information. *See Wilson*, 493 F.Supp.2d at 357-60; *Johnson*, 362 F.Supp.2d at 1083; *Sampson*, 335 F.Supp.2d at 243-44.

I find the reasoning of the courts that have ordered pretrial examinations of capital

defendants persuasive.  Delaying examination until after the guilt phase has the potential to delay the sentencing phase for an indefinite time.  Because it will be unclear when a verdict will be entered, the Government may have difficulty coordinating an examination with its expert, who may not be immediately available after the verdict.  Any objections or challenges by the defense as to aspects of the Government's expert testing or reports may cause further delays.  A longer time period between the guilt and capital phases will likely make it even more difficult to choose and retain jurors for this matter.  Finally, delaying the examination until after the guilt phase may affect the results of the mental health examination, as the best time to perform a mental health examination on a defendant and obtain accurate results may not be immediately after the jury finds the defendant guilty and the defendant is facing a capital sentencing hearing.  For these reasons, if Mr. Lujan files notice of his intent to introduce expert evidence on his mental condition, I will permit the Government's experts to conduct a pretrial examination of him.  I also find that, should Rule 12.2(b)(2) notice be filed, at least one fire-walled attorney must be assigned to handle any issues that may arise before, during, or after the Government's expert's examination in order to help ensure that information from any capital sentencing examination will not be leaked, even inadvertently, to the Government attorneys in this case.  *See Sampson*, 335 F.Supp.2d at 243-44  (designating two fire-walled AUSAs to be responsible for all issues relating to Rule 12.2 mental health testing).  Consequently, the Government must notify the Court and defense of who the fire-walled attorney is on May 16, 2008, the day following Mr. Lujan's deadline to provide his Rule 12.2 notice, so that the requisite procedures can be formulated for the examination without delay.  Finally, if Mr. Lujan files his notice, defense counsel must meet and confer with the prosecuting attorneys and the Government's fire-walled attorney no later than May 20, 2008, to try to come to an agreement on procedures for examination by the Government on which both sides can agree.  *See Wilson*, 493

F.Supp.2d at 360.  The parties must be prepared to address any outstanding issues at the penalty phase plan hearing.

### d.      Coordination of testing

Additionally, the United States argues that certain mental health test results can be compromised by multiple testing and that Mr. Lujan should not conduct his own testing until the defense coordinates testing with the Government.  Mr. Lujan objects to his expert being precluded from performing any mental health testing until the parties can agree on what tests will be performed.  He argues that this procedure would interfere with his ability to prepare a defense and would give the Government insight into the nature of his proffered mental condition before the time contemplated by Rule 12.2(c)(3).

The United States relies on the cases of *Beckford* and *Edelin* in support of its request.  In *Beckford*, the government asked that any test of the defendant by the defense expert be either attended by a government expert or recorded.  *See* 962 F.Supp. at 765.  In support of its request, the government submitted affidavits from a mental health expert that explained that certain tests can be administered only once in any one-year period due to the "practice effect" of the test, and thus, no valid retest by the government expert might be possible within a useful time frame.  *See id.* at 765-66.  The defendant objected to the proposal on Fifth Amendment grounds and submitted an expert's opinion that other tests may be available to minimize the negative impact of subsequent evaluation.  *See id.* at 766.  Ultimately, the court did not need to decide the issue because the government backed away from its request after the parties stipulated that their respective expert witnesses likely would be able to agree on the designation of specific testing measures to be administered by each expert to avoid test overlap and minimize "practice effects."  *See id.*  In *Edelin*, the court ordered that if the defendant intended to admit evidence based on an examination, then the defendant and the

21

government must try to agree to the designation of specific testing measures to be administered by both expert witnesses to avoid test overlap and limit "practice effects." *Edelin*, 134 F.Supp.2d at 58.

In this case, however, the Government has not submitted an affidavit or provided any other evidence to prove that practice effects from multiple testing will interfere with its own experts' results. Nor has the Government shown that other tests are not available to minimize the negative impact of subsequent evaluation. Other remedies may be available to avoid any problems associated with multiple testing, such as sharing information between experts. In the absence of evidence regarding the likelihood and severity of practice effects from multiple testing of Mr. Lujan, I am reluctant to impede Mr. Lujan's ability to prepare his defense in the manner requested. I will therefore deny the Government's request to preclude the defense from conducting its own examination of Mr. Lujan until it coordinates with the Government.

### e.    Capital sentencing examination procedures

The United States also moves the Court to order other specific procedures for how its potential capital sentencing examination should be conducted. Mr. Lujan objects to many of the proposed procedures, such as requiring him to confirm his intent to offer the evidence within one business day following the verdict, simultaneous release of examination reports, and disclosure of his medical records to the Government's expert within 10 days of the Government's examination. He argues that these procedures are not required by Rule 12.2, that the issues are not ripe, and that the Court should wait to decide the issues until after the parties confer and jointly submit a plan for the penalty phase.

As to the particular procedures to follow for any capital sentencing examination by the Government's experts, I conclude that it is premature to determine these issues at this time. Because

Mr. Lujan may ultimately choose not to present such evidence, which would make these issues moot, it is more sensible and efficient to wait until after Mr. Lujan's notice deadline to resolve the numerous details regarding the procedures and timing of any examinations as well as subsequent disclosure obligations.  I will therefore deny at this time the Government's additional requests as to the particular procedures to be followed for any capital sentencing examination.  Should Mr. Lujan provide notice of his intent to present Rule 12.2 expert evidence, the parties have leave to raise these issues again and should be prepared to discuss proposed procedures at the penalty phase plan hearing scheduled for the end of May 2008.

### B.      Motion for Bill of Particulars (Doc. 173)

Defendants contend that they are entitled to a bill of particulars because the Third Superseding Indictment does not provide sufficient notice of the nature and scope of the charges against them to prepare a defense.  They seek a bill of particulars on the underlying crimes, the Notice of Special Findings, and the Notice of Intent to Seek a Sentence of Death.  The United States, however, argues that the indictment provides enough information to prepare a defense, as it quotes statutory language, states the elements of the offenses, and includes the dates and places of the offenses.  The Government also asserts that the voluminous discovery provided to date will help Defendants prepare their defense and that they are inappropriately using the bill of particulars as a discovery device.

Federal Rule of Criminal Procedure 7(c) states that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c). For each count, the indictment must also give the official or customary citation of the statute that the defendant is alleged to have violated.  *Id.*  An indictment is sufficient if it (1) contains the elements of the charged offense and fairly informs a defendant of the charge against which he must

defend, and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Bedonie*, 913 F.2d 782, 790 (10th Cir. 1990). Tracking the language of the statute is generally sufficient as long as the indictment sets forth the elements of the offense and provides a statement of facts that informs the defendant of the specific offense. *See Hamling*, 418 U.S. at 117-18; *United States v. Dunn*, 841 F.2d 1026, 1029 (10th Cir. 1988). An indictment need not allege in detail the factual proof that the government will rely on to support the charges. *Dunn*, 841 F.2d at 1029.

Rule 7(f) provides that a "court may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense." *Dunn*, 841 F.2d at 1029. A bill of particulars is not a discovery device. *Id.* A defendant is not entitled to know all the evidence the government intends to introduce, but only the theory of the government's case. *Id.* at 1030. Where an indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial, a bill of particulars is not warranted. *See United States v. Levine*, 983 F.2d 165, 167 (10th Cir. 1992). The courts have "very broad discretion in ruling upon requests" for bills of particulars. *Will v. United States*, 389 U.S. 90, 99 (1967).

In this case, the Third Superseding Indictment cites the particular statutes for the charged crimes and generally tracks the language of the respective statutes. The indictment also includes the dates of the illegal activity, the places where the crimes occurred, and the name of the victim. For these reasons, I find that the indictment sufficiently provides the elements of the alleged offense and apprises Defendants of the charges. *See Dunn*, 841 F.2d at 1029 (affirming denial of motion

for bill of particulars where indictment quoted language of statute, included dates of illegal activity, place, and specific controlled substance).  I therefore will deny Defendants' request for a bill of particulars.

As for the specificity of the Notice of Special Findings and the Notice of Intent to Seek a Sentence of Death, I am not convinced that Rule 7 governs death penalty notices.  By its own title, Rule 7 applies to "The Indictment and the Information."  Fed. R. Crim. P. 7.  The Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*, and not Rule 7, requires notice of the government's intent to seek the death penalty.  *See* 18 U.S.C. § 3593(a).  Many courts that have considered the issue have found that Rule 7(f) does not apply to death penalty notices.  *See United States v. Llera Plaza*, 179 F.Supp.2d 464, 472 (E.D. Pa. 2001) ("[T]he court concludes that 18 U.S.C. § 3593(a) does not require the government to produce the details of its sentencing phase evidence, and that Rule 7 is not applicable to [notices of intent to seek the death penalty] submitted to satisfy FDPA requirements."); *United States v. Kaczynski*, 1997 WL 34626785, *17 (E.D. Cal. Nov. 7, 1997) (unpublished opinion) (concluding that Rule 7 does not apply to death notices); *United States v. Nguyen*, 928 F.Supp. 1525, 1545 (D. Kan. 1996) (noting that there is no authority indicating that Rule 7 applies to death notices).  I therefore will deny Mr. Lujan's request for a bill of particulars as it relates to the aggravating factors.

Nevertheless, although Rule 7(f) is not the appropriate vehicle for the requested discovery, courts have found that the Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense, and thus, have ordered more detailed discovery pertaining to aggravating factors using their inherent authority.  *See*, *e.g.*, *United States v. Wilson*, 493 F.Supp.2d 364, 375-76 (E.D.N.Y. 2006) (explaining that courts have inherent authority to order production of more particular information concerning notices of special findings and notices of

intent to seek death penalty); *United States v. Karake*, 370 F.Supp.2d 275, 279-80 (D.D.C. 2005) ("it has been uniformly recognized that if the death penalty [sic] provides insufficient notice to the defendant, the Court retains inherent authority to require the government to provide more specifics in order to give the defendant the opportunity to prepare for the penalty phase"); *Llera Plaza*, 179 F.Supp.2d at 471-72 (concluding that Constitution requires government to provide some notice of type of evidence that it intends to introduce at sentencing phase in order to provide defendant a meaningful opportunity to present his defense).   Therefore, as to the factors in the death penalty notices that call for additional clarity, I will discuss those issues later in this opinion when ruling on Defendant Lujan's Motion for Discovery of Information and Materials Concerning Aggravating Sentencing Factors and Incorporated Memorandum (Doc. 185).

### C.   Motion for Notice by the Government Pursuant to Rule 12(b)(4)(B) and Incorporated Memorandum (Doc. 174)

Defendants move under Rules 12(b)(4)(B) and 16 for the disclosure of all evidence that the Government contemplates using at trial in its case-in-chief and in rebuttal.   They request disclosure of evidence that is arguably subject to suppression and to have the evidence specifically identified separate and apart from the other items of discovery produced under Rule 16.   In response, the United States contends that Rule 12(b)(4)(B) does not require it to identify with specificity what, if any, of the Rule 16 discovery is "arguably" subject to suppression.   The United States asserts that, because it has complied with its Rule 16 obligations, this motion should be denied as moot.   The United States further argues that Defendants are not entitled to notice of rebuttal evidence under Rule 12(b)(4)(B) because the rule explicitly limits notice to evidence the Government intends to use in its case-in-chief.

26

Federal Rule of Criminal Procedure 12(b)(4)(B)[2] provides:  "At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16."  Fed. R. Crim. P. 12(b)(4)(B).  Rule 12(b)(4)(B) is a matter of procedure, rather than a rule designed to ensure fairness at trial.  *United States v. Cruz-Paulino*, 61 F.3d 986, 993 (1st Cir. 1995).  The rule provides a mechanism to insure that the defendant knows of the government's intention to use evidence to which the defendant may want to object.  *See* Fed. R. Crim. P. 12, advisory committee notes, 1974 amendment.  "Although the defendant is already entitled to discovery of such evidence prior to trial under rule 16, rule 12 makes it possible for him to avoid the necessity of moving to suppress evidence which the government does not intend to use.  No sanction is provided for the government's failure to comply with the court's order because the committee believes that attorneys for the government will in fact comply and that judges have ways of insuring compliance."  *Id.*

Few circuits have addressed the notice requirements of Rule 12(b)(4)(B).  In the appellate case most on point, the First Circuit held that providing open-file discovery does not satisfy Rule 12(b)(4)(B).  *Cruz-Paulino*, 61 F.3d at 993.  In *Cruz-Paulino*, the government designated certain evidence for trial and stated that any other evidence would be noticed before trial.  *See id.* at 992.  The government, however, failed to notify the defendants that it intended to introduce two specific pieces of evidence.  *See id.*  In holding that the government violated Rule 12(d)(2), the First Circuit reasoned:

> To the extent that the government's open files contain information that is subject to
> Rule 16 discovery, Rule 12(d)(2) creates a notice requirement.  The open file policy

---

[2] Prior to the 2002 amendments, the substance of Rule 12(b)(4)(B) was contained in Rule 12(d)(2).

does not, in and of itself, satisfy this notice requirement because it does not specify which evidence the government intends to use at trial. Providing open-file discovery does not satisfy Rule 12(d)(2) because the defendant is still left in the dark as to exactly what evidence, discoverable under Rule 16, the government intends to rely upon in its case in chief at trial.

*Id.* at 993 (internal quotations and citations omitted). The First Circuit concluded that the government violated the rule. *See id.* The First Circuit, however, stressed that "Rule 12(d) was not designed to aid the defendant in ascertaining the government's trial strategy, but only in effectively bringing suppression motions before trial, as required by Rule 12(b)(3)." *Id.* at 994. Thus, despite the violation, the First Circuit held that reversal and remand was only appropriate upon a showing of prejudice. *See id. See also United States v. Barry*, 133 F.3d 580, 582-83 (8th Cir. 1998) (affirming district court's decision not to suppress evidence, despite government's violation of Rule 12(d)(2), because district court provided sufficient remedy in holding suppression hearing).

The district courts appear to be split on what the government's notice obligations entail under Rule 12(b)(4)(B). Some courts follow the First Circuit's reasoning that an open-file policy is not sufficient. *See, e.g., United States v. Cheatham*, 500 F.Supp.2d 528, 534-35 (W.D. Pa. 2007) ("[W]hen the Government has an open file policy with regard to its prosecution, this policy does not comply with Rule 12(b)(4)(B) 'because it does not specify which evidence the government intends to use at trial.'") (quoting *Cruz-Paulino*, 61 F.3d at 993); *United States v. Anderson*, 416 F.Supp.2d 110, 112 n.1 (D.D.C. 2006) (rejecting government's argument that it satisfied Rule 12(b)(4)(B) by providing open-file discovery and giving notice that it intended to use all of materials provided to defendant pursuant to that policy). At least one court has stated that the notice must consist of "the evidence that will appear on the government's exhibit list for trial." *Anderson*, 416 F.Supp.2d at 112.

Other courts, however, have concluded that the government satisfies Rule 12(b)(4)(B) where

it provides notice that it intends to offer some or all of the items made available in discovery as evidence in its case-in-chief at trial.  *See*, *e.g.*, *United States v. Cushmeer*, 2007 WL 1858269, *2 (N.D. Ohio June 26, 2007) (unpublished opinion) (denying request for notice under Rule 12(b)(4)(B) as moot because government complied with its Rule 16 discovery obligations by making all evidence available for review); *United States v. Jordan*, 2007 WL 1849985, *3 (E.D.Tenn. June 25, 2007) (unpublished opinion) (denying defendant's motion to require government to file exhibit list under Rule 12(b)(4)(B) and concluding that government's representation that any and all physical and documentary evidence had been forwarded to defendant was sufficient notice); *United States v. Kimble*, 2007 WL 1430303, *2 (S.D.Ga. May 10, 2007) (unpublished opinion) ("It is clear that what the government is required to disclose [under Rule 12(b)(4)(B)] . . . is evidence gathered from searches and seizures including electronic monitoring, and statements and confessions, all of which may be subject to suppression upon motion by Defendant.  In essence the Rule requires the government to make early disclosure of these matters to allow the Court to determine any suppression motions prior to trial thereby avoiding needless delay during trial.  The government's 'open file' discovery policy in this case addresses all these concerns."); *United States v. Imadu*, 2006 WL 2265437, *2 (M.D. Fla. Aug. 8, 2006) (unpublished opinion) (concluding that government met Rule 12(b)(4)(B) when it stated that it intended to use all of discoverable material under Rule 16 and court's standing order); *United States v. El-Silimy*, 228 F.R.D. 52, 56-57 (D.Me. 2005) (stressing that Rule 12(b)(4)(B) was not intended to allow defendant to force government to decide precisely what provided documents would be used at trial because it was not designed to aid defendant in determining government's trial strategy).

Having considered the arguments and authority, I find that the United States construes the rule too narrowly while the defense interprets it too expansively, and therefore, I will follow a

middle ground more in keeping with the purpose of the rule.  The United States merely relies on its assertion that it has complied with its Rule 16 discovery obligations.  Merely relying on an open-file policy is not sufficient, however, as Rule 12 was designed to make it possible for the defense to avoid the necessity of moving to suppress evidence that the government does not intend to use.  *See* Fed. R. Crim. P. 12, advisory committee notes, 1974 amendment; *Cruz-Paulino*, 61 F.3d at 993. On the other hand, interpreting Rule 12(b)(4)(B) as requiring the government to file an exhibit list, as essentially requested by Defendants, expands the rule too far.  Had the rule contemplated a detailed exhibit list, it could have stated so expressly.  The purpose of the rule is not to reveal the government's trial strategy, but merely to provide the defendant with sufficient information to file the necessary suppression motions.  *Cruz-Paulino*, 61 F.3d at 994.[3]

Based on the language of Rule 12(b)(4)(B), the purpose of the rule, and the reasoning of *Cruz-Paulino*, I conclude that Defendants' motion should be granted in part.  If the United States knows that it does not intend to introduce any evidence from a particular warrantless search or seizure; search or seizure based on a warrant; surveillance; interview; beeper or other tracking device; mail cover; display of any defendant's photograph, likeness, image, or voice-recording, then it must notify Defendants of this fact immediately, with a continuing obligation to supplement, in order to avoid the necessity of Defendants moving to suppress evidence that will not be introduced in the United States' case-in-chief at trial.  Such notice will meet the purpose of the rule to reduce the needless filing of suppression motions that are not at issue, which will conserve court resources by avoiding litigation on irrelevant searches or interviews, without requiring the United States to

---

[3] *Cruz-Paulino*, although stating that an open-file policy is not sufficient, is not to the contrary.  In *Cruz-Paulino*, the government specified certain evidence, but omitted two particular pieces of evidence. *Id.* at 992.  Thus, in *Cruz-Paulino*, the error was in the government being under-inclusive rather than over-inclusive in its notice. *Cruz-Paulino* did not indicate that the notice must be an exhibit list.

disclose its trial strategy by forcing it to specify particular pieces of evidence it intends to present. *Cf. United States v. Dyer*, 2007 WL 2326899 (E.D. Tenn. Aug. 10, 2007) (unpublished opinion) (finding that government complied with Rule 12(b)(4)(B) where it disclosed Rule 16 evidence and provided notice of search warrant, affidavit, and inventory of relevant search subject to potential suppression motion).

I will deny, however, Defendants' request for notice of evidence that the government intends to use in rebuttal. Rule 12(b)(4)(B) expressly limits the notice to evidence in the government's "evidence-in-chief at trial." Defendant cites no authority supporting an expansive interpretation of the rule to include rebuttal evidence.[4] Rather, the cases appear to be to the contrary. *See Anderson*, 416 F.Supp.2d at 112-13 (noting that, although government was required to notify defendant of evidence it intends to use in its case-in-chief, it would not prevent government from using evidence not disclosed under Rule 12 for such purposes as presenting its rebuttal case, so long as use of evidence was not planned in advance of trial); *United States v. Bridges*, 2006 WL 3716653, *6 (E.D. Tenn. Dec. 14, 2006) (unpublished opinion) (stating that Rule 12(b)(4)(B) "explicitly limits disclosure to evidence the government intends to use in its case-in-chief").

**D.     Defendant's Motion for Disclosures Specific to Death Penalty Issues (Doc. 175)**

This motion supplements the requests made in Defendant Lujan's motion for Rule 16 discovery (Doc. 183) and specifically addresses the following five categories of information as they

---

[4] Defendants cite *United States v. Richter*, 488 F.2d 170, 173-74 (9th Cir. 1973), in support. Although in *Richter* the Ninth Circuit recognized the courts' inherent authority to effectuate the fair, speedy, and orderly administration of criminal justice, as evident in Rule 57(b), it did not address whether the government must provide notice of rebuttal evidence. The *Richter* case is thus of limited use to the question of notice of rebuttal evidence. Other than Rule 12 itself, the only other authority Defendants cite is *Battle v. United States*, 345 F.2d 438 (D.C. Cir. 1965), which is similarly inapposite. Although *Battle* acknowledges that suppression hearings should be held before trial to avoid error, it does not address notice of rebuttal evidence or what identification of evidence is necessary under Rule 12(b)(4)(B). Defendants' cases are therefore not useful on this issue.

pertain to the capital penalty phase.

### 1.      Defendant's Statements

In addition to written and recorded statements, which are discoverable under Rule 16(a)(1)(B), Mr. Lujan wants any statements that are not detailed in transcripts or reports. Rule 16(a)(1)(A) requires disclosure of the defendant's oral statements "in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A).  The Government thus has an obligation to produce such statements if they intend to introduce them at trial and if they are not already produced in a report. The Court's standing discovery order, however, already requires this disclosure.  Moreover, defense counsel admitted at the hearing on this motion that the Government may have already met this request.  Consequently, I will deny this request as moot.

### 2.      Reports of Misconduct by Government Agents

Mr. Lujan also asks for disclosure of misconduct of witnesses that are in personnel files in the government's possession or control and in state agency personnel records.  The United States certainly has a duty under *Giglio* to disclose impeachment information of its witnesses from files in its possession or control, and the United States has stated that it is aware of this duty. Nevertheless, given my rulings regarding the disclosure of *Giglio* information described later in this opinion, I will deny this duplicative request as moot.

As for the Government's obligation to affirmatively search and disclose information in state agency personnel records, the law does not support such a broad request.  As an initial matter, the cases cited by Defendant are distinguishable.  In *United States v. Schwartz*, 259 F.3d 59 (2d Cir. 2001), the appellate court remanded for the district court to consider police department internal affairs reports and transcripts for *Brady/Giglio* information in light of an affidavit indicating that the

reports contained exculpatory information.  The Second Circuit specifically stated that "we intimate no view on the merits of the *Brady/Giglio* claim to be considered by the District Court."  *Id.* at 65. Nor did the case specifically address the government's affirmative duty to locate and search state personnel files that are not already in its possession and control.  The case is thus of limited value. In *Kyles*, the Supreme Court held that a *state* prosecutor has a duty to learn of favorable evidence known to the police, and thus, *Kyles* also did not discuss the affirmative duty of a federal prosecutor to look in state personnel files.  *See Kyles*, 514 U.S. at 437.

Although the Ninth Circuit in *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991), held that it was error for the government to fail to examine the personnel files of testifying officers from federal agencies for impeachment material, that case also does not support Mr. Lujan's broad request to search state personnel files.  *See id.* at 31.[5]  In *Henthorn*, the Ninth Circuit stated that the defendant did not have to make an initial showing of materiality; rather, the defendant needed only to make a demand for production to invoke the government's obligation to examine files.  *See id.* Other courts, however, have declined to follow the Ninth Circuit's lead and still require a showing of materiality before they will order disclosure of government files.  *See United States v. Quinn*, 123 F.3d 1415, 1422 (11th Cir. 1997); *United States v. Driscoll*, 970 F.2d 1472, 1482 (6th Cir. 1992) (upholding government's refusal to disclose testifying officers' personnel files based only on defendant's speculation that files contained impeachment material), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir. 1999); *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985) (noting that mere speculation is insufficient to require *in camera* inspection of personnel files of law enforcement witnesses); *United States v. Preston*, 1996 WL 254379, *15 (D.

---

[5] The Ninth Circuit in *Henthorn* expressly left open the question of whether the government had a duty to examine the files of a local police detective, because that detective did not testify.  *See id.* at n.2.

Kan. Apr. 5, 1996) (unpublished opinion) (denying defendants' requests for order requiring government to review agent's personnel records because there was no factual basis for request). *See also Brooks*, 966 F.2d at 1504 (explaining that more than mere speculation is required to trigger government's duty to search files). Moreover, the Ninth Circuit has itself refused to extend *Henthorn*'s holding beyond personnel files of testifying federal law enforcement officers. *See United States v. Santiago*, 46 F.3d 885, 895 (9th Cir. 1995) (holding that defendant must demonstrate materiality of prison inmate files before government has duty to produce files).

The Ninth Circuit has also since clarified that the duty to search files does not apply to personnel files of state law enforcement witnesses, which are not in the control of the federal prosecutor. *See Dominguez-Villa*, 954 F.2d at 565-66 (holding that government was not obligated to review state law enforcement files not within its possession or control). *See also United States v. Parrish*, 83 F.3d 430, *2 (9th Cir. 1996) (unpublished opinion) (holding that government had no obligation to conduct *Henthorn* review on personnel file from Navajo police department that was not in federal prosecutor's hands).[6] As discussed *supra* in section I(A), the Tenth Circuit has held that the state's knowledge and possession of potential impeachment evidence cannot be imputed to a federal prosecutor for purposes of *Brady*. *Beers*, 189 F.3d at 1304. It is an open question in this circuit, however, as to whether the federal prosecutor has a duty to learn of favorable evidence in state files where there is a joint investigation by federal and state officials. *See Combs*, 267 F.3d at 1175; *Beers*, 189 F.3d at 1304. In light of the uncertainty in this circuit, it would behoove the Government to broadly construe its duty to learn of favorable evidence in personnel files of any state

---

[6] The Ninth Circuit has additionally clarified that a court cannot order the Assistant United States Attorney ("AUSA") to personally review files. *See United States v. Herring*, 83 F.3d 1120, 1121-23 (9th Cir. 1996); *United States v. Jennings*, 960 F.2d 1488, 1491 (9th Cir. 1992). Instead, the appropriate agency may examine the files and notify the AUSA of potential *Brady* material. *Herring*, 83 F.3d at 1121-22.

officials participating in a joint investigation.  I nevertheless decline to order the United States to conduct the requested examination of federal or state personnel files in the absence of a particular showing of materiality.  *See United States v. Floyd*, 247 F.Supp.2d 889, 901 (S.D. Ohio 2002) (declining to order government to conduct examination of personnel files of testifying witnesses because speculation was insufficient to trigger duty); *Preston*, 1996 WL 254379 at *15 (same).

### 3.      Prior Bad Acts of Government Witnesses

Mr. Lujan requests the immediate disclosure of prior bad acts of government witnesses. Prior bad acts of witnesses of which the Government is aware clearly implicates the Government's disclosure obligations under *Giglio*.  Nevertheless, given my rulings described elsewhere in this opinion that require the disclosure of such *Giglio* information, I will deny this duplicative request as moot.

### 4.      Non-Testifying Witnesses

Mr. Lujan further requests information on witnesses that the Government does not intend to call, relying on *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984).  In *United States v. Cadet*, the Ninth Circuit held that the district court did not abuse its discretion in ordering the government to disclose the names and addresses of any person who had witnessed the crime through any of his senses, even if the government did not intend to call the witness.  *Id.* at 1469.  The *Cadet* court reasoned that "it was quite appropriate for the district court to conclude from the fact that the government did not intend to call a witness to the crime that there was a reasonable possibility that such person would be able to provide evidence favorable to the defense."  *Id.*  The Ninth Circuit nevertheless found that the court erred in compelling the production of *statements* of witnesses that the prosecution did not intend to call.  *Id.*

Some courts have used their discretion to order the production of such witness lists.  *See*,

*e.g.*, *United States v. Novack*, 1985 WL 1588, *5 (N.D. Ill. 1985) (unpublished opinion) (exercising discretion to order disclosure of names and addresses of witnesses to alleged unlawful activity because of high number of possible witnesses).  Other courts have not.  *See United States v. Turner*, 2007 WL 1031691, *6 (W.D. Wash. Apr. 3, 2007) (unpublished opinion) (declining to order disclosure of witnesses that government did not intend to call and that were not already required by *Brady* because defendant had not made Rule 16 showing of materiality or defined how such witnesses should be identified); *United States v. Hsin-Yung*, 97 F.Supp.2d 24, 35-36 (D.D.C. 2000) (refusing to exercise its discretion to order government to disclose list of witnesses who it would not call because defendants gave no reason for needing information and did not indicate that information was exculpatory); *United States v. Rosenthal*, 1991 WL 267767 (S.D.N.Y. Dec. 3, 1991) (unpublished opinion) (denying request for list of non-testifying witnesses because pool of potential witnesses with knowledge of relevant facts was large and it would be impractical to call all persons who had any knowledge of facts of case).

   I am persuaded by the reasoning of those courts that have required a showing of materiality before requiring the disclosure of information regarding non-testifying witnesses.  Because Mr. Lujan has not demonstrated the materiality of any specific non-testifying witness, I will deny his request to compel disclosure at this time.  *See United States v. Edelin*, 128 F.Supp.2d 23, 33 (D.D.C. 2001) (denying similar motion). As for any information on non-testifying witnesses that is subject to *Brady*, *Giglio*, or Rule 16, I have ordered the disclosure of such information as described elsewhere in this opinion, and thus, Mr. Lujan's duplicative request in this motion will be denied as moot.

5.  **Information Considered by United States Attorney's Office and/or Department of Justice Capital Committee**

Finally, Mr. Lujan requests information considered by the United States Attorney or Department of Justice ("DOJ") Capital Committee regarding this case.  This request, however, is also contained in Mr. Lujan's separate motion for disclosure of information on the Government's decision to seek the death penalty (Doc. 176).  For the same reasons as discussed *infra* in section II(E), I will deny this request.

E.  **Defendant's Motion for Disclosure of Information Concerning the Decision to Seek the Death Penalty and Incorporated Memorandum (Doc. 176)**

Mr. Lujan requests the disclosure of the United States Attorney's initial recommendation and supporting documentation for the death penalty in his case.  He argues that complete information of the process is necessary to ensure that the decision to seek the death penalty was not made in an arbitrary and capricious manner.  He further asserts that the information is relevant to the anticipated motions challenging the Notice of Intent to Seek the Death Penalty.  In the alternative, Mr. Lujan requests that the Court review the materials *in camera* to determine if they contain exculpatory information, particularly mitigating evidence, and if there is a substantial risk that the final decision was influenced by Mr. Lujan's and/or the victim's race.  In response, the United States argues that this motion should be denied because the requested information constitutes privileged deliberative process and attorney work product material.

The United States Attorney's Manual ("USAM") outlines the internal policies and procedures for prosecution of all federal capital cases.  *See United States v. Fernandez*, 231 F.3d 1240, 1243 (9th Cir. 2000) (citing USAM § 9-10.000 *et seq.* (1997)).  The USAM requires the United States Attorney to submit a death penalty evaluation form and a prosecution memorandum to the Attorney General's Death Penalty Committee.  *See id.* (citing USAM §§ 9-10.040, 9-10.050,

9-10.070).  Mr. Lujan seeks this memorandum and supporting documentation.

Courts addressing similar motions have uniformly rejected them for various reasons.  *See*,

*e.g.*, *United States v. Haynes*, 242 F.Supp.2d 540, 541 & n.1 (W.D. Tenn. 2003) (denying motion

and citing cases that have rejected similar motions).  Some courts have rejected the motion on the

ground that the Department of Justice Death Penalty Protocol does not create any substantive or

procedural rights for defendants and is essentially a prosecutor's charging decision.  *See*, *e.g.*,

*Haynes*, 242 F.Supp.2d at 541; *United States v. Furrow*, 100 F.Supp.2d 1170, 1178 (C.D. Cal. 2000)

(holding that defendant cannot rely on internal DOJ manual to compel production of internal

prosecution documents because DOJ guidelines do not create any substantive rights); *United States

v. Nguyen*, 928 F.Supp. 1525, 1544-45, 1552 (D. Kan. 1996).  Numerous circuit courts have

similarly held that DOJ guidelines, policies, and manuals do not create any enforceable procedural

or substantive rights for criminal defendants.  *See United States v. Wilson*, 413 F.3d 382, 389 (3d

Cir. 2005) (listing cases from First, Second, Sixth, Ninth, and D.C. Circuits); *Fernandez*, 231 F.3d

at 1246; *United States v. Myers*, 123 F.3d 350, 355-56 (6th Cir. 1997).

Other courts have denied such motions on the ground that the materials are protected by the

deliberative process and work product privileges as well as Rule 16(a)(2).  *See United States v.

Fernandez*, 231 F.3d 1240, 1246-47 (9th Cir. 2000); *United States v. Hargrove*, 2005 WL 2122310,

*6 (D. Kan. Aug. 25, 2005) (unpublished opinion) (denying request for discovery of prosecution's

capital charging practices); *Edelin*, 128 F.Supp.2d at 39-41 (denying similar request based on

deliberative process, attorney-client, and work product privileges); *Furrow*, 100 F.Supp.2d at 1174-

75 (explaining that death penalty evaluation form and prosecution memorandum fall within

deliberative process and work product privileges); *United States v. Frank*, 8 F.Supp.2d 253, 284

(S.D.N.Y. 1998) (denying motion to disclose materials prepared in making decision to seek death

penalty based on deliberative process privilege).

The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)). The purpose of the deliberative process privilege is to encourage frank discussion of legal or policy matters in writing, thereby improving agency decision-making processes. *See Sears, Roebuck & Co.*, 421 U.S. at 150-51. For the deliberative process privilege to apply, the document must be both "predecisional" and "deliberative." *See Casad v. U.S. Dep't of Heath and Human Services*, 301 F.3d 1247, 1252 (10th Cir. 2002); *Fernandez*, 231 F.3d at 1246.

The work product privilege, in contrast, protects the attorney's mental processes. *Klamath Water Users Protective Ass'n*, 532 U.S. at 8. The Supreme Court has held that this doctrine applies to criminal, as well as civil, litigation. *United States v. Nobles*, 422 U.S. 225, 236-38 (1975). As the Supreme Court explained, "The interests of society and the accused in obtaining a fair and accurate resolution of the question of guilt or innocence demand that adequate safeguards assure the thorough preparation and presentation of each side of the case." *Id.* at 238. The attorney work-product privilege "clearly applies to memoranda prepared by an attorney in contemplation of litigation which set forth the attorney's theory of the case and his litigation strategy." *Sears, Roebuck & Co.*, 421 U.S. at 154. Federal Rule of Criminal Procedure 16(a)(2) recognizes the work product privilege, exempting from disclosure "reports, memoranda, or other internal government documents made by an attorney for the government . . . in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2); *Fernandez*, 231 F.3d at 1247; *Edelin*, 128 F.Supp.2d at 39.

In *Fernandez*, the Ninth Circuit concluded that both the deliberative process and work product privileges applied to the death penalty evaluation form and prosecution memorandum. *Fernandez*, 231 F.3d at 1246-47.  The Ninth Circuit explained that the deliberative process privilege applied because the documents were "pre-decisional," in that the United States Attorney submits them to the Attorney General's Death Penalty Committee before the Attorney General makes a final decision whether to seek the death penalty, and "deliberative" in that they contain opinions, recommendations, or advice about agency policies.  *Id.*  The Ninth Circuit also reasoned that the factual and evidentiary materials were so interwoven with the deliberative material that they were not severable.  *Id.* at 1247.  Finally, the *Fernandez* court determined that the documents also fell within the work product privilege, because they are internal government documents prepared by the United States Attorney in anticipation of litigation.  *Id.* at 1247.  The Ninth Circuit thus held that the death penalty evaluation form and prosecution memorandum were not subject to discovery.  *Id.*

I find the reasoning of the Ninth Circuit in *Fernandez* and of the courts that have rejected similar motions persuasive.[7]  Because the DOJ's death penalty procedures do not create enforceable substantive or procedural rights for Defendant, the refusal to disclose the information is a matter of prosecutorial discretion unreviewable by the courts, and the information is protected by the

---

[7] Moreover, Defendant has not provided the Court with relevant authority supporting his position or casting doubt upon the reasoning in the aforementioned cases. Defendant relies on *Brady*, *Gardner v. Florida*, 430 U.S. 349 (1977), and *McCleskey v. Kemp*, 481 U.S. 279 (1987), in support of his motion. *Brady* only applies to evidence, not attorney recommendations. *See Edelin*, 128 F.Supp.2d at 41. *Gardner* and *McCleskey* are simply not applicable to the issue at hand. In *Gardner*, the Supreme Court held that the defendant was denied due process where the trial judge who imposed the death sentence relied in part on information in a pre-sentence investigation report, portions of which were not disclosed to defense counsel. *Id.* at 351. *Gardner* thus did not address pre-trial discovery obligations nor did it address disclosure of attorney work-product. *McCleskey* is similarly not on point. In *McCleskey*, the Supreme Court explained that a defendant making an equal protection challenge has the burden of proving that the decision-makers in his case acted with discriminatory purpose. *See id.* at 292. After examining the statistics on the application of capital sentencing decisions and race, the Court concluded that the evidence was insufficient to establish an equal protection violation. *See id.* at 297. *McCleskey* did not address disclosure of the United States Attorney's capital sentencing recommendation and documents.

deliberative process and work product privileges, as well as Rule 16(a)(2), I will deny Mr. Lujan's request to force the disclosure of information concerning the Government's decision to seek the death penalty. As one court explained: "Discovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving a Notice of Intent to Seek the Death Penalty." *Frank*, 8 F.Supp.2d at 284.

This decision, of course, does not alter the Government's obligation under *Brady* to disclose evidence favorable to Mr. Lujan. Although *Brady* entitles a defendant to production of exculpatory evidence, it does not reach the prosecution's analysis of such evidence. *See Furrow*, 100 F.Supp.2d at 1178. I have ordered the Government to disclose *Brady* information in the manner detailed elsewhere in this opinion, and thus, to the extent this motion requests *Brady* information, I have already granted the request in part and therefore will deny the duplicative *Brady* request in this motion as moot. Moreover, because the United States is aware of its discovery obligations under *Brady*, I will also decline to inspect the United States Attorney's initial recommendation and supporting memorandum *in camera* for exculpatory information.

### F.    Motion for Disclosure of Information Relating to DNA Evidence and Testing and Incorporated Memorandum (Doc. 177)

Defendants request the disclosure of various scientific materials pertaining to all the DNA testing performed in this case. The United States stated at the December 5, 2007 hearing that all testing has not been completed in this case, but that it has provided discovery concerning the DNA testing that has been completed. The United States asserts that it will disclose all reports in its possession concerning all testing of evidence that is seized and tested in the case. Although the United States has agreed to turn over most of the requested materials, it asks that the defense motion

41

not be granted in full because some of the requests are overly burdensome or outside the scope of the rules. Defendants stated at the hearing that their expert has not fully reviewed the discovery provided by the Government, and they would like to consult with their expert to determine what additional information they may need. The parties agreed to attempt to resolve any outstanding issues amongst themselves. I will therefore deny this motion as moot at this time. Defendants, however, have leave to resubmit a motion regarding discovery of DNA evidence and testing at a later time, but any such motion must be filed no later than March 3, 2008.

### G.    Motion for Early Disclosure of Material Covered by the Jencks Act or Rule 26.2 of the Federal Rules of Criminal Procedure and Incorporated Memorandum (Doc. 178)

Defendants request disclosure of Jencks/Rule 26.2 material by February 17, 2008, and in any event, not less than 180 days before trial. Although Defendants recognize that the Jencks Act and Rule 26.2 do not require disclosure of witness statements until after the witness has testified, they point out that courts in at least two other New Mexico death penalty cases have required disclosure well in advance of trial and that the practical effect of strictly adhering to the Jencks Act would result in numerous trial continuances. Defendants argue that death penalty cases are different and urge that their rights under the Fifth and Sixth Amendments outweigh the dictates of both the Congressional enactment and court-made rule.

The United States asserts that the premise that "death is different" does not compel early disclosure of Jencks Act statements. It contends that the plain language of the Act states that witness statements are not discoverable until after the declarant witness testifies on direct examination. At the hearing on this motion, the United States agreed, however, in order to avoid the necessity of any continuances of the trial, to provide early disclosure of Jencks Act material. It preferred to provide the material to the defense two weeks before trial, but agreed to provide the Court for *in camera*

42

pretrial inspection the Jencks Act material.  The Government asserted that, if the Court determines, upon review, that the material is so voluminous that disclosure of the material two weeks before trial might result in trial delays, the Government would agree to disclose the Jencks Act material 30 days before trial.  The Government stated that it could provide the material to the Court within a week, but noted that, because it was continuing to interview people, it may have additional Jencks Act material by the time of trial.  The United States also indicated that it wants reciprocal early disclosure of Jencks Act and Rule 26.2 statements by the defense.

"The Jencks Act prohibits the pretrial discovery of statements made by prospective government witnesses." *United States v. Smaldone*, 544 F.2d 456, 461 (10th Cir. 1976).  *See also United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) ("The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only *after* the witness has testified on direct examination at trial."); *United States v. Lewis*, 35 F.3d 148, 151 (4th Cir. 1994) ("The district court may not require the government to produce Jencks Act material relating to one of its witnesses until *after* the witness has testified).  The terms of the statute itself thus limit a court's ability to order pretrial disclosure of witness statements.  *See United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988) (stating that courts cannot disregard congressional mandate in Jencks Act); *United States v. McKenzie*, 768 F.2d 602, 609 (5th Cir. 1985) ("The trial court cannot compel disclosure of Jencks material at any earlier point.").

Despite this statutorily-imposed limitation, some courts have ordered early disclosure in the interests of due process, effective assistance of counsel, and the fair and efficient conduct of trial, but generally in these cases, the government has voluntarily agreed to the early disclosure.  *See*, *e.g.*, *United States v. Beckford*, 962 F.Supp. 780, 795 (E.D. Va. 1997) (ordering production of all Jencks Act material three days before commencement of jury selection, which was time government

voluntarily agreed to early production); *United States v. Haworth*, No. 95-491 LH (D.N.M. Apr. 12, 1996) (Doc. 518) (ordering United States to produce all Jencks Act materials at least 14 days prior to start of trial, which was voluntarily agreed upon time suggested by government).  The circuit courts have also encouraged the practice of early disclosure.  *See Tarantino*, 846 F.2d at 1415 n.12 (noting that trial judges with consent of government routinely fashion discovery procedures for early production of Jencks material before trial and calling this a "sensible procedure"); *McKenzie*, 768 F.2d at 609 ("This court has recognized such early Jencks disclosure as a salutary practice that should be encouraged to avoid the interruptions and delay at trial that are inevitable if the defense does not receive the material until the conclusion of the direct testimony.  When the government agrees to early disclosure, it obviates the need for a Jencks motion by the defendant at the close of each witness's testimony.") (internal citation omitted).

Because the Government has voluntarily agreed to early disclosure in the interest of avoiding interruptions and delays at trial, I will grant Defendants' motion in part.  In light of the United States' concessions, the Government must disclose to Defendants its Jencks Act materials no later than two weeks prior to the commencement of jury selection in their respective trials.[8]  In addition, the Government must provide its Jencks Act material to the Court for *in camera* inspection no later than May 15, 2008.  If I determine, upon review, that the material is so voluminous that disclosure two weeks prior to trial may cause delay of the trial, I may order disclosure of the Jencks Act material up to 30 days before trial.

The Government has requested reciprocal early discovery of defense materials.  Rule 26.2

---

[8] On December 13, 2007, the Court ordered Mr. Lujan's trial to be severed from the trial of Mr. Lamunyon and Mr. Medina.  *See* Memorandum Opinion and Order (Doc. 220).  Trial of Mr. Lujan is currently set for August 15, 2008, but there is currently no trial date set for Mr. Lamunyon and Mr. Medina.

provides for production of statements of defense witnesses at trial in essentially the same manner as required for government witnesses.  *See* Fed. R. Crim. P. 26.2(a), advisory committee notes, 1979 Addition.   Because I have ordered early production of Jencks Act statements based on the Government's voluntary concessions, I believe that this ruling should be predicated on requiring the same early production by Defendants of Rule 26.2 material.  I therefore will order Defendants to disclose to the Government their Rule 26.2 materials no later than two weeks prior to the commencement of jury selection in their respective trials.  Additionally, Defendants must provide their Rule 26.2 material to the Court for *in camera* inspection no later than May 15, 2008.  If I determine, upon review, that the material is so voluminous that disclosure two weeks prior to trial may cause delay of the trial, I may order disclosure of the Rule 26.2 material up to 30 days before trial.

### H.   Motion for Disclosure of Exculpatory Information and Incorporated Memorandum (Doc. 179)

Defendants seek the disclosure of a list of enumerated items that they argue are exculpatory under *Brady* and *Giglio*.  Defendants request disclosure of such evidence at least 180 days in advance of trial.  The United States argues that *Brady* does not permit Defendants to embark on a fishing expedition, that they are not entitled to many of the requests, and that, as to those requests to which they are entitled to disclosure, they ask for disclosure long before required by law.

### 1.   Timing of *Brady/Giglio* disclosures

*Brady* is generally not violated when *Brady* material is made available to defendants during trial.  *See United States v. Scarborough*, 128 F.3d 1373, 1376 (10th Cir. 1997).  While the Tenth Circuit strongly disapproves of delayed disclosure of *Brady* materials, that alone is not necessarily grounds for reversal.  *Id.* at 1376 (quoting *United States v. Warhop*, 732 F.2d 775, 777 (10th Cir.

1984)).  *Brady* is not violated so long as ultimate disclosure is made before it is too late for the defendant to make use of the benefits of the evidence at trial.  *See id.*  *See also United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976) ("Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criterion requires pre-trial disclosure.").

The precise time at which *Brady* or *Giglio* evidence must be disclosed will thus depend on the specific nature of the evidence at issue.  *United States v. Beckford*, 962 F.Supp. 780, 788 (E.D. Va. 1997).  Exculpatory evidence will usually require significant pretrial investigation to be useful to a defendant at trial, and thus, disclosure should generally be required well before pure *Giglio* impeachment evidence, which usually does not require substantial time to prepare for its effective use at trial.  *See id.* at 788-89 (requiring production of pure impeachment material at least three days in advance of jury selection).  *See also United States v. Aiken*, 76 F.Supp.2d 1339, 1344-45 (S.D. Fla. 1999) (ordering pure *Giglio* impeachment material to be disclosed 10 days before trial).  Generally, a defendant's right to a fair trial will be fully protected if the government discloses *Giglio* impeachment evidence the day the witness testifies, because disclosure at that time will fully allow the defendant to effectively use the information to challenge the veracity of the government's witnesses.  *United States v. Higgs*, 713 F.2d 39, 43 (3d Cir. 1983).  *See also United States v. Gonzalez-Montoya*, 161 F.3d 643, 649-50 (10th Cir. 1998) (explaining that delayed disclosure of impeachment evidence did not violate *Brady/Giglio* because defendant received evidence in time to use it to impeach witness).  Disclosure of *Giglio* material often identifies the witnesses to whom the material relates, and therefore, the court must take into account the risk to witnesses in early disclosure of *Giglio* evidence.  *See Beckford*, 962 F.Supp. at 788-89.

It is an open question in this circuit, and there is a conflict among the circuits, as to the

46

timing of disclosure of witness statements subject to the Jencks Act that also meet the *Brady* criteria. *See United States v. McVeigh*, 923 F.Supp. 1310, 1315 (D. Colo. 1996). *See also Tarantino*, 846 F.2d at 1414 n.11, 1416 (noting that Jencks Act limitations do not lessen *Brady* obligations to disclose exculpatory materials but that *Brady* also does not necessarily mandate pretrial discovery); *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988) (stating that *Brady* material, which was arguably exempt from pretrial disclosure by Jencks Act, must be disclosed in time for effective use at trial); *Beckford*, 962 F.Supp. at 791 (describing circuit split). At least one court in this circuit has held that *Brady* obligations are not modified by the fact that the information is in witness statements, and has required the government to produce such statements well in advance of trial. *See McVeigh*, 923 F.Supp. at 1315-16. In this case, the Government at the hearing stated its position that *Brady* "trumps" the Jencks Act, a position with which I agree. Jencks Act statements that also constitute *Brady* material should thus be disclosed according to the *Brady* deadlines set forth below.

*Brady* does not create any pretrial discovery timelines, so long as the ultimate disclosure is made before it is too late for the defendant to use the evidence. *See Weatherford*, 429 U.S. at 559; *Scarborough*, 128 F.3d at 1376; *United States v. Higgins*, 75 F.3d 332, 335 (7th Cir. 1996) (explaining that, because *Brady* is disclosure, not discovery, rule, mid-trial disclosure suffices if time remains for defendant to make effective use of exculpatory material). Rather, Rule 16 and the Court's standing discovery order govern pretrial discovery. *See* Fed. R. Crim. P. 16; *Aiken*, 76 F.Supp.2d at 1343. Because Rule 16 requires disclosure of items material to preparing the defense, the rule encompasses disclosure of *Brady* materials. The Court's standing discovery order already requires prompt disclosure of Rule 16 evidence, under the Government's continuing duty to disclose, and thus, the Government should disclose *Brady* materials that fit within Rule 16 upon it becoming aware of the existence of the evidence.

47

The court does not have a duty to directly supervise the government's disclosure of *Brady* information, as such supervision would necessitate a complete review of all material gathered during the government's investigation. *See McVeigh*, 923 F.Supp. at 1313. Rather, the duty to determine what disclosure is required under *Brady* rests with the prosecution. *See Bank v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995); *Presser*, 844 F.2d at 1281; *McVeigh*, 923 F.Supp. at 1313. The court should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought. *See McVeigh*, 923 F.Supp. at 1314. Mere speculation that the files may contain favorable evidence to the defense is insufficient to compel the government to make its files available for review. *See United States v. Sneed*, 34 F.3d 1570, 1580-81 (10th Cir. 1994) (holding that mere speculation that tapes of conversations were exculpatory was insufficient to require further court inquiry where government denied existence of exculpatory tapes); *United States v. Pou*, 953 F.2d 363, 366-67 (8th Cir. 1992) (stating that mere speculation is not sufficient to require remand for *in camera* inspection). Nevertheless, if any doubt exists as to whether *Brady* applies to specific evidence, the government should disclose the evidence to the defendants or submit it to the court for an *in camera* inspection. *See Agurs*, 427 U.S. at 108.

Given the United States' duty to disclose exculpatory materials, the gravity of the potential punishment facing Mr. Lujan, and in the interests of due process, effective assistance of counsel, and the fair and efficient conduct of trial to minimize delays, I will grant Defendants' motion in part and deny it in part. I will grant Defendants' request for pretrial disclosure of exculpatory evidence, but will deny their blanket request for disclosure of all such information 180 days before trial. Instead, the Government must disclose to Defendants any *Brady* material that is also subject to Rule 16 as soon as it becomes aware of the existence of such material. The Government must disclose to Defendants any *Brady* material that does not fall within Rule 16 as well as any *Giglio* material on

or before May 1, 2008,[9] unless the Government requests and makes a further showing that production should be deferred under 18 U.S.C. § 3432. *See Aiken*, 76 F.Supp.2d at 1344-45 (ordering pretrial disclosure of *Giglio* material unless government requested and made showing to defer under 18 U.S.C. § 3432). Disclosure of exculpatory materials in accordance with this schedule will provide Defendants with ample time to review the materials and to conduct any necessary investigations while avoiding trial delays.

### 2. Specific requests

Defendants also seek disclosure of a multitude of more specific categories of information. I agree with the Government that most of these requests are encompassed by *Brady*. Nevertheless, because it is the prosecution's duty to determine what evidence in its possession is *Brady* material, I will refrain from addressing each and every enumerated request. If Defendants believe that the United States has not provided certain exculpatory material known to be in its possession or control and which it has failed to disclose, Defendants have leave to file a motion to disclose the specific material. Similarly, if the Government needs clarification of whether a particular category or specific piece of evidence constitutes *Brady* material, it can provide the evidence to the Court for *in camera* inspection. I will, however, address the following particular categories of information that the Government challenged in order to provide clarification concerning my position on whether the information is subject to disclosure.

### a. Criminal history and background checks

Defendants request a full record of any arrests, pending cases, and criminal convictions of all government witnesses. *See* Defs.' Mot. (Doc. 179) at ¶ 6. The United States asserts it will

---

[9] As discussed more fully *infra*, May 1, 2008, is the date the Government must also disclose its witness list.

conduct criminal history checks of witnesses that it has reason to believe may have a criminal history and disclose information concerning past criminal conduct that can be used to impeach the witness.  The United States contends that it may not disclose non-material information, such as a person's speeding violations.  The United States argues, however, that it has no duty to search for and disclose such information.  I believe, however, that the United States may be interpreting its affirmative duty too restrictively.  The United States relies on cases that predate *Kyles*, and I believe *Kyles* imposes a greater duty on the government.

Criminal histories and other background information regarding government witnesses that are not within the government's custody or control are not discoverable.  *See United States v. Flores*, 540 F.2d 432, 437-38 (9th Cir. 1976).  The government generally does not have a duty under *Brady* to seek out information that is not in its possession, including a witness's criminal history.  *United States v. Jones*, 34 F.3d 596, 599 (8th Cir. 1994); *United States v. Moore*, 25 F.3d 563, 569 (7th Cir. 1994) (concluding there was no *Brady* violation where both parties learned after trial that government witness had previous conviction for obstruction of justice and government did not possess knowledge of this information until after trial).  A prosecutor has no duty to undertake a fishing expedition in other jurisdictions to find impeaching evidence.  *Jones*, 34 F.3d at 599 (holding that failure to disclose witness's additional Illinois state convictions was not *Brady* violation because prosecution did not have knowledge of or possess this information, government did make records check from Missouri, state where crimes were committed, and nothing in record showed that check of FBI or NCIC records would have disclosed other state convictions); *Flores*, 540 F.2d at 437 (noting that government has no duty to fish through public records equally accessible to defense to collate such information).  Nor does *Brady* require the government to conduct an investigation for the defense.  *United States v. Senn*, 129 F.3d 886, 893 (7th Cir. 1997) (holding that government did

50

not suppress evidence of witness's criminal history where defendants knew before trial that witness had criminal record and that record was incomplete; defendants could have obtained evidence before trial through exercise of reasonable diligence).

The issue, however, boils down to how broadly to construe the government's possession. The United States has a duty to learn of favorable evidence, including criminal histories of its witnesses, that is known to others acting on its behalf. *See Combs*, 267 F.3d at 1175 (quoting *Kyles*, 514 U.S. at 437-38). The United States thus has a duty to learn of criminal history information known by the FBI. *See Senn*, 129 F.3d at 893. A number of circuit courts have held that prosecutors suppress evidence by failing to search for criminal histories of witnesses that are readily available through routine investigation of other government agencies or databases. *Hollman v. Wilson*, 158 F.3d 177, 181 (3d Cir. 1998) ("Thus, we, along with several other circuits have imposed upon the prosecution a duty to search accessible files to find requested exculpatory material."); *East v. Scott*, 55 F.3d 996, 1003 (5th Cir. 1995) (citing *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980)) (explaining that prosecution is deemed to have knowledge and possession of its witnesses' criminal history information that would be revealed by routine check of FBI and state databases, including a witness's state rap sheet, where such information is readily available); *United States v. Brooks*, 966 F.2d 1500, 1502-04 (D.C. Cir. 1992) (explaining that prosecutor has duty to search files of other agencies closely aligned with prosecution where there was explicit request for apparently easy examination and non-trivial prospect that examination might yield material exculpatory information);[10] *United States v. Perdomo*, 929 F.2d 967, 970-71 (3d Cir. 1991) (holding that federal prosecutor's failure to conduct search of local Virgin Islands records to verify witness's criminal

---

[10] The Tenth Circuit has quoted *Brooks* for this proposition with approval. *See Combs*, 267 F.3d at 1175.

background constituted suppression under *Brady* because information was readily available to it). "However, where the government has diligently searched, no *Brady* violation will be found." *Hollman*, 158 F.3d at 181 (holding that government's failure to disclose witness's full criminal history did not amount to *Brady* violation, where failure was result of clerical error and information was not readily available to prosecution). *See also United States v. Young*, 20 F.3d 758, 764-65 (7th Cir. 1994) (determining there was no *Brady* violation where government diligently searched pertinent records for criminal history of witness but failed to search records of another state). Additionally, as the burden of the search rises, the likelihood of a pay-off must also rise before the government can be put to the effort. *Brooks*, 966 F.2d at 1504.

The United States has agreed to search and disclose the criminal histories of those witnesses for whom it has reason to believe may have a criminal history. The United States, however, may be deemed to have constructive knowledge of the criminal histories of witnesses in FBI databases or in other databases that are readily available to it, and thus, the United States has a duty to seek out *Brady* information in FBI and other readily accessible databases. Because the United States could be found to have suppressed information in those databases, I will caution the United States to liberally construe its *Brady* obligations in keeping with *Kyles* and its progeny. For the reasons discussed *supra*, I will deny Defendants' request for the disclosure of criminal history information 180 days before trial. Instead, the Government must provide criminal history information to Defendants no later than May 1, 2008, unless the Government requests and makes a further showing that production should be deferred under 18 U.S.C. § 3432.

### b. Medical and psychiatric reports

Defendants request information on past or present drug or alcohol ingestion or dependency and any evidence of psychiatric hospitalization, psychiatric treatment, mental disease or defect, or

physical disorder.  *See* Defs.' Mot. (Doc. 179), ¶¶ 14-15.  The United States contends that it does not have in its possession any psychiatric reports concerning any witness's drug or alcohol abuse problems, and thus will not disclose them.  The Government, however, further appears to contend that such information, even if in its possession, need not be disclosed.

The government does not have the duty to search mental records of its witnesses when it has no reason to believe that they would contain impeachment evidence and when the records are not readily accessible.  *See Scott*, 55 F.3d at 1003 (holding that duty to seek out witness's criminal history does not extend to witness's mental history because mental records are not generally readily accessible); *United States v. DiPaolo*, 804 F.2d 225, 230 (2d Cir. 1986) (explaining that government has "no obligation to seek out" evidence of psychiatric or psychological treatment of witness); *United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir. 1981) (same).  Nevertheless, a witness's mental health condition that casts doubt on the accuracy of his testimony may be material impeachment evidence.  *See Scott*, 55 F.3d at 1003.  Therefore, if the government has knowledge of such evidence, it should disclose that fact to the defense.  *See id.*

Use of alcohol or drugs during the time the witness perceived events or at the time the witness is testifying may constitute impeachment evidence, if the use impaired the witness's memory and perception of the event.  *See United States v. Spano*, 421 F.3d 599, 606 (7th Cir. 2005) (noting that witness's use of drugs or alcohol is permissible impeachment evidence if the witness was high while testifying or if there was reason to think alcohol or drugs seriously impaired witness's memory or prevented him from understanding events about which he testified); *United States v. Smith*, 156 F.3d 1046, 1054-55 (10th Cir. 1998) (concluding there was no error where court allowed questioning of witness as to her use of LSD twenty years earlier because evidence was properly used to impeach her memory); *DiPaolo*, 804 F.2d at 229 ("It is, of course, within the proper

scope of cross-examination to determine whether a witness was under the influence of drugs or narcotics or alcohol at the time of observation of events in dispute or at the time the witness is testifying.") (internal citations omitted).   A general habit of intemperance, however, is not admissible unless it involves actual intoxication at the time of the event observed or at the time of testifying.  *See DiPaolo*, 804 F.2d at 230.  Similarly, psychiatric conditions that could impair a witness's memory and perception at the time of the events or at the time of testifying may also constitute impeachment evidence.

The United States has asserted that it does not have any *Giglio* information relating to mental health or drug or alcohol issues of any witness.  I caution the United States, however, to liberally construe its *Brady* obligations and to adhere to its continuing obligation under *Giglio* to disclose mental health evidence or alcohol or drug use as described herein.

c.       **Polygraph tests**

Defendants request all information regarding polygraph tests of any witness, including information on a person's refusal to take a polygraph test.  *See* Defs.' Mot. (Doc. 179), ¶ 16.  *See also* Defs.' Mot. (Doc. 180), ¶ 15.  The United States asserts that it is not aware of any polygraphs that have been performed in this case and that it is unaware of any instance in which one of its witnesses has refused to take a polygraph test.  *See* United States' Omnibus Resp. (Doc. 198) at 49. Given the Government's representations to the Court, this issue is moot.

**I.      Motion for Discovery and Inspection Concerning Government's Use of Informants, Operatives, and Cooperating Individuals and for Disclosure of Exculpatory Evidence Concerning Government's Use of Informants, Operatives, and Cooperating Individuals (Doc. 180)**

Defendants seek disclosure at least 180 days prior to trial of various information concerning the Government's witnesses, informants, confidential sources, *etc*.  The requests in this motion

54

pertain not only to informants and cooperating individuals who the Government will call at trial, but also to cooperating individuals that the Government does not intend to call at trial. Defendants also seek pretrial disclosure of the names and addresses of the Government's witnesses. *See* Defs.' Mot. (Doc. 180), ¶ 8.

The United States contends that there is no one involved in this case who provided information on a confidential basis who would be considered an informant or source. The United States asserts it has already disclosed the interviews, plea agreements, and sentences of Jalisco Holmes and Ashley Almorejo. As to any co-defendant or other witness, the United States argues that Defendants are not entitled to disclosure 180 days prior to trial. Although the United States acknowledges that Defendant Lujan is entitled to a witness list at least three days before trial, the United States argues that 180 days is far earlier than the statute intended. The United States is willing to enter into reciprocal agreements to provide early and more detailed disclosure in exchange for Defendants' early production of discovery. As to confidential informants who the United States will not call at trial, the United States asserts that this information is privileged given the witness security threat posed by Mr. Lujan.

### 1.     Early disclosure of witness list

There is no constitutional right to pretrial identification of witnesses that the government intends to call at trial. *See Weatherford*, 429 U.S. at 559-60 (concluding there was no constitutional error in failing to reveal informer's identity before trial); *United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) (explaining that there is no constitutional right to pretrial discovery of witnesses in non-capital cases). Nor does Rule 16 entitle defendants to discover identities of the government's non-expert witnesses before trial. *See Nevels*, 490 F.3d at 803.

Because this is a capital case, however, Mr. Lujan has a statutory right to a list of witnesses

"at least" three entire days before trial.  *See* 18 U.S.C. § 3432.  The statute thus gives the court considerable discretion to determine when the witness list should be disclosed to a capital defendant.  *See id.*  Given this discretion, the gravity of the potential punishment facing Mr. Lujan, and in the interests of due process, effective assistance of counsel, the fair and efficient conduct of trial, and to minimize delays, I will grant Defendants' motion in part.  I will require the Government to disclose to Mr. Lujan the identities and place of abode of each of the witnesses whom the Government will call at trial no later than May 1, 2008.  If the Government believes that providing the witness list to Mr. Lujan in such manner may jeopardize the life or safety of any person, then the Government has the burden to provide notice to the Court and to prove its safety concerns by a preponderance of the evidence prior to May 1, 2008.  *See* 18 U.S.C. § 3432.

The statute requiring pretrial disclosure of a witness list to the defense applies only in capital cases.  *See id.*  Although Mr. Lamunyon and Mr. Medina have been charged with crimes subject to the FDPA, the United States did not provide notice of an intent to seek the death penalty against them.  Because Mr. Lamunyon and Mr. Medina are not capital defendants and their trial has been severed from that of Mr. Lujan, they are not entitled to a witness list under the statute.  *See id.*  *See also United States v. Trapnell*, 638 F.2d 1016, 1029-30 (7th Cir. 1980) (holding that government need not comply with provisions of 18 U.S.C. § 3432 after it announced it was no longer seeking death penalty); *United States v. Walker*, 910 F.Supp. 837, 860 (N.D.N.Y. 1995) (noting that only the two defendants against whom government sought death penalty were entitled under statute to pretrial disclosure of witnesses).  I will therefore deny Mr. Lamunyon's and Mr. Medina's requests for pretrial disclosure of a witness list at this time.  As no date has yet been scheduled for their trial, I will, however, grant them leave to raise this issue again at a later time.

### 2.    Disclosure of non-witness confidential informants

As for disclosure of information on confidential informants who will not be called as trial witnesses, the government has a privilege to withhold from disclosure the identity of informants in order to protect the public interest in effective law enforcement. *Roviaro v. United States*, 353 U.S. 53, 59 (1957). "The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.*  The scope of the privilege is limited. *Id.* at 60. For example, contents are not privileged where they will not reveal the identity of the informer, and the privilege does not apply once the identity of the informer has been disclosed to those who have cause to resent the communication. *Id.*  Similarly, where "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61.  To determine whether the privilege applies, the court must balance the public interest in protecting the flow of information necessary for effective law enforcement against the defendant's right to prepare his defense. *See id.* at 62.  The court should consider the particular circumstances of the case, including the crime charged, the possible defenses, and the possible significance of the informer's testimony. *See id.* (determining there was error in court's permitting government to withhold identity of informer where informer was sole participant, other than accused, in transaction and another witness testified that informer denied ever before having seen accused).

The Tenth Circuit has described the balancing of interests as follows:

[C]ases involving confidential informants fall into several broad categories.  At one extreme are the cases where the informant is a mere tipster, and disclosure is not required.  At the other extreme are cases such as *Roviaro* itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial.  In addition, there are

cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant.

*United States v. Martinez*, 979 F.2d 1424, 1426 (10th Cir. 1992) (quoting *United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990)).  While an informant's identity should be disclosed if it might be relevant to the defendant's case and justice would best be served by disclosure, an informant need not be disclosed where the informer's information is merely cumulative or where the informant did not participate or witness the crime in question.  *See  United States v. Brantley*, 986 F.2d 379, 383 (10th Cir. 1993); *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000-01 (10th Cir. 1992) (citing *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986)).  "When it is clear the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure."  *Martinez*, 979 F.2d at 1429.

A defendant seeking disclosure has the burden of proof to show a need for the disclosure. *United States v. Sinclair*, 109 F.3d 1527, 1538 (10th Cir. 1997); *Martinez*, 979 F.2d at 1426.  A court can conduct an *in camera* hearing to determine whether the informant's testimony would aid the defense.  *Martinez*, 979 F.2d at 1426.  Mere speculation about the usefulness of an informant's testimony, however, is insufficient to compel disclosure.  *Mendoza-Salgado*, 964 F.2d at 1001.

In this case, the United States asserted at the hearing that the only two people that it would consider to be cooperating individuals are the two juveniles, Ashley Almorejo and Jalisco Holmes, and it has provided to the defense everything it possesses in reference to them.  The Government further stated that all the other people involved in the case are either civilian witnesses or law enforcement, there have been no other agreements with any other co-defendants, and there is no one else that is cooperating for money or any other form of compensation.  Consequently, the United States argues that there are no other persons, for whom it has not already provided discovery, that

58

would fall within the contours of Defendants' motion for discovery as to confidential informants. Based on the Government's representations, I will deny Defendants' request for disclosure of the identities of non-witness confidential informants as moot.

Moreover, I note that Defendants have not demonstrated the need for any informant's testimony with any particularity.  Thus, at this point, I have no way to employ the *Roviaro* balancing test because there is no evidence of any informant's alleged role in the crime.  Defendants' general requests for information on any confidential source thus amount to nothing more than mere speculation and are insufficient to meet their burden to show the need for disclosure.  *See United States v. Mathis*, 357 F.3d 1200, 1208 (10th Cir. 2004) (affirming denial of motion to compel identities of two particular confidential informants because defendant showed nothing more than speculation that any inconsistencies in observations were helpful to defense); *Martinez*, 979 F.2d at 1428 (affirming denial of motion to disclose informant, because court found after *in camera* hearing that informant was unable to corroborate defendant's theory of entrapment); *Mendoza-Salgado*, 964 F.2d at 1001 (upholding denial of informant's disclosure, even though defendants asserted that informant was critical to entrapment defense, because value of testimony was speculative at best).  Defendants, however, have leave to revisit this issue should they become aware of a more specific need for disclosure of an informant.  Finally, should the United States subsequently become aware of an informant subject to Defendants' motion, the United States must immediately inform Defendants of this fact so that they may make any necessary requests of the Court.

### 3.    Other requested categories of information

With respect to the various other categories of information requested by Defendants in the motion, I will deny the requests as moot based on the United States' representations that it has

already produced discovery for the informants known to it and there are no other informants subject to Defendants' motion of whom it is aware.  To the extent the motion requests *Brady* and *Giglio* information, such information must be disclosed according to the same deadlines previously set for other exculpatory materials, and thus, this duplicative request will be denied as moot.

>       **J.**       **Motion for Disclosure of Information Concerning the Reliability and Integrity of the Government's Investigation and Incorporated Memorandum (Doc. 181)**

Defendants request disclosure of exculpatory information regarding the integrity and reliability of the investigation underlying this prosecution based on *Brady* and *Kyles*.  They ask the Court to compel the Government to contact all law enforcement officers to learn how the case was investigated.  Specifically, Defendants request information on whether agents failed to follow policies and regulations, whether they recorded contacts with potential witnesses, whether there was communication between witnesses, whether witnesses were permitted to learn the Government's theory of the case, and whether witnesses were allowed to see investigators' materials.

The United States argues that an order requiring it to interview every officer involved in the investigation amounts to nothing more than a fishing expedition, exceeding the bounds of *Brady*. It asserts it is aware of its *Brady* obligations and will disclose exculpatory material at the appropriate time.  Finally, it argues that the information sought is more appropriately the subject of cross-examination at trial.

The Government is bound by *Brady*, and under *Kyles v. Whitley*, 514 U.S. 419, 433 (1995), it has a duty to learn of any favorable evidence known to others acting on its behalf in the case, including the police.  I have already ordered early disclosure of *Brady* information, however, so an additional order compelling the production of *Brady* material would be duplicative.  As for Defendants' request to compel the Government to investigate the investigation, I will deny the

request as outside the bounds of the discovery rules.

### K.   Motion for Discovery and Inspection of Matters Pursuant to Rule 16 (Doc. 183)

Defendants' motion seeks an exhaustive list of categories of information under Rule 16.  The requests include numerous items in each of the following categories:  (A) statements/waivers of Mr. Lujan; (B) statements by co-defendants/co-conspirators; (C) all physical evidence seized during the investigation; (D) scientific reports; (E) identification procedures; and (F) witness lists, arrest and conviction records, police reports, witness statements, and reward offers.  Defendants argue that the capital nature of this case warrants broad discovery well in advance of trial.  Defendants also request in their reply brief that the Court conduct an evidentiary hearing where state and local investigators can testify as to the existence and nature of any materials held by state and local entities.  *See* Defs.' Reply (Doc. 212) at 4.

The United States argues that Defendants' specific requests are too broad and exceed what is required by law.  It asserts that it recognizes its legal disclosure duties and opposes Defendants' requests to the extent they exceed what is required by law.  The United States also requests under Rule 16(b) discovery to which it is entitled.  *See* United States' Omnibus Resp. (Doc. 198) at 57.

Rule 16 sets forth basic disclosure obligations with which the government must comply in every case.  The requirements of *Brady*, *Giglio*, and the Jencks Act supplement the Rule 16 requirements, creating a framework for essentially full disclosure.  Defendants' Rule 16 motion asks in exquisite detail for the production of materials that are generally subject to disclosure under this framework.  I will not address each of the specific requests, given the Government's representations that it has already complied with its Rule 16 obligations and will continue to do so.  I will, however, order the United States to complete all Rule 16 disclosures by May 1, 2008, in a manner such that it could confidently represent to the Court on that day that it has fully and completely complied with

its discovery obligations.  This ruling will not preclude the parties from bringing to the Court's attention, after first attempting to resolve the disagreement amongst themselves, a dispute as to specific evidence known to be in the United States' possession or control and which it has failed to disclose.

A few specific requests nonetheless merit mention.  First, with respect to Defendants' request that the Court conduct an evidentiary hearing to compel state and local investigators to testify to the existence and nature of any materials held by state and local entities, that request will be denied as outside the scope of the discovery framework.  Second, as to Defendants' request for a witness list under 18 U.S.C. § 3432, I have already granted this request as to Mr. Lujan in ruling on Defendants' motion for disclosure of information on confidential informants (Doc. 180).  The Government must disclose to Mr. Lujan the identities and place of abode of each of its witnesses whom it will call at trial no later than May 1, 2008, unless the Government provides notice and makes a further showing that production should be deferred under 18 U.S.C. § 3432.  I have also already denied Mr. Lamunyon's and Mr. Medina's requests for a witness list.  Finally, the United States asks the Court to compel Defendants to provide discovery under Rule 16(b) to which it is entitled.  Rule 16(b) requires certain reciprocal disclosures by a defendant after the government has complied with Rule 16(a)(1)(E).  *See* Fed. R. Crim. P. 16(b).  Given that the Government must fully and completely comply with its obligations under Rule 16 by May 1, 2008, Defendants must comply with their obligations under Rule 16(b) no later than June 1, 2008.

### L.    Motion for Disclosure of Rough Interview Notes and Incorporated Memorandum (Doc. 184)

Defendants request an order compelling the government to retain all rough interview notes taken by local, state, and federal government agents, lawyers, or their respective representatives or

employees during the course of interviews with any person questioned during the investigation of this case.  Defendants also seek disclosure of discoverable notes after a determination of whether the notes contain *Brady*, Jencks Act, or work product material.  The United States argues that the material sought is non-discoverable work product under Rule 16(a)(2) and that the majority view is that the notes need not be preserved and disclosed once they are incorporated into an agent's report.  The United States acknowledged at the hearing that some rough interview notes had already been destroyed following their incorporation into reports.

Rule 16(a)(2) prohibits the disclosure of reports, memoranda, or other internal government documents made by a government attorney or agent in connection with investigating or prosecuting the case.  Fed. R. Crim. P. 16(a)(2).  An agent's rough interview notes may nevertheless be discoverable under *Brady* if the defendant shows that the notes are exculpatory and material.  *See United States v. Sullivan*, 919 F.2d 1403, 1426-27 (10th Cir. 1990); *United States v. Pisello*, 877 F.2d 762, 768 (9th Cir. 1989) (considering whether rough notes fell within *Brady*).

Notes and reports of agents may also be producible after direct examination of a witness if they constitute "statements" of the witness under the Jencks Act.  *See* 18 U.S.C. § 3500; *United States v. Smith*, 984 F.2d 1084, 1086 (10th Cir. 1993) ("Interview notes could be 'statements' under the Act if they are substantially verbatim."); *Pisello*, 877 F.2d at 768.  Whether rough interview notes need to be produced under the Jencks Act is answered on a case-by-case basis after examining all the facts.  *See Pisello*, 877 F.2d at 768.  The defendant has the burden to show that particular materials qualify as Jencks Act statements.  *Smaldone*, 544 F.2d at 460.  The defendant "must plainly tender to the Court the question of the producibility of the document at a time when it is possible for the Court to order it produced, or to make an appropriate inquiry."  *Smith*, 984 F.2d at 1086 (quoting *Ogden v. United States*, 303 F.2d 724, 733 (9th Cir. 1962)).  The defendant's demand

63

must be sufficiently precise to identify the statements requested. *Id.* (quoting *United States v. Wallace*, 848 F.2d 1464, 1471 (9th Cir. 1988)). Once the defendant makes a prima facie showing that a witness statement exists that may be producible under the Jencks Act, the court should conduct a hearing or *in camera* review of the statement. *See Smith*, 984 F.2d at 1086. Most courts, however, have held that investigative notes, made in the course of interviewing witnesses, that are later incorporated in the agent's formal report, are not statements within the meaning of the Jencks Act. *See United States v. Hinton*, 719 F.2d 711, 717, 722 (4th Cir. 1983) (discussing this as holding of majority of circuits, including Tenth Circuit); *United States v. Shovea*, 580 F.2d 1382, 1389-90 (10th Cir. 1978) (holding that court did not err in refusing to strike agent's testimony following revelation that agent's investigatory notes were destroyed after notes were incorporated into report, because report satisfied requirements of Jencks Act). Reports that embody only the agent's interpretations or impressions of an interview are also not producible. *Jackson*, 850 F.Supp. at 1508.

Defendants rely on *United States v. Harrison*, 524 F.2d 421 (D.C. Cir. 1975), and *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), which adopted the ruling in the *Harrison* case. Both the D.C. and Ninth Circuits held that FBI rough notes of witness interviews fall within the category of "potentially discoverable materials" that must be preserved. *Harris*, 543 F.2d at 1248; *Harrison*, 524 F.2d at 423. The D.C. Circuit determined that the FBI's regulations to preserve evidence were insufficient because they were only designed to respond to the Jencks Act and not the government's *Brady* obligations. *See Harrison*, 524 F.2d at 426-27. The *Harrison* court, however, explained the limitation of its holding: "Our holding does nothing more than preserve the evidence so that a court can meaningfully play its proper role." *Id.* at 435. The D.C. Circuit acknowledged that the government may well prove to be "correct in its judgment that the notes are almost never discoverable." *Id.* Accordingly, *Harrison* and *Harris* are limited to the government's obligation

64

to preserve rough interview notes and do not address its disclosure obligations in the absence of a showing of materiality. *See United States v. Williams*, 291 F.3d 1180, 1191 (9th Cir. 2002) (explaining that *Harris* does not go so far as to require government to produce rough notes in every case; rather, *Harris* held that FBI's long-standing practice of routinely destroying rough notes was usurpation of judicial function of determining what evidence should be produced), *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007). Moreover, later cases have clarified that the mere possibility that destroyed notes might have contained *Brady* material is insufficient to establish a constitutional violation; instead, a defendant must at least make a colorable claim that an investigator's discarded rough notes contained exculpatory evidence not included in any formal interview report provided to the defense. *United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994).

Because the contents of rough interview notes may in some cases be subject to disclosure and because the potential impeachment value of the notes may not become evident until trial, I will grant Defendants' request for an order to preserve rough interview notes made by law enforcement agents during interviews of potential witnesses. *See United States v. Cooper*, 283 F.Supp.2d 1215, 1238 (D. Kan. 2003) (granting motion to preserve rough interview notes but denying request to disclose notes because defendants had not made necessary showing for *in camera* review); *United States v. Floyd*, 247 F.Supp.2d 889, 899 (S.D. Ohio 2002) (ordering preservation of rough notes but not disclosure). The United States must review the rough interview notes of law enforcement officers and agents that pertain to the case to determine if any information in the notes is subject to disclosure. If there is a close question of whether information in the notes is subject to disclosure, the Government should present the notes to the Court for *in camera* inspection.

I will, however, deny the motion in all other respects. Defendants' request for preservation

of *attorney* notes will be denied under Rule 16(a)(2).  Additionally, Defendants have not made any

showing of materiality as to any specific information contained in the rough interview notes that the

United States has refused to produce, and thus, their request for *disclosure* of the rough interview

notes of law enforcement officers and agents must be denied under *Brady* and Rule 16.  *See Pisello*,

877 F.2d at 768 (holding that defendant's mere assertion that agents' notes "might" contain

impeachment evidence insufficient to order production of notes); *United States v. Hudson*, 813

F.Supp. 1482, 1490 (D. Kan. 1993) (concluding that agent's rough interview notes need not be

produced under *Brady* where defendant failed to show that notes were material).  Defendants

additionally have not shown that the rough interview notes contain "statements" within the meaning

of the Jencks Act.  *See United States v. Ramos*, 27 F.3d 65, 69 (3d Cir. 1994) (holding that rough

interview notes made by agents are not statements under Jencks Act); *Smaldone*, 544 F.2d at 460

(noting that defendant has burden to show materials qualify as Jencks Act statements).

M.     **Defendant Lujan's Motion for Discovery of Information and Materials Concerning Aggravating Sentencing Factors and Incorporated Memorandum (Doc. 185)**

Mr. Lujan argues that the Fifth, Sixth, and Eighth Amendments require disclosure of all

information which supports each of the various threshold statutory findings as well as the statutory

and non-statutory aggravating factors.  He contends that he has a due process right to notice of the

evidence that will be submitted against him at the capital sentencing trial and that denial of this

motion will interfere with his right to effective assistance of counsel.  The United States, however,

contends this motion should be denied because it has already provided constitutionally sufficient

notice and neither *Brady*, Rule 16, or 18 U.S.C. § 3593 require more.  The United States asserts that

the state court cases cited by Mr. Lujan are distinguishable because they are based upon state death

statutes that expressly require specification of evidence in aggravation.  In contrast, the Government

argues that the FDPA requires adequate notice of aggravating factors; it does not require the disclosure of all evidence in support of those factors. Instead, the United States contends that Mr. Lujan's discovery rights as to evidence in support of aggravating factors are limited to what Rule 16 and *Brady* require, and the United States affirms that it is aware of its obligations and has already disclosed a plethora of material, even outside the scope of Rule 16.

The FDPA requires the government to sign and file with the court, and serve upon the defendant, within a reasonable time before trial, a notice

> (1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
> (2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

18 U.S.C. § 3593(a). Factors in the notice may include victim impact evidence and "any other relevant information." *Id.* At the penalty phase, the "government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a)." *Id.* § 3593(c).

Although 18 U.S.C. § 3593(a) requires adequate notice, it is silent as to the government's discovery obligations for the penalty phase. *See* 18 U.S.C. § 3591, *et seq.*; *Nguyen*, 928 F.Supp. at 1548 n.26 (noting that 18 U.S.C. § 3593(c) provides no standards for discovery). Adequate notice under the FDPA is satisfied where the government sets forth the aggravating factors that it intends to prove; § 3593 does not convey additional discovery rights. *See United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1999) (noting that notice of aggravating factors under FDPA "is different from notice of specific evidence"); *United States v. Taylor*, 316 F.Supp.2d 730, 741 (N.D. Ind. 2004) (noting that § 3593(a) requires no more than filing notice stating that government intends to seek death penalty and setting forth aggravating factors that government intends to prove); *Edelin*, 128

67

F.Supp.2d at 42 (same); *Nguyen*, 928 F.Supp. at 1550 (same). As the Fourth Circuit stated: "The FDPA and the Constitution require that the defendant receive adequate notice of the aggravating factor . . . not notice of the specific evidence that will be used to support it." *United States v. Higgs*, 353 F.3d 281, 325 (4th Cir. 2003). Notice is not so extensive "as to mandate that the government go beyond the limitations established by Congress in the Federal Rules of Criminal Procedure." *Edelin*, 128 F.Supp.2d at 42.

Pretrial discovery of evidence supporting aggravating factors is also not required by the Constitution, insofar as the requests go beyond the requirements of *Brady*. *See Gray v. Netherland*, 518 U.S. 152, 167-69 (1996) (noting that there is no constitutional right to general discovery in criminal cases and indicating that there is no due process right to advance notice of government's evidence in aggravation at capital sentencing hearing); *Nguyen*, 928 F.Supp. at 1550 (stating that there is no constitutional right to pretrial discovery of evidence in aggravation); *United States v. Cooper*, 754 F.Supp. 617, 621 (N.D. Ill. 1990) (asserting that statute authorizing death penalty did not violate Constitution by failing to provide for pretrial discovery as to evidence in aggravation). *See also United States v. Agurs*, 427 U.S. 97, 112 n.20 (1976), *reversed on other grounds by United States v. Bagley*, 473 U.S. 667, 682 (1985) ("notice component of due process refers to the charge rather than the evidentiary support for the charge"); *Silagy v. Peters*, 905 F.2d 986, 994-97 (7th Cir. 1990) (upholding Illinois death penalty statute against claim that absence of notice to defendant that State would seek death penalty violated federal constitutional rights); *Clark v. Dugger*, 834 F.2d 1561, 1566 (11th Cir. 1987) (holding that defendant has no constitutional right even to advance notice of aggravating circumstances).

Despite the lack of pretrial discovery rights in the Constitution and FDPA, many courts have nonetheless granted a capital defendant broader discovery of evidence in aggravation. These courts

generally used their inherent powers to order the government to provide additional information on certain aggravating factors in order to ensure a meaningful opportunity to prepare a defense.  *See*, *e.g.*, *United States v. Solomon*, 513 F.Supp.2d 520, 535 (W.D. Pa. 2007) (using inherent authority to order government to provide informative outline, without revealing evidentiary detail, of type and scope of victim impact evidence, including personal characteristics of victim); *United States v. Wilson*, 493 F.Supp.2d 364, 378 (E.D.N.Y. 2006) (same); *United States v. Gooch*, 2006 WL 3780781, *23 (D.D.C. Dec. 20, 2006) (unpublished opinion) (same); *United States v. Llera Plaza*, 179 F.Supp.2d 464, 492 (E.D. Pa. 2001) (ordering government to provide to defendants outline summarizing information it intended to introduce to establish aggravating factors); *United States v. Glover*, 43 F.Supp.2d 1217, 1236 (D. Kan. 1999) (using inherent authority to require government to give greater factual specificity regarding each aggravating factor).

For example, in *United States v. Lecco*, the district court denied the capital defendants' motion for a bill of particulars with respect to the notice of special findings and notice of intent to seek the death penalty.  *United States v. Lecco*, 2007 WL 486614 (S.D.W.Va. Feb. 9, 2007) (unpublished opinion).  The *Lecco* court acknowledged that the FDPA and Constitution do not require notice of specific evidence that will be used to support aggravating factors, but explained that a defendant should be permitted a meaningful opportunity to present a complete defense.  *See id.* at *4-5.  The court noted that "a number of courts have sought an appropriate, discretionary middle ground of sorts that requires further disclosure to defendants short of the evidentiary detail" often requested in a bill of particulars.  *Id.* at *5.  The *Lecco* court thus ordered the government to submit an outline to the defendants summarizing the information it intended to use to establish the factors set forth in the notices without requiring disclosure of evidentiary detail or the government's theory of its case.  *Id.*

In this case, Mr. Lujan asks for all information supporting all of the statutory threshold findings, statutory aggravating factors, and non-statutory aggravating factors alleged in the Notice of Intent to Seek a Sentence of Death ("Notice").  I find that Mr. Lujan's motion should be granted in part and denied in part.  I find that statutory threshold findings I(d) and I(e), statutory aggravating factors II(b)-(d), and all the non-statutory aggravating factors alleged in the Notice warrant additional discovery in order to more fully enable Mr. Lujan to prepare his case and to avoid trial delays by minimizing surprise.  *See Beckford*, 962 F.Supp. at 755-57 (explaining that courts have inherent authority to order discovery outside rules).  I adopt the reasoning of those courts that have used their inherent powers to order the government to provide additional information on certain aggravating factors in order to ensure a meaningful opportunity to prepare a defense.  *See*, *e.g.*, *Llera Plaza*, 179 F.Supp.2d at 470-75.  The severity of the penalty sought in this case warrants special efforts to ensure the fairness of the proceedings.  Greater notice improves the truth-seeking process.  Accordingly, in the exercise of the inherent authority given to the Court, I will order the Government to provide to Mr. Lujan a written informative outline on certain statutory threshold findings and aggravating factors, as detailed below, on or before May 1, 2008.  The document need not reveal evidentiary detail but should address the general nature of the information it will introduce to prove the following statutory threshold findings and aggravating factors.  The United States will have a continuing duty to supplement its outline.  Thus, if new information becomes known to the United States, I will permit the United States to supplement its informative outline within a reasonable time before trial.  I stress that this order does not contemplate amendment of the Notice.

      **1.**        **Statutory threshold findings**

The first three statutory threshold findings listed in the Notice allege that Mr. Lujan was 18

years old or older at the time of the offense charged in Count I, that he intentionally killed Dana Grauke, and that he intentionally inflicted serious bodily injury that resulted in Dana Grauke's death. *See* Notice (Doc. 146), ¶¶ I(a) - I(c).  These three statutory threshold findings are straightforward and, when considered in light of the indictment and the discovery provided to date, sufficiently apprise Mr. Lujan of what he must defend.  I will therefore deny Mr. Lujan's request for additional information on statutory threshold findings I(a), I(b), and I(c).  The two remaining statutory threshold findings, I(d) and I(e), however, are slightly more involved.  I will therefore order the Government to provide a written informative outline of the general nature of the evidence it will introduce to prove these latter two threshold findings.  *See Lecco*, 2007 WL 486614 (granting similar request).

### 2.  Statutory aggravating factors

The Notice lists four statutory aggravating factors: (a) death during commission of another crime, 18 U.S.C. § 3592(c)(1); (b) heinous, cruel, or depraved manner of committing offense, 18 U.S.C. § 3592(c)(6); (c) substantial planning and premeditation, 18 U.S.C. § 3592(c)(9); and (d) vulnerability of victim, 18 U.S.C. § 3592(c)(11).  As to the statutory aggravating factor of death during commission of another crime, namely kidnaping, defense counsel acknowledged at the hearing on this motion that this factor is relatively straightforward.  Based on this representation and in light of my other rulings, I find that an informative outline is not necessary as to this factor.  With respect to the three remaining statutory aggravating factors, in light of the gravity of the potential punishment facing Mr. Lujan, and in the interests of due process, effective assistance of counsel, and the fair and efficient conduct of trial, I will order the Government to provide Mr. Lujan with an informative outline of the general nature of the information the Government will introduce to prove these latter three factors.

### 3.      Non-statutory aggravating factors

#### a.      Obstruction of justice

As to the obstruction of justice non-statutory aggravating factor, the Notice states that Mr. Lujan killed the victim "to prevent the communication of information by any person to any law enforcement officer of the United States relating to the commission of kidnaping or drug trafficking, Federal offenses." Notice (Doc. 146), ¶ III(a).  Mr. Lujan asserts that the discovery provided to him does not indicate that the victim was cooperating with any law enforcement officer prior to his death, and thus, it is unclear to what this factor refers.  I agree that further information on this factor is warranted in order to more fully provide Mr. Lujan with the information he needs to prepare a defense.  I will therefore order the United States to provide to Mr. Lujan an informative outline of the general nature of the evidence it intends to introduce to support this factor.

#### b.      Future dangerousness

The Notice also lists the non-statutory aggravating factor of future dangerousness.  It alleges that Mr. Lujan represents a continuing danger to others and that he "is likely to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others, as evidenced by, at least, one or more of the following." Notice (Doc. 146), ¶ III(b).  The notice then lists three sub-factors.  By using the term "at least," the factor creates ambiguity as to whether the Government will present evidence of additional sub-factors.  The Government must therefore submit an informative outline of the general nature of the evidence it plans to use to prove future dangerousness.  *See Llera Plaza*, 179 F.Supp.2d at 474-75 (granting similar request).  Additionally, each of the sub-factors also warrant disclosure of additional information.

#### (1)      Continuing pattern of violence

In the continuing pattern of violence sub-part, the Notice states that Mr. Lujan "has engaged

in a continuing pattern of violence, attempted violence, and threatened violence, including, at least, the crimes alleged against the defendant in the Indictment; and of the crime of committing a double homicide for which the defendant has been charged by the State of New Mexico."  Notice (Doc. 146), ¶ III(b)(1).  The open-ended phrase "including, at least" creates ambiguity as to whether the Government will present evidence of additional acts of violence outside the crimes charged in the indictment and the double homicide.  In fairness to Mr. Lujan and out of concerns for due process, Mr. Lujan should be given notice of other crimes about which the Government intends to introduce evidence.  The Government must therefore specify if it intends to rely on other acts of violence, attempted violence, and/or threatened violence other than the crimes alleged in the indictment and the double homicide for which the State of New Mexico has charged Mr. Lujan.

### (2)      Low rehabilitative potential

This sub-factor expressly refers to evidence of Mr. Lujan's "repeated acts of institutional misconduct while in the custody of various state and local correction or detention agencies, or the United States Marshal's Service."  Notice (Doc. 146), ¶ III(b)(2).  The United States must provide Mr. Lujan with an informative outline setting forth the general nature of the acts of institutional misconduct for which it intends to introduce evidence at the sentencing phase.  Such notice will help ensure that Mr. Lujan has the opportunity to investigate the acts of misconduct and present a defense while avoiding delays at trial.  Should additional evidence of institutional misconduct arise after the United States has provided its informative outline and about which the United States intends to present evidence, the United States should supplement its outline to include the new instances of misconduct.

### (3)      Lack of remorse

The Notice alleges that Mr. Lujan's "statements following the offenses alleged in the

Indictment" demonstrate his lack of remorse for killing Dana Grauke. Notice (Doc. 146), ¶ III(b)(3). Based on the representations of counsel, it appears that the United States has already provided in discovery the statements made by Mr. Lujan that are in its possession. If the statements referenced in the lack of remorse factor have, indeed, all been provided to Mr. Lujan, then Mr. Lujan has the information necessary to prepare a defense as to this factor. The United States, however, must notify Mr. Lujan if it intends to rely on any other evidence in support of this factor, and if so, provide a written informative outline of the general nature of the other evidence it plans to use to prove lack of remorse.

**c.      Victim impact evidence**

Finally, the Notice informs Mr. Lujan that it intends to present evidence of the loss, injury, and harm that Mr. Lujan caused to the victim and his family. *See* Notice (Doc. 146), ¶ III(c). The Notice indicates that this evidence is "reflected by the victim's personal characteristics as an individual human being and the impact of the offense on the victim and the victim's family." *Id.* In order to allow Mr. Lujan sufficient time to investigate and prepare a defense while minimizing trial delays, I will order the Government to submit an outline of its anticipated victim impact evidence. *See Llera Plaza*, 179 F.Supp.2d at 474-75 (granting similar request).

**N.      Corrected Motion for Disclosure of Information Concerning "Jailhouse Informants" and Incorporated Memorandum (Doc. 186)**

Defendants request information on any state or federally sponsored or monitored contacts with Defendants using jailhouse informants. The United States asserts that it is unaware of any jailhouse informants, but agreed at the hearing to inform Defendants of any jailhouse informants of which it becomes aware. Based on the Government's representations that it has no information subject to this request, I will deny this motion as moot but will grant Defendants leave to resubmit

74

this motion if a jailhouse informant subsequently emerges.

## III.    CONCLUSION

Given the gravity of the potential punishment facing Mr. Lujan, and in the interests of due process, effective assistance of counsel, the fair and efficient conduct of trial, and to minimize delays, I have generally ordered the Government to provide early and thorough disclosure of information and materials subject to *Brady*, *Giglio*, the Jencks Act, and Rule 16.  I recognize the efforts to date by the Government in providing extensive production of evidence and in cooperating with defense counsel and do not and will not presume that counsel for the United States is failing to, or will fail to, comply with the mandates of *Brady* and its progeny or with the Federal Rules of Criminal Procedure.  I have made the rulings contained within this opinion keeping in mind both the discretion I possess to compel early disclosure of certain evidence as well as the limitations imposed upon that discretion.

**IT IS THEREFORE ORDERED** that

1.     United States' Motion and Incorporated Memorandum Regarding Mental Health Evidence (Doc. 168) is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** to the following extent: (a) Defendant Lujan must give written notice to the Government on or before **MAY 15, 2008**, if he intends to assert a defense of insanity at the time of the alleged offense or to introduce expert evidence relating to a mental disease or defect or any other mental condition of his bearing on the issue of guilt or punishment, including expert evidence based on a review of records rather than a personal examination of him.  If Mr. Lujan intends to assert a defense of insanity, his use of mental health evidence will be governed by 18 U.S.C. § 4242, Rule 16, and Rule 12.2.  If Mr. Lujan intends to introduce Rule 12.2(b) expert evidence of a mental disease or defect or any other mental condition of his bearing on the issue of guilt or punishment, then the notice must include the

kinds of mental health experts Mr. Lujan anticipates calling at the penalty phase and the nature of the tests those experts have performed or may be expected to perform. If Mr. Lujan provides the written Rule 12.2(b) notice described herein, then the Court will direct him to submit to a mental examination by the Government's experts in advance of trial. The results and reports from any capital sentencing examination will be placed under seal in accordance with Rule 12.2(c)(2). The Government should be prepared to notify the Court and the defense on **MAY 16, 2008**, of the name and contact information of the fire-walled attorney who is to be responsible for all issues relating to any Rule 12.2(b)(2) mental health testing of Mr. Lujan. If Mr. Lujan provides the written Rule 12.2(b) notice described herein, then defense counsel for Mr. Lujan must meet and confer with the prosecutors and fire-walled attorney no later than **MAY 20, 2008**, to devise proposed procedures on which both sides can agree. The parties must be prepared to address any outstanding issues at the penalty phase plan hearing. The motion is **DENIED** in all other respects at this time with leave to renew the motion at the hearing on the penalty phase plan.

2.      Defendants' Motion for Bill of Particulars (Doc. 173) is **DENIED**;

3.      Defendants' Motion for Notice by the Government Pursuant to Rule 12(b)(4)(B) and Incorporated Memorandum (Doc. 174) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** to the extent that the United States is ordered to provide immediate notice, with a continuing duty to supplement, of any particular warrantless search or seizure; search or seizure based on a warrant; surveillance; interview; beeper or other tracking device; mail cover; display of any defendant's photograph, likeness, image, or voice-recording, from which it knows it does not intend to admit evidence during its case-in-chief at trial. The motion is **DENIED** in all other respects.

4.      Defendant Lujan's Motion for Disclosures Specific to Death Penalty Issues (Doc.

175) is **DENIED**.

5.      Defendant Lujan's Motion for Disclosure of Information Concerning the Decision to Seek the Death Penalty and Incorporated Memorandum (Doc. 176) is **DENIED**.

6.      Defendants' Motion for Disclosure of Information Relating to DNA Evidence and Testing and Incorporated Memorandum (Doc. 177) is **DENIED** as **MOOT**.  Defendants, however, have leave to resubmit a motion regarding discovery of DNA evidence and testing at a later time, but any such motion must be filed no later than **MARCH 3, 2008**.

7.      Defendants' Motion for Early Disclosure of Material Covered by the Jencks Act or Rule 26.2 of the Federal Rules of Criminal Procedure and Incorporated Memorandum (Doc. 178) is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** to the extent that both parties are ordered to disclose to the opposing party the party's respective Rule 26.2 and/or Jencks Act materials no later than **TWO WEEKS PRIOR TO THE COMMENCEMENT OF JURY SELECTION**.  The parties are also ordered to provide their respective Rule 26.2 and/or Jencks Act materials to the Court for *in camera* inspection no later than **MAY 15, 2008**.  If I determine, upon review, that the material is so voluminous that disclosure two weeks prior to trial may cause delay of the trial, I may order disclosure of the Rule 26.2 material up to 30 days before trial.  Both the Government and Defendants must supplement their production of Rule 26.2 and/or Jencks Act materials upon obtaining new materials or learning of new witnesses after the deadlines outlined above.  The motion is **DENIED** in all other respects.

8.      Defendants' Motion for Disclosure of Exculpatory Information and Incorporated Memorandum (Doc. 179) is **GRANTED** in part and **DENIED** in part.  Defendants' blanket request for disclosure of all exculpatory information 180 days before trial is **DENIED**.  Defendants' request, however, for pretrial disclosure of exculpatory evidence is **GRANTED** as follows.  The Government

must disclose to Defendants any *Brady* material that is also subject to Rule 16 as soon as it becomes aware of the existence of such material. The Government must disclose to Defendants any *Brady* material that does not fall within Rule 16 as well as any *Giglio* material on or before **MAY 1, 2008**, unless the Government requests and makes a further showing that production should be deferred under 18 U.S.C. § 3432.

9.      Defendants' Motion for Discovery and Inspection Concerning Government's Use of Informants, Operatives, and Cooperating Individuals and for Disclosure of Exculpatory Evidence Concerning Government's Use of Informants, Operatives, and Cooperating Individuals (Doc. 180) is **GRANTED** in part and **DENIED** in part. The motion is **GRANTED** to the extent that the Government must disclose to Defendant Lujan the identities and place of abode of each of the witnesses whom the Government will call at trial no later than **MAY 1, 2008**, unless the Government provides notice and makes a further showing that production should be deferred under 18 U.S.C. § 3432. The Government must provide any such notice to the Court **PRIOR TO MAY 1, 2008**. Defendant Lamunyon's and Defendant Medina's requests for early disclosure of the Government's witness list is **DENIED** at this time. The motion is **DENIED** as **MOOT** in all other respects.

10.     Defendants' Motion for Disclosure of Information Concerning the Reliability and Integrity of the Government's Investigation and Incorporated Memorandum (Doc. 181) is **DENIED**.

11.     Defendants' Motion for Discovery and Inspection of Matters Pursuant to Rule 16 (Doc. 183) is **GRANTED** in part and **DENIED** in part. Defendants' request for pretrial disclosure of Rule 16 materials is **GRANTED** to the extent that the United States is ordered to complete all Rule 16 disclosures by **MAY 1, 2008**, in a manner such that it could confidently represent to the Court on that day that it has fully and completely complied with its discovery obligations.

Defendants' request for early production of a witness list is **GRANTED** as to Defendant Lujan to the extent described *supra* in enumerated ¶ 6, but **DENIED** in all other respects.  Defendants' request that the Court conduct an evidentiary hearing to compel state and local investigators to testify to the existence and nature of any materials held by state and local entities is **DENIED**.  The United States' request for Rule 16(b) disclosures is **GRANTED** to the extent that Defendants must produce to the Government their Rule 16(b) discovery no later than **JUNE 1, 2008**.

12.     Defendants' Motion for Disclosure of Rough Interview Notes and Incorporated Memorandum (Doc. 184) is **GRANTED** in part and **DENIED** in part.  Defendants' request for an order to preserve rough interview notes made by law enforcement officers and agents during interviews of potential witnesses pertinent to this case is **GRANTED**.  The United States must review the rough interview notes made by law enforcement officers and agents that pertain to the case to determine if any information in the notes is subject to disclosure, and if there is a close question of whether the information in the notes is subject to disclosure, the United States must present the notes to the Court for *in camera* inspection.  The motion is **DENIED** in all other respects.

13.     Defendant Lujan's Motion for Discovery of Information and Materials Concerning Aggravating Sentencing Factors and Incorporated Memorandum (Doc. 185) is **GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** to the extent that the Government must provide to Mr. Lujan, on or before **MAY 1, 2008**, a written informative outline, as described in section II(M) of this opinion, setting forth the general nature of the information the United States intends to introduce to prove the following findings and aggravating factors at the sentencing phase: (I) the statutory threshold findings listed in ¶¶ I(d) and I(e) of the Notice; (ii) the statutory aggravating factors of heinous, cruel, or depraved manner of committing offense, 18 U.S.C. § 3592(c)(6);

substantial planning and premeditation, 18 U.S.C. § 3592(c)(9); and vulnerability of victim, 18 U.S.C. § 3592(c)(11); and (iii) each of the non-statutory aggravating factors and sub-factors listed in the Notice.  The outline need not reveal evidentiary detail.  The motion is **DENIED** in all other respects.

14.    Defendants' Corrected Motion for Disclosure of Information Concerning "Jailhouse Informants" and Incorporated Memorandum (Doc. 186) is **DENIED** as **MOOT**.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**