# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

      Plaintiff,

v.                             No. CR 05-924 RB

LARRY LUJAN,

      Defendant.

## OMNIBUS MEMORANDUM OPINION AND ORDER
### ON SUBSTANTIVE MOTIONS

On July 10, 2007, the grand jury returned the Third Superseding Indictment (Doc. 144) in this case, charging Defendants Larry Lujan, Kacey Lamunyon and Eugenio Medina with (1) "Kidnapping Resulting in Death," in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2, and (2) "Tampering with a Witness Resulting in Death," in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2. The Third Superseding Indictment also includes a Notice of Special Findings against Mr. Lujan. The United States filed a Notice of Intent to Seek a Sentence of Death (Doc. 146) against Mr. Lujan on July 12, 2007.

This matter comes before the Court on the following substantive motions which were all filed on April 30, 2008:

    1.      Motion to Strike Non-Statutory Aggravators in Notice of Intent to Seek the Death Penalty (Doc. 275)

    2.      Motion to Declare the Federal Death Penalty Act Unconstitutional Due to the Act's Prohibition of Defendant's Waiver of Jury Sentencing (Doc. 279)

    3.      Motion to Strike Statutory Aggravating Factors and Mental Culpability Factors Contained in, and Motion to Dismiss, Notice of Intent to Seek a Sentence of Death (Doc. 280)

4.      Motion to Strike Notice of Intent to Seek a Sentence of Death as Arbitrary and Disproportionate (Doc. 281)

5.      Motion to Declare the Federal Death Penalty Act Unconstitutional and to Strike Special Findings from the Indictment and the Death Penalty Notice for Inadequate Notice (Doc. 282)

6.      Motion to Strike the Government's Notice of Intent to Seek a Sentence of Death as Unconstitutional (Doc. 283)

7.      Motion to Declare the Federal Death Penalty Act Unconstitutional because it Limits the Jury's Consideration of Mitigation Evidence and Incorporated Memorandum (Doc. 286)

8.      Motion for Order Declaring the Federal Death Penalty Act  Unconstitutional and Dismissing Notice of Intent to Seek the Death Penalty due to Improper Evidentiary Standard for Penalty Phase and Incorporated Memorandum (Doc. 288)

9.      Motion to Declare the Federal Death Penalty Act Unconstitutional due to Deficient Appellate Procedures and Incorporated Memorandum (Doc. 290)

On June 10, 2008, I heard argument on the motions. Having considered the motions, briefs, arguments, and relevant authority, I conclude that all the aforementioned motions should be denied for the reasons discussed herein.

# I.      OVERVIEW OF GENERAL DEATH PENALTY LAW

## A.      GENERAL DEATH PENALTY CONSTITUTIONAL PRINCIPLES

The Eighth Amendment forbids the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The Supreme Court has repeatedly held that the death penalty is not *per se* unconstitutional.  *See Gregg v. Georgia*, 428 U.S. 153, 187 (1976).  Nonetheless, it recognizes that the death penalty is "different in kind from any other punishment."  *Id.* at 188.  Because of this uniqueness, the Supreme Court's death penalty jurisprudence is rooted in the principle that the Eighth and Fourteenth Amendments cannot tolerate the infliction of a death sentence under legal

systems that permit its wanton and freakish imposition.  *See Lewis v. Jeffers*, 497 U.S. 764, 774

(1990).  Accordingly, discretion in imposing the death penalty "must be suitably directed and limited

so as to minimize the risk of wholly arbitrary and capricious action."  *Id.* (quoting *Gregg*, 428 U.S.

at 189).  A sentencing scheme must "channel the sentencer's discretion by 'clear and objective

standards' that provide 'specific and detailed guidance,' and that 'make rationally reviewable the

process for imposing a sentence of death.'"  *Id.* (quoting *Godfrey v. Georgia*, 446 U.S. 420, 428

(1980)).

Eighth Amendment jurisprudence addresses two different aspects of the capital decision-

making process: the eligibility decision and the selection decision.  *Tuilaepa v. California*, 512 U.S.

967, 971 (1994).  The Supreme Court in *Tuilaepa* summarized the differences between the two

processes:

> To be eligible for the death penalty, the defendant must be convicted of a crime for
> which the death penalty is a proportionate punishment.  To render a defendant
> eligible for the death penalty in a homicide case, we have indicated that the trier of
> fact must convict the defendant of murder and find one "aggravating circumstance"
> (or its equivalent) at either the guilt or penalty phase. . . . [T]he aggravating
> circumstance must meet two requirements.  First, the circumstance may not apply to
> every defendant convicted of a murder; it must apply only to a subclass of defendants
> convicted of murder.   Second, the aggravating circumstance may not be
> unconstitutionally vague.
>
> We have imposed a separate requirement for the selection decision, where the
> sentencer determines whether a defendant eligible for the death penalty should in fact
> receive that sentence. What is important at the selection stage is an *individualized*
> determination on the basis of the character of the individual and the circumstances
> of the crime.  That requirement is met when the jury can consider relevant mitigating
> evidence of the character and record of the defendant and the circumstances of the
> crime.
>
> The eligibility decision fits the crime within a defined classification.
> Eligibility factors almost of necessity require an answer to a question with a factual
> nexus to the crime or the defendant so as to make rationally reviewable the process
> for imposing a sentence of death.  The selection decision, on the other hand, requires

individualized sentencing and must be expansive enough to accommodate relevant mitigating evidence so as to assure an assessment of the defendant's culpability. The objectives of these two inquiries can be in some tension, at least when the inquiries occur at the same time. There is one principle common to both decisions, however: The State must ensure that the process is neutral and principled so as to guard against bias or caprice in the sentencing decision.

*Id.* at 971-73 (internal citations and quotations omitted).

The party challenging the constitutionality of a statute has the burden of proving that it is unconstitutional. *See Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 198 (2001).

**B.      OVERVIEW OF THE FEDERAL DEATH PENALTY ACT ("FDPA")**[1]

**1.      Notice by the government**

The FDPA requires the government to sign and file with the court, and serve upon the defendant, within a reasonable time before trial, a notice

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

18 U.S.C. § 3593(a). Factors in the notice may include victim impact evidence and "any other relevant information." *Id.* At the penalty phase, the "government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a)." *Id.* § 3593(c).

---

[1] Many cases contained herein analyze the constitutionality of 21 U.S.C. §§ 848(g)-(p). That death penalty scheme applied to defendants charged with violating § 848, the continuing criminal enterprise statute, and who committed a murder in furtherance of the continuing criminal enterprise. *See* 21 U.S.C. § 848. The death penalty scheme contained in §§ 848(g)-(p) is "substantially similar" to the FDPA, 18 U.S.C. §§ 3591-98. *See United v. Barrett*, 496 F.3d 1079, 1106 (10th Cir. 2007). "In March 2006, . . . Congress repealed the death penalty provisions of § 848, effectively rendering the FDPA applicable to all federal death-eligible offenses." *Id.*

### 2.      Penalty phase structure

The FDPA bifurcates the penalty phase from the guilt phase.  The sentencing hearing is generally conducted by the same jury that determined the defendant's guilt.  *See* 18 U.S.C. § 3593(b).

### a.      Statutory threshold findings

During the penalty phase, the jury must first determine whether one of the statutory threshold findings set forth in 18 U.S.C. § 3591(a)(2) have been met.  The jury must find beyond a reasonable doubt that the defendant committed the offense of conviction with one of the listed culpable mental states.  *See* 18 U.S.C. § 3591(a).  If the jury finds that the requisite intent does not exist, the death penalty may not be imposed.  *See id.*; *United States v. Cooper*, 91 F. Supp. 2d 90, 95 (D.D.C. 2000).

### b.      Aggravating factors

#### 1)      Statutory aggravating factors

If the jury finds a statutory threshold finding beyond a reasonable doubt, then the jury must make a finding, beyond a reasonable doubt, concerning the existence of any statutory aggravating factor or factors enumerated in § 3592(c).  The FDPA lists 16 statutory aggravating factors.  *See* 18 U.S.C. § 3592(c).  If no statutory aggravating factor set forth in § 3592 is found to exist, the court must impose a sentence other than death.  *See id.* § 3593(d); *Cooper*, 91 F. Supp. 2d at 95.  "A finding with respect to any aggravating factor must be unanimous."  18 U.S.C. § 3593(d).

#### 2)      Non-statutory aggravating factors

"After finding the existence of at least one statutory aggravating factor, the jury may consider the existence of non[-]statutory aggravating factors for which notice has been given by the government."  *United States v. Jones*, 132 F.3d 232, 240 (5th Cir. 1998) (citing 18 U.S.C.

§ 3593(d)).  Non-statutory aggravating factors are defined as "any other aggravating factor for which notice has been given."  18 U.S.C. § 3592(c).  Any non-statutory aggravating factor must also be found to exist beyond a reasonable doubt by a unanimous jury.  *Id.* § 3593(c) & (d).

### c. Mitigating factors

If, however, the jury has found at least one statutory aggravating factor beyond a reasonable doubt, then the jury must consider evidence of any mitigating factor.  *See* 18 U.S.C. § 3592(a).  The FDPA sets forth seven specific mitigating factors that may be considered as well as an eighth "other factors" category that permits the jury to consider "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence."  *Id.* § 3592(a)(1)-(8).  The defendant has the burden of establishing the existence of a mitigating factor based on a preponderance of the information.  *Id.* § 3593(c).  "A finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established."  *Id.* § 3593(d).

### d. Weighing

If the jury has determined that at least one aggravating factor exists, the jury must then consider whether all the aggravating factor or factors, both statutory and non-statutory, unanimously found to exist beyond a reasonable doubt outweigh all the mitigating factor or factors found to exist by any individual juror by a preponderance of the information sufficient to justify a sentence of death.  *See id.* § 3593(e).  If the jury finds that no mitigating factors exist, the jury must consider whether the aggravating factor or factors alone are sufficient to justify a sentence of death.  *Id.*

Based upon this consideration, the jury by unanimous vote must recommend whether the defendant should be sentenced to death or to life imprisonment without possibility of release.  *See id.*

## II.    ANALYSIS OF SPECIFIC MOTIONS

### A.    RIPENESS

"Ripeness is a constitutional prerequisite to the exercise of federal court jurisdiction." *United States v. Fell*, 360 F.3d 135, 139 (2d Cir. 2004)(citing *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998)) (internal citations omitted); *see also United States v. Quinones*, 313 F.3d 49, 57-58 (2d Cir. 2002).  The ripeness doctrine stems in part from limitations placed on judicial power by Article III of the Constitution.  *Quinones*, 313 F.3d at 57.  Article III states that "the judicial Power shall extend to all Cases . . . [or] Controversies . . . ."  U.S. Const. art. III, § 2. The ripeness doctrine ensures that a dispute has caused injury significant enough to satisfy the Article III case or controversy requirement to prevent a court from entangling itself in abstract, speculative disagreements that are premature for review.  *See Fell*, 360 F.3d at 139; *United States v. Wilson*, 244 F.3d 1208, 1213 (10th Cir. 2001).  Although the parties only raised the issue of ripeness in a few of the motions, because ripeness relates to a federal court's subject matter jurisdiction, the court can consider the question of ripeness *sua sponte*. *Wilson*, 244 F.3d at 1213 n.1.

To determine whether an issue is ripe for adjudication, a court must make a fact-specific inquiry of both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.  *Id.*  In this case, I find that the motions facially challenging the FDPA, except for the motion challenging the appellate procedures, are ripe for consideration.

In each motion, Defendant mounts a facial challenge to the FDPA, presenting a pure question of law that is fit for judicial review.  *See Fell*, 360 F.3d at 140.  Moreover, the non-appellate

procedure motions implicate enough trial strategy issues that waiting until after trial, conviction, and sentence to address the facial challenge to the FDPA could cause substantial hardship to Defendant. *See id.* As the Second Circuit cogently explained:

> [A] defendant suffers practical and legally-cognizable disadvantages by postponing a facial challenge to the death penalty until after trial. Quite apart from a defendant's obvious desire to know in advance whether he will be risking his life by going to trial, . . . a defendant may reasonably prefer the ordinary allocation of peremptory challenges - six for the government, ten for the defense - rather than the allocation in a capital case of twenty for each side. . . . [A] defendant may reasonably prefer a jury on which persons who are conscientiously opposed to the death penalty are not excused for cause.
>
> Further, if the death penalty remains a possibility during trial, a defendant may be forced into trial tactics that are designed to avoid the death penalty but that have the consequence of making conviction more likely. Moreover, the possibility of capital punishment frequently induces defendants to enter into plea agreements in order to guarantee their own survival. And the Supreme Court has specifically held that "a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty." Accordingly, to the extent that a defendant might be disposed to plead guilty before trial in order to avoid capital punishment, withholding consideration of a facial challenge to the death penalty until after trial, conviction and sentence could cause him substantial hardship.

*Quinones*, 313 F.3d at 59 (internal citations and footnote omitted).

Based on this reasoning, I conclude that Mr. Lujan's facial FDPA challenges in the motions contained herein, except for the motion challenging the FDPA's appellate procedures, are ripe for adjudication.

Although Defendant is also mounting a facial challenge to the FDPA's appellate procedures in the last motion discussed herein, that motion is different from the others because it raises issues that necessarily occur post-trial. Given that the issues therein deal with appellate review, postponing the facial challenge until after trial should not affect Defendant's trial strategy, and thus, he cannot show that he will be substantially harmed by withholding court decision until after trial, conviction,

and sentencing. Moreover, the appellate issues may be more appropriately resolved in the first instance by the Tenth Circuit, which can decide the degree of review that it will provide. Consequently, Defendant has not shown that his challenge to the appellate provisions of the FDPA is ripe for consideration. *See*, *e.g.*, *United States v. Solomon*, 513 F. Supp. 2d 520, 533 (W.D. Pa. 2007) (holding that, because defendant had not been tried and convicted, his challenge to FDPA's appellate procedures was not ripe); *United States v. Henderson*, 485 F. Supp. 2d 831, 854 (S.D. Ohio 2007) (same); *United States v. O'Reilly*, 2007 WL 2421502, *10 (E.D. Mich. Aug. 23, 2007) (unpublished opinion) (same); *United States v. Llera Plaza*, 179 F. Supp. 2d 444, 461 (E.D. Pa. 2001) (same); *United States v. Frank*, 8 F. Supp. 2d 253, 270-71 (S.D.N.Y. 1998) (holding that defendant lacked standing to bring facial challenge to FDPA's appellate review provisions because any harm attributable to lack of mandatory appellate review was too speculative and should be posed by individual who has actually suffered harm from failure). *See also United States v. Allen*, 247 F.3d 741, 760 (8th Cir. 2001) (en banc) (rejecting argument that absence of automatic appellate review violates Eighth Amendment, because even if challenge to FDPA was valid, "which we highly doubt," petitioner lacked standing to raise challenge because he took advantage of appellate review and could show no actual harm), *vacated and remanded on other grounds*, 536 U.S. 953 (2002).

**B.      SUBSTANTIVE ISSUES**

     **1.      Motion to Strike Non-Statutory Aggravators in Notice of Intent to Seek the Death Penalty (Doc. 275)**

        a.      <u>Background</u>

In its Notice of Intent to Seek a Sentence of Death (Doc. 146) ("Notice"), the Government lists three non-statutory aggravating factors ("NSAFs") that it will seek to prove to justify imposition of the death penalty: (a) obstruction of justice, (b) future dangerousness, and (c) victim impact

evidence.  As to the obstruction of justice factor, the Notice informs Defendant Lujan that the Government intends to present evidence that he obstructed justice by killing the victim to prevent him from communicating information relating to kidnapping or drug trafficking offenses to a United States law enforcement officer.  With respect to the future dangerousness factor, the Notice provides that the United States intends to prove that Defendant represents a continuing danger to others and that he is likely to commit criminal acts of violence in the future, as evidenced by one or more of the following: (1) continuing pattern of violence, (2) low rehabilitative potential, and (3) lack of remorse.  The Notice further specifies that the continuing pattern of violence is based on the crimes in the Indictment as well as "the crime of committing a double homicide for which the defendant has been charged by the State of New Mexico."  Notice at 4.  The Notice asserts that Defendant Lujan's low rehabilitative potential is evidenced "by his repeated acts of institutional misconduct while in the custody of various state and local correction or detention agencies, or the United States Marshal's Service."  *Id.*  Next, the Notice expressly states that Defendant Lujan's lack of remorse is "demonstrated by the defendant's statements following the offenses alleged in the Indictment." *Id.*  Finally, as to the victim impact factor, the government provides: "As reflected by the victim's personal characteristics as an individual human being and the impact of the offense on the victim and the victim's family, the defendant caused loss, injury, and harm to the victim and the victim's family."  *Id.*  (Internal citation omitted).

On January 14, 2008, the Court, in the exercise of its inherent authority, ordered the Government to provide to Mr. Lujan on or before May 1, 2008, a written informative outline to address the general nature of the information it will introduce to prove each alleged NSAF.  *See* Mem. Op. and Order (Doc. 228) at 79-80.  Additionally and more specifically, the Court ordered the

10

Government to provide the following information: whether it intends to rely on other acts of violence, attempted violence, and/or threatened violence other than the crimes alleged in the indictment and the double homicide for which the State of New Mexico has charged Mr. Lujan; the general nature of the acts of institutional misconduct for which it intends to introduce evidence at the sentencing phase; and whether it intends to rely on any other evidence in support of the lack of remorse factor, and if so, provide a written informative outline of the general nature of the other evidence it plans to use to prove lack of remorse. *See id.* at 72-74. On March 10, 2008, the Court entered a stipulated order extending the Government's deadline to file the informative outline until October 1, 2008. *See* Order (Doc. 250).

b.   <u>Discussion</u>

Defendant contends that the Court should strike the Notice for a number of reasons: (1) the FDPA provides no guidance on how to define and select NSAFs, allowing the government to add any NSAF it wishes and injecting arbitrariness and capriciousness into the imposition of death sentences in violation of the Fifth and Eighth Amendments; (2) giving prosecutors the power to define NSAFs impermissibly delegates legislative power in violation of the separation-of-powers and non-delegation doctrines; (3) the use of NSAFs violates the prohibition of *ex post facto* laws; (4) the specific limitation of § 3591(a) that the defendant may be sentenced to death only after consideration of the factors "set forth in section 3592" nullifies and prohibits the catch-all provision in § 3592(c) that allows for consideration of "any other aggravating factor for which notice has been given;" (5) the NSAFs alleged in the Notice are unconstitutionally vague; (6) the victim impact NSAF does not narrow the class of defendants eligible for death; and (7) the Notice fails to provide the proper statutory authority in support of the NSAFs alleged. None of these arguments has merit.

### 1)       Not arbitrary and capricious

The Eighth and Fourteenth Amendments require that any discretion afforded a sentencing body in imposing the death penalty "must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Lewis*, 497 U.S. at 774 (quoting *Gregg*, 428 U.S. at 189). Defendant argues that the FDPA, by authorizing the government to unilaterally expand the list of aggravating factors on a case-by-case basis, without providing any guidance on how to define or select the NSAFs, injects arbitrariness and capriciousness into the process in violation of the Eighth Amendment.  I disagree for two reasons.

First, Defendant impermissibly attempts to divorce the NSAFs from the rest of the FDPA's statutory provisions.  As noted above, the Eighth Amendment requires both a narrowing and individualizing process in a capital sentencing scheme.  *See Tuilaepa*, 512 U.S. at 971-72.  The primary role of the NSAFs in the FDPA's statutory scheme is not to limit and guide a jury's discretion in determining who is eligible for the death penalty; rather, it "is to allow for the individualized determination of whether a death sentence is justified for a particular defendant; that is, they help to inform the selection decision."  *Allen*, 247 F.3d at 757.  The statutory aggravating factors channel the sentencing body's discretion, because they are the circumstances that make a defendant eligible for the death penalty. *Id.* (citing *Lewis*, 497 U.S. at 774).  Indeed, the Supreme Court has expressly approved of the use of NSAFs in order to fulfill the necessary individualized determination during the selection stage:

> [S]tatutory aggravating circumstances play a constitutionally necessary function at the stage of legislative definition: they circumscribe the class of persons eligible for the death penalty.  But the Constitution does not require the jury to ignore other possible aggravating factors in the process of selecting, from among that class, those defendants who will actually be sentenced to death.  What is important at the selection stage is an *individualized* determination on the basis of the character of the

12

individual and the circumstances of the crime.

*Zant v. Stephens*, 462 U.S. 862, 878-79 (1983) (upholding Georgia death-penalty scheme because it provided for categorical narrowing at definition stage and for individualized determination and appellate review at selection stage). *See also United States v. McCullah*, 76 F.3d 1087, 1106 (10th Cir. 1996) ("The Supreme Court has dealt with the issue of non-statutory aggravating factors in state capital punishment statutes and has held the use of non-statutory aggravating factors permissible.").

Second, contrary to Defendant's argument, the FDPA does not simply leave open the selection of NSAFs to the "imagination of the prosecutor." The FDPA constrains the government's choice of NSAFs to those that the trial court does not deem likely to create unfair prejudice. *See* 18 U.S.C. § 3593(c). The NSAFs must also be relevant to the question of whether the death penalty should be imposed. *See* 18 U.S.C. § 3592(c) (factor must be "aggravating"); *United States v. Davis*, 912 F. Supp. 938, 943 (E.D. La. 1996). In addition, Eighth Amendment jurisprudence limits a prosecutor's choice of NSAFs to those that are not so vague as to lack a common-sense core of meaning. *See Cooper*, 91 F. Supp. 2d at 100 (citing *Tuilaepa*, 512 U.S. at 972). Finally, procedurally, the government is constrained to use only those NSAFs for which it has provided advance notice. *See* 18 U.S.C. § 3593(a)(2); *Jones*, 132 F.3d at 240 (listing notice as limitation on government's discretion in devising NSAFs); *Cooper*, 91 F. Supp. 2d at 100 (same).

For all the foregoing reasons, the FDPA's use of NSAFs is constitutional. *See*, *e.g.*, *United States v. Higgs*, 353 F.3d 281, 320 (4th Cir. 2003) (rejecting argument that FDPA is unconstitutional because NSAFs fail to adequately limit sentencing discretion); *Allen*, 247 F.3d at 757-58 (same); *Jones*, 132 F.3d at 239-40 (explaining limits on prosecution in devising NSAFs); *Cooper*, 91 F. Supp. 2d at 100 ("The provision of the FDPA allowing for the use of non-statutory aggravating

factors is not facially invalid."); *United States v. Glover*, 43 F. Supp. 2d 1217, 1228-29 (D. Kan. 1999) (rejecting same argument).  *See also Barclay v. Florida*, 463 U.S. 939, 967 (1983) (Stevens, J., concurring) ("Although a death sentence may not rest *solely* on a nonstatutory aggravating factor, . . . the Constitution does not prohibit consideration at the sentencing phase of information not directly related to either statutory aggravating or statutory mitigating factors, as long as that information is relevant to the character of the defendant or the circumstances of the crime."); *Barrett*, 496 F.3d at 1110 ("[I]t is clear that § 848's general allowance of non-statutory aggravating factors is constitutionally permissible.").

### 2)       Separation of powers not violated

"The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government."  *Mistretta v. United States*, 488 U.S. 361, 371 (1989). Although Congress generally cannot delegate its legislative power to another Branch, Congress may constitutionally seek assistance from its coordinate Branches, so long as it lays down "by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform."  *Id.* at 372 (quoting *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 406 (1928)).

Courts have generally rejected the argument that the prosecutor's power to promulgate NSAFs amounts to an unconstitutional delegation of legislative power to the Executive Branch on two grounds.  A  number of courts have concluded that allowing the prosecution to give notice of NSAFs does not constitute a delegation of congressional power.  *See*, *e.g.*, *Higgs*, 353 F.3d at 321 ("[The FDPA] does not delegate a legislative function to the prosecutor."); *United States v. Spivey*, No. Cr. 95-491 LH, slip op. at 13-14 (D.N.M. Mar. 12, 1997); *United States v. Walker*, 910 F. Supp.

837, 850-51 (N.D.N.Y. 1995); *United States v. Pitera*, 795 F. Supp. 546, 560 (E.D.N.Y. 1992). These courts reasoned that the provisions of the death penalty act regarding NSAFs simply permit the prosecution to engage in advocacy, not legislation. *See Pitera*, 795 F. Supp. at 560. Congress has achieved the requisite narrowing of the class of death-eligible defendants through legislative restriction of those murderers properly subject to the death penalty and the requirement that the jury find at least one statutory aggravating factor. *Walker*, 910 F. Supp. at 850-51. The prosecution's use of NSAFs is limited to the individualized sentencing phase of the death penalty proceedings wherein the prosecutor exercises discretion derived from the executive's powers to enforce criminal laws, not from delegated legislative powers, to present to the sentencing body as much information as possible. *See id.* at 851; *Pitera*, 795 F. Supp. at 560-61.

Other courts, including the Tenth Circuit, have foreclosed Defendant's non-delegation argument by holding that the delegation, if it is such, is constitutionally permissible. *See*, *e.g.*, *Barrett*, 496 F.3d at 1108 (holding that defendant's non-delegation argument was foreclosed by *United States v. McCullah*, 76 F.3d at 1106); *Higgs*, 353 F.3d at 321-22; *Allen*, 247 F.3d at 758-59; *Jones*, 132 F.3d at 239 ("[T]he delegated authority is sufficiently circumscribed by 'intelligible principles' to avoid violating the nondelegation doctrine."); *United States v. Tipton*, 90 F.3d 861, 895 (4th Cir. 1996) (same); *McCullah*, 76 F.3d at 1106 (same). The Tenth Circuit, in analyzing the non-delegation argument in the context of the death penalty scheme set forth in 21 U.S.C. § 848, held that "[t]he prosecutor[i]al discretion to promulgate non-statutory aggravating factors falls squarely within the permissible delegation of power to the Executive Branch." *McCullah*, 76 F.3d at 1106. The Tenth Circuit explained its reasoning as follows:

> At the selection stage of a capital proceeding, the focus is on an *individualized* determination on the basis of the character of the individual and the circumstances

of the crime.  In light of this purpose, Congress, recognizing that it could not adequately account for all the possible aggravating and mitigating factors inherent in any particular homicide, allowed factors to be considered which it did not specifically enumerate in the statute.  To achieve the goal of individualized sentencing, Congress has properly delegated some degree of discretion to the Executive Branch, limited by the directive that the factors must be "aggravating" and further constrained by the requirement of notice.  The established notion of "aggravating factors", coupled with the principle of individualized sentencing and notice, provides an "intelligible principle" to which the executive branch must conform its exercise of the delegated power.  Further, the limited nature of the delegated power should also be noted; [a statutory threshold] aggravating factor must be present for a defendant to be death-eligible, and only then do the non-statutory factors come into play.

*Id.* (internal citations and quotations omitted).

Defendant recognizes that *McCullah* has rejected his argument, but he nonetheless argues that the opinion is fundamentally flawed.  Defendant argues that the requirement of "notice" and that the factor be "aggravating" really places no limitation on the delegation at all because the prosecutor can invent any kind of factor he or she chooses.  I disagree.

As an initial matter, even if this Court agreed with Defendant's premise, the Court is nonetheless constrained to follow Tenth Circuit precedent.  Secondly, Defendant's argument ignores the overall statutory scheme that circumscribes the prosecution's authority.  The legislative authority that Defendant urges is implicated here is defining criminal conduct and setting forth the circumstances under which a person may be put to death.  Congress, however, has not given the prosecutor carte blanche to define criminal conduct and to determine when a person may be put to death solely through NSAFs.  Rather, NSAFs may only be considered after the jury has first found beyond a reasonable doubt the existence of a statutory threshold factor and the existence of at least one statutory aggravating factor.  This statutory constraint limits the prosecutor's delegated authority.  *See Jones*, 132 F.3d at 240. Third, contrary to Defendant's argument, the prosecutor does

not have unbridled discretion to invent and present evidence on any kind of factor he or she wishes. The trial judge may exclude evidence if its prejudicial effect outweighs its probative value.  18 U.S.C. § 3593(c); *Jones*, 132 F.3d at 240 (noting that trial judge's gatekeeping function limits delegated authority).  Moreover, I find persuasive those opinions that have classified the selection of NSAFs as an act of advocacy, not legislation.  *See United States v. Mikos*, 2003 WL 22110948, *23 (N.D. Ill. Sept. 11, 2003) (unpublished opinion) ("Non-statutory aggravating factors are not laws; they are not elements of the offense.  They are merely considerations that help individualize the sentencing of each capital trial much the same as they do in noncapital trials.").  Consequently, for all the foregoing reasons, I conclude that the prosecutor's power to promulgate NSAFs does not amount to an unconstitutional delegation of legislative power to the Executive Branch.

### 3)      Not *ex post facto* law

The Constitution forbids *ex post facto* laws.  U.S. Const. art. I, § 9, cl. 3.  This clause prohibits legislation that retroactively alters the definition of crimes or increases the punishment for criminal acts.  *California Dept. of Corrections v. Morales*, 514 U.S. 499, 504 (1995).  Defendant contends that the FDPA's provision for NSAFs violates this prohibition against *ex post facto* laws because the prosecution is permitted to select NSAFs after the crime is committed.

The selection of NSAFs, however, does not alter the definition of a crime or increase the punishment for a criminal act.  The statutes that define the crimes of kidnapping resulting in death and tampering with a witness resulting in death were in effect at the time of Mr. Lujan's alleged crime.  *See* 18 U.S.C. § 1201(a) & § 1512(a)(1)(C).  Additionally, at the time of the alleged crime, those statutes authorized a sentence of death.  *See id.*  Regardless of which NSAFs a prosecutor chooses to use to justify a death sentence, the underlying statutes and the FDPA gave Defendant fair

17

warning at the time the alleged crimes were committed that the maximum penalty for those crimes was death.  I, therefore, agree with those courts that have uniformly rejected the argument that the FDPA's allowance of NSAFs violates the ban against *ex post facto* laws.  *See*, *e.g.*, *Higgs*, 353 F.3d at 322 ("[N]onstatutory aggravating factors and mitigating factors are weighed by the jury to make the individualized determination to impose the death sentence upon a defendant who has already been found eligible.  They do not increase the possible punishment or alter the elements of the offense."); *Allen*, 247 F.3d at 759 (rejecting argument that FDPA violates *ex post facto* law ban, because statutes under which defendant was convicted made clear that death sentence was authorized and NSAFs do not alter definition of underlying crime or increase punishment to which defendant is subjected); *Llera Plaza*, 179 F. Supp. 2d at 455-56 (same); *Glover*, 43 F. Supp. 2d at 1230 (D.Kan. 1999) (same).  *See also Dobbert v. Florida*, 432 U.S. 282, 293-94 (1977) (holding that procedural changes in capital sentencing scheme that alter method of determining whether death penalty is imposed do not implicate *ex post facto* concerns).

### 4)  FDPA does not prohibit consideration of NSAFs

Section 3591(a) of the FDPA provides that a defendant found guilty of a death eligible offense "shall be sentenced to death if, after consideration of the factors *set forth* in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified . . . ." 18 U.S.C. § 3591(a) (emphasis added).  Section 3592(c) states: "The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists." *Id.* § 3592(c).  Defendant argues that, because the express requirement of § 3591 that aggravating factors be "set forth" in § 3592 to justify a death sentence, it contradicts and nullifies the catch-all provision in § 3592(c).  This argument is unconvincing.

18

A statute should be construed to give effect to all its provisions, so that no part will be rendered inoperative or superfluous. *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1273 (10th Cir. 1994). The statute's context and structure should also be considered when interpreting a statutory provision. *See id.* Defendant's interpretation of § 3591(a) not only ignores the FDPA's overall structure, but it would render large portions of the FDPA inoperative.

First of all, the interpretation Defendant urges is not even required by § 3591(a) itself. Section 3591(a) merely requires the consideration of statutory aggravating factors; it does not prohibit the consideration of any other kinds of factors. Furthermore, § 3591(a) directs the consideration of statutory aggravating factors "in the course of a hearing held pursuant to section 3593." 18 U.S.C. § 3591(a). The provisions in § 3593 make clear that the jury is to consider NSAFs during the course of the sentencing hearing. Section 3593(a) provides that the Notice must set forth "the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death." *Id.* § 3593(a)(2). This section further states that the notice may include factors "concerning the effect of the offense on the victim and the victim's family." *Id.* Victim impact evidence is not one of the enumerated factors in § 3592(c), further indicating that Congress contemplated that the sentencing jury would consider NSAFs. *See id.* § 3592(c). In addition, § 3593(d) clarifies that Congress intended the jury to consider both statutory and non-statutory aggravating factors: "[The jury] shall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist *and any other aggravating factor for which notice has been provided* under subsection (a) found to exist." *Id.* § 3593(d) (emphasis added). The FDPA further instructs the jury to "consider whether all the aggravating factor or factors found to exist" sufficiently outweigh the mitigating factor or factors found to exist. *Id.* § 3593(e). The

language and structure of the FDPA, therefore, permit the consideration of NSAFs.  *See*, *e.g.*, *United States v. Diaz*, 2007 WL 656831, *15-16 (N.D. Cal. Feb. 28, 2007) (unpublished opinion) (rejecting argument that FDPA prohibits use of NSAFs)*; Mikos*, 2003 WL 22110948 at *24 (same); *Llera Plaza*, 179 F. Supp. 2d at 459 (same); *United States v. Nguyen*, 928 F. Supp. 1525, 1536 (D.Kan. 1996) (same).

**5)    Not unconstitutionally vague**

Defendant next argues that the obstruction of justice, future dangerousness, and victim impact NSAFs are unconstitutionally vague.  In order to ensure that a capital sentencing scheme is free of bias and caprice, both eligibility and selection factors must not be too vague.  *Tuilaepa*, 512 U.S. at 973.  The court's vagueness review "is quite deferential."  *Id.*  The Supreme Court recognized that in providing for individualized sentencing, the government "may adopt capital sentencing processes that rely upon the jury, in its sound judgment, to exercise wide discretion."  *Id.* at 974.  For this reason, the Supreme Court has found only a few factors, which are similar to one another, vague (*e.g.*, "especially heinous, atrocious, or cruel") and has upheld numerous other factors.  *See id.* at 973-74 (listing factors).  An aggravating factor is not unconstitutional if it has some "common-sense core of meaning" that criminal juries should be capable of understanding.  *Id.* at 973 (quoting *Jurek v. Texas*, 428 U.S. 262, 279 (1976) (White, J., concurring in judgment)).

**a)    Obstruction of justice**

Defendant argues that the Government's contention that the alleged killing itself was the obstruction of justice is not sufficiently narrowing.  Defendant contends that generally an obstruction of justice NSAF refers to alleged acts that occur following the charged crime.

Contrary to Defendant's argument, however, an obstruction of justice NSAF need not always

20

refer to acts that occur after the charged crime. Numerous courts have held that obstruction of justice is a valid NSAF where the obstruction is related directly to the capital offense at issue. *See*, *e.g.*, *United States v. Wilson*, 493 F. Supp. 2d 364, 389 (E.D.N.Y. 2006) (holding that factor that defendant killed victims in effort to obstruct justice did not subsume "status of victims" aggravating factor because obstruction of justice factor referred jury to defendant's motive in alleged murder); *United States v. Cisneros*, 363 F. Supp. 2d 827, 841 (E.D. Va. 2005) (denying motion to strike NSAF that defendant committed acts in indictment to prevent Brenda Paz from and retaliate against her for assisting investigation and prosecution of co-defendant because Supreme Court and Fourth Circuit have rejected argument that aggravating factors may not duplicate elements of offense). In this case, Count 2 charges Defendant with tampering with a witness resulting in death. The obstruction of justice NSAF thus refers the jury to Defendant's motive in the charged crime.

To the extent Defendant is arguing that it is impermissible to have a NSAF that includes elements of the underlying offense, the Tenth Circuit has rejected this argument. *See McCullah*, 76 F.3d at 1107. Relying on *Lowenfield v. Phelps*, 484 U.S. 231, 246 (1988), the Tenth Circuit reasoned:

> Under *Lowenfield*, an aggravating factor that does not add anything above and beyond the offense is constitutionally permissible provided that the statute itself narrows the class of death-eligible defendants. Thus, although the non-statutory aggravating factor, "committed the offenses charged in the indictment", may be seen as simply restating the elements of the offenses, this is not an unconstitutional aggravating factor under *Lowenfield* because the statute itself under which Mr. McCullah was indicted specifically narrows the field of death-eligible defendants. "Committed the offenses charged in the indictment" is essentially equivalent to restating the elements of each offense individually, which falls squarely within *Lowenfield*.
>
> The government correctly points out that the aggravating factor "committed the offenses charged in the indictment" allowed the jury to consider the circumstances of McCullah's criminal activity. This aggravating factor allowed the

21

jury to consider the fact that the murder was committed in furtherance of an illegal drug operation.  The jury is entitled to consider the circumstances of the crime in determining whether to impose the death penalty.

*McCullah*, 76 F.3d at 1108 (internal citation omitted).

Accordingly, the fact that the killing itself was the obstruction of justice does not render the NSAF impermissible.  The obstruction of justice factor refers the jury to Defendant's motive in the alleged crime, a factor the jury is entitled to consider because it is a circumstance of the crime.  *See id.  See also United States v. Honken*, 381 F. Supp. 2d 936, 1009 (N.D. Iowa 2005) ("Where commission of the charged *capital* crimes involved obstruction of justice, consideration of that obstruction of justice as a non-statutory aggravating factor 'clearly directed the jury to the individual circumstances of the case and [that factor] therefore d[id] not offend the Constitution on the basis of being overbroad.'") (quoting *Allen*, 247 F.3d at 787 n.21).

Finally, this factor has a common-sense core of meaning that a jury is capable of understanding.  *See Honken*, 381 F. Supp. 2d at 1008 (holding that obstruction of justice factor was not unconstitutionally vague where nature of obstruction in question was adequately defined in instruction).  The Notice informs Defendant that the killing of Dana Grauke was to prevent him from talking to law enforcement about kidnapping or drug trafficking offenses.  A jury is capable of understanding what this factor means.  Moreover, the Court has ordered the Government to set forth in an outline the nature of the information it intends to present on this factor.

### b)      Future dangerousness

Defendant argues that as written it is impossible for him to adequately address the conclusory statements embodied in these allegations.  The future dangerousness factor, however, is far from "conclusory."  It lists three specific categories of evidence indicating that Mr. Lujan is likely to

commit criminal acts of violence in the future: a continuing pattern of violence, low rehabilitative potential, and lack of remorse. Each of these categories in turn gives further details as to the nature of this factor. The Notice specifies that the continuing pattern of violence is based on the crimes in the Indictment as well as the double homicide for which Mr. Lujan has been charged by the State of New Mexico. It further states that Mr. Lujan's low rehabilitative potential is evidenced by his repeated acts of institutional misconduct while in the custody of various state and local correction or detention agencies, or the United States Marshal's Service. Finally, the Government has notified Defendant that his lack of remorse is demonstrated by his statements following the offenses alleged in the Indictment. The Tenth Circuit has rejected a vagueness challenge to a future dangerousness NSAF with less detail than the one here. *See United States v. Fields*, 516 F.3d 923, 941-42 (10th Cir. 2008) (holding that future dangerousness NSAF was not unconstitutionally vague where factor stated that "defendant poses a future danger to the lives and safety of other persons, as evidenced by one or more of the following: (a) the offenses were a part of a continuing pattern of threatened or impending violence; (b) the defendant's lack of remorse"). The future dangerousness NSAF thus has provided Defendant with sufficient guidance as to its meaning and has a common-sense core of meaning that a jury is capable of understanding sufficient to survive constitutional scrutiny. I will, therefore, not strike this factor for vagueness, especially given that I have already required the Government to provide an informative outline on the factor using the Court's inherent powers relating to discovery matters.

### c)     Victim impact

The FDPA expressly permits the consideration of "factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact

statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information."  18 U.S.C. § 3593(a).  The Eighth Amendment "permits capital sentencing juries to consider evidence relating to the victim's personal characteristics and the emotional impact of the murder on the victim's family in deciding whether an eligible defendant should receive a death sentence." *Jones v. United States*, 527 U.S. 373, 395 (1999) (citing *Payne v. Tennessee*, 501 U.S. 808 (1991)).  Victim impact evidence is allowable to demonstrate the specific harm caused by the crime, so long as the evidence is not so unduly prejudicial that it renders the trial fundamentally unfair under the Due Process Clause. *See Payne*, 501 U.S. at 825.

    In *Jones v. United States*, the Supreme Court examined whether the following NSAFs were duplicative, vague, or overbroad: (1) the victim's young age, her slight stature, her background, and her unfamiliarity with San Angelo, Texas and (2) the victim's personal characteristics and effect of crime on her family. *See Jones*, 527 U.S. at 398-401.  Four Justices concluded that these two NSAFs were not vague because a jury should have no difficulty understanding that the former factor was designed to ask it to consider whether the victim was especially vulnerable to the petitioner's attack while the latter factor asked it to consider the victim's personal traits and the effect of the crime on her family. *Id.* at 400.  The plurality further noted that, even if the factors were somewhat vague, the government's argument made it absolutely clear what each NSAF meant. *See id.* at 400-01.[2]

    A number of courts have also concluded that similarly-worded victim impact NSAFs are not

_____

    [2] Justice Scalia joined the plurality in concluding that, even if there was error in the loose drafting of the NSAFs, any such error was harmless. *See Jones*, 527 U.S. at 402.

unconstitutionally vague. *See United States v. Bourgeios*, 423 F.3d 501, 510-11 & n.29 (5th Cir. 2005) (victim impact aggravator stating that murder caused victim's family extreme emotional suffering and her family has suffered severe irreparable harm was not vague because jury would have no difficulty understanding that it was directed to consider particular effect of murder on victim's family); *United States v. Paul*, 217 F.3d 989, 1001 (8th Cir. 2000) (victim impact aggravating factor was not unconstitutionally vague); *United States v. Barnette*, 211 F.3d 803, 817-18 (4th Cir. 2000) (NSAF that defendant caused harm to families of victims as a result of impact of killings on families was not unconstitutionally vague); *United States v. Foster*, 2004 WL 225084, *2 (D.Md. Jan. 27, 2004) (unpublished opinion) (same); *United States v. Davis*, 2003 WL 1873088, *7-8 (E.D. La. Apr. 10, 2003) (unpublished opinion) (same).

Despite the reasoning of the *Jones* plurality, some district courts have found similar victim impact NSAFs insufficiently precise. These courts, however, have generally denied motions to strike the factor and, instead, remedied the vagueness issue by ordering the government to amend the notice or provide an informative outline. *See*, *e.g.*, *United States v. Duncan*, 2008 WL 656036, *7 (D. Idaho Mar. 6, 2008) (unpublished opinion) (ordering government to provide outline of victim impact evidence in response to argument that factor was vague); *United States v. Solomon*, 513 F. Supp. 2d 520, 535 (W.D. Pa. 2007) (holding that notice was sufficient legally and need not be dismissed but ordering government to provide informative outline addressing nature of victim impact information); *United States v. Gooch*, 2006 WL 3780781, *23 (D.D.C. Dec. 20, 2006) (unpublished opinion) (same). *But see Cooper*, 91 F. Supp. 2d at 111 (agreeing that notice failed to give sufficient notice to defendant and ordering government to amend notice to include more specific information). Courts have also determined that limiting instructions can clarify any

vagueness issues to avoid constitutional problems. *See*, *e.g.*, *Paul*, 217 F.3d at 1001 (finding that aggravating factor, when given with limiting instruction extensively defining terms, was not unconstitutionally vague).

Given the deferential standard and the informative outline that the Government has been ordered to provide, I will not strike the victim impact factor as unconstitutionally vague because a jury should have no difficulty understanding that the factor asks it to consider the victim's personal traits and the effect of the crime on his family.

### 6)     Victim impact aggravating factor is not overbroad

Defendant argues that the victim impact NSAF is unconstitutional because it fails to narrow the class of defendants eligible for the death penalty, given that every murder will cause harm to the victim's family.  Defendant's argument again confuses the purposes of the eligibility and selection phases. Under the FDPA's framework, the mental threshold findings and statutory aggravating factors narrow the class of murderers eligible for the death penalty.  The NSAFs, by contrast, serve the purpose of individualizing a defendant's sentence and are constitutional so long as they are not vague and are relevant to the character of the defendant or the circumstances of the crime.  *See Tuilaepa*, 512 U.S. at 971-73.  The reasoning of the plurality opinion in *Jones* in rejecting a virtually identical overbreadth argument is instructive:

> An aggravating factor can be overbroad if the sentencing jury fairly could conclude that an aggravating circumstance applies to *every* defendant eligible for the death penalty.  We have not, however, specifically considered what it means for a factor to be overbroad when it is important only for selection purposes and especially when it sets forth victim vulnerability or victim impact evidence.  Of course, every murder will have an impact on the victim's family and friends and victims are often chosen because of their vulnerability.  It might seem, then, that the factors 3(B) and 3(C) apply to every eligible defendant and thus fall within the Eighth Amendment's proscription against overbroad factors.  But that cannot be correct; if it were, we would not have decided *Payne* as we did.  Even though the *concepts* of victim impact

and victim vulnerability may well be relevant in every case, *evidence* of victim vulnerability and victim impact in a particular case is inherently individualized. And such evidence is surely relevant to the selection phase decision, given that the sentencer should consider all of the circumstances of the crime in deciding whether to impose the death penalty.

What is of common importance at the eligibility and selection stages is that the process is neutral and principled so as to guard against bias or caprice in the sentencing decision. So long as victim vulnerability and victim impact factors are used to direct the jury to the individual circumstances of the case, we do not think that principle will be disturbed. Because factors 3(B) and 3(C) directed the jury to the evidence specific to this case, we do not think that they were overbroad in a way that offended the Constitution.

*Jones*, 527 U.S. at 401-02 (internal citations and quotations omitted). The Tenth Circuit, relying on the reasoning in *Jones*, has likewise rejected the identical argument that the victim impact NSAF does not narrow the class of offenses for which the death penalty may be imposed. *See United States v. Chanthadara*, 230 F.3d 1237, 1273 (10th Cir. 2000). Accordingly, because the use of victim impact evidence individualizes a defendant's sentence and is specific to the case, its use does not offend the Constitution.

### 7) Citation to statutory authority not necessary

Finally, Defendant offers no authority in support of his argument that the Notice should be stricken for failure to provide the proper statutory authority to support the allegation of NSAFs. Because the FDPA does not require that the Notice contain statutory authority for any allegation of NSAFs, *see* 18 U.S.C. § 3593(a), Defendant's argument is without merit.

For all the foregoing reasons, Defendant's motion to strike the NSAFs in the Notice will be denied.

2.     **Motion to Declare the Federal Death Penalty Act Unconstitutional Due to the Act's Prohibition of Defendant's Waiver of Jury Sentencing (Doc. 279)**

Defendant argues that, because the capital defendant is not allowed to make a knowing, voluntary, and intelligent waiver of his constitutional right to a jury at his sentencing proceeding without the consent of the prosecution, his rights under the Fifth, Sixth, and Eighth Amendments are violated.  In response, the United States argues that Defendant has failed to cite any case law in support of his position and that the Supreme Court has already determined that a defendant does not have a right to unilaterally waive a jury determination of guilt and that other district courts have held § 3593(b)(3) constitutional.[3]

Defendant has not cited any precedent in support of his argument and has not focused his argument on the provisions of the Fifth, Sixth, and Eighth Amendments, upon which he avers he bases his argument.[4]  After reviewing the relevant law, I find that Defendant's argument lacks merit.

18 U.S.C. § 3593(b) reads in relevant part:

(b) Hearing before a court or jury.  If the attorney for the government has filed a notice as required under subsection (a) and the defendant is found guilty of or pleads guilty to an offense described in section 3591, the judge who presided at the trial or before whom the guilty plea was entered, or another judge if that judge is unavailable, shall conduct a separate sentencing hearing to determine the punishment

---

[3]The United States also asserts that this motion is not ripe because Defendant has not requested and the United States has not yet refused to consent to a sentencing hearing before the Court alone.  As discussed previously, I find that the motion is ripe for consideration.

[4] Defendant relies in part on *Ring v. Arizona*, 536 U.S. 584 (2002), in support of his argument.  Defendant asserts that even though the Supreme Court in *Ring* determined that aggravating factors within an Arizona statute "operated as the functional equivalent of an element of a greater offence" and therefore must be found by a jury, the holding in *Ring* did not mean that "only a jury can be responsible for determining whether a defendant will be sentenced to death or to life without the possibility of release or even that the jury alone can make these findings."  Def.'s Mot. (Doc. 279) at 4.

to be imposed.  The hearing shall be conducted . . .

> (3) before the court alone, upon the motion of the defendant and with the approval of the attorney for the government.

The Supreme Court has continually demonstrated a strong preference, in capital cases, for jury sentencing. *See Gregg v. Georgia*, 428 U.S. 153, 193 (1976) ("Jury sentencing has been considered desirable in capital cases. . . .")*; Witherspoon v. Illinois*, 391 U.S. 510, 519 n.15 (1968) ("One of the most important functions any jury can perform in making such a selection [between a capital sentence or a lesser sentence] is to maintain a link between contemporary community values and the penal system -- a link without which the determination of punishment could hardly reflect the evolving standards of decency that mark the progress of a maturing society.") (internal citations and quotations omitted).   *See also Spaziano v. Florida*, 468 U.S. 447, 476 (1984) (Stevens, Brennan, Marshall, JJ. dissenting) ("Precisely because the death penalty is unique, the normal presumption that a judge is the appropriate sentencing authority does not apply in the capital context.").   While the Supreme Court has not decided whether a defendant can waive his constitutional right to a jury *sentencing* without governmental approval, it has analyzed the related issue of whether a defendant has a right to waive a jury *trial* without governmental approval.

Analogous to 18 U.S.C. § 3593, Federal Rule of Criminal Procedure 23(a) states: "If the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves."  The Supreme Court held in *Singer v. United States* with regard to the waiver of a jury trial that:

> We find no constitutional impediment to conditioning a waiver of this right on the consent of the prosecuting attorney and the trial judge when, if either refuses to consent, the result is simply that the defendant is subject to an impartial trial by jury -- the very thing that the Constitution guarantees him.  The Constitution recognizes an adversary system as the proper method of determining guilt, and the Government,

as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as most likely to produce a fair result.

380 U.S. 24, 36 (1965).

Mr. Lujan argues that *Singer* does not apply to his case because "th[e Singer] determination was made in the context of the trial, not in the context of sentencing, and certainly not in the context of capital sentencing," *see* Def.'s Mot. (Doc. 279) at 5, and death is different. I am not persuaded by this argument. Other federal courts have used a rationale similar to that in *Singer* with regard to the waiver of jury sentencing in capital cases. These courts have found that there is no constitutional impediment to the waiver of a defendant's right being conditioned upon the consent of the prosecuting attorney and the trial judge. *United States v. Minerd*, 176 F. Supp. 2d 424, 442 (W.D. Pa. 2001) (citing *Singer*, 380 U.S. at 37)*; Cooper*, 91 F. Supp. at 102-103. *See also United States v. Spivey*, 958 F. Supp. 1523, 1528 (D.N.M. 1997). "Although [the d]efendant has a right to have his sentencing phase before a jury, he does not have an unconditional right to a trial or sentencing by a judge." *United States v. Taylor*, 2008 WL 217115, *11 (E.D. Tenn. Jan. 24, 2008) (unpublished opinion).

In *Spivey*, the defendant argued that 21 U.S.C. § 848(i)(C), which is similar to 18 U.S.C. § 3593(b)(3), is unconstitutional because it allows a defendant to waive a jury at sentencing only if the government gives its consent. *Spivey*, 958 F. Supp. at 1528. The court, basing its decision on the analysis in *Singer* held that the defendant's argument was without merit, as "[t]he ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." *Id.* In its decision, the court noted that Mr. Spivey's assertion was abstract as he had not indicated that he wished to waive a jury at the sentencing phase and had not articulated any

prejudice that may result if a jury makes the sentencing determination.

I find this reasoning, and that of the other courts I have cited herein, persuasive. Accordingly, I will deny Defendant Lujan's motion to declare the FDPA unconstitutional due to the lack of a right to unilaterally waive jury sentencing.

> **3.      Motion to Strike Statutory Aggravating Factors and Mental Culpability Factors Contained in, and Motion to Dismiss, Notice of Intent to Seek a Sentence of Death (Doc. 280)**

Defendant asserts that the statutory aggravating factors are unconstitutional because they fail to sufficiently narrow the class of defendants eligible for death.  He further avers that the mental culpability factors alleged in the Notice and the special grand jury findings fail to narrow the class of eligible defendants and are duplicative of elements of the underlying offense.  Defendant specifically argues that the term "substantial planning and premeditation" is so broad as to apply to all premeditated murders.  He contends that, for these reasons, the special findings contained in the Notice should be stricken.  In its response, the United States argues that the issues raised by Defendant Lujan are not new and that the Court should align itself with precedent and deny the motion.

The Supreme Court has affirmed that a vagueness review should be "quite deferential" because "mathematical precision" is not possible in the definition of aggravating factors. *McCullah*, 76 F.3d at 1110 (citing *Tuilaepa,* 512 U.S. at 973).  An aggravating factor will be upheld as constitutional provided it has a core meaning that should be understandable to criminal juries. *Jones*, 527 U.S. at 400 (citing *Tuilaepa*, 512 U.S. at 973).  Nevertheless, an aggravating factor may be unconstitutionally vague if it "leaves the sentencer without sufficient guidance for determining the presence or absence of the factor." *McCullah*, 76 F.3d at 1110 (citing *Espinosa v. Florida*, 505

U.S. 1079, 1081 (1992)).

### a.   Statutory Aggravators Narrow the Class of Defendants Eligible for a Sentence of Death

Mr. Lujan argues that "read as a whole, the sixteen aggravating factors set forth in § 3592(c) fail to constitutionally narrow the class of persons eligible for the death penalty and to properly channel the jury's discretion in violation of the Eight Amendment" and, therefore, the case should proceed as a non-capital prosecution.  Def.'s Mot. (Doc. 280) at 8.

To be upheld as constitutional, a death penalty statute must "genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder."  *United States v. Sablan*, 2006 U.S. Dist. LEXIS 96150, *9 (D. Colo. 2006) (unpublished opinion) (citing *Zant*, 462 U.S. at 877).  Courts continue to uphold the constitutionality of the FDPA.[5]  *See id.*  The FDPA serves its channeling role in that

> [f]irst, the legislature designed a narrow statute by applying the death penalty to a limited number of criminal offenses.  *See* 18 U.S.C. § 3591.  Second, the statute further narrows the class of persons eligible for the death penalty by requiring a finding of at least one statutory aggravating factor.  *See* 18 U.S.C. § 3593(d).  And third, the statute provides for appellate review to determine whether the evidence supports the special finding of an aggravating factor and to ensure that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor.  *See* 18 U.S.C. § 3595.

*Jones*, 132 F.3d at 241 (internal footnote omitted).

"The purpose of aggravating factors in a capital sentencing scheme like the FDPA is to narrow the universe of murderers who are eligible for the death penalty and to channel the

---

[5] In support of his argument, Defendant points to several cases which analyze the constitutionality of state death penalty statutes; none of the cases, however, specifically point to a deficiency in the aggravating factors of the FDPA.

sentencer's discretion in determining whether to recommend a death sentence." *United States v. Cheever*, 423 F. Supp. 2d 1181, 1201 (D. Kan. 2006) (citing *Lowenfield*, 484 U.S. at 244). "[A]ggravating factors must provide the jury with clear, objective descriptions of those circumstances that distinguish murderers who should be executed from those who should be spared." *Id.* at 1202 (citing *Lewis*, 497 U.S. at 774). Vague and overly broad terms cannot be used to prescribe the aggravating factors. *Id.* (citing *Proffitt v. Florida*, 428 U.S. 242, 254, n.11 (1976)); *see also Duvall v. Reynolds*, 139 F.3d 768, 792 (10th Cir. 1998). "Consideration of the existence of any of the [sixteen] aggravators [under the FDPA] for which proper notice has been given 'helps to channel the jury's discretion by allowing the jury to consider the circumstances of the crime when deciding the propriety of the death sentence.'" *Sablan*, 2006 U.S. Dist. LEXIS 96150 at *10 (citing *Jones*, 132 F.3d at 249). *See also Cheever*, 423 F. Supp. 2d at 1186. I agree with the views of these courts. The sixteen aggravators serve to narrow the class of individuals subject to the death penalty and are constitutional.

Defendant also asserts that the mental culpability requirements fail to perform any narrowing process and that the mental states impermissibly duplicate the elements of the underlying offense. Mr. Lujan argues that the mental culpability requirements operate under the same rule that establishes as unconstitutional the double weighing of aggravating factors.[6] Mr. Lujan has not provided any evidence that the mental culpability elements do not serve any narrowing purpose. By their terms, the mental culpability elements require that the defendant have the specific intent to commit the crime. That requirement itself performs a narrowing function. While Mr. Lujan also

---

[6] Because it was not raised as an issue in this motion, I decline to discuss the validity or application of a rule regarding the subsuming of one aggravating factor by another.

avers that the mental culpability requirements are overbroad as they encompass every form of murder, he admits that certain types of felony murder are excluded.  For these reasons, I follow the majority of courts that have concluded that the mental culpability requirements do, in fact, narrow the class of people eligible for the death penalty.  *See*, *e.g.*, *Tipton*, 90 F.3d at 897-99 (mental culpability factors guide and channel sentencing discretion)*; United States v. Taylor*, 2006 U.S. Dist. LEXIS 81202, *19 (E.D. Tenn. 2006) (unpublished) ("the FDPA's mental culpability requirement sufficiently narrows the class of persons eligible for the death penalty"); *Nguyen*, 928 F. Supp. at 1539 (same).

Mr. Lujan fails to fully acknowledge the distinction between mental culpability factors and aggravating factors.  The determination of mental culpability is the first step of the analysis and the mental culpability elements are not involved in a weighing of factors.  *See United States v. Webster*, 162 F.3d 308, 324 (5th Cir. 1998) (aggravating factors guide jury only after it finds at least one element of intent); *Cooper*, 91 F. Supp. 2d at 109-10 (jury can find more than one of the intent factors; intent factors are not part of weighing process).  While Defendant submits that this process will be confusing to a jury and *may* result in unconstitutional "double-weighing" of aggravators[7], I believe that a jury, when properly instructed, can and will be able to distinguish between the threshold mental states and aggravating factors.  *See Webster*, 162 F.3d at 323-24; *Cooper*, 91 F. Supp. 2d at 109*; United States v. Battle*, 979 F. Supp. 1442, 1468 (N.D.Ga. 1997).  The idea that jurors can and will follow instructions is a keystone of our entire system of justice.  *See United*

_____

[7] The issue of whether the prosecution must choose only one mental culpability element and how these elements relate to the aggravating factors is further discussed below with regard to Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional and to Strike Special Findings from the Indictment and the Death Penalty Notice for Inadequate Notice (Doc. 282).

*States v. Lampley*, 127 F.3d 1231, 1238 (10th Cir. 1997) (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).

Neither have I found, nor has Defendant cited, any precedent in support of his argument that the "subsuming" argument of aggravating factors applies to mental culpability requirements or that the mental states cannot be duplicative of the underlying offense. In fact, several courts have rejected these suggestions. *See Webster*, 162 F.3d at 324 (aggravating factors guide jury only after it finds at least one intent element); *Taylor*, 2006 U.S. Dist. LEXIS 81202 at *22 (mental culpability factors do not unconstitutionally duplicate elements of crime); *Cooper*, 91 F. Supp. 2d at 109-10 (jury can find more than one intent factor, which are not part of weighing process); *Nguyen*, 928 F. Supp. at 1540 (concluding that concern of duplicative aggravating factors is not implicated by overlapping mental states and that use of a mental state is not impermissibly duplicative of an element of crime).

> **b.** **"Substantial Planning and Premeditation" Statutory Aggravator Narrows Class of Death Eligible Defendants and is not Unconstitutionally Vague**

To be constitutional, "the aggravating circumstance must meet two requirements. First, the circumstance may not apply to every defendant convicted of a murder; it must apply only to a subclass of defendants convicted of murder. Second, the aggravating circumstance may not be unconstitutionally vague. " *Tuilaepa*, 512 U.S. at 972 (internal citations omitted). An aggravating factor must "channel the sentencer's discretion by [a] clear and objective standard[] that provides specific and detailed guidance," *Arave v. Creech*, 507 U.S. 463, 474 (1993), and adequately "inform juries what they must find to impose the death penalty," *Maynard v. Cartwright*, 486 U.S. 356, 361-62 (1988). They serve to assist the jury in distinguishing "those who deserve capital

35

punishment from those who do not . . . ."  *Id.* (citing *Arave*, 507 U.S. at 474).  As to the second requirement, the Supreme Court has found few aggravating factors vague; more typically, it has upheld aggravating factors as constitutional when challenged for vagueness.  *See Glover*, 43 F. Supp. 2d at 1224.[8]

In this case, the Notice specifically lists four statutory aggravating factors that the Government will seek to prove as a basis for the imposition of the death penalty:

a.    Larry Lujan caused the death of Dana Joe Grauke II during the commission of another crime, namely kidnapping under 18 U.S.C. § 1201 (18 U.S.C. § 3592(c)(1));

b.    Larry Lujan committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the person (18 U.S.C. §3592(c)(6));

c.    Larry Lujan committed the offense after substantial planning and premeditation to cause the death of Dana Joe Grauke II (18 U.S.C. § 3592(c)(9)); and

d.    Larry Lujan committed the offense against the victim, Dana Joe Grauke II, who was particularly vulnerable due to infirmity (18 U.S.C. § 3592 (c)(11)).

Of those four factors, Defendant points specifically to item "c." as the factor which is

_____

[8] *Compare Tuilaepa*, 512 U.S. at 973 ("especially heinous, atrocious, or cruel" held unconstitutionally vague); *and Godfrey v. Georgia*, 446 U.S. 420, 427-429 (1980) ("outrageously or wantonly vile,  horrible and inhuman" held to be unconstitutionally vague); *with Arave v. Creech*, 507 U.S. 463, 472-73 (1993) ("cold-blooded, pitiless slayer" held not to be unconstitutionally vague); *Walton v. Arizona*, 497 U.S. 639, 654 (1990) ("perpetrator inflicted mental anguish or physical abuse before the victim's death" and "mental anguish including a victim's uncertainty as to his ultimate fate" held not to be unconstitutionally vague); *Jurek*, 428 U.S. at 274-76 (determining "whether there is a probability that the defendant would commit criminal acts of violence that would constitute  a continuing threat to society" held not to be unconstitutionally vague); *and Proffitt*, 428 U.S. at 255-58 (joint opinion of Stewart, Powell, and Stevens, JJ.) (using various "mitigating" questions held not to be unconstitutionally vague and "conscienceless or pitiless crime which was unnecessarily torturous to the victim" also held not to be unconstitutionally vague).

unconstitutionally vague.  He also argues that the "substantial planning and premeditation" aggravating factor is so broad as to apply to virtually all premeditated killings.  Mr. Lujan separates out in his discussion "substantial" from "substantial planning and premeditation."  I will similarly address the concepts.

**1)      "Substantial"**

Mr. Lujan argues that the term "substantial" does not adequately inform juries what they must find to impose the death penalty and that the federal courts have been unable to fashion a definition of "substantial" that would be both narrow and specific.  Def.'s Mot. (Doc. 280) at 9.  I disagree.

The Supreme Court and the Tenth Circuit have determined that the test of whether a factor is constitutional is whether the factor "clearly has a commonsense meaning . . . which criminal juries are capable of understanding."  *See Tuilaepa,* 512 U.S. at 973; *Jurek*, 428 U.S. at 279; *McCullah*, 76 F.3d at 1110.   The term "substantial" conveys a commonly understood meaning of "considerable," or "more than merely adequate."  *Tipton,* 90 F.3d at 896 (citing *McCullah*, 76 F.3d at 1110, 1111).  Moreover, "the 'substantiality' requirement is frequently encountered and readily understood in a number of contexts in criminal law."  *United States v. Flores*, 63 F.3d 1342, 1374 (5th Cir. 1995) (citing *United States v. Cooper*, 754 F. Supp. 617, 623 (N.D. Ill. 1990)).  *See*, *e.g.*, *United States v. Sutton*, 961 F.2d 476, 478 (4th Cir. 1992) ("substantial step" held not to be vague); *United States v. Rovetuso*, 768 F.2d 809, 821 (7th Cir. 1985) (same); *United States v. Johnson*, 575 F.2d 1347, 1357 (5th Cir. 1978) ("substantial income" held not to be vague)).  In *United States v. McVeigh,* the defendant challenged the constitutionality of the same aggravator at issue in this case, arguing that the definition of "substantial" was too vague.  944 F. Supp. 1478, 1490 (D. Colo. 1996).

Relying on the Supreme Court's decision in *Tuilaepa*, the court in *McVeigh* rejected this argument stating that "substantial is one of those everyday words having a common sense core meaning that jurors will be able to understand." *Id.* In *McCullah*, the Tenth Circuit likewise held that the word "substantial" was not inherently ambiguous and vague in the context of the same statutory aggravator at issue here and applied in *McVeigh*. 76 F.3d at 1111. Accordingly, the term "substantial" is sufficient to guide the jury in analyzing Defendant's qualification for the death penalty and is not vague.

### 2)   "Substantial Planning and Premeditation"

The Tenth Circuit in *McCullah* concluded that an aggravating factor, almost identical to the one at issue here was not unconstitutional.[9] *McCullah*, 76 F.3d at 1110. The court held that, "[i]n the context in which it appears, the term ['substantial'] clearly has a commonsense meaning of 'considerable in quantity: significantly large,' which criminal juries are capable of understanding." *Id.* (citing Webster's Ninth New Collegiate Dictionary 1176 (1991)). The court continued: "'Substantial' planning does not require 'considerably more planning than is typical' but rather it means 'considerable' or 'ample for commission of the crime." *Id.* at 1110-11. "[I]t could not be reasonably confused with the alternative definition denoting mere existence, as in the sense of having substance." *Id.* at 1110. For these reasons, the "substantial premeditation and planning" aggravating factor is not unconstitutionally vague.[10]

---

[9] The factor in *McCullah* read: "[t]he defendant committed the offense after substantial planning and premeditation." 76 F.3d at 1110.

[10] Mr. Lujan also argues that the use by the courts in *McCullah* and *Glover* of jury instructions to define the term "substantial" or "substantial planning and premeditation" demonstrates that the word "substantial" provides no guidance in narrowing the class of murderers subject to the death penalty. I am not swayed by this argument. Courts have

Mr. Lujan also argues that this factor is overbroad because it does not serve a narrowing purpose in that all murders involve substantial planning and premeditation. I disagree. While virtually all murders require some planning and premeditation, not all involve "substantial" planning and premeditation. *See Spivey*, 958 F. Supp. at 1531. Because not all capital defendants kill with substantial planning and premeditation, this aggravating factor does not apply to every defendant eligible for the death penalty and is not unconstitutional. *See*, *e.g.*, *Tipton,* 90 F.3d at 896; *McCullah,* 76 F.3d at 1110; *Flores,* 63 F.3d at 1373-74; *Sablan,* 2006 U.S. Dist. LEXIS 96150 at *76; *Perez,* 2004 U.S. Dist. LEXIS 7500 at *16; *Frank,* 8 F. Supp. 2d at 278; *McVeigh,* 944 F. Supp. at 1490.

For the foregoing reasons, I deny Mr. Lujan's motion to strike the statutory aggravating factors and mental culpability factors.

### 4. Motion to Strike Notice of Intent to Seek a Sentence of Death as Arbitrary and Disproportionate (Doc. 281)

Defendant argues that the potential death sentence for him, but not for Kacey Lamunyon or Eugenio Medina, results in the arbitrary application of the death penalty deemed unconstitutional in *Furman v. Georgia*, 408 U.S. 238 (1972), and results in disproportionate punishment in violation of the Eighth Amendment. He argues that it is arbitrary and capricious to seek the death penalty only against him when Mr. Lamunyon, Mr. Medina, and Jalisco Holmes also allegedly actively participated in the conspiracy to abduct and kill Dana Grauke. This argument is without merit.

---

recognized, with regard to the death penalty, that notices will be given to a jury with additional instructions to assist in further narrowing and defining the terms used and the concepts communicated. *See McVeigh*, 944 F. Supp. at 1488. Moreover, a jury instruction pertaining to an aggravating factor does not evidence that the meaning conveyed is unclear. *See Tipton*, 90 F.3d at 896 n.17.

The Supreme Court in *Furman* held that the death penalty may not be imposed under a sentencing scheme that creates a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner. *See Godfrey*, 446 U.S. at 427 (citing *Furman*, 408 U.S. 238). To guard against the arbitrary infliction of the death penalty, a capital sentencing scheme must channel the sentencer's discretion using clear and objective standards that provide specific and detailed guidance. *See id.* at 427-28. Defendant argues, relying on *Furman*, that seeking the death penalty against him is arbitrary because Mr. Lamunyon and Mr. Medina do not face the same penalty, even though they were allegedly also instrumental in the critical phases of Dana Grauke's abduction and murder. Courts have uniformly rejected similarly arguments. *See*, *e.g.*, *Getsy v. Mitchell*, 495 F.3d 295, 304-05 (6th Cir. 2007) (rejecting argument that defendant's death sentence was arbitrary and disproportionate because different jury sentenced co-conspirator mastermind, who directed defendant to kill victim, to life imprisonment for his role in same offenses); *United States v. Lee*, 374 F.3d 637, 652-53 (8th Cir. 2004) (rejecting argument that death penalty was arbitrarily imposed on defendant because he received harsher punishment than co-defendant, who he argued was more culpable). Defendant's argument fails because the Eighth Amendment does not require comparative proportionality and he has not shown selective prosecution based on an impermissible standard.[11]

### a. Eighth Amendment does not require intra- or inter-case proportionality

The Eighth Amendment prohibits the imposition of punishments that are grossly disproportionate to the crime. *See Coker v. Georgia*, 433 U.S. 584, 592 (1977) (holding that death penalty is grossly disproportionate punishment for crime of rape of adult woman). Traditional

---

[11] Because Defendant's argument is without merit as a matter of law, the Court need not reserve ruling until the evidence is produced at trial.

proportionality review entails an abstract evaluation of the appropriateness of a sentence for a particular crime. *Pulley v. Harris*, 465 U.S. 37, 42-43 (1984). The Supreme Court has rejected the argument that the Eighth Amendment requires comparative proportionality review of a death sentence whereby a court must compare the sentence in the case before it with penalties imposed in similar cases. *See id.* at 43-44.

Defendant's proportionality argument here is slightly different in that he contends a sentence of death is disproportionate because other nearly equal participants in the events giving rise to Dana Grauke's death will not be subject to the death penalty. Courts that have considered whether the Constitution requires proportionality between co-defendants' sentences, including the Tenth Circuit, have uniformly rejected the proposition. *See*, *e.g.*, *McCleskey v. Kemp*, 481 U.S. 279, 306-07 (1987) (explaining that defendant "cannot prove a constitutional violation by demonstrating that other defendants who may be similarly situated did *not* receive the death penalty"); *United States v. Mitchell*, 502 F.3d 931, 981 (9th Cir. 2007) (rejecting argument that Eighth Amendment requires inter-case proportionality review); *United States v. Johnson*, 495 F.3d 951, 961-62 (8th Cir. 2007) (rejecting argument that Eighth Amendment requires proportionality between co-defendants' sentences); *Hatch v. Oklahoma*, 58 F.3d 1447, 1466-67 (10th Cir. 1995) (same), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

Mr. Lujan offers little in the way of authority to support his position that the Eighth Amendment requires proportionate sentences among co-defendants or co-perpetrators of crimes. The main authority for his argument, *Enmund v. Florida*, 458 U.S. 782 (1982), does not support his position.

In *Enmund*, the Supreme Court considered the constitutionality of capital punishment for a

defendant who aided and abetted a felony robbery in the course of which a murder committed by others occurs, but in which he himself did not kill, attempt to kill, or intend that a killing take place. *See id.* at 798. The Supreme Court concluded that the Eighth Amendment did not permit the imposition of the death penalty in such a case. *See id.* The *Enmund* Court relied on the fundamental principle that causing harm intentionally must be punished more severely than causing the same harm unintentionally. *Id.* The Court stressed that individualized sentencing requires consideration of the defendant's culpability, which was different from that of the robbers who actually committed the killing. *See id.* The Court concluded that it was impermissible for the State to treat the defendant and the robbers who committed the murder alike. *Id.*

The constitutional sin in *Enmund* of imputing the culpability of the actual murderers to the defendant who did not have the intent to commit the murder is absent in this case. Here, the Government has alleged that Defendant Lujan committed the murder of Dana Grauke himself and had the intent to do so. *Enmund* is therefore inapposite. Moreover, the logical extension of Defendant's interpretation of *Enmund* would require the government, if it intends to seek the death penalty against one murderer, to seek the death penalty against all co-perpetrators of the murder who harbored similar intents to kill, regardless of any mitigating evidence that might apply to the co-perpetrators. This result is plainly at odds with the constitutional requirement of individualized sentencing.

### b.     Prosecutorial discretion in decision seeking death penalty

Mr. Lujan's argument essentially targets the prosecutorial discretion used in not seeking the death penalty against his co-defendants. Prosecutors, however, have wide discretion as to whom to prosecute and against whom to seek the death penalty. *See McCleskey*, 481 U.S. at 296; *United*

*States v. Pretlow*, 779 F. Supp. 758, 776 (D.N.J. 1991).  *See also United States v. Johnson*, 378 F.

Supp. 2d 1049, 1059 (N.D. Iowa 2005) (denying motion to strike death penalty based on intra-case

proportionality because court cannot intrude upon prosecutorial discretion to seek death penalty

where prosecutor has otherwise complied with prerequisites for seeking death penalty).   A

prosecutor's decisions are generally not subject to scrutiny unless they are shown to be based on

vindictiveness or the deliberate use of an arbitrary or unjustifiable standard, such as race or religion.

*See Wayte v. United States*, 470 U.S. 598, 608 (1985); *Bordenkircher v. Hayes*, 434 U.S. 357, 364

(1978); *Russell v. Collins*, 998 F.2d 1287, 1294 (5th Cir. 1993) (holding that, absent vindictiveness

or arbitrariness, prosecutor's decision to subject one defendant to death penalty while allowing

another co-defendant to plea bargain lesser sentence is not subject to constitutional scrutiny); *United

States v. Bradley*, 880 F. Supp. 271, 291 (M.D. Pa. 1994) (rejecting intra-case proportionality

argument because, even if defendant had been singled out for death penalty, there was no evidence

choice was motivated by any impermissible factor); *Pretlow*, 779 F. Supp. at 776.

 Selective prosecution claims are judged under ordinary equal protection standards.  *Wayte*,

470 U.S. at 608.  To demonstrate the arbitrariness of a prosecutorial decision, the defendant must

show that other persons similarly situated to him were not prosecuted and that the decision to

prosecute him was based on an impermissible factor.  *Pretlow*, 779 F. Supp. at 776.  Defendant has

not met his burden.

 According to the Government's allegations, Mr. Lujan was not only the leader behind Dana

Grauke's kidnapping and murder, but he also committed the murder himself, indicating that the

relative culpability among the co-defendants is not equal.  The Government also alleges that Mr.

Lujan is responsible for a double murder in New Mexico.  Based on the allegations, the Court cannot

find that Mr. Lujan and Mr. Lamunyon, Mr. Medina, and Mr. Holmes are similarly situated or that the Government does not have a rational basis for its decision to seek the death penalty only against Mr. Lujan. *Cf. Beardslee v. Woodford*, 358 F.3d 560, 579-80 (9th Cir. 2004) (rejecting argument that "different sentences for equally culpable co-defendants violate the prohibition against arbitrary imposition of the death penalty in *Furman*" because defendant, in contrast to co-defendants, actually administered fatal blows and was only one who physically participated in both California homicides); *Bradley*, 880 F. Supp. at 291 (rejecting argument that defendant was arbitrarily and irrationally singled out for death penalty because government did not seek same penalty against ring leader, where defendant was person alleged to have pulled trigger and actually killed victim); *Pitera*, 795 F. Supp. at 567-68 (rejecting argument that decision to seek death penalty against defendant was arbitrary because defendant, who was head of enterprise, who personally committed seven of nine charged murders, and who was principal actor, was not similarly situated with co-defendants against whom government was not seeking death penalty and there was no evidence of selection based on invidious factors); *Pretlow*, 779 F. Supp. at 776-77 (rejecting selective prosecution argument because defendant, who was charged as organizer and manager of continuing criminal enterprise and leader of RICO enterprise, was not similarly situated to co-defendants and he submitted no evidence that decision to seek death solely against him was based on any impermissible factor).  Nor is there evidence that the decision to seek the death penalty against only Mr. Lujan was motivated by an impermissible or arbitrary reason.

Finally, the FDPA permits the jury to consider as a mitigating factor whether another "defendant or defendants, equally culpable in the crime, will not be punished by death."  18 U.S.C. § 3592(a)(4).  Permitting this comparison provides yet another means of improving the likelihood

that the death penalty will not be administered in an arbitrary or random manner.  *United States v. Bin Laden*, 156 F. Supp.2d 359, 369 (S.D.N.Y. 2001).  The jury will therefore have a chance to consider Defendant's proportionality and arbitrariness argument as a factual matter when considering whether to impose the death sentence.  Accordingly, Defendant's motion is denied.

> **5.**     **Motion to Declare the Federal Death Penalty Act Unconstitutional and to Strike Special Findings from the Indictment and the Death Penalty Notice for Inadequate Notice (Doc. 282)**
>
> > a.     Background

On September 10, 2007, Defendant filed with the Court a Motion for Discovery of Information and Materials Concerning Aggravating Sentencing Factors and Incorporated Memorandum (Doc. 185).  After hearing argument on the motion, the Court ordered the United States to provide

> to Mr. Lujan . . . a written informative outline, as described in section II(M) of this opinion, setting forth the general nature of the information the United States intends to introduce to prove the following findings and aggravating factors at the sentencing phase: (i) the statutory threshold findings listed in ¶¶ I(d) and I(e) of the Notice; (ii) the statutory aggravating factors of heinous, cruel, or depraved manner of committing offense, 18 U.S.C. § 3592(c)(6); substantial planning and premeditation, 18 U.S.C. § 3592(c)(9); and vulnerability of victim, 18 U.S.C. § 3592(c)(11); and (iii) each of the non-statutory aggravating factors and sub-factors listed in the Notice. The outline need not reveal evidentiary detail.

Mem. Op. and Order (Doc. 228) at 79-80.  The Court did not require the informative outline based on the factors being unconstitutionally vague; rather, it used its inherent power to require more information during the discovery process:

> I find that statutory threshold findings I(d) and I(e), statutory aggravating factors II(b)-(d), and all the non-statutory aggravating factors alleged in the Notice warrant additional discovery in order to more fully enable Mr. Lujan to prepare his case and to avoid trial delays by minimizing surprise.  I adopt the reasoning of those courts that have used their inherent powers to order the government to provide additional information on certain aggravating factors in order to ensure a meaningful

opportunity to prepare a defense.  The severity of the penalty sought in this case warrants special efforts to ensure the fairness of the proceedings.  Greater notice improves the truth-seeking process.  Accordingly, in the exercise of the inherent authority given to the Court, I will order the Government to provide to Mr. Lujan a written informative outline on certain statutory threshold findings and aggravating factors . . . .  I stress that this order does not contemplate amendment of the Notice.

*Id.* at 70 (internal citations omitted).

b.   <u>Discussion</u>

Mr. Lujan moves the Court to declare the FDPA unconstitutional and to the strike the Notice on the grounds that the Notice of Special Findings ("Special Findings") in the Third Superseding Indictment and the Notice fail to give constitutionally adequate notice of the charges against him. Specifically, Defendant argues that (i) the Special Findings and Notice fail to meet general legal requirements of fair notice and should be dismissed; (ii) alleging all four potential mental states does not provide sufficient notice and the four mental states are improperly alleged; (iii) the generic statutory aggravating factors fail to provide adequate notice; (iv) the future dangerousness NSAF does not provide sufficient notice and is too vague; and (v) the victim impact NSAF does not provide sufficient notice and is too vague.  The United States argues that the cases cited by Defendant do not support dismissal of the Indictment or the Notice and that it has provided constitutionally sufficient notice.

Mr. Lujan states in the heading and introduction to his motion but nowhere else in the document that the Court should declare the FDPA unconstitutional.  To the extent Defendant is raising a facial challenge to the FDPA, he has failed to show that its notice provision is unconstitutional.  As for his request to strike the Special Findings and Notice, his arguments fail for the reasons discussed below.

46

1)      **Special Findings and the Notice provide constitutionally
sufficient notice**

To be constitutional, an indictment must contain the elements of the charged offense, "fairly

inform[] the defendant of the charge against which he must defend," and protect the defendant from

the risk of double jeopardy. *Hamling v. United States*, 418 U.S. 87, 117 (1974) (citation omitted).

Defendant argues that, based on *Ring*, Federal Rule of Criminal Procedure 7 and the constitutional

notice rules governing indictments apply to the Special Findings and Notice.

In its January 14, 2008 Memorandum Opinion and Order, the Court noted that it was not

convinced that Rule 7 governs death penalty notices:

> By its own title, Rule 7 applies to "The Indictment and the Information." Fed. R.
> Crim. P. 7.  The Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 *et seq.*, and
> not Rule 7, requires notice of the government's intent to seek the death penalty. *See*
> 18 U.S.C. § 3593(a).  Many courts that have considered the issue have found that
> Rule 7(f) does not apply to death penalty notices. *See United States v. Llera Plaza*,
> 179 F. Supp. 2d 464, 472 (E.D. Pa. 2001) ("[T]he court concludes that 18 U.S.C.
> § 3593(a) does not require the government to produce the details of its sentencing
> phase evidence, and that Rule 7 is not applicable to [notices of intent to seek the
> death penalty] submitted to satisfy FDPA requirements."); *United States v.
> Kaczynski*, 1997 WL 34626785, *17 (E.D. Cal. Nov. 7, 1997) (unpublished opinion)
> (concluding that Rule 7 does not apply to death notices); *United States v. Nguyen*,
> 928 F. Supp. 1525, 1545 (D. Kan. 1996) (noting that there is no authority indicating
> that Rule 7 applies to death notices).

*See* Mem. Op. and Order (Doc. 228) at 25.  The Court nevertheless ordered the United States to

provide an informative outline with regard to the latter two threshold elements, the latter three

statutory aggravating factors, and all of the NSAFs.  The Court ordered the informative outline based

on the court's inherent discovery power to compel discovery, not because it had found that any of

the factors were unconstitutionally vague.

Defendant nonetheless argues that the Constitution requires the prosecution to provide details

of the evidence it intends to proffer with regard to the aggravating factors.  However, in *United*

47

*States v. Battle*, the court rejected an argument that a notice was constitutionally defective when it did not detail the evidence supporting the aggravating factors. *United States v. Battle*, 173 F.3d 1343, 1347 (11th Cir. 1997).  "18 U.S.C. § 3593(a) does not require the government to produce the details of its sentencing phase evidence . . . [but] the Constitution requires that the defendants be given some notice of the type of evidence the government intends to introduce at the sentencing phase. *Llera Plaza*, 179 F. Supp. 2d at 472.  "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (other citations omitted).  "This opportunity would hardly be "meaningful" if the defense were forced to confront sentencing phase evidence without any notice of what that evidence might be. *Llera Plaza*, 179 F. Supp. 2d at 471.  "In order for the government's evidence to be subjected to 'the crucible of meaningful adversarial testing,' *United States v. Cronic*, 466 U.S. 648, 656 (1984), the [notices], in conjunction with the indictment, must inform the defendants of the theories and facts that the government will use to establish each aggravating factor in this case." *Llera Plaza*, 179 F. Supp. 2d at 472.  As the court in *Llera Plaza* explained:

> At a minimum, due process requires a defendant to receive sufficient notice of aggravating factors to enable him to respond and to prepare his case in rebuttal.  In evaluating whether due process is satisfied, the Death Penalty Notice must be considered in conjunction with the offenses as charged in the indictment, which can provide the requisite specificity to an otherwise insufficient notice.

*Id.* at 471.  The Notice, when considered in conjunction with the Third Superseding Indictment, provides Defendant with constitutionally sufficient notice, especially in light of the forthcoming informative outline, as more specifically discussed below.

48

2)      **Alleging All Four Potential Mental States Provides Sufficient Notice and the Four Mental States are Properly Alleged**

Defendant has not cited any precedent in support of his argument that the threshold findings are unconstitutionally vague or that the United States must choose between those four gatekeeping intent factors of the FDPA.    Mental culpability, as set forth in the FDPA, is a threshold determination made prior to any consideration of aggravating factors.   In fact, as Defendant acknowledges, courts have rejected the suggestion that the United States must make a choice between them. *See* Def.'s Mot. (Doc. 282) at 17.  *See Webster*, 162 F.3d at 355 (aggravating factors guide jury only after jury finds at least one element of intent); *Cheever*, 423 F. Supp. 2d at 1187-97 (it must be proven that defendant had *at least* one of the mental states) (emphasis added); *Sablan*, 2006 U.S. Dist. LEXIS 96150 at *3 (jury must find existence of *at least one* enumerated mental state and at least one statutory aggravating factor) (emphasis added); *Cooper*, 91 F. Supp. 2d at 109-10 (jury can find more than one intent factor; intent factors are not part of weighing process).

I have also not found any case law, nor has Defendant cited any, holding that alleging the four mental states skews the process towards death.  The duplication of mental intent factors does not raise the unconstitutional subsuming issues caused by the duplication of aggravating factors. *See Cheever*, 423 F. Supp. 2d at 1200; *Nguyen*, 928 F. Supp. at 1540-41 (concern of duplicative aggravating factors is not implicated by overlapping mental states).  Mental intent factors do not play a role in the weighing process; they are mere eligibility factors.  *See Cheever*, 423 F. Supp. 2d at 1199-1200.  Once the jury finds that one of the mental states existed, the role of the threshold intent factors is complete, and the jury may not consider those factors during the subsequent weighing process.  *See id.*  The fact that a defendant could satisfy more than one of the mental state

factors via the same course of action does not, therefore, constitute impermissible double counting. *See Webster*, 162 F.3d at 355.[12]  The United States is therefore not required to elect between the mental states prior to submitting them to the jury.

As for Defendant's vagueness challenge, the Indictment, the Notice, and the informative outline that the Government will provide will give Defendant sufficient notice of the facts to enable him to defend himself at trial.  I will therefore not strike the mental threshold factors for inadequate notice.  *Cf. Cheever*, 423 F. Supp. 2d at 1200-01 (holding that government's allegations of all four gateway intent factors did not deny defendant fair notice of elements against which he must defend because it was obvious from indictment that prosecution intended to present alternative argument to jury that when defendant shot sheriff, he exhibited degree of mental culpability sufficient to satisfy at least one of gateway intent factors).

### 3) The Statutory Aggravating Factors Are Not Constitutionally Vague

An aggravating circumstance may not be unconstitutionally vague, *see Tuilaepa*, 512 U.S. at 972, because "a vague propositional factor creates an unacceptable risk of randomness, the mark of the arbitrary and capricious sentencing process prohibited by *Furman v. Georgia*, 408 U.S. 238 (1972)."  *Tuilaepa*, 512 U.S. at 974.  To determine whether an aggravating factor is vague, the court

---

[12] At the hearing, defense counsel relied heavily on the case of *United States v. Tipton*, 90 F.3d 861 (4th Cir. 1996), in support of the argument that not choosing between the mental factors would result in a double weighing of aggravators and a skewing of the process towards death.  The statute upon which the holding of *Tipton* was based was 21 U.S.C. § 848(g)-(p). While the death penalty scheme contained in § 848(g)-(p) is "substantially similar" to the FDPA, a critical difference between these two statutes is that, in 21 U.S.C. § 848(g)-(p), the mental culpability factors are considered part of the aggravating factors while, in the FDPA, the mental culpability factors are used for a threshold determination, after which the aggravating factors are considered.  *Compare* 21 U.S.C. § 848(g)-(p) *with* 18 U.S.C. §§ 3591-98.

must determine whether the factor ha[s] some "common-sense core of meaning . . . that criminal juries should be capable of understanding." *Id.* at 975; *see also Jones*, 527 U.S. at 400.  In other words, there must be a principled means to distinguish those that receive the penalty from those that do not.  *Maynard*, 486 U.S. at 362.  Aggravating factors "are by necessity somewhat general," and the Constitution does not demand "mathematical precision." *Tuilaepa*, 512 U.S. at 973 (quoting *Walton*, 497 U.S. at 655).  The Supreme Court has "found only a few factors vague." *Id.* at 974.  With these principles in mind, the Court will examine the statutory aggravating factors in this case.

As for the constitutionality of the first statutory aggravating factor, I find that this factor is straightforward and has a common-sense core of meaning that a jury is capable of understanding. This factor is, therefore, not unconstitutionally vague.

With regard to the statutory aggravating factor of an offense committed in a "heinous, cruel or depraved manner in that it involved torture or serious physical abuse to a person," the Tenth Circuit and other courts have held that § 3592(c)(6) is constitutional because the words "heinous, cruel or depraved" are restricted to offenses that involved torture or serious physical abuse. *See Chanthadara,* 230 F.3d at 1262; *Jones*, 132 F.3d at 249-50. *See also United States v. Hammer*, 25 F. Supp. 2d 518, 541 (M.D. Pa. 1998); *Frank*, 8 F. Supp. 2d at 277-78; *Nguyen*, 928 F. Supp. at 1533-34.  Upon the addition in the FDPA of the words "in that it involved torture or serious physical abuse" to "committed the killing in an especially heinous, cruel or depraved manner," courts have held that this aggravating factor is no longer vague. *See Maynard*, 486 U.S. at 364-65 (suggesting that with addition of  narrowing wording, factor would be constitutional); *Walton*, 497 U.S. at 654-55 (approving such an aggravator), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002); *Mitchell,* 502 F.3d at 975-76 (factor is not vague because Congress defined what it

51

meant by "especially heinous, cruel, or depraved" when it specified that for this manner of killing to be aggravating, it must involve "torture or serious physical abuse to the victim"); *Jones*, 132 F.3d at 249-50.  This factor is therefore not unconstitutionally vague.

With regard to the "substantial planning and premeditation" factor, I have already held that it is not unconstitutionally vague when ruling on Defendant's Motion to Strike Statutory Aggravating Factors and Mental Culpability Factors Contained in, and, Motion to Dismiss, Notice of Intent to Seek a Sentence of Death (Doc. 280).  *See supra*.

As for the vagueness of the factor "Particularly Vulnerable Due to Infirmity," again, the courts have not agreed with Defendant's argument.  *See, e.g.*, *Bourgeois*, 423 F.3d at 510-11 (jury could not have had difficulty understanding that victim vulnerability aggravator directed it to consider facts of victim's infirmity).  "Any argument that . . . the factor that a victim was particularly vulnerable because of . . . infirmity lacks a "common-sense core of meaning . . . that criminal juries should be capable of understanding," is without merit.  *United States v. Sampson*, 275 F. Supp. 2d 49, 160 (D. Mass. 2003).  The vulnerability of a victim factor is not vague, *see United States v. Natson*, 444 F. Supp. 2d 1296, 1306 (M.D. Ga. 2006); it speaks to the frailty of the victim.  *Paul*, 217 F.3d at 1001.

### 4) The Future Dangerousness and Victim Impact NSAFs are Not Vague

As discussed *supra,* when rejecting Defendant's request to strike the NSAFs (Doc. 275), the future dangerousness and victim impact NSAFs are not unconstitutionally vague.

### 5) The Indictment and Notice Should Not be Dismissed

Defendant generally asserts that, because he has not received proper notice, the Third Superseding Indictment and the Notice must be dismissed.  Defendant, however, has not shown that

52

the threshold intent elements and aggravating factors are unconstitutionally vague. Based on the above authority, I have found the factors by their own wording to be constitutionally sufficient. Moreover, I expect that the informative outline, when used in conjunction with the Notice and Special Findings, will provide sufficient additional information that will assist him in preparing his defense. For these reasons, dismissal of the Indictment and Notice is not appropriate.

> **6.    Motion to Strike the Government's Notice of Intent to Seek a Sentence of Death as Unconstitutional (Doc. 283)**

Mr. Lujan moves the Court to declare the FDPA unconstitutional because the relaxed evidentiary standard of 18 U.S.C. § 3593(c) violates the Constitution. He contends that the aggravating factors are elements of the capital offense that must be proven with all the Due Process and Sixth Amendment protections that attach to the guilt phase of the trial. He argues that, under *Ring v. Arizona*, 536 U.S. 584 (2002), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), an aggravating factor increases the sentence beyond the maximum sentence authorized by the guilt phase and, thus, is an element of the offense requiring a jury determination. Defendant further asserts that, because the aggravating factor must be found by a jury beyond a reasonable doubt, the evidentiary standards employed during the guilt phase, including the right to confront and cross-examine witnesses, apply to the penalty phase. He argues that the heightened reliability standard of the Eighth Amendment compels the abandonment of the FDPA's unreliable balancing test for the admissibility of evidence. He also contends that the FDPA is unconstitutional because it does not forbid the introduction of testimonial hearsay evidence that would be barred under *Crawford v. Washington*, 541 U.S. 36 (2004). Defendant's arguments are unavailing.

The Supreme Court in *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted

to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. This prescription

governs, even if the State characterizes the additional findings as sentencing factors. *See id.* at 494.

The Supreme Court subsequently applied the rule announced in *Apprendi* to aggravating factors in

capital sentencing proceedings in *Ring v. Arizona*, holding that the Sixth Amendment requires the

jury to find the aggravating circumstances necessary for imposition of the death penalty. *See Ring*,

536 U.S. at 609. The Supreme Court explained that, because the State's "enumerated aggravating

factors operate as 'the functional equivalent of an element of a greater offense,' . . . the Sixth

Amendment requires that they be found by a jury." *Id.* (quoting *Apprendi*, 530 U.S. at 494 n.19).

The FDPA, in accordance with *Ring* and *Apprendi*, requires the jury to find aggravating

factors unless the defendant, with the approval of the government, waives his right to the jury. *See*

18 U.S.C. § 3593(b). Defendant nonetheless argues that the FDPA is unconstitutional because he

is constitutionally entitled to a sentencing proceeding that has the evidentiary protections associated

with trial. Rather than adopting the Federal Rules of Evidence that apply at trial, the FDPA provides

the following evidentiary standard at the penalty phase hearing: "Information is admissible

regardless of its admissibility under the rules governing admission of evidence at criminal trials

except that information may be excluded if its probative value is outweighed by the danger of

creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

Contrary to Mr. Lujan's argument, neither *Apprendi* nor *Ring* discusses the evidentiary

standard that should apply in a penalty phase hearing, and thus, neither case compels finding the

FDPA unconstitutional based on its "relaxed" evidentiary standard. Defendant points to Justice

Scalia's concurrence in *Ring* in which he stated: "Those States that leave the ultimate life-or-death

decision to the judge may continue to do so – by requiring a prior jury finding of aggravating factor

in the sentencing phase or, more simply, by placing the aggravating-factor determination (where it logically belongs anyway) in the guilt phase." 536 U.S. at 612-13. This comment, however, does not extend as far as Defendant wishes. Justice Scalia did not assert that the Federal Rules of Evidence are constitutionally required in any proceeding in which the jury is determining an element of a crime. Rather, Justice Scalia has since made clear, writing for a majority of the Supreme Court in *Crawford*, that constitutional standards of admissible evidence and evidentiary standards reflected in the Federal Rules of Evidence are not the same. *See Crawford*, 541 U.S. at 51 ("[N]ot all hearsay implicates the Sixth Amendment's core concerns. An off-hand, overheard remark might be unreliable evidence and thus a good candidate for exclusion under hearsay rules, but it bears little resemblance to the civil-law abuses the Confrontation Clause targeted. On the other hand, *ex parte* examinations might sometimes be admissible under modern hearsay rules, but the Framers certainly would not have condoned them.").[13]

The Supreme Court has repeatedly emphasized that, in a capital penalty phase hearing, it is essential that the jury have before it all possible relevant information about the defendant in order to accomplish the individualized sentencing required by the Eighth Amendment. *See Jurek*, 428 U.S. at 276; *Gregg*, 428 U.S. at 203-04 ("So long as the evidence introduced and the arguments

---

[13] Defendant also cites *Specht v. Patterson*, 386 U.S. 605, 609 (1967), for the proposition that, where an accused faces a separate criminal proceeding in which he faces a magnified sentence, the accused is entitled to the full panoply of the relevant protections which due process guarantees. The Supreme Court, however, did not list application of the rules of evidence among the fundamental due process rights. *See id.* at 609-10. Instead, the Court noted the following rights necessary for due process: to confront and cross-examine witnesses against him, to have the presence of counsel, the opportunity to be heard, to offer evidence of his own, and to have findings adequate to make meaningful any appeal that is allowed. *See id.* *Specht* thus does not stand for the broader proposition that Defendant seeks – that the Constitution requires the application of the same rules of evidence in the guilt phase as in the penalty phase.

made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision."). *See also Fell*, 360 F.3d at 143 ("Facts relevant to sentencing are far more diffuse than matters relevant to guilt for a particular crime. . . . [I]t is appropriate for the sentencing authority, whether jury or judge, to consider a defendant's whole life and personal make-up."). By making the Federal Rules of Evidence inapplicable to the penalty phase, the FDPA helps ensure that the jury can consider all relevant aggravating and mitigating evidence, some of which may otherwise be inadmissible under traditional evidentiary restraints. Additionally, the FDPA provides even greater protection against prejudicial information than the Federal Rules of Evidence, because the FDPA permits a judge to exclude information whose probative value is outweighed by the danger of unfair prejudice, rather than the "substantially outweighed" standard set forth in Rule 403. *See Jones*, 132 F.3d at 241 n.7.

For these reasons, Defendant's argument has been rejected by the Second, Fourth, Fifth, Eighth, and Ninth Circuits. *See Mitchell*, 502 F.3d at 979-80; *United States v. Fulks*, 454 F.3d 410, 437-38 (4th Cir. 2006); *Lee*, 374 F.3d at 648-49; *Fell*, 360 F.3d at 143-46; *Webster*, 162 F.3d at 354. The Tenth Circuit has also foreclosed Defendant's argument by adopting the reasoning of its sister circuits in rejecting the same argument challenging a virtually identical evidentiary standard in 21 U.S.C. § 848(j). *See Barrett*, 496 F.3d at 1109. The Tenth Circuit explained its reasoning as follows:

> [T]he Second, Fourth, Fifth, and Eighth Circuits have expressly rejected claims that a nearly identical provision of the FDPA, 18 U.S.C. § 3593(c), is unconstitutional. In doing so, the Fourth Circuit noted that "[t]he Evidence Rules do not set forth the constitutional parameters of admissible evidence, nor does a criminal defendant have a constitutional right to have the [Evidence Rules] in place." Instead, the Fourth Circuit noted, "the FDPA provides a capital defendant with constitutionally

sufficient evidentiary protections" because, "[e]ven without the protections of the Evidence Rules, it remains for the [district] court, in the exercise of its judgment and discretion, to ensure that unconstitutional evidence otherwise admissible under applicable evidentiary rules is excluded from trial." Similarly, the Second Circuit noted that the FDPA's evidentiary standard is "both constitutionally permissible and relevant to the determination of whether the death penalty should be imposed in a given case." Indeed, the Second Circuit noted, "the FDPA does not undermine heightened reliability," but rather "promotes it."

Although these cases are not binding on us, we find them persuasive and thus apply their reasoning in rejecting Barrett's challenge to § 848(j).

*Id.* (internal citations omitted).

Because the FDPA provides the means to exclude unconstitutional and prejudicial evidence from the penalty phase, the Court will exercise its judgment and discretion to ensure that any such evidence is excluded therefrom. Defendant's Confrontation Clause concerns therefore do not mandate striking down the FDPA as unconstitutional.[14] The FDPA's evidentiary standard embodies policy decisions made by Congress. As long as that standard is constitutional, it is not the Court's role to change. Accordingly, Defendant's motion is denied.

7.      **Motion to Declare the Federal Death Penalty Act Unconstitutional because it Limits the Jury's Consideration of Mitigation Evidence and Incorporated Memorandum (Doc. 286)**

Defendant argues that the FDPA unconstitutionally limits the jury's consideration of mitigating evidence by statutorily prohibiting a jury from considering national origin, cultural factors, and race factors that a defendant may wish to present as part of his mitigation case. He

---

[14] Because I believe the FDPA's evidentiary standard is constitutional regardless of the Confrontation Clause's applicability to the penalty phase, I do not need to decide now whether the Confrontation Clause applies at sentencing. This issue is more appropriately the subject of a motion in limine regarding penalty phase evidence.

contends that the case should, therefore, proceed as a non-capital case.[15]  I disagree.

The statutes which Defendant claims are in conflict and, therefore, unconstitutionally impede his defense in sentencing are 18 U.S.C. § 3592(a) and § 3593(f).

In relevant part, 18 U.S.C. § 3592(a) states:

(a) Mitigating factors.  In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, . . . .

(8)  Other Factors.  Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.

18 U.S.C. § 3593 (f) provides:

In a hearing held before a jury, the court, prior to the return of a finding under subsection (e), shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be.  The jury, upon return of a finding under subsection (e), shall also return to the court a certificate, signed by each juror, that consideration of the race, color, religious beliefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or any victim may be.

While the Supreme Court has held that the Eighth Amendment is violated when a death penalty statute precludes consideration of any relevant mitigating evidence, *see Lockett v. Ohio*, 438 U.S. 586, 608 (1978), I do not see the conflict asserted by Defendant.  Contrary to Mr. Lujan's

---

[15] Defendant has not articulated any details of the information that he plans to present in mitigation of sentence and states only that it is "possible" that issues of national origin and cultural factors will be a part of his mitigation evidence.  He has not argued that, with regard to this issue, the FDPA is unconstitutional as applied to him.

argument, and upon his own admission, numerous courts have found these two statutes to be compatible:

> Although race *per se* is an irrelevant and inadmissible factor, the *effects and experiences* of race may be admissible [during sentencing]. If a defendant can show that his life has been marked by discrimination or some other set of experiences, irrespective of whether the result, in part, of his race [sic] then that properly might be admissible as relevant mitigating background or character evidence. But this is a far cry from using race in and of itself as a proxy for such a set of beliefs and experiences. Pigmentation does not define a person's character or background; the life that a person has led and the things that he has experienced do.

*Cooper*, 91 F. Supp. 2d at 101-02 (citing *Webster*, 162 F.3d at 356-57). "[N]either the Constitution nor the FDPA prevents the jury from considering the 'effects and experiences' of the protected factors found within § 3593(f)." *United States v. Henderson*, 485 F. Supp. 2d 831, 851 (S.D. Ohio 2007). *See also Webster*, 162 F.3d at 356-57; *United States v. O'Reilly*, 2007 U.S. Dist. LEXIS 62122, *22 (E.D. Mich. 2007) (unpublished decision); *Sablan*, 2006 U.S. Dist. LEXIS 96150 at *49. "Thus, far from being unconstitutional, the FDPA complies with the constitutional mandate that race be irrelevant during sentencing, while at the same time permitting the jury to hear mitigating evidence concerning the defendant's experiences resulting from his race, color, religion, national origin or gender, and the effect those experiences have had on his life." *Cooper*, 91 F. Supp. 2d at 102. Like many other courts, I find no conflict between 18 U.S.C. § 3592(a) and § 3593(f) that unconstitutionally impedes upon a defendant's defense in sentencing and prevents him from presenting information about the effect that race and culture have had on his life.

Defendant argues, in the alternative, that, even if those statutes are not unconstitutionally in conflict, the jury will not be able to navigate a distinction between race and culture and the effects of race and culture. I disagree, as, even if this were an accurate assumption, the Court can, through instructions, help clarify any confusion a jury may have. Juries can receive additional instructions

to assist in further narrowing and defining the terms used and the concepts communicated in a death penalty case. *See McVeigh*, 944 F. Supp. at 1488. Moreover, "[t]he assumption that juries can and will follow the instructions they are given is fundamental to our system of justice." *United States v. Cardall*, 885 F.2d 656, 668 (10th Cir. 1989) (citing *Parker v. Randolph*, 442 U.S. 62, 73 (1979)). Accordingly, while I am not convinced in the first instance that juries are unable to distinguish between the concept of "race, color, religious beliefs, national origin, or sex of the defendant or a victim" versus the effect of those concepts on a person's background, character and experience, I am even less convinced that detailed jury instructions would not cure any confusion.

I, therefore, will deny Defendant's Motion to Declare the FDPA Unconstitutional because it limits the Jury's Consideration of Mitigation Evidence.

> **8.     Motion for Order Declaring the Federal Death Penalty Act Unconstitutional and Dismissing Notice of Intent to Seek the Death Penalty due to Improper Evidentiary Standard for Penalty Phase and Incorporated Memorandum (Doc. 288)**

Defendant argues that the FDPA is unconstitutional because it provides for a relaxed evidentiary standard at the penalty phase. This motion substantively mirrors Defendant's Motion to Strike the Government's Notice of Intent to Seek a Sentence of Death as Unconstitutional (Doc. 283). I will deny this motion for the same reasons discussed *supra* in analyzing Defendant's motion to strike the FDPA as unconstitutional (Doc. 283).

> **9.     Motion to Declare the Federal Death Penalty Act Unconstitutional due to Deficient Appellate Procedures and Incorporated Memorandum (Doc. 290)**

The Supreme Court has "emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally." *See Parker v. Dugger*, 498 U.S. 308, 321 (1991). Meaningful appellate review promotes reliability and

consistency by ensuring that each defendant receive an individualized and reliable sentencing determination based on his circumstances, background, and the crime. *See Clemons v. Mississippi*, 494 U.S. 738, 749 (1990).

The FDPA contains an appellate review section. *See* 18 U.S.C. § 3595. The FDPA provides that a capital sentence "shall be subject to review by the court of appeals upon appeal by the defendant." 18 U.S.C. § 3595(a). The defendant must file the notice of appeal within the time specified for filing a notice of appeal. *Id.* Upon review, the court of appeals must review the entire record in the case. *Id.* § 3595(b). The court of appeals also "shall address all substantive and procedural issues raised on the appeal of a sentence of death, and shall consider whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor and whether the evidence supports the special finding of the existence of an aggravating factor required to be considered under section 3592." *Id.* § 3595(c)(1). If the court of appeals finds that the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; the admissible evidence and information does not support the finding of the existence of a required aggravating factor; or the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal, "the court shall remand the case for reconsideration under section 3593 or imposition of a sentence other than death." *Id.* § 3593(c)(2).

Defendant asserts that the FDPA is unconstitutional because (1) automatic appeal is not provided; (2) it fails to provide for proportionality review of the sentence; (3) the scope of the appeal is circumscribed in that it does not provide for plain error review; and (4) it provides for a retrial of the penalty phase upon reversal and remand, violating the Double Jeopardy Clause. As discussed above, these issues may well not be ripe for consideration. Nevertheless, I conclude that the FDPA

61

provides meaningful appellate review, based on its mandating the court of appeals to review the entire record; to address all substantive and procedural issues raised on appeal; and to review whether the sentence was influenced by passion, prejudice, or any other arbitrary factor, whether the evidence supports the required aggravating factor, and whether any other legal error occurred requiring reversal.  *See*, *e.g.*, *O'Reilly*, 2007 WL 2421502 at *10-11 (explaining how FDPA appellate procedures help ensure death penalty is not imposed arbitrarily or irrationally); *Frank*, 8 F. Supp. 2d at 271-72 (concluding that FDPA provides constitutionally meaningful appellate review); *United States v. Davis*, 904 F. Supp. 554, 563 (E.D. La. 1995) (same).  I also reject each of Mr. Lujan's specific arguments for the reasons discussed below.

### a.  Automatic appeal not required

Although the Supreme Court has characterized an automatic appeal provision as an "important additional safeguard,"  *Gregg*, 428 U.S. at 198, it does not inevitably follow that the Supreme Court has determined that this safeguard is constitutionally indispensable, *cf. Pulley*, 465 U.S. at 44-45 ("that some schemes providing proportionality review are constitutional does not mean that such review is indispensable").  Indeed, Defendant has not cited any case in which the lack of an automatic appeal provision rendered the FDPA unconstitutional.

The district court in an unpublished opinion in *United States v. Gooch*, 2006 WL 3780781 (D.D.C. Dec. 20, 2006), provided cogent reasoning why the lack of an automatic appeal provision does not render the FDPA unconstitutional:

> [C]riminal defendants are permitted to waive constitutional safeguards in a number of weighty contexts; so long as a waiver is knowing and voluntary, it is accorded respect.  While, to be sure, death is different, the rationale Mr. Gooch offers for requiring automatic appeals – that a defendant might abandon his appellate rights during a temporary bout of depression or suicidal ideation – is nothing more than unsupported speculation about hypothetical situations, and is no basis to invalidate

the statute. These fears can be assuaged in an individual case, should they materialize, by careful scrutiny of a defendant's competence to waive his appellate rights. Moreover, a capital defendant is afforded at least two counsel, who are obligated to advise a defendant on his appellate rights when there is reason to think . . . that a rational defendant would want to appeal. And filing a notice of appeal is a simple, ministerial task, easily undertaken by counsel on a defendant's behalf. Accordingly, the Court finds the appellate review provisions of the FDPA constitutionally sufficient, notwithstanding that appeal is not automatic.

*Id.* at *10 (internal citations and quotations omitted).

I agree with the reasoning of *Gooch* and with the numerous courts that have concluded that an automatic appeal provision is not constitutionally required in capital cases and that the FDPA's appellate procedures are sufficient without such a provision. *See*, *e.g.*, *United States v. Talik*, 2007 WL 4570704, *4 (N.D.W.Va. Dec. 26, 2007) (unpublished decision) (concluding that FDPA provides meaningful appellate review despite lack of automatic appeal provision); *Gooch*, 2006 WL 3780781 at *10 (same); *Llera Plaza*, 179 F. Supp. 2d at 461 n.15 ("Compliance with time limitations may impose certain constraints on a defendant seeking appellate review of a death sentence, but those constraints are not, as a general matter, so onerous as to render the review meaningless."); *Cooper*, 91 F. Supp. 2d at 99 (rejecting argument that lack of automatic appeal provision rendered FDPA unconstitutional); *Frank*, 8 F. Supp. 2d at 270 (noting that Supreme Court has never explicitly held that capital penalty scheme must provide mandatory appellate review; instead, Court's decisions focus on quality of review provided); *McVeigh*, 944 F. Supp. at 1484-85 (rejecting same argument because it is speculative and adequate resources are ensured to protect against possibility of loss of appeal resulting from mental or emotional infirmity, such as assistance of counsel and of consultants and advisors, including psychiatrists); *Davis*, 904 F. Supp. at 563 (FDPA provides meaningful review).

### b.       Proportionality review not required

As discussed *infra*, the Eighth Amendment prohibits the imposition of punishments that are grossly disproportionate to the crime.  *See Coker*, 433 U.S. at 592.  The proportionality review proposed by Defendant here is one that inquires whether the penalty is unacceptable in a particular case because disproportionate to the punishment imposed on others convicted of the same or similar crimes.  *See Pulley*, 465 U.S. at 43.  Although the Supreme Court in *Gregg v. Georgia* noted that comparative proportionality review was "an important additional safeguard against arbitrariness and caprice," *see* 428 U.S. at 198, the Supreme Court has since clarified that the Eighth Amendment does not require comparative proportionality review of a death sentence, s*ee Pulley*, 465 U.S. at 43-45.  So long as the sentencing scheme is not "so lacking in other checks on arbitrariness that it would not pass constitutional muster without comparative proportionality," proportionality review is not constitutionally required.  *Id.* at 51.

Courts have consistently concluded that the FDPA, even though a "weighing" scheme, has sufficient procedural protections to guide the jury's discretion and minimize the risk of arbitrary and capricious action such that its lack of proportionality review does not render it unconstitutional.  *See*, *e.g.*, *Mitchell*, 502 F.3d at 980-81 (rejecting argument that Constitution requires proportionality review in death sentences and holding that *Pulley* is not distinguishable merely because FDPA is "weighing" statute); *Higgs*, 353 F.3d at 321 (same); *Allen*, 247 F.3d at 760 (holding that FDPA contained sufficient safeguards to prevent arbitrary imposition of death penalty that it passed constitutional muster despite lack of proportionality review); *Jones*, 132 F.3d at 240-41 (same); *Cooper*, 91 F. Supp. 2d at 99 (rejecting argument that FDPA is unconstitutional for lack of proportionality review).  *See also Barrett*, 496 F.3d at 1109 (on plain error review, rejecting

argument that § 848 was unconstitutional for failure to require proportionality review of death sentence).

### c.      FDPA does not prohibit plain error review

Although the FDPA does not explicitly provide for plain error review, it states that the case should be remanded if "the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure."  18 U.S.C. § 3595(c)(2)(C).  Federal Rule of Criminal Procedure 52(b) independently provides: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."  Fed. R. Crim. P. 52(b).  Moreover, § 3593(c)(1) mandates that the appellate court consider whether the sentence of death was imposed under "any other arbitrary factor," a phrase broad enough to allow an appellate court to address and remedy any error of law occurring during the sentencing phase of the trial.  *Cf. Walker*, 910 F. Supp. at 845 (considering similar provision in 21 U.S.C. § 848(q)).  Therefore, contrary to Defendant's argument, the FDPA does not forbid plain error review.  *See Jones*, 527 U.S. at 388-89 (1999) (reviewing claimed error in penalty phase jury instructions to which no objection was taken under plain error review); *O'Reilly*, 2007 WL 2421502 at *11 (explaining that plain error review is available under FDPA); *Gooch*, 2006 WL 3780781 at * 10-11 (same); *Cooper*, 91 F. Supp. 2d at 99 (same).

### d.      FDPA does not violate double jeopardy

The protection afforded by the Double Jeopardy Clause to one acquitted by a jury operates to bar a second capital penalty hearing, upon remand, where the jury has rejected the government's claim that the defendant deserves to die on the merits, *i.e.*, the jury finds the government failed to prove one or more aggravating circumstances beyond a reasonable doubt, in a first capital sentencing

proceeding that bears the hallmarks of a trial. *See Sattazahn v. Pennsylvania*, 537 U.S. 101, 106-08 (2003); *Bullington v. Missouri*, 451 U.S. 430, 445-46 (1981).

Defendant contends that § 3595(c)(2)(B) violates the Double Jeopardy Clause because it requires remand for a second penalty phase trial where the appellate court has determined that the evidence is insufficient to support the required aggravating factor. The problem with Defendant's argument, however, is that the language of the FDPA does not mandate remand for another penalty phase trial. Rather, the court "shall remand the case for reconsideration under section 3593 *or imposition of a sentence other than death*." 18 U.S.C. § 3593(c)(2) (emphasis added). Although the statute could be construed as allowing for a new penalty phase trial after finding insufficient evidence of the existence of a requisite aggravating factor, the disjunctive also permits a construction in which the option of imposing a sentence other than death is available to the appellate court for a reversal based on insufficiency of the evidence. Ambiguities in statutory interpretation must be resolved in favor of saving the statute from unconstitutionality. *See Rust v. Sullivan*, 500 U.S. 173, 190 (1991) ("[A]s between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act.") (quoting *Blodgett v. Holden*, 275 U.S. 142, 148 (1927)). Accordingly, the FDPA should be interpreted as requiring remand to impose a sentence other than death for insufficient evidence of the statutory aggravating factor, and thus the FDPA's remand provision is constitutional. *See Talik*, 2007 WL 4570704 at *22-23; *Gooch*, 2006 WL 3780781 at *17; *Llera Plaza*, 179 F. Supp. 2d at 462 n.16; *Davis*, 904 F. Supp. at 562-63.

For the foregoing reasons, Defendant's motion to declare the FDPA unconstitutional due to deficient appellate procedures will be denied.

**IT IS THEREFORE ORDERED** that

1.      Defendant's Motion to Strike Non-Statutory Aggravators in Notice of Intent to Seek the Death Penalty (Doc. 275) is **DENIED**;

2.      Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional Due to the Act's Prohibition of Defendant's Waiver of Jury Sentencing (Doc. 279) is **DENIED**;

3.      Defendant's Motion to Strike Statutory Aggravating Factors and Mental Culpability Factors Contained in, and Motion to Dismiss, Notice of Intent to Seek a Sentence of Death (Doc. 280) is **DENIED**;

4.      Defendant Lujan's Motion to Strike Notice of Intent to Seek a Sentence of Death as Arbitrary and Disproportionate (Doc. 281) is **DENIED**;

5.      Defendant Lujan's Motion to Declare the Federal Death Penalty Act Unconstitutional and to Strike Special Findings from the Indictment and the Death Penalty Notice for Inadequate Notice (Doc. 282) is **DENIED**;

6.      Defendant's Motion to Strike the Government's Notice of Intent to Seek a Sentence of Death as Unconstitutional (Doc. 283) is **DENIED**;

7.      Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional because it Limits the Jury's Consideration of Mitigation Evidence (Doc. 286) is **DENIED**;

8.      Defendant's Motion for Order Declaring the Federal Death Penalty Act Unconstitutional and Dismissing Notice of Intent to Seek the Death Penalty due to Improper Evidentiary Standard for Penalty Phase (Doc. 288) is **DENIED;** and

9.      Defendant's Motion to Declare the Federal Death Penalty Act Unconstitutional due

to Deficient Appellate Procedures (Doc. 290) is **DENIED.**


_____

UNITED STATES DISTRICT JUDGE