**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA

       Plaintiff,

v.                                 No. CR 05-924 RB

LARRY LUJAN,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on a Motion to Declare the Federal Death Penalty Act (FDPA) Unconstitutional by Reason of its Unusual and Infrequent Application, and because of its Racially and Ethnically Skewed Application (Doc. 289).  I heard evidence relating to, and argument on, the motion at a hearing conducted on August 12, 2008.  Having considered the motion, briefs, arguments, statements, and the relevant authority, I find that the motion should be denied.

**I.     BACKGROUND**

On July 10, 2007, the grand jury returned the Third Superseding Indictment (Doc. 144) in this case, charging Defendants Larry Lujan, Kacey Lamunyon and Eugenio Medina with (1) "Kidnapping Resulting in Death," in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2, and (2) "Tampering with a Witness Resulting in Death," in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2.  The Third Superseding Indictment also includes a Notice of Special Findings against Mr. Lujan.  The United States filed a Notice of Intent to Seek a Sentence of Death (Doc. 146) against him on July 12, 2007.   On December 13, 2007, the Court granted the motions of Defendants' Lamunyon and Medina to sever their trials from that of Defendant Lujan (Doc.

220).   Defendant Lujan filed his Motion to Declare the Federal Death Penalty Act

Unconstitutional by Reason of its Unusual and Infrequent Application, and because of its

Racially and Ethnically Skewed Application (Doc. 289) on April 30, 2008.  On July 11, 2008,

the Government filed its Response (Doc. 360).  Defendant Lujan's Reply (Doc. 394) was filed

on July 28, 2008.

In his Motion, Defendant Lujan argued that the FDPA should be declared

unconstitutional because of its infrequent and unusual application, and because it is applied in a

racially and ethnically imbalanced way.  Defendant Lujan stated that, although "the government

correctly notes that the current state of the jurisprudence is that, without proof of a racially

discriminatory intent, the racial skew in the application of the death penalty is without legal

consequence", "no legislator or legislature (or, for that matter prosecutor)" will admit such a

purpose. (Def. Reply at 2).  Defendant argued that, nevertheless, such a bias runs through public

policy decisions.  Defendant admitted that each case is built on features which are individual and

unique, but inferred that the death penalty process produces arbitrary results, is not truly color

blind and condemns the innocent.

The Government responded that Defendant's arguments are without merit and have been

rejected by every Federal court which has considered them.  Further, the Government argued,

Defendant has not attempted to demonstrate that the decision to seek the death penalty was

motivated by any improper consideration or motive on the part of the Government.  The

Government contended that the FDPA has standards and guides the decisionmaker, unlike the

statutes in *Furman*, the case upon which Defendant heavily relied for his argument.  The

Government averred that Defendant's argument is not supported by his submissions.

II.     ANALYSIS

A.      The FDPA is rarely used

"The fact that the federal death penalty is infrequently sought and imposed does not render it unconstitutional."  *United States v. Sablan,* 2006 WL 1028780 (D. Colo. 2006) (unpublished) (citing *United States v. Sampson*, 275 F. Supp. 2d 49, 88 (D. Mass. 2003)).

*See United States v. Mitchell*, 502 F.3d 931, 983 (9th Cir. 2007); *United States v. Sampson*, 486 F.3d 13, 23 (1st Cir. 2007).

Defendant Lujan cited statistics from the Federal Death Penalty Resource Counsel Project to show that there is a small number of individuals against whom the death penalty has been sought or who have been executed under the FDPA.  However, Defendant, while showing that the FDPA may rarely be used, has not articulated how the fact that the FDPA is rarely used makes it unconstitutional.  The Supreme Court has made clear that its decisions with regard to the death penalty are not based on the frequency, or infrequency, of its application.  *Id.*  The focus of the Supreme Court's jurisdiction has been ensuring that a juries' discretion is guided. *Id.*  Similarly, the prosecutor's decision to seek the death penalty against a defendant is a guided process.  *Id.* at 24.  The FDPA is intended to narrow the class of people who are subject to the penalty of death; the fact that there are few people who are under a sentence of death would indicate that the FDPA is performing the role it was intended to serve.  The fact that the federal penalty of death is used infrequently does not deem it unconstitutional.

B.      The FDPA is not applied in a racially and ethnically disproportionate and arbitrary fashion

"Where discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared, that discretion must be suitably

directed and limited so as to minimize the risk of wholly arbitrary and capricious action."

*McCleskey v. Kemp*,  481 U.S. 279, 302 (1987) (quoting *Gregg v. Georgia*, 428 U.S. 153, 189

(1976)).  Defendant has provided no case law in support of his contention that the FDPA is

applied in a racially and ethnically disproportionate and arbitrary fashion.  Defendant has,

however, presented a vague allegation that "evidence exists." (Motion at 4).  Defendant also

stated as proof of his argument, but without case names, dates, etc., that former Attorney General

Ashcroft required capital trials for nineteen defendants.

   While various studies with regard to the death penalty and potential biases exist[1], mere

statistics are not sufficient to prove racial bias.  *See McCleskey*, 481 U.S. at 293-296; *Sampson*,

486 F.3d  at 26.  Such statistics do not provide the details about an offender which are necessary

to making the capital punishment determination;  all that Defendant Lujan has provided as

details is race.

   The process by which the Government decided whether to seek the death penalty

contains multiple safeguards to prevent arbitrariness in its selection decision. *Sampson*, 486 F.3d

at 24.  The decision is not that of one person, but of several.  And, the concern for racial and

other biases is not ignored.  For example, within the United States Attorneys' Manual, with

regard to capital crimes are the following:

   9-10.030      Purposes of the Capital Case Review Process

> The review of cases under this Chapter culminates in a decision to
> seek, or not to seek, the death penalty against an individual
> defendant. Each such decision must be based upon the facts and
> law applicable to the case and be set within a framework of

---

   [1]      *See United States v. Bin Laden*, 126 F. Supp. 2d 256 (S.D.N.Y. 2000) (whether the racial statistics of a 2000 DOJ Survey show positive or negative bias depends on whether different factors, such as the number of individuals of a specific race who are death eligible, were considered in the analysis).

consistent and even-handed national application of Federal capital sentencing laws. Arbitrary or impermissible factors—such as a defendant's *race, ethnicity*, or religion—will not inform any stage of the decision-making process. The overriding goal of the review process is to allow proper individualized consideration of the appropriate factors relevant to each case.

9-10.120        Department of Justice Review

. . . The Capital Review Committee will consider all information presented to it, including any allegation of individual or systemic *racial bias* in the Federal administration of the death penalty. After considering all information submitted to it, the Committee shall make a recommendation to the Attorney General through the Deputy Attorney General.

9-10.130        Standards for Determination

The standards governing the determination to be reached in cases under this Chapter include fairness, national consistency, adherence to statutory requirements, and law- enforcement objecti ves.

1.        Fairness requires all reviewers to evaluate each case on its own merits and on its own terms. As with all other actions taken in the course of Federal prosecutions, *bias* for or against an individual based upon characteristics such as *race or ethnic origin* play no role in any recommendation or decision as to whether to seek the death penalty.

http://www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/10mcrm.htm.

A decision to seek the death penalty is based on an individual determination, and this

type of case-by-case determination can lead to discrepancies in the FDPA's application.

However, "nothing in any of our cases suggests that the decision to afford an individual

defendant mercy violates the Constitution." *Gregg*, 428 U.S. at 199.

The Constitution is not offended by inconsistency in results based on the objective circumstances of the crime.  Numerous legitimate factors may influence the outcome of a trial and a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt.  If sufficient evidence to link a suspect to a crime cannot be found, he will not be charged.  The capability of the responsible

> law enforcement agency can vary widely.  Also, the strength of the
> available evidence remains a variable throughout the criminal
> justice process and may influence a prosecutor's decision to offer a
> plea bargain or to go to trial.  Witness availability, credibility, and
> memory also influence the results of prosecutions.

*McCleskey,* at 307 n. 28.  Defendant Lujan has failed to prove that the FDPA is applied in a

racially and ethnically disproportionate and arbitrary fashion.

### C.       The FDPA is not applied irrationally

Defendant relies heavily on the case of *Furman v. Georgia*,  408 U.S. 238 (1972), for

support of his argument that the FDPA is applied irrationally.  *Furman* struck down state death

penalty schemes as being incompatible with the guarantees of the Eighth and Fourteenth

Amendments to the U.S. Constitution against cruel and unusual punishment.

Lumping 21 U.S.C. §848 in with the FDPA, Defendant alleges that there have been

"wildly unpredictable determinations about who should live or die" and that the federal death

penalty "continues to be wantonly and freakishly imposed."  (Motion at 8).  Defendant Lujan

does not, however, articulate to the Court any specific facts to prove his argument or to

demonstrate the rationale behind his assertions.  In *Furman*, the Court concluded that the death

penalty was so irrationally imposed that any particular death sentence could be presumed

excessive.  Under the statutes at issue in *Furman*, there was no basis for determining in any

particular case whether the penalty was proportionate to the crime: "[T]he death penalty [was]

exacted with great infrequency even for the most atrocious crimes and . . . there [was] no

meaningful basis for distinguishing the few cases in which it [was] imposed from the many cases

in which it [was] not." *McCleskey*, 481 U.S. at 301 (citing *Furman*, 408 U.S. at 313, Justice

White concurring).  While Defendant looks back longingly at *Furman*, he completely ignores all

that has happened in the meantime.  The view of the *Furman* court has not been represented with

regard to the FDPA, and the FDPA clearly differs from the statutes discussed in *Furman*.

"[T]here can be 'no perfect procedure for deciding in which cases governmental authority should be used to impose death.'" *Zant v. Stephens*, 462 U.S. 862, 904 (1983) (citing *Gregg*, 428 U.S. at 192-196; *Lockett v. Ohio*, 438 U.S. 586, 605 (1978) (plurality opinion of Burger, C. J.)). Nevertheless,

> [t]he FDPA provides sufficient safeguards to prevent the arbitrary imposition of the death penalty. First, the legislature designed a narrow statute by applying the death penalty to a limited number of criminal offenses.  See 18 U.S.C. § 3591. Second, the statute further narrows the class of persons eligible for the death penalty by requiring a finding of at least one statutory aggravating factor. See 18 U.S.C. § 3593(d).  And third, the statute provides for appellate review to determine whether the evidence supports the special finding of an aggravating factor and to ensure that the death sentence was not imposed under the influence of passion, prejudice or any other arbitrary factor.  See 18 U.S.C. § 3595.

*United States v. Jones*, 132 F.3d 232, 241 (5th Cir. 1998).  "[T]he FDPA fully meets the requirements of guided discretion, suitably directing and limiting the leeway afforded to the decision makers." *Sampson*, 486 F.3d at 24.

Under the FDPA, the facts and circumstances specific to a case are taken into consideration in determining whether the death penalty is appropriate.  The FDPA provides individualized sentencing.  "Consideration of the character and record of the individual offender and the circumstances of the particular offense [is] a constitutionally indispensable part of the process of inflicting the penalty of death." *Eddings v. Oklahoma*, 455 U.S. 104, 112 (1982) (citing *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976).  Mr. Lujan has not provided any facts specific to any of the cases to which he referred in support of his argument and only references a summary of cases provided under the website http://www.capdefnet.org (Motion at 8).  His argument is devoid of all of the details and information which could demonstrate a lack of rationality in the FDPA.  Defendant's argument is unsupported.

The FDPA is not applied irrationally.

### D.      As applied

Defendant stated in the closing paragraph of his motion that the FDPA is unconstitutional

as applied (Motion at 9).  In order for a defendant to challenge the FDPA "as applied," he must

prove "the existence of purposeful discrimination" that had a "discriminatory effect" on him.

*United States v. Sablan*,  2006 U.S. Dist. LEXIS 96150, *43-44 (D. Colo. 2006) (unpublished)

(citing *McCleskey*, 481 U.S. at 293; *United States v. Bin Laden*, 126 F. Supp. 2d 256, 260-261

(S. D. N. Y. 2000)).  To show purposeful discrimination, defendant must prove that, in his case,

one of the decisionmakers acted with discriminatory intent.  *McCleskey*, 481 U.S. at 292-3.

Direct or circumstantial evidence can be used to prove discriminatory intent.  *See Batson v.*

*Kentucky*, 476 U.S. 79, 93 (1986).  "To establish a discriminatory effect in a race case, the

claimant must show that similarly situated individuals of a different race were not prosecuted."

*United States v. Deberry*, 430 F.3d 1294, 1299 (10th Cir. 2005) (citing *United States v.*

*Armstrong*, 517 U.S. 456, 465 (1996)).  "[D]efendants are similarly situated when their

circumstances present no distinguishable legitimate prosecutorial factors that might justify

making different prosecutorial decisions with respect to them."  *Id.* at 1301 (citing *United States*

*v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996)).  Where defendant cannot point to any individual in a

similar situation who was not prosecuted, his argument remains below the threshold point of

official discrimination.  *Attorney General of the United States v. The Irish People, Inc.*, 684 F.2d

928, 946 (D.C. Cir. 1982).  When a law is fair on its face, and impartial in appearance, but

applied and enforced by the government with "an evil eye and an unequal hand, so as practically

to make unjust and illegal discrimination between persons in similar circumstances, material to

their rights," such disparate treatment is still unconstitutional. *Wo v. Lee*, 118 U.S. 356, 373-374

(1886).

Defendant's burden is a heavy one.  Particularly so, given that he must show actual,

discriminatory intent on the part of one of the decision makers and he does not have access to the

internal workings of the group that decided to certify his eligibility for the death penalty.

Nevertheless, I hesitate to require less of him and am counseled to presume good faith.  A

prosecutor has wide discretion in deciding whether to seek the death penalty,  *McCleskey*, 481

U.S. at 296-97, and without any evidence indicating the contrary, a prosecution is presumed to

have been undertaken in good faith. *United States v. Minerd*, 176 F. Supp. 2d 424, 442 (W.D. Pa.

2001) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)); *United States v. Frank,* 8 F.

Supp. 2d 253, 283 (S.D.N.Y. 1998).  Further, "the decision to prosecute 'is particularly ill-suited

to judicial review.'"  *Deberry*, 430 F.3d 1294, 1299 (citing *Wayte*, 470 U.S. at 607).

> This broad discretion rests largely on the recognition that the decision to
> prosecute is particularly ill-suited to judicial review.  Such factors as the strength
> of the case, the prosecution's general deterrence value, the Government's
> enforcement priorities, and the case's relationship to the Government's overall
> enforcement plan are not readily susceptible to the kind of analysis the courts are
> competent to undertake.  Judicial supervision in this area, moreover, entails
> systemic costs of particular concern.  Examining the basis of a prosecution delays
> the criminal proceeding, threatens to chill law enforcement by subjecting the
> prosecutor's motives and decision making to outside inquiry, and may undermine
> prosecutorial effectiveness by revealing the Government's enforcement policy.
> All of these are substantial concerns that make the courts properly hesitant to
> examine the decision whether to prosecute.

*Wayte v. United States*, 470 U.S. 598, 607-08 (1985).

It is in the discretion of the government to prosecute an accused, file particular charges or

to bring the matter before the grand jury, provided the prosecutor has probable cause to believe

that the accused has committed that offense as set forth by statute. *Wayte v. United States*, 470

U.S. 598, 608 (1985) (citing *Bordenkircher*, 434 U.S. at 364).  Despite the protective nature of

the courts over the authority of the prosecution and the prevention of fishing expeditions, "[t]he similarly situated requirement does not make a selective-prosecution claim impossible to prove." *Armstrong*, 517 U.S. at 466.

Defendant Lujan has not specifically argued any details of his prosecution in terms of a selective prosecution based on race.  In fact, in his reply, Defendant Lujan does not identify any purposeful discrimination by the United States in seeking the death penalty against him.[2]   He has not shown that he has been singled out for death certification while others have not, based on an impermissible factor.  Accordingly, Defendant has not met the threshold test for success in an "as applied" argument.

At the hearing, Defendant stated that his arguments are based on "the evolving standards of decency in a civilized society," not legal precedent.  He acknowledged the paucity of decisions by the Supreme Court, and other courts, in favor of his view.  The power to change legal precedent lies with the United States Supreme Court, and I am bound to honor and rule in conformance with the Supreme Court rulings and Tenth Circuit precedent.  The Defendant has not demonstrated how the FDPA being rarely applied proves that it is unconstitutional, how the FDPA is applied in a racially and ethnically disproportionate and arbitrary fashion, or how it is applied irrationally.  The FDPA is, further, not unconstitutional as applied.

---

[2]        Specifically, Defendant Lujan states

"The government correctly notes that the current state of the jurisprudence is that without proof of a racially discriminatory intent, the racial skew in the application of the death penalty is without legal consequence.  Of course, this interpretation renders the notion of disparate impact meaningless in this context.  No legislator or legislature (or, for that matter, prosecutor) will stand in public light and admit a racially imbalanced purpose in implementing a death penalty scheme. It is likely that, for the most part, there is not a conscious racial motivation in enacting such a scheme . . . ."

(Def's Reply at 2).

**IT IS THEREFORE ORDERED** that, Defendant Larry Lujan's Motion to Declare the

Federal Death Penalty Act Unconstitutional by Reason of its Unusual and Infrequent

Application, and because of its Racially and Ethnically Skewed Application is **DENIED**.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE