**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                                                                                                  **NO. CR 05-0924 RB**

**LARRY LUJAN,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Larry Lujan's Motion in Limine Regarding Information or Evidence Relating to Pending State Murder Charges, filed on October 20, 2008 (Doc. 460). On November 17, 2008, the Court held a hearing addressing, *inter alia*, this motion. Having considered the arguments of counsel, relevant law, and being otherwise fully informed, Mr. Lujan's Motion in Limine Regarding Information or Evidence Relating to Pending State Murder Charges is **GRANTED**.

**I.    Background.**

The United States has indicated its intent to offer evidence, during the penalty phase, if necessary, that Mr. Lujan committed a double homicide in Chamberino, New Mexico in December 1998 (hereinafter "Chamberino murders"). The United States proposes to offer this evidence in order to establish the non-statutory aggravating factor of future dangerousness.[1] The State of New Mexico has charged Mr. Lujan with the Chamberino murders; however, the case will not be tried before the conclusion of this trial. Mr. Lujan has entered not guilty pleas to the charges in the

---

[1] The United States has elected not to offer evidence of Mr. Lujan's alleged culpability for the Chamberino murders for the purpose of establishing the statutory aggravating factor of substantial planning and premeditation (Doc. 478).

Chamberino murders case.

Mr. Lujan seeks an order precluding the presentation of information or evidence regarding the Chamberino murders. Mr. Lujan essentially argues that introduction of information or evidence related to the Chamberino murders would be unfairly prejudicial and violate his right to a fair trial. The United States counters that there is no constitutional bar to the introduction of evidence of prior unadjudicated criminal conduct during the penalty phase of a death penalty trial.

**II.    Discussion.**

    **A.  Balancing Competing Legal Principles.**

In *Williams v. New York*, 337 U.S. 241 (1949), the Supreme Court found that a judge's consideration of evidence of unadjudicated crimes in imposing the death sentence did not violate a capital defendant's due process rights. *Id.* at 251. *Williams* has come to stand for the broad principle that, as long as evidence of unadjudicated conduct is relevant, a sentencing judge can exercise discretion, upon which the Due Process Clause places no restrictions, in determining whether to admit evidence of unadjudicated crimes at sentencing. *See Id.* at 247. The relevance of the Supreme Court's decision in *Williams* to sentencing in capital trials was based on three key assumptions: (1) the death penalty is constitutionally indistinguishable from other forms of punishment; (2) the Due Process Clause does not apply to the penalty phase in the same way it applies to the trial itself; and (3) judges, rather than juries, would evaluate the evidence of unadjudicated criminal conduct and determine whether to impose the death penalty. *See Id.* at 251-52. However, these assumptions and the legal framework that undergirded the applicability of *Williams* to sentencing in capital trials have been discredited since the case was decided in 1949. *See Gardner v. Florida*, 430 U.S. 349, 357-58 (1976).

To begin with, the Supreme Court has expressly recognized that the death penalty is

constitutionally different, both in terms of its severity and its finality, from any other kind of punishment which may be imposed in this country. *Gardner*, 430 U.S. at 357 (repudiating the assumption, in *Williams*, that the death penalty is constitutionally indistinguishable from other forms of punishment). In addition, it is now clear that the requirements of the Due Process Clause apply to the penalty phase, as well as the trial itself. *Id.* at 358 (noting that capital defendants have a legitimate interest in the character of the procedure which leads to the imposition of the death penalty). Furthermore, the applicability of *Williams* in capital cases has been limited by the adoption of the Federal Death Penalty Act (hereinafter "FDPA"). *See* 18 U.S.C. § 3593(c) (creating a statutory balancing standard for the admissibility of evidence during the penalty phase of a capital trial). Finally, the Supreme Court has instructed that the Sixth Amendment entitles defendants to a jury determination of the presence or absence of any aggravating factors on which Congress conditions an increase in their maximum punishment. *Ring v. Arizona*, 536 U.S. 584, 589 (2002) (repudiating the assumption, in *Williams*, that a judge, rather than a jury, would evaluate the evidence of unadjudicated criminal conduct and determine whether to impose the death penalty). Indeed, "any continued vitality that *Williams* has in the non-capital context has little relevance to a death penalty case, not least because juries, not judges are the capital sentencers, and the FDPA envisions that judges will continue to play a gatekeeping role at the penalty phase of a capital trial." *United States v. Gonzalez*, 2004 WL 1920492, *10 (D.Conn. 2004). Thus, while the introduction of relevant evidence of unadjudicated conduct at sentencing may not be a *per se* violation of the Due Process Clause, a finding of relevance does not end the inquiry as to whether evidence of unadjudicated crimes should be admitted at sentencing in a capital trial. *See Gardner*, 430 U.S. at 357-58; *Hatch v. Oklahoma*, 58 F.3d 1447, 1465 (10th Cir. 1995).

Instead, the Supreme Court's jurisprudence mandates that this Court's discretion in

determining whether to allow the jury to evaluate evidence of unadjudicated criminal conduct, during the penalty phase of a capital trial, is bounded by four competing legal considerations: (1) the desire to provide the jury with all relevant information needed to make a well-informed sentencing decision, (2) the prohibition of evidence that is unfairly prejudicial to the capital defendant, (3) the heightened standard of reliability required when imposing the death penalty, and (4) the need to ensure that the sentence handed down by the jury is, and appears to be, based on reason rather than passion. *See Jurek v. Texas*, 428 U.S. 262, 276 (1976); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978); *Gregg v. Georgia*, 428 U.S. 153, 203-04 (1976); *Gardner*, 430 U.S. at 358.

The Supreme Court has clearly expressed its preference "for the jury to have as much information before it as possible when it makes the sentencing decision" in a death penalty case. *Gregg*, 428 at 204. However, the evidence introduced and arguments made at the penalty phase must not unfairly prejudice the capital defendant. *Id.* Furthermore, the qualitative difference between death and other penalties calls for a "greater degree of reliability" in the evidentiary basis upon which the sentence of death is imposed. *Lockett*, 438 U.S. at 604. Finally, "[i]t is of vital importance to the defendant and to the community that any decision to impose the death sentence be, and appear to be, based on reason rather than caprice or emotion." *Gardner*, 430 U.S. at 358. Thus, while paying lip service to the sentencing body's "unbridled discretion in determining whether the death penalty should be imposed," the Supreme Court has actually imposed substantial limitations where "discretion is afforded a sentencing body on a matter so grave as the determination of whether a human life should be taken or spared." *Tuilaepa v. California*, 512 U.S. 967, 979-80 (1994) (quotations omitted); *Gregg*, 428 U.S. at 189.

The legal principles that are to inform the Court's discretion in determining whether to allow evidence of prior unadjudicated conduct during the penalty phase of a capital trial are also set forth

4

in the FDPA. "At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor." 18 U.S.C. § 3593(c). However, "information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." *Id.* Furthermore, "[t]he burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt." *Id.* Finally, Appellate Courts, in reviewing the imposition of the death penalty, are specifically instructed "to consider whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor." 18 U.S.C. § 3595(c). Thus, the FDPA clearly envisions the Court playing the role of gatekeeper in excluding information and evidence that (1) is unfairly prejudicial to the capital defendant, (2) does not bear the indicia of reliability, or (3) poses a substantial risk of inflaming the passions of the jury.

In evaluating whether the introduction of evidence of unadjudicated conduct at the penalty phase would be unfairly prejudicial to Mr. Lujan, the Court must consider the practical effect the introduction of such evidence would have on Mr. Lujan's procedural rights. *See Estelle v. Williams*, 425 U.S. 501, 504 (1976*)*; *Gardner*, 430 U.S. at 359-60. Indeed, the Supreme Court has instructed that "[c]ourts must do the best they can to evaluate the likely effects of a particular procedure, based on reason, principle, and common human experience." *Estelle*, 425 U.S. at 504. The Supreme Court has specifically admonished the courts to be vigilant and guard against practices and procedures that would subtly undermine the presumption of innocence or the right to a fair trial by diluting the principle that guilt is to be established through fair procedures and beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 363-64 (1970); *Estelle*, 425 U.S. at 503-04. The Supreme Court has also indicated that when disputed information could be decisive to the sentencing body's decision

5

between a sentence of life in prison and a death sentence the interest in providing fair procedures to ascertain the truth of the matter is paramount. *See Gardner*, 430 U.S. at 359-60. Indeed, the Court must ensure that "the process is neutral and principled so as to guard against bias or caprice in the sentencing decision." *Tuilaepa*, 512 U.S. at 973.

In this case, the United States seeks to offer evidence, during the penalty phase, if necessary, that Mr. Lujan committed the Chamberino murders. Evidence that a capital defendant had previously committed multiple homicides is clearly relevant to a sentencing jury's decision as to whether the capital defendant merits the death penalty. *See Zant v. Stephens*, 462 U.S. 862, 888 (1983). Consequently, the FDPA provides multiple statutory aggravating factors that are specifically tailored for capital defendants who have previously committed homicide. *See* 18 U.S.C. § 3592(c)(2)-(4). The rub lies in the fact that these statutory aggravating factors require a previous conviction, and Mr. Lujan has never been convicted of the Chamberino murders. *See Id.* Indeed, Mr. Lujan is presumed innocent of these charges until proven guilty beyond a reasonable doubt by an impartial jury. *See Herrera v. Collins*, 506 U.S. 390, 398-99 (1993); *Apprendi v. New Jersey*, 530 U.S. 466, 476-77, 490 (2000).

Because Mr. Lujan has not been tried and convicted of the Chamberino murders, the United States seeks to introduce evidence of his alleged culpability for these violent crimes for the purpose of establishing the non-statutory aggravating factor of future dangerousness. Thus, if a penalty phase becomes necessary, the relevance and probative value of this evidence would not go directly to the question of whether Mr. Lujan merits death. Instead, the relevance and probative value of this evidence could only properly be considered in the context of whether it would tend to demonstrate that Mr. Lujan would be a future danger while serving a life sentence without possibility of release. *See* 18 U.S.C. § 3592(c).

The defense denies that evidence intended to demonstrate that Mr. Lujan committed the Chamberino murders is relevant to the question of future dangerousness in a penal setting. The Court, however, disagrees. The evidence of Mr. Lujan's alleged violent criminal conduct is clearly relevant and probative of the issue of future dangerousness. Indeed, evidence suggesting that Mr. Lujan may have committed multiple vicious murders over an extended period of time is relevant and probative to the issue of future dangerousness, even in a penal setting. Thus, the Court concludes that, if a penalty phase becomes necessary, the unadjudicated criminal conduct alleged, if proved, would be relevant and probative to the determination of whether Mr. Lujan represents a continuing danger to the lives and safety of other persons. Relevance alone, however, does not decide the question.

Turning to considerations of unfair prejudice, the Court can scarcely imagine what would be more unfairly prejudicial to Mr. Lujan than to effectively strip him of the presumption of innocence for murders for which he has not been tried and convicted, at the very moment when his life lies in the balance. *See* 18 U.S.C. § 3593(c). Furthermore, the Court foresees substantial risk that members of the jury may naturally confuse the issue and consider evidence of Mr. Lujan's alleged culpability for the Chamberino murders as an independent aggravating factor, tending to show that he merits death, rather than as evidence intended to establish the non-statutory aggravating factor of future dangerousness. *See* 18 U.S.C. §§ 3592(c), 3593(c).

The 18 U.S.C. § 3593(c) evidentiary standard provides the Court with greater discretion to exclude evidence than Rule 403 balancing under the Federal Rules of Evidence. Indeed, whereas Rule 403 requires the probative value of evidence to be "substantially outweighed" by the danger of unfair prejudice, 18 U.S.C. § 3593(c) requires only that the probative value of evidence is "outweighed" by the danger of unfair prejudice. Fed.R.Evid. 403; 18 U.S.C. § 3593(c). The United

7

States, however, argues that the substantive reliability of the evidence it seeks to introduce at sentencing, regarding Mr. Lujan's alleged culpability for the Chamberino murders, is so high that it essentially trumps any danger of unfair prejudice to Mr. Lujan. *See* 18 U.S.C. § 3593(c). Nevertheless, the substantive reliability and probative value of the United States' evidence will remain suspect until it gains the indicia of procedural reliability that can only come after an impartial jury has evaluated the evidence in accordance with fair procedures. *See In re Winship*, 397 U.S. 358, 361 (1970); *Estelle v. Williams*, 425 U.S. 501, 503 (1976); *In re Murchison*, 349 U.S. 133, 136 (1955); *Ross v. Moffitt*, 417 U.S. 600, 610 (1974). Indeed, the Court is acutely concerned that a jury that has just deliberated and found a capital defendant guilty of a brutal murder will not be capable of giving appropriate weight to the capital defendant's presumption of innocence for factually similar murders, which he is only alleged to have committed. *See Simmons v. South Carolina*, 512 U.S. 154, 171 (1994); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987).

The Court also is concerned that the character of the evidence that the United States seeks to introduce at the prospective sentencing phase could have the doubly deleterious effect of inflaming and confusing the jury, thereby creating a substantial risk that the jury could impose a sentence that is based on, or appears to be based on, emotional considerations rather than instructed reason. *See Gardner*, 430 U.S. at 358. The evidence that the United States seeks to introduce against Mr. Lujan is powerfully emotive. The emotive character of this evidence is particularly troubling (1) because Mr. Lujan is, and will continue to be, presumed innocent of the Chamberino murders even after the jury hands down a sentence in this trial and (2) because the proposed evidence would likely tip the scales in favor of the death penalty. Calling on the jury to consider evidence that is calculated to demonstrate that Mr. Lujan committed the Chamberino murders, for the purpose of proving, beyond a reasonable doubt, that he would be a future danger while serving a life sentence

without possibility of release, all while requiring the jury to continue to presume Mr. Lujan innocent of the Chamberino murders, asks the impossible of any panel, particularly because the jury would have just recently found Mr. Lujan guilty of murder. Thus, in weighing the factors that are to guide its discretion, the Court concludes that the risk of unfair prejudice to Mr. Lujan outweighs the probative value of the evidence the United States seeks to introduce at the penalty phase. 18 U.S.C. § 3593(c)

### B. Presumption of Innocence.

"The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Coffin v. United States*, 156 U.S. 432, 453 (1895). Although not explicitly articulated in the Constitution, the presumption of innocence is "a basic component of a fair trial under our system of criminal justice." *Estelle*, 425 U.S. at 503. "[T]he presumption of innocence is evidence in favor of the accused, introduced by the law in his behalf." *Coffin*, 156 U.S. at 460. The entire purpose of a criminal trial is "to convert a criminal defendant from a person presumed innocent to one found guilty beyond a reasonable doubt." *Ross*, 417 U.S. at 610. Obviously, if Mr. Lujan is convicted and this case reaches the penalty phase, he will no longer be presumed innocent of the murder of Dana Joe Grauke II. However, he will continue to be presumed innocent of the Chamberino murders unless and until he receives a fair trial and is found guilty beyond a reasonable doubt of those crimes. *See Johnson v. Mississippi*, 486 U.S. 578, 585 (1988) (invalidating death sentence in which prior conviction that served as an aggravating factor was overturned by state court because "unless and until petitioner should be retried, he must be presumed innocent of that charge"). Indeed, the presumption of innocence applies to unadjudicated criminal conduct at capital sentencing. *See Id.* Thus, regardless of the strength and quality of evidence

produced, the United States simply cannot overcome Mr. Lujan's presumption of innocence for the Chamberino murders during the penalty phase of this trial; it is procedurally impossible. *See Ross*, 417 U.S. at 610; *Herrera*, 506 U.S. at 398-99; *Johnson*, 486 U.S. at 585.

Assuming that a penalty phase is necessary in this case, the Court must evaluate the practical effect of instructing the jury that Mr. Lujan is presumed innocent of the Chamberino murders, while, at the same time, allowing them to consider evidence that he committed these, additional, brutal murders. *Estelle*, 425 U.S. at 504. Realistically speaking, if a penalty phase becomes necessary in this trial, the members of the jury will have been exposed to weeks of graphic and emotive evidence calculated to expose Mr. Lujan as a brutal killer, and, having deliberated upon that evidence, each member of the jury will have become convinced that Mr. Lujan is guilty beyond a reasonable doubt of taking the life of Dana Joe Grauke II. The members of the jury would then be introduced, at the penalty phase, to additional graphic and emotive evidence calculated to demonstrate that Mr. Lujan also committed the Chamberino murders. Of course, this evidentiary presentation would necessarily be accompanied by vigorous cross examination and an instruction from the Court that Mr. Lujan is presumed innocent of these crimes.

Taking into account basic human limitations, however, it is unreasonable to expect that a jury, which would have just convicted Mr. Lujan of murder, would still be capable of according to him the benefit of a fully operational presumption of innocence with respect to allegations that he committed the Chamberino murders. *See Estelle*, 425 U.S. at 504; *Simmons*, 512 U.S. at 171. The result is inescapable. If a penalty phase becomes necessary, it would be unfairly prejudicial to Mr. Lujan to allow the United States to introduce evidence that he committed the murders for which he is legally presumed innocent. 18 U.S.C. § 3593(c). Indeed, the acute contradiction inherent in the possibility that Mr. Lujan could be sentenced to death based, in part, on a sentencing jury's belief

that he is guilty of murders for which he is legally presumed innocent offends fundamental notions of procedural fairness. All evidence related to Mr. Lujan's alleged culpability for the Chamberino murders, therefore, must be excluded from consideration by the sentencing jury.

### C. Other Curative Measures.

Several federal courts, considering whether to admit evidence of unadjudicated crimes at the penalty phase of a capital trial, have acknowledged the possibility that a jury, having deliberated and found the defendant guilty of the underlying offense, may be unfairly prejudiced against the defendant in considering unrelated criminal conduct at sentencing. These courts, however, have determined that curative measures, including instructions to the jury on the presumption of innocence and an evidentiary hearing on the reliability of the United States' evidence, could remedy the prejudice. *See Gonzalez*, 2004 WL 1920492 at *8-9. As one district court concluded, "the time-tested, constitutionally acceptable, means for assuring fair sentencing by the use of proper procedures and appropriate instructions serves to fully inform the jury as to its obligations and as to the limitations within which it must operate." *United States v. Beckford*, 964 F.Supp. 993, 998 (E.D.Va. 1997).

In assessing the potential that instructions to the jury could cure the unfair prejudice to Mr. Lujan that would necessarily accompany the introduction of evidence of unadjudicated crimes, the Court acknowledges that juries are normally presumed to follow their instructions, and it is the experience of this Court that juries take their responsibilities very seriously and diligently strive to follow the instructions that they are given. *See Greer v. Miller*, 483 U.S. 756, 766 fn. 8 (1987). Nevertheless, the Supreme Court has recognized that "[t]he rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state

11

and the defendant in the criminal justice process." *Richardson*, 481 U.S. at 211. This recognition has led the Supreme Court to concede that "in some circumstances the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Simmons*, 512 U.S. at 171.

The Court believes that this case is one in which even the best jury instructions would be insufficient to cure the unfair prejudice to Mr. Lujan if the jury were allowed to consider evidence of his alleged culpability for the Chamberino murders during the penalty phase of this trial. Indeed, the emotive character of these particular unadjudicated crimes and the mental gymnastics required to presume an individual innocent of two brutal murders immediately after having convicted him for a factually similar murder lead this Court to conclude that jury instructions will be insufficient to cure the unfair prejudice incident to the sentencing jury's consideration of Mr. Lujan's alleged culpability for the Chamberino murders.

Some federal courts, confronted with the issue of whether to admit evidence of unadjudicated crimes during the penalty phase of capital trials, have allowed the use of this type of evidence only after taking steps to ensure the reliability of the information put before the jury. These courts have generally provided for an evidentiary hearing in which the district judge could review the proffered evidence and rule on whether to admit or exclude it based on whether the evidence carried sufficient indicia of reliability. *See, e.g., United States v. Davis*, 912 F.Supp. 938, 949 (E.D.La. 1996) ("In an effort to assure those safeguards, this court will hold a pretrial hearing on the admissibility of the information the government intends to introduce in support of the non-statutory aggravating factors); *Beckford*, 964 F.Supp. at 1000 ("[B]efore the penalty hearing (should there be one), the Government must present to the Court and to the specific defendants the information which it intends to introduce

as unadjudicated conduct. The Court will then determine whether the information is reliable. Only if the Government satisfies that threshold determination will the evidence be presented to the jury.").

The Court concludes that an evidentiary hearing, in which the Court could determine the reliability of proffered evidence before it is presented to the jury, would be an inadequate solution to the problem of unfair prejudice presented in this case, even if accompanied with strong jury instructions. As previously articulated, evidentiary reliability has both a substantive and procedural dimension. A court determination of the reliability or the sufficiency of evidence, while addressing substantive reliability, would be insufficient to account for the erosion of procedural aspects of reliability. Indeed, there is a serious risk that a jury that has just deliberated and found a defendant guilty on similar facts will not be able to properly weigh the presumption of innocence against the United States' evidence. *See Coffin*, 156 U.S. at 460; *Gonzalez*, 2004 WL 1920492 at *9-10. Accordingly, the Court concludes that exclusion of all evidence related to the unadjudicated Chamberino murders is the only appropriate course of action.

### III. Conclusion.

The probative value of the evidence of the unadjudicated Chamberino murders the United States seeks to introduce at the penalty phase, if necessary, is outweighed by the danger of creating unfair prejudice to Mr. Lujan. 18 U.S.C. § 3593(c).

**WHEREFORE,**

**IT IS HEREBY ORDERED** that Mr. Lujan's Motion in Limine Regarding Information or Evidence Relating to Pending State Murder Charges is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**