**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**vs.**                                                                                  **No. CR 05-924 RB**

**LARRY LUJAN,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant Larry Lujan's Motion in Limine Regarding Victim Impact Evidence (Doc. 463), filed on October 20, 2008. The Court held a hearing on this Motion on November 18, 2008. Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, the Court denies this Motion.

**I.     Background.**

The Third Superseding Indictment, filed on July 10, 2007, charges Defendants Larry Lujan, Kacey Lamunyon, and Eugenio Medina with the following two counts: Count 1, Kidnapping Resulting in Death of Dana Joe Grauke II, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2; and Count 2, Tampering with a Witness Resulting in Death of Dana Joe Grauke II, in violation of 18 U.S.C. § 1512(a)(1)(C) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment avers that the crimes occurred beginning on or about March 7, 2005, and continued until about March 15, 2005, in San Antonio, Texas, and thereafter in Doña Ana County, New Mexico. (*Id.*)

The Third Superseding Indictment included a Notice of Special Findings against Mr. Lujan, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (*Id.*) On July 12, 2007, the United States filed a Notice of Intent to Seek a Sentence of Death as to Mr. Lujan, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA, in which the United States provided notice, inter

alia, that it intends to rely on victim impact evidence as a non-statutory aggravating factor. (Doc. 146).

On December 13, 2007, the Court granted Mr. Lamunyon's and Mr. Medina's motions to sever their trials from that of Mr. Lujan. (Doc. 220). On July 14, 2008, the Court granted the United States' Motions to Dismiss Count 2 of the Third Superseding Indictment as to Mr. Lujan, (Doc. 375), and as to Mr. Lamunyon and Mr. Medina. (Doc. 376).

On February 27, 2009, the United States filed an interlocutory appeal from the Memorandum Opinion and Order granting Defendant's Motion in Limine Regarding Information or Evidence Relating to Pending State Murder Charge. (Doc. 549). This matter was stayed during the pendency of the appeal. The Court of Appeals issued its mandate on August 24, 2010. (Doc. 634.) On October 29, 2010, Mr. Lujan and the United States filed a Joint Submission Regarding Pending Pretrial Motions. (Doc. 649).

On November 5, 2010, Mr. Lujan filed a Petition for a Writ of Certiorari in the Supreme Court of the United States. The filing of a petition for a writ of certiorari does not divest this Court of jurisdiction. Stays pending Supreme Court review are governed by 28 U.S.C. § 2101(f), which makes clear that only an appellate court, or a justice of the Supreme Court, has jurisdiction to stay an appellate court's final judgment pending Supreme Court review of a petition for writ of certiorari. *Id*. In that Mr. Lujan has not obtained a stay, it is appropriate to address the Motion in Limine Regarding Victim Impact Evidence.

**II.    Summary of Motion, Response, and Reply.**

In his Motion in Limine Regarding Victim Impact Evidence, Mr. Lujan requests an order limiting victim impact testimony to one member of Mr. Grauke's family and establishing a procedure in which any victim impact testimony is presented to the Court outside the presence of the jury.

Alternatively, Mr. Lujan requests that any victim impact testimony be reduced to writing and previewed by the Court, that any such testimony be limited to the written text approved by the Court, that any such testimony be limited to the nature and characteristics of the victim and effect that the crime has had on that witness. Additionally, Mr. Lujan requests that the Court preclude any victim impact witness from addressing the jurors directly, relating any tragic or difficult circumstances apart from the death of Mr. Grauke, or presenting a video of the life of Mr. Grauke.

The United States responds that the FDPA authorizes victim impact evidence, the scope of victim impact is within the trial court's discretion, the Tenth Circuit has affirmed the admission of extensive victim impact testimony, the requested procedures would give Mr. Lujan an unfair advantage by allowing him to preview lay testimony. The United States intends to instruct its witnesses in accordance with applicable legal standards, and observes that, if a witness becomes uncontrollably emotional, the Court may excuse the witness and instruct the jury to disregard any inappropriate comments. At oral argument, counsel for the United States represented that the United States intends to introduce the testimony of Mr. Grauke's mother and one of his sisters, and photographs of Mr. Grauke taken while he was living. It does not plan to present a video summarizing the life of Mr. Grauke.

Mr. Lujan replies that victim impact testimony is not constitutionally mandated, other courts have previewed victim impact evidence, curative instructions would be inadequate, and victim impact testimony is inconsistent with the purpose of the FDPA.

### III.     Discussion.

In *Booth v. Maryland*, 482 U.S. 496 (1987), the Supreme Court held that the use of a victim impact statement, based on interviews with the family survivors of a murdered elderly couple, violated the Eighth Amendment. *Id.*, 482 U.S. at 505. Two years later, based on the same rationale, the Court

reversed a death sentence on the grounds that the prosecutor's closing argument contained extensive reference to inferences concerning the victim due to a prayer card and a voter's registration card found near his body. *South Carolina v. Gathers*, 490 U.S. 805, 811 (1989).

In *Payne v. Tennessee*, 501 U.S. 808 (1991), the Supreme Court overruled those prior decisions insofar as they imposed a *per se* bar on victim impact evidence. *Payne*, 501 U.S. at 814-15. The *Payne* Court held that there was no Eighth Amendment violation in a penalty hearing which included testimony from a grandmother about the effects on her young grandson of the murders of his mother and sister, and the prosecutor's comments on those effects in his closing argument. *Payne*, 501 U.S. at 814-15. The witness at issue in *Payne* testified that her grandson "cries for his mom. He doesn't seem to understand why she doesn't come home. And he cries for his sister Lacie. He comes to me many times during the week and asks me, Grandmama, do you miss my Lacie. And I tell him yes. He says, I'm worried about my Lacie." *Id.*

The fact that the testimony was highly emotional did not render it excludable or otherwise subject to limitation. The Court explained that victim impact evidence "is designed to show . . . each victim's uniqueness as an individual human being," *id.,* 501 U.S. at 823 (internal quotation marks omitted), "is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question," and thus, "[i]n the majority of cases, . . . serves entirely legitimate purposes." *Id.,* 501 U.S. at 825.

Notably, evidence "about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed [and t]here is no reason to treat such evidence differently than other relevant evidence is treated." *Payne*, 501 U.S. at 827. In contrast, due process is violated only when victim impact evidence "is so unduly prejudicial that it renders the trial fundamentally unfair." *Payne*, 501 U.S. at 825.

The FDPA, which was enacted after *Payne*, explicitly allows the jury to consider victim impact evidence as a non-statutory aggravating factor once the government proves the existence of at least one statutory factor. 18 U.S.C. § 3593(a).  Specifically, the FDPA provides:

> The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information.

18 U.S.C. § 3593(a).

The Tenth Circuit has explained that this language (1) "expressly indicates that a victim impact statement may identify the victim and outline the extent and scope of the injury and loss suffered by the victim and his family," *United States v. Barrett*, 496 F.3d 1079, 1099 (10th Cir. 2007), and (2) "clearly suggests that Congress intended to permit the admission of any other relevant evidence, including, . . . evidence giving the jury a glimpse of the victim's personality and the life he led." *Id.* Such evidence may include testimony not only from family members, but also close friends. *Barrett*, 496 F.3d at 1099. In this case, the United States intends to present victim impact evidence in the form of testimony from Mr. Grauke's mother and sister and photographs of Mr. Grauke taken while he was living. Such evidence fits squarely within the bounds of Section 3593(a).

Mr. Lujan asks the Court to require these witnesses to write down their proposed testimony so that he might preview it. Mr. Lujan reasons that, if the testimony is scripted, the emotional impact might be reduced. The poignancy of victim impact testimony neither renders it excludable nor subject to the types of limitations proposed by Mr. Lujan. As the Second Circuit cogently noted: "It cannot be expected that victim impact testimony will be cool and dispassionate. Some deaths cause more suffering than others. The only way to ensure against victim impacts caused by one's murder of a well-loved human being is to take care to murder no one at all." *United States v. Whitten*, 610 F.3d

168, 190-91 (2nd Cir. 2010). Similarly, in his concurring opinion in *Payne*, Justice Souter wrote:

> Murder has foreseeable consequences. When it happens, it is always to distinct individuals, and, after it happens, other victims are left behind. Every defendant knows, if endowed with the mental competence for criminal responsibility, that the life he will take by his homicidal behavior is that of a unique person, like himself, and that the person to be killed probably has close associates, "survivors," who will suffer harms and deprivations from the victim's death.

*Payne*, 501 U.S. at 838 (Souter, J., concurring).

Recognizing this truth, the Tenth Circuit has endorsed the unfettered introduction of large quantities of victim impact testimony. During the penalty phase of the trial of one of the Oklahoma City bombers, the United States "presented the testimony of thirty-eight witnesses who described the impact of the bombing." *United States v. McVeigh*, 153 F.3d 1166, 1216 (10th Cir. 1998), *disapproved of on other grounds, and limited by Hooks v. Ward*, 184 F.3d 1206, 1227 (10th Cir. 1999). "These witnesses consisted of twenty-six relatives of deceased victims, three injured survivors, one employee of the Murrah Building day care center, and eight rescue and medical workers." *McVeigh*, 153 F.3d at 1216. The Tenth Circuit recognized "[a]lthough significant in number, these witnesses comprised an extremely small percentage of the number of potential witnesses the government might have called to testify about the 168 victims who died in the blast and the impact of the explosion on the numerous injured victims." *Id*.

More specifically, the victim impact testimony in *McVeigh* included descriptions of "(a) last contacts with a deceased victim; (b) efforts to learn the fate of a victim; (c) thoughts on learning of a victim's death; (d) life history of a victim; (e) pure love and innocence of children killed by the explosion; and (f) efforts to cope with loss by the family and relatives of a deceased victim." *McVeigh*, 153 F.3d at 1217. The testimony from family members was extremely poignant and included the following testimony from a mother describing the loss of her fourteen-month-old daughter:

> I think that my fears of her dying when she was first born being confirmed-was the very worst thing for me. When we drove home that night, the highway overlooked the Murrah Building; and by that time, it was very dark and it was raining and it was cold. And I truly, truly believed that my daughter was alive. You know, you don't ever think-you don't ever think that your own child is dead. And at this point, I thought that maybe she was in fact still in the building. And I think my biggest fear at that point was that she sat there in this building and she'd been there for 12 hours, she was in a dirty diaper, she didn't have a bottle, she didn't have me to hold her, and she was afraid. And I could picture her just saying "Momma," and I felt so guilty leaving this place.

*McVeigh*, 153 F.3d at 1220.

On appeal, the defendant challenged the testimony of twenty-seven of the victim impact witnesses on the grounds that "their testimony injected a constitutionally intolerable level of emotion into the proceeding and resulted in the imposition of a capital sentence based on passion rather than reason in violation of *Payne*." *McVeigh*, 153 F.3d at 1216 (footnote omitted).

The Tenth Circuit reviewed the victim impact testimony and, considering its cumulative impact, stated:

> Taken as a whole, this evidence is poignant and emotional. The question before us, then, is whether allowing such a substantial amount of victim impact testimony reflecting the magnitude of such a large-scale crime violates the limits on such testimony set forth in *Payne*. We conclude that it does not.

*McVeigh*, 153 F.3d at 1221.

Notably, the Tenth Circuit recognized that the *McVeigh* case was fundamentally different than most FDPA cases due to "[t]he sheer number of actual victims and the horrific things done to them necessarily allow[ed] for the introduction of a greater amount of victim impact testimony in order for the government to show the 'harm' caused by the crime." *McVeigh*, 153 F.3d at 1221 ("The bombing of the Murrah Building was the deadliest act of domestic terrorism in the history of the United States."). For this reason, *McVeigh* should be read with caution.

Nonetheless, the admission of unscripted testimony from family members, including young

7

children, has been affirmed by Tenth Circuit in other cases. In *United States v. Chanthadara*, 230 F.3d 1237 (10th Cir. 2000), the jury heard testimony from the victim's husband and two children, ages seven and ten. *Id.*, 230 F.3d at 1274. The husband's testimony was illustrated by numerous colored photographs of the victim while she was alive. *Id.* "Both children ended their testimony in tears." *Id.* "The jury was also allowed to take into the jury room physical evidence of the impact of [the victim's] death on her children. Among these items were letters the children had written to their dead mother and a daily journal which described one child's loss." *Id.*

Significantly, the *Chanthadara* panel observed that it was "unaware of any case before the Supreme Court or our circuit that has vacated a sentence because the victim impact evidence presented was so unduly inflammatory as to render the proceeding fundamentally unfair." *Chanthadara*, 230 F.3d at 1274. Indeed, many courts have upheld the admission of victim impact evidence similar to that introduced in *Chanthadara*. *Id.*, 230 F.3d at 1274 (collecting cases). After reviewing the case law, the Tenth Circuit concluded in *Chanthadara* that the admission of the victim impact evidence did not render the proceeding fundamentally unfair. *Id.* The quantum of victim impact evidence allowed in *Chanthadara* exceeded the testimony the United States plans to use in this case.

In support of his requests to restrict the victim impact evidence in this case, Mr. Lujan relies on *United States v. Henderson*, 485 F.Supp.2d 831 (S.D. Ohio 2007); *United States v. Sampson*, 335 F.Supp. 2d 166 (D. Mass. 2004); *United States v. Duncan*, 2008 WL 711603 *10 (D. Idaho, Mar. 14, 2008) (unpublished); and *United States v. Green*, 2008 WL 4000870 (W.D. Ky., Aug. 26, 2008) (unpublished). In *Henderson*, the parties had reached an agreement regarding limitations on victim impact evidence. *Henderson*, 485 F.Supp.2d at 849. The district court merely approved the agreement of the parties and held that the motion for restrictions was moot. *Id.*, 485 F.Supp.2d at 850. In *Sampson*, the district court requested that the government file a proffer regarding its expected

victim impact testimony, gave detailed cautionary instructions to the jury before the victim impact witnesses testified, excluded a memorial video of one of the victims, and excluded victim impact evidence concerning a victim of an uncharged crime. *Sampson*, 335 F.Supp. 2d at 189-193. In *Duncan*, the district court ordered the government to provide the defense with an outline of its proposed victim impact evidence summarizing the extent and scope of the injuries and loss suffered by each victim, his or her family members, and other relevant individuals. *Duncan*, 2008 WL 711603 *10. In *Green*, the district court required the government to provide more specific information on the nature of the victim impact evidence. *Green*, 2008 WL 4000870 *20. In this case, the United States has described the nature of the victim impact evidence it plans to present. Simply put, the authorities cited by Mr. Lujan are neither controlling nor persuasive for the imposition of the requested restrictions.

In light of the controlling case law, the Court will not limit the victim impact testimony as requested by Mr. Lujan. Nor will it require the family to repeatedly relive their loss. The Court will not require that Mr. Grauke's family members write out their testimony for preapproval, nor otherwise deliver scripted testimony. At the same time, the Court wishes to ensure that the evidence is elicited in a dignified and controlled manner. The Court is sensitive to the grievous loss suffered by the Grauke family. If a witness becomes overly emotional, the Court will recess the proceedings in order to allow the witness to regain composure. If requested, the Court may instruct the jury to disregard any inappropriate comments.

Additionally, counsel is aware that victim impact evidence may not include opinions about the crime, the defendant, or the appropriate sentence. *Welch v. Workman*, 607 F.3d 674, 695 (10th Cir. 2010) (stating "the portion of *Booth* prohibiting family members of a victim from stating characterizations and opinions about the crime, the defendant, and the appropriate sentence during the

penalty phase of a capital trial survived the holding in *Payne* and remains valid.") (citations omitted). The United States will direct its witnesses to follow appropriate legal standards. *See Welch*, 607 F.3d at 695.

Mr. Lujan contends that victim impact testimony is inconsistent with the purpose of the death penalty phase. This contention is soundly refuted by the plain meaning of the FDPA and controlling case law. The FDPA envisions admission of evidence that includes "the effect of the offense on the . . . victim's family, . . . and the extent and scope of the injury and loss suffered by the . . . .the victim's family, and any other relevant information." 18 U.S.C. § 3593(a). The Court declines to adopt the restrictive measures suggested by Mr. Lujan.

## IV.     Conclusion.

The United States may present victim impact evidence during the penalty phase provided it proves the existence of at least one statutory factor and admonishes its witnesses of the applicable legal standards. The Court will ensure that the victim impact evidence is not so unduly prejudicial that it would render the proceedings fundamentally unfair.

**THEREFORE,**

**IT IS ORDERED** that Defendant Lujan's Motion in Limine Regarding Victim Impact Evidence (Doc. 463), filed on October 20, 2008, is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**