## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **NO. CR 05-0924 RB** |
| | ) | |
| **LARRY LUJAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** came before the Court on Defendant Larry Lujan's (Mr. Lujan's)

Motion in Limine to Exclude Evidence and Testimony of Alleged Unadjudicated Conduct in the

Penalty Phase of Trial (Doc. 456), filed on October 20, 2008.  The Court held a hearing on this

Motion on November 19, 2008.  Having considered the submissions and arguments of counsel,

record, relevant law, and being otherwise fully advised, the Court grants this Motion as to two of

the incidents and the weight bag incident, but otherwise denies this Motion.

**I.      Background.**

Mr. Lujan is charged with Kidnapping Resulting in Death of Dana Joe Grauke, II, and

aiding and abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2.  (Doc. 145).  The

Third Superseding Indictment included a Notice of Special Findings against Mr. Lujan, pursuant

to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598.  (Doc. 145).  On July 12,

2007, and February 17, 2011, the United States filed Notices of Intent to Seek a Sentence of

Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA.  (Doc. 146 and Doc.

690).  In the Notice of Intent to Seek a Sentence of Death filed on February 17, 2011, the United

States provided notice that it intends to rely on future dangerousness and victim impact evidence

as non-statutory aggravating factors.  (Doc. 690).

In order to prove future dangerousness, the United States intends to rely on evidence of (1) a continuing pattern of violence, (2) low rehabilitative potential, (3) lack of remorse, and (4) gang participation.  (Doc. 690).  With regard to a continuing pattern of violence, the Government states "Larry Lujan has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including, at least, the crimes alleged against the defendant in the Indictment; and of the crime of committing a double homicide, for which the defendant has been charged by the State of New Mexico." (Doc. 690 at 3).  With regard to low rehabilitative potential, the Government states "Larry Lujan has demonstrated a low potential for rehabilitation, as evidenced by his repeated acts of institutional misconduct while in the custody of various state and local correction or detention agencies, or the United States Marshals Service."  (Doc. 690 at 4).

In his Motion in Limine to Exclude Evidence and Testimony of Alleged Unadjudicated Conduct in the Penalty Phase of Trial, Mr. Lujan requests exclusion of twenty-four incidents that the United States has listed as proof of a continuing pattern of violence and a low rehabilitative potential in its Informative Outline Regarding Evidence in Support of Statutory Threshold Findings, Statutory Aggravating Factors, and Non-Statutory Aggravating Factors.  (Doc. 437). As grounds for exclusion of these incidents, Mr. Lujan contends that: (1) the evidence is not relevant to whether the death penalty should be imposed; (2) the evidence does not have heightened reliability and has not been proven beyond a reasonable doubt; (3) the evidence is inadmissible under *Crawford v. Washington*, 541 U.S. 36 (2004); (4) the probative value of the evidence is outweighed by the danger of unfair prejudice; (5) and a comprehensive "trial-like" proceeding would be required.  (Doc. 456).

2

In its Response (Doc. 498), and at the hearing of November 19, 2008, the United States clarified that it intends to introduce, in its case-in-chief, evidence of nine incidents, including seven incidents of institutional misconduct that occurred while Mr. Lujan was detained at the Doña Ana County Detention Center (DACDC).  (Doc. 538).  Five of the incidents at the DACDC were raised in Mr. Lujan's Motion to Suppress Evidence of Disciplinary Actions and Allegations, (Doc. 277), and addressed in the Findings of Fact and Conclusions of Law and Order Denying Defendant's Motion to Suppress Evidence of Disciplinary Actions and Allegations.  (Doc. 711).  The other two incidents occurred prior to the charged crime and Mr. Lujan's ensuing pretrial detention at the DACDC.  (Doc. 498).

The nine incidents are:

1.      On January 26, 1996, Mr. Lujan was named a suspect in a police report regarding the stabbing of Juan Garnica at Santa Teresa High School, in Santa Teresa, New Mexico.  Mr. Lujan and Mr. Garnica got into a fist fight at the school. When a teacher pulled Mr. Garnica away from Mr. Lujan, Mr. Lujan stabbed Mr. Garnica three times with a knife and then fled.  Mr. Garnica was treated for two stab wounds to his back and one to the front left part of his stomach. (Doc. 437).  Mr. Lujan was not charged in connection with the matter.  (Transcript of Nov. 19, 2008, Tr. 41.)

2.      In February 2005, about two weeks prior to the charged conduct, Mr. Lujan physically assaulted Robert "Teddy" Orozco at an apartment complex in San Antonio, Texas. During that incident,  Mr. Lujan repeatedly asked Mr. Orozco for the identity of the victim's source of supply.  Mr. Orozco told Mr. Lujan that he did not know, Mr. Lujan told Mr. Orozco that he did not believe him and that Mr. Orozco owed Mr. Lujan money for wasting his time. Mr. Lujan beat Mr. Orozco and threatened to slit his throat if Mr. Orozco did not pay Mr. Lujan

for wasting his time.  Mr.  Lujan told Mr. Orozco words to the effect of "I don't care if I do ten years or twenty years. When I get out, I'm coming after you."  (Doc. 437).

3.      On November 8, 2005, while Mr. Lujan was detained at the DACDC, Mr. Lujan and Glenn Dell Cook entered the cell of inmate Michael Hare, without authorization, and threatened Mr. Hare that they were going to get him when he was in the shower, and that they were going to "stick him" and "slit [his] throat."  (Def. Ex. G).  A detention officer searched Mr. Lujan and his cell and found a razor.  After a disciplinary hearing, Mr. Lujan was found guilty of the following administrative charges: (1) possession of sharpened instrument, (2) possession of item not authorized or issued, (3) improper/unauthorized use of equipment, and (4) violation of written detainee rules.  Mr. Lujan was sentenced to time served.  (Doc. 437).

4.       On February 11, 2006, Mr. Lujan physically assaulted inmate Nibardo Ponce. Mr. Ponce suffered minor abrasions to his head, the bridge of his nose, and his back, as well as a welt on the left side of his forehead. On February 16, 2006, a disciplinary hearing was held, and Mr. Lujan was found guilty of the following administrative charges: (1) assault or battery without a weapon, and (2) violation of written detainee rules.  Mr. Lujan was sentenced to time-served. (Doc. 437).

5.      On May 8, 2006, while Mr. Lujan was detained at the DACDC, Mr. Lujan was involved in a physical altercation with inmate Jose Trejo-Alvarado.  On May 10, 2006, a disciplinary hearing was held, and Mr. Lujan was found guilty of the following administrative charges: (1) assault or battery without a weapon, (2) threatening another person, (3) any act that would be a misdemeanor, and (4) disorderly conduct.  Mr. Lujan was sentenced to seven days in lockdown.  (Doc. 437).

6.      On June 5, 2006, while Mr. Lujan was detained at the DACDC, a detention officer

4

found Mr. Lujan in the shower filling water bags made from a large trash bag, laundry bag, and a uniform top.  The water bags are used by inmates to either work out or to drop on and injure other inmates.  Mr. Lujan was put in lockdown for twenty-four hours. (Doc. 437).

7.      On September 14, 2006, while Mr. Lujan was detained at the DACDC, Mr. Lujan assaulted inmate Eddie Jerome Hogges with a soap-filled sock and his fists.  On September 21, 2006, a disciplinary hearing was held, and Mr. Lujan was found guilty of the administrative charge of assault or battery without a weapon.  Mr. Lujan was sentenced to eighteen days in lockdown and loss of privileges.  (Doc. 437).

8.      On October 6, 2006, while Mr. Lujan was detained at the DACDC, inmates informed a detention officer that Mr. Lujan was going to start some trouble and Mr. Lujan might have a shank. A detention officer searched Mr. Lujan's cell and found sharpened fingernail clippers and a toothbrush that had been shaved into an operational handcuff key in Mr. Lujan's belongings.  On October 13, 2006, a disciplinary hearing was held and Lujan was found guilty of the following administrative charges: (1) possession of a sharpened instrument, (2) possession of instrument used to cause death or injury, and (3) possession of escape paraphernalia.  Mr. Lujan was sentenced to thirty days in lockdown and sixty days probation.  (Doc. 437; Doc. 711).

9.      On August 3, 2007, while Mr. Lujan was detained at the DACDC, Mr. Lujan and inmate Adrian Hernandez entered inmate Miguel Garcia's cell without authorization and beat up Mr. Garcia.  (Def. Ex. B).  On August 11, 2007, a disciplinary hearing was held and Mr. Lujan was found guilty of the following administrative charges: (1) assault or battery without a weapon, (2) failure to follow a published facility rule that results in damage, (3) attempt to commit any offense, and (4) an act that would be a misdemeanor under state or federal law.  Mr. Lujan was sentenced to thirty days in lockdown and thirty days of loss of privileges.  (Doc. 437; Doc. 711).

**II.**     **Discussion.**

**A.**     **Overview of the FDPA sentencing process.**

The FDPA bifurcates the guilt phase of the trial from the sentencing hearing, which is also known as the penalty phase. 18 U.S.C. § 3593(b) (stating that the trial judge "shall conduct a separate sentencing hearing to determine the punishment to be imposed."). In most cases, the sentencing hearing is conducted before the same jury that determined the defendant's guilt. *Id*.

The penalty phase consists of a two-stage screening process. First, during the eligibility stage, the jury must unanimously find beyond a reasonable doubt that the defendant "intentionally killed the victim" or intentionally engaged in specific conduct that resulted in the death of the victim. *See* 18 U.S.C. § 3591(a)(2)(A)-(D). Additionally, the jury must unanimously find at least one of sixteen statutorily-prescribed aggravating factors to be present. *See* 18 U.S.C. § 3592(c)(1)-(16). If the jury does not unanimously find the requisite intent and the existence of at least one statutory aggravating factor beyond a reasonable doubt, the death penalty may not be imposed. *See id.*

If both the intent element and at least one statutory aggravating factor are found by the jury unanimously and beyond a reasonable doubt, then the jury proceeds to the selection stage of the penalty phase and considers the non-statutory aggravating factors offered by the United States. Non-statutory aggravating factors are "any other aggravating factor for which notice has been given." 18 U.S.C. § 3593(c). These factors may consist of victim impact testimony and "any other relevant information." 18 U.S.C. § 3593(a)(2). Any non-statutory aggravating factor must be found to exist beyond a reasonable doubt by a unanimous jury. *See* 18 U.S.C. § 3593(c) & (d).

During the selection stage, the jury also considers evidence of any mitigating factor. *See*

18 U.S.C. § 3592(a).  The FDPA specifies seven mitigating factors, as well as an eighth category

that allows the jury to consider "[o]ther factors in the defendant's background, record, or

character or any other circumstance of the offense that mitigate against imposition of the death

sentence."  18 U.S.C. § 3592(a)(1)-(8). The defendant has the burden of establishing the

existence of a mitigating factor based on "a preponderance of the information."  18 U.S.C.

§3593(c). "A finding with respect to a mitigating factor may be made by 1 or more members of

the jury, and any member of the jury who finds the existence of a mitigating factor may consider

such factor established for purposes of this section regardless of the number of jurors who concur

that the factor has been established." 18 U.S.C. § 3593(d).

If the jury has determined that at least one aggravating factor exists, the jury must then

determine whether all of the aggravating factor or factors, both statutory and non-statutory,

unanimously found to exist beyond a reasonable doubt, outweigh all the mitigating factors found

to exist by any individual juror by a preponderance of the information sufficient to justify a

sentence of death.  *See* 18 U.S.C. § 3593(e).  If the jury finds that no mitigating factors exist, the

jury must consider whether the aggravating factor or factors alone are sufficient to justify a

sentence of death. *See* 18 U.S.C. § 3593(e).  Based upon this consideration, a unanimous jury

must recommend whether the defendant should be sentenced to death or to life imprisonment

without possibility of release. *See* 18 U.S.C. § 3593(e).

In this case, the eligibility stage has been divided from the selection stage of the penalty

phase.  (Doc. 497).  Specifically, the eligibility stage will consist of evidence relevant to Mr.

Lujan's mental state and to the existence of one or more statutory aggravating factors.  (Doc.

497).  If Mr. Lujan is found eligible for the death penalty, the matter will proceed to the selection

stage of the penalty phase, which will entail evidence relevant to mitigating factors and

7

non-statutory aggravating factors such as future dangerousness.  (Doc. 497).

**B.**     **The evidence is relevant to future dangerousness, which is a valid non-statutory aggravating factor.**

Mr. Lujan claims that evidence of the nine incidents should be excluded because it is not relevant to whether the death penalty should be imposed.  The United States wants to offer evidence of the disciplinary incidents in order to prove the non-statutory aggravating factor of future dangerousness.  As a non-statutory aggravating factor, evidence of future dangerousness would be presented in the selection stage of the penalty phase.

The Supreme Court has recognized future dangerousness as a legitimate non-statutory aggravating factor in capital proceedings.  *Simmons v. South Carolina*, 512 U.S. 154, 162-63 (1994).  Future dangerousness is defined as evidence that a defendant is "likely to commit criminal acts of violence in the future that would be a threat to the lives and safety of others." *United States v. Bernard*, 299 F.3d 467, 482 (5th Cir. 2002).  Information on the incidents is relevant to future dangerousness because it tends to make it more probable that Mr. Lujan poses a future danger in a penal setting. *See Kelly v. South Carolina*, 534 U.S. 246, 253 (2002) (stating "evidence of violent behavior in prison can raise a strong implication of 'generalized . . . future dangerousness' "); *United States v. Sampson*, 335 F. Supp. 2d 166, 225-26 (D. Mass. 2004) (observing "[p]ast violence by a defendant in prison is relevant evidence that a prosecutor could use to prove future dangerousness . . . ."); *United States v. Grande*, 353 F. Supp. 2d 623, 640 (E.D. Va. 2005) (recognizing that "serious assaults on or threats to fellow inmates or correctional staff" would be admitted as to future dangerousness).  In that the evidence is relevant to future dangerousness, a well-recognized non-statutory aggravating factor, the evidence is relevant to the issue of whether the death penalty should be imposed.

**C.** **Reliability does not require that the evidence be proven beyond a reasonable doubt.**

Mr. Lujan contends that evidence of each incident must exhibit "heightened reliability" and be proven beyond a reasonable doubt in a comprehensive "trial-like" proceeding.  (Doc. 456).  The United States responds that the evidence is sufficiently reliable and each incident need not be proven beyond a reasonable doubt.

The Supreme Court has discussed the concept of enhanced reliability in lofty rhetoric as a foundational prerequisite for imposition of the death penalty.  In rejecting mandatory death sentences, the Court stated "in capital cases . . . the Eighth Amendment . . . requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson v. North Carolina*, 428 U.S. 280, 304 (1976).  Due to the "unique nature of the death penalty," the Eighth Amendment demands "heightened reliability . . . in the determination whether the death penalty is appropriate in a particular case."  *Sumner v. Shuman*, 483 U.S. 66, 72 (1987).  As a result, the Supreme Court has recognized that "in capital cases, it is constitutionally required that the sentencing authority have information sufficient to enable it to consider the character and individual circumstances of a defendant prior to the imposition of a death sentence."  *Id.*

Notably, the Supreme Court has observed that reliability at sentencing is enhanced by admitting more evidence rather than less, so that the sentencing authority may have a complete picture of the defendant as an individual.  *See Gregg v. Georgia*, 428 U.S. 153, 204 (1976) (stating it is "desirable for the jury to have as much information before it as possible when it makes the sentencing decision.").  It bears underscoring that a judge or jury at a capital sentencing hearing should "not be denied an opportunity to obtain pertinent information by a

requirement of rigid adherence to restrictive rules of evidence properly applicable to the trial."
*Williams v. New York*, 337 U.S. 241, 247 (1949).

In *Williams*, the Supreme Court held that a judge's consideration of unadjudicated crimes in sentencing a defendant to death did not violate the due process clause.  *See Williams*, 337 U.S. at 244.  Although the landscape of federal death penalty jurisprudence has changed substantially since 1949, nothing in the Court's subsequent jurisprudence has disturbed the core ruling in *Williams*.  *See Nichols v. United States*, 511 U.S. 738, 747 (1994) (citing the holding of *Williams* with approval).

The Tenth Circuit followed *Williams* in holding that "evidence of unadjudicated crimes in imposing the death sentence does not violate a [defendant's] due process rights."  *Hatch v. Oklahoma*, 58 F.3d 1447, 1465 (10th Cir. 1995) *overruled in part on unrelated grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n. 1 (10th Cir. 2001) (*en banc*) (discussing *Williams* with approval).  More recently, the Tenth Circuit observed "a district court can even admit evidence of conduct underlying a criminal charge for which the defendant has already been acquitted without violating the defendant's constitutional rights."  *United States v. Lujan*, 603 F.3d 850, 856 (10th Cir. 2010).  Contrary to Mr. Lujan's contentions, the law does not require the United States to establish each incident in a "trial like" proceeding.

Similarly, each incident need not be proven beyond a reasonable doubt.  Indeed, where unadjudicated criminal conduct is offered in support of a separate non-statutory aggravating factor, such as future dangerousness, each piece of evidence supporting that factor need not be proven beyond a reasonable doubt.  *See Huddleston v. United States*, 485 U.S. 681, 682 (1988) (holding that evidence of other crimes under Fed. R. Evid. 404(B) may be admitted for consideration by the jury without a preliminary finding by the court and need be proved only by a

preponderance of the evidence); *Turner v. Johnson*, 106 F.3d 1178, 1188-89 (5th Cir. 1997)

(observing that unadjudicated offenses need not be proved beyond reasonable doubt at capital

penalty phase); *United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1990) (recognizing that any

unadjudicated conduct considered in determining sentence must be supported by a preponderance

of the evidence); *United States v. Edelin*, 134 F. Supp. 2d 59, 76 n.18 (D. D.C. 2001) ("While

Section 848(j) requires that each aggravating factor be proved beyond a reasonable doubt to a

unanimous jury, each piece of evidence used to support the aggravating factor need not be proved

beyond a reasonable doubt.").  Simply put, each incident need not be proven beyond a reasonable

doubt.

**D.       The Confrontation Clause is inapplicable to evidence of future dangerousness.**

Mr. Lujan asserts that evidence should be excluded pursuant to *Crawford v. Washington*,

541 U.S. 36 (2004).  The United States responds that the Confrontation Clause does not apply to

the selection stage of the penalty phase.

*Crawford* held that out-of-court statements that are testimonial in nature are inadmissible

under the Confrontation Clause unless the witness is unavailable and the defendant had a prior

opportunity to cross examine the witness.  *Crawford*, 541 U.S. at 54.  Notably, *Crawford* covers

only out-of-court testimonial statements.  *Id.*  Thus, even if it were applicable to the evidence,

*Crawford* would not apply to the live testimony of witnesses to the incidents.

Additionally, "[i]t is far from clear that the Confrontation Clause applies to a capital

sentencing proceeding." *United States v. Barrett*, 496 F.3d 1079, 1100 (10th Cir. 2007) (*quoting*

*United States v. Higgs*, 353 F.3d 281, 324 (4th Cir. 2003) and *citing United States v. Brown*, 441

F.3d 1330, 1361 n. 12 (11th Cir. 2006)). While the Tenth Circuit has observed that "*Crawford* . ..

does not speak to whether it is appropriate for a court to rely on hearsay statements at a

sentencing hearing," *United States v. Bustamante*, 454 F.3d 1200, 1202 (10th Cir. 2006), it has

not decided whether the Confrontation Clause applies during the penalty phase of a capital case.

At least one district court within the Tenth Circuit has held that "the Confrontation Clause is

applicable at both the eligibility phase and at least a portion of the selection phase." *United

States v. Concepcion Sablan*, 555 F.Supp.2d 1205, 1221 (D. Colo. 2007) (Daniels, J.).  However,

unlike the case at hand, Judge Daniels declined to sever the eligibility stage from the selection

stage. *Id.*

  In November, 2008, this Court recognized that "a trifurcated proceeding allows the court

not only to avoid the admission of prejudicial evidence before the eligibility decision, but also to

delineate clearly between the applications of the Confrontation Clause in the eligibility and

selection phases." (Doc. 497).  The decision to trifurcate the trial was based, in part, on *Ring v.

Arizona*, 536 U.S. 584 (2002), which held that facts rendering a defendant eligible for the death

penalty must be found by the jury.  *Id.*  Although *Ring* extended the reach of the Sixth

Amendment to the selection stage, it did not extend its reach to the eligibility stage.  *See* John G.

Douglass, *Confronting Death: Sixth Amendment Rights at Capital Sentencing*, 105 Colum. L.

Rev. 1967, 1997-1999 (2005).  Facts related to the selection decision of whether to impose the

death penalty on an individual defendant call for the more inclusive standard applicable to non-

capital sentencing decisions.  *Id.*  In light of the disparate applications of the Sixth Amendment

arising from *Ring*, this Court divided the penalty phase of this matter into an eligibility stage and

a selection stage.

  This distinction was recognized by the Fifth Circuit in *United States v. Field*s, 483 F.3d

313 (5th Cir. 2007), a case involving future dangerousness.  In *Field*s, the Fifth Circuit held that

the Confrontation Clause did not bar admission of hearsay statements relevant to the selection

determination. *Field*s, 483 F.3d at 335.  After reviewing Supreme Court jurisprudence

concerning capital sentencing, the Fifth Circuit observed "[n]either the text of the Sixth

Amendment nor the history of murder trials supports the extension of the Confrontation Clause to

testimony relevant only to penalty selection in a capital case."  *Id*.  Although it is not binding, this

Court finds the reasoning of the Fifth Circuit in *Fields* to be persuasive and consistent with this

Court's prior ruling regarding bifurcation of the penalty phase.

If the penalty phase is reached, the Confrontation Clause would apply in the eligibility

stage due to *Ring*'s requirement that facts necessary to expose Mr. Lujan to a death sentence must

be found by a jury.  *Ring*, 536 U.S. at 609.  If Mr. Lujan is found eligible for death, the trial

would proceed to the selection stage and the general rule allowing hearsay at sentencing would

apply.  *See Williams*, 337 U.S. at 246.  In that the penalty phase has been bifurcated, testimonial

hearsay concerning the incidents would be admissible to prove future dangerousness during the

selection stage of the penalty phase, where the Sixth Amendment does not bar the presentation of

testimonial hearsay.  *Field*s, 483 F.3d at 335.  Thus, the evidence is not excluded by *Crawford.*

**E.     The information may be excluded if its probative value is outweighed by the danger
of creating unfair prejudice, confusing the issues, or misleading the jury.**

Mr. Lujan maintains that the evidence should be excluded because the probative value of

the evidence is outweighed by the danger of unfair prejudice under the evidentiary standard

applicable to the penalty phase. The FDPA sets forth a different evidentiary standard for the

penalty phase than the Federal Rules of Evidence provide at trial.  *See* 18 U.S.C. § 3593(c).

Thus, "a court has two separate sets of responsibilities with respect to evidence that a single jury

may consider twice, once when deciding between guilt and acquittal, the other when deciding

between life and death." *United States v. Pepin*, 514 F.3d 193, 207 (2d Cir. 2008).  Specifically,

during the trial, Federal Rule of Evidence 403 governs and "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . . " Fed. R. Evid. 403. However, during the penalty phase, Section 3593(c) governs and:

> Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that *information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.*

18 U.S.C. § 3593(c) (emphasis added).

Section 3593(c) also provides that the Government "may present any information relevant to an aggravating factor for which notice has been provided" and that a defendant "may present any information relevant to a mitigating factor." 18 U.S.C. § 3593(c). Based on § 3593(c), the threshold limitation on introducing information at the sentencing hearing is that such information must be relevant to sentencing. *Lujan*, 603 F.3d at 854. In applying § 3593(c), the Tenth Circuit stated that the standard of Federal Rule of Evidence 401 governs and "information is admissible at a capital sentencing if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information].' " *Lujan*, 603 F.3d at 854 (*quoting* Fed. R. Evid. 401). As more fully discussed in Section II. B., evidence of the incidents of violence are relevant to future dangerousness.

In that the information is relevant, § 3593(c) provides that it should be admitted unless "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Section 3593(c) grants the district court greater discretion to exclude unfairly prejudicial or confusing information than the district court has during the guilt phase of the trial. *Lujan*, 603 F.3d at 854. However, the Tenth Circuit has

14

emphasized that "[t]he objective of the sentencing stage of a capital case is to allow the jury a full appraisal of the defendant." *Lujan*, 603 F.3d at 858 (*citing Gregg*, 428 U.S. at 203-04).

The probative value must be balanced against "the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). The Tenth Circuit has observed that "Section 3593(c) permits balancing of probative value against unfair prejudice, not all prejudice." *Lujan*, 603 F.3d at 858 (internal quotation omitted). "Where the defendant has wide latitude to put on mitigating evidence of his positive characteristics and sympathetic past, there is nothing inherently 'unfair' with allowing the government some latitude to present the unfavorable aspects of the defendant." *Id*.

**F.     Application of these principles to the nine incidents.**

Courts have recognized that evidence of other acts of violence by a defendant "is arguably more relevant and probative than any other type of aggravating evidence supporting imposition of the death penalty." *United States v. Davis*, 912 F.Supp. 938, 948 (E.D. La. 1996). A wholesale ban on such evidence would give the jury a far more positive view of Mr. Lujan than is true and accurate. *See United States v. Gilbert*, 120 F.Supp.2d 147, 151-52 (D. Mass. 2000). Such a ruling would detract from the reliability of the penalty phase, because the more information a jury has about a defendant, the more reliable and predictable the determination. *See United States v. Beckford*, 964 F.Supp. 993, 997-98 (E.D.Va.1997). In order to achieve justice, the evidence of each incident must be evaluated in light of these considerations, which are reflected in the evidentiary standard for sentencing set out by the FDPA.

The fact that Mr. Lujan was not charged in connection with the Garnica incident seriously undermines the reliability of the evidence. Indeed, the absence of charges indicates that the allegations in the police report were unreliable. Moreover, the Garnica incident occurred nine

15

years before the charged conduct.  The allegations in the Garnica incident are significantly

different than the allegations in this case.  Mr. Lujan allegedly was in a high school fist fight and

stabbed his opponent in the back and stomach when a teacher pulled them apart.  Evidence that

Mr. Lujan was involved in a high school fight nine years before the charged conduct, and

allegedly stabbed his opponent in the back and stomach, is temporally remote and factually

distinct from the charged crime.  As a result, the probative value of this evidence is relatively

low.  The probative value is further diluted by the large quantity of evidence in support of future

dangerousness.  Due to Mr. Lujan's relatively young age at the time of the Garnica incident, it

might mislead the jury into thinking that Mr. Lujan is intrinsically bad. The risk of unfair

prejudice and misleading of the jury outweighs the relatively low probative value of the evidence.

For these reasons, evidence of the Garnica incident will be excluded.

     A different conclusion is reached with respect to the Orozco incident.  Nothing in the

record undermines the reliability of the evidence concerning the Orozco incident.  Evidence that

Mr. Lujan assaulted Mr. Orozco with a knife and threatened to slit his throat about two weeks

prior to the charged conduct is also relevant to future dangerousness.  The time elapsed between

the incident and the charged crime is brief and the threatened conduct is similar to what befell the

victim.  Also, during the assault on Mr. Orozco, Mr. Lujan asked about the victim's drug

supplier, which further links the incident to the charges herein.

     The Orozco incident is factually similar to the charged conduct in that Mr. Lujan

threatened to slit the throat of a person who was unable to give him information about a rival

drug supplier.  Evidence of the Orozco incident has a high probative value due to the factual

similarity and temporal proximity. The evidence is relatively straightforward and would neither

confuse nor mislead the jury.  While it is prejudicial, it is not unfairly prejudicial in the sense that

16

it would inflame the passions of the jury or divert its focus from the charged conduct.  In that the

probative value outweighs the danger of creating unfair prejudice, confusing the issues, or

misleading the jury, evidence of the Orozco incident will not be excluded.

Evidence that Mr. Lujan was found guilty of threatening Mr. Hare, and beating Mr.

Ponce, Mr. Trejo, Mr. Hogges, and Mr. Garcia is relevant to the issue of Mr. Lujan's future

dangerousness in prison. Undoubtedly, information concerning Mr. Lujan's violent behavior in

an institutional setting is relevant to his future dangerousness in similar circumstances.  Because

Mr. Lujan has presented nothing that would cast doubt on the reliability of the evidence

underlying the other incidents, it is not subject to exclusion on this basis.

Courts have recognized that evidence of the disciplinary incidents arising from assaults on

other inmates has a very high probative value because it tends to make it more probable that Mr.

Lujan poses a future danger in a penal setting. *See Kelly*, 534 U.S. at 253 (stating "evidence of

violent behavior in prison can raise a strong implication of 'generalized . . . future

dangerousness'"); *Sampson*, 335 F.Supp.2d at 225-26 (observing "[p]ast violence by a defendant

in prison is relevant evidence that a prosecutor could use to prove future dangerousness . . . .");

*Grande*, 353 F.Supp.2d at 640 (recognizing that "serious assaults on or threats to fellow inmates

or correctional staff" would be admitted as to future dangerousness). Evidence that Mr. Lujan

was found guilty of threatening Mr. Hare, and beating Mr. Ponce, Mr. Trejo, Mr. Hogges, and

Mr. Garcia is highly probative to whether he poses a risk of danger to fellow inmates in the

future.  Similar conduct in the future could pose a continuing and serious threat to the safety of

others.  All of the incidents occurred while Mr.  Lujan was detained on the charge herein.  The

evidence is straightforward and would neither confuse nor mislead the jury.  Because the

evidence is strongly probative of future dangerousness, its probative value weighs heavily in

favor of its admission.  *Lujan*, 603 F.3d at 854.

Similarly, possession of the shank and the handcuff key is highly probative to future dangerousness since it shows that Mr. Lujan may, if given an opportunity, manufacture items which may prove useful to him to escape or to attack fellow inmates or corrections officers. Evidence of this incident is highly probative of future dangerousness in prison.  The probative value of the evidence outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Balancing of the § 3593(c) factors leads to the conclusion that evidence of the October 6, 2006 incident is admissible.

The same cannot be said of the incident with the water bags.  Evidence that Mr. Lujan was caught filling weight bags with water does not necessarily demonstrate violent behavior because inmates use the water bags to work out.  Thus, the probative value of the incident involving the water bags is much lower and outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.  Evidence of the incident with the water bags will be excluded pursuant to 18 U. S.C. § 3593(c).

In summary, with the exception of the Garnica stabbing and the water bag incident, the evidence is relevant to future dangerousness, a well-recognized non-statutory aggravating factor of the selection stage of the penalty phase.  Reliability does not require that each quantum of evidence be proven beyond a reasonable doubt.  At the same time, the fact that Mr. Lujan was not prosecuted for the Garnica stabbing undermines it reliability. *Crawford* would not justify suppression of all of the evidence, and it is inapplicable during the selection stage of the penalty phase.  With the exception of the Garnica stabbing and the incident with the water bags, the probative value outweighs the danger of creating unfair prejudice, confusing the issues, or misleading the jury.  The evidence is not subject to exclusion, except for the two incidents

18

identified herein.

**THEREFORE,**

     **IT IS ORDERED** that Mr. Lujan's Motion in Limine to Exclude Evidence and

Testimony of Alleged Unadjudicated Conduct in the Penalty Phase of Trial (Doc. 456), filed on

October 20, 2008, is **GRANTED AS TO THE GARNICA STABBING AND THE WATER**

**BAG INCIDENT AND OTHERWISE DENIED**.

 

 

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**