IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR 05-0924 RB |
| | ) | |
| LARRY LUJAN, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** came before the Court on Defendant Larry Lujan's Amended Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation (Doc. 695), filed on February 23, 2011. The United States filed its Response to Defendant's Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation in opposition to this Motion on February 25, 2011. Having considered the submissions and arguments of counsel, record, relevant law, and being otherwise fully advised, the Court grants this Motion, in part, as further discussed herein; and otherwise denies the Motion without prejudice to Mr. Lujan's ability to raise specific objections prior to the United States' penalty-phase summation.

**I.     Background.**

Mr. Lujan is charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment included a Notice of Special Findings against Mr. Lujan, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (Doc. 145). On July 12, 2007, and February 17, 2011, the United States filed Notices of Intent to Seek a Sentence of

Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA.  (Doc. 146 and Doc. 690).  Trial is set for June 20, 2011, through September 9, 2011.

## II.     Summary of Arguments.

Mr. Lujan seeks a pre-trial ruling prohibiting the United States from advancing twenty-seven types of allegedly improper arguments during the penalty-phase summation.  Mr. Lujan characterizes the challenged arguments as: (1) urging the jury to ignore or disregard legitimate mitigating evidence; (2) suggesting that mitigating evidence requires a nexus to the crime or to the defendant's culpability for the offense; (3) adverting to the victim's family's desire for a death sentence; (4) inviting a death verdict on behalf of the victim or the victim's family; (5) invoking comparative justice in a victim-impact argument; (6) invoking comparative worth in a victim-impact argument; (7) inviting the jurors to experience the crime vicariously; (8) inflaming the jurors' fears for their own safety or that of others; (9) suggesting jurors will bear responsibility for future acts of violence; (10) portraying jurors as an arm of law enforcement; (11) suggesting jurors must impose death to prevent incompetence or mistakes of other actors; (12) asking the jurors to send a message; (13) asking the jury to vote for death to satisfy community expectations; (14) suggesting the jurors have a civic duty to return a sentence of death; (15) commenting on the costs or comforts of life imprisonment; (16) appealing to religious authority; (17) vouching or bolstering; (18) suggesting additional evidence beyond that adduced at trial; (19) asking the jury to infer lack of remorse, or other aggravating factors, from defendant's silence or refusal to testify; (20) inviting the jury to consider defendant's decision to plead not guilty or his exercise of trial rights; (21) commenting on the defendant's failure to have discussed or apologized for the crime before trial; (22) commenting on defendant's allocution without taking the stand or subject to cross-examination; (23) denigrating defense counsel or the

defense; (24) demonizing the defendant; (25) misleading the jurors on the consequences of non-unanimity; (26) arguing that mercy is never appropriate; and (27) misstating the evidence. (Doc. 695).

In its Response to Defendant's Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation, the United States contends that the issues raised in the Motion are not ripe for decision, the defense relies on speculative assumptions to support his motion, and a ruling should be deferred until trial. (Doc. 698).

**III.   Discussion.**

Over seventy-five years ago, the Supreme Court admonished prosecutors to "refrain from improper methods calculated to produce a wrongful conviction . . . ." *Berger v. United States*, 295 U.S. 78, 88 (1935). The line separating zealous advocacy from prosecutorial misconduct is not always bright. Our adversary system allows a prosecutor to "prosecute with earnestness and vigor." *Id*. Nonetheless, "while [a prosecutor] may strike hard blows, [a prosecutor] is not at liberty to strike foul ones." *Id*. This often-fine distinction may be blurred by the emotionally charged atmosphere inherent at trial. As Learned Hand observed: "It is impossible to expect that a criminal trial shall be conducted without some showing of feeling; the stakes are high, and the participants are inevitably charged with emotion." *United States v. Wexler*, 79 F.2d 526, 529-530 (2d Cir. 1935), *cert. denied*, 297 U.S. 703 (1936).

Perhaps the most fertile ground for emotion in the courtroom lies within the realm of summations or closing arguments. The law has long recognized that summation is not a "detached exposition," *Wexler*, 79 F.2d at 530, with every word "carefully constructed . . . before the event," *Donally v. DeChristoforo*, 416 U.S. 637, 646-47 (1974). In that summation frequently requires "improvisation," courts will "not lightly infer" that every statement is

3

intended to carry "its most dangerous meaning." *Id.* While the prosecutor is "not permitted to make an appeal to passion or prejudice calculated to inflame the jury," *United States v. Crooks*, 83 F.3d 103, 107 n. 15 (5th Cir. 1996), he or she may be passionate in arguing that the evidence supports a conviction, *see Wexler*, 79 F.2d at 530. Due to the highly-charged nature of summation, it is extremely difficult to rule in advance of trial that a particular argument is improper.

Additionally, the propriety of remarks in summation is inevitably wedded to the evidence that has been admitted during the trial. "The prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States. v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991) (rejecting a due process challenge to remarks a prosecutor made in summation). During summation, a prosecutor may not make improper suggestions to mislead the jury or appeal to the jury's "passion or prejudice." *United States v. Rodriguez*, 765 F.2d 1546, 1560 (11th Cir. 1985). However, a prosecutor may state conclusions drawn from the evidence, and "there is no prohibition on colorful and perhaps flamboyant remarks if they relate to the evidence" shown at trial. *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997) (citation omitted). *See also United States v. Vargas*, 580 F.3d 274, 278 (5th Cir. 2009) (stating that a "prosecutor is confined in closing argument to discussing properly admitted evidence and any reasonable inferences or conclusions that can be drawn from that evidence."). Undoubtedly, it is practically impossible to issue an informed ruling if the hypothetical argument is divorced from the context of the trial.

Tenth Circuit law on challenges to convictions based on prosecutorial misconduct reflects these realities. A defendant making a prosecutorial misconduct claim based on an allegedly improper summation faces an uphill battle. In examining claims of prosecutorial

4

misconduct, the Tenth Circuit has held that reversal is required "only if the improper conduct influenced the verdict." *United States v. Maynard*, 236 F.3d 601, 606 (10th Cir. 2000) (citations omitted). "A prosecutor's improper statement to the jury is harmless unless there is reason to believe that it influenced the jury's verdict." *United States v. Ivy*, 83 F.3d 1266, 1288 (10th Cir. 1996). Therefore, "[a]bsent a showing of prejudice to the defendant, prosecutorial misconduct alone will not support a finding that the trial court abused its discretion." *United States v. Novak*, 918 F.2d 107, 110 (10th Cir. 1990) (citing *United States v. Martinez-Nava*, 838 F.2d 411 (10th Cir. 1988)). Notably, "[e]ven assuming an improper comment, 'we cannot review this comment in a vacuum.'" *United States v. Gabaldon*, 91 F.3d 91, 95 (10th Cir. 1996) (quoting *United States v. Manriquez Arbizo*, 833 F.2d 244, 247 (10th Cir. 1987)).

      The Tenth Circuit has ruled that in determining "whether the misconduct had such an impact, [the Tenth Circuit] consider[s] the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case." *United States v. Maynard*, 236 F.3d at 606 (citing *Gabaldon*, 91 F.3d at 94). It is only when "such conduct can present a question whether there is reason to believe that it influenced the jury's verdict that the failure to take appropriate steps to remove it will warrant a reversal." *Marks v. United States*, 260 F.2d 377, 383 (10th Cir. 1958), *cert. denied*, 358 U.S. 929 (1959). Thus, in most instances, it is necessary to evaluate it in the context of the entire trial in order to determine whether a particular argument is improper.

      At the same time, certain arguments are always objectionable. In Sections B. 17, B. 18, and B. 27 of his Motion, Mr. Lujan requests that the Court prohibit the United States from vouching, bolstering, or misstating the evidence. This request is well-founded. "It has long been established that the prosecution's 'deliberate deception of a court and jurors by the presentation

of known false evidence is incompatible with rudimentary demands of justice.'" *Banks v. Dretke*, 540 U.S. 668, 694 (2004) (quoting *Giglio v. United States*, 405 U.S. 150, 153 (1972)). Specifically, with regard to witness testimony, "[i]t is error for the prosecution to personally vouch for the credibility of a witness." *United States v. Harlow*, 444 F.3d 1255, 1262 (10th Cir. 2006) (citing *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990)). Moreover, the prohibition against misstatement applies not only to the facts, but also the law; "[t]he prosecutor has a duty not to misrepresent the law and not to misstate the jury's role." *Le v. Mullin*, 311 F.3d 1002, 1022 (10th Cir. 2002). Consistent with these authorities, as well as principles of justice and fundamental fairness, the prosecution is prohibited from vouching, bolstering of evidence with facts not admitted at trial, or misstating the evidence during the penalty-phase summation.

In Sections B. 9 and B.14 of his Motion, Mr. Lujan seeks an order preventing the prosecution from suggesting jurors will bear responsibility for future acts of violence or that jurors have a civic duty to return a sentence of death. *See*, *Malicoat v. Mullin*, 426 F.3d 1241, 1256 (10th Cir. 2005). "[I]t is error for a prosecutor to exhort a jury to impose a death sentence on the grounds of civic duty." *Le*, 311 F.3d at 1022 (citing *Viereck v. United States*, 318 U.S. 236, 247-48 (1943) (rebuking a prosecutor for telling the jury that "[a]s a representative of your Government I am calling upon every one of you to do your duty.")). The Tenth Circuit has emphasized that "[p]rosecutors are not permitted to incite the passions of the jury by suggesting they can act as the 'community conscience' to society's problems." *United States v. Rogers*, 556 F.3d 1130, 1143 (10th Cir. 2009). "Appeals [by the prosecutor] about the need to address societal ills speak not to the question whether the accused committed the crime alleged, but divert attention from that dispositive question and confuse the task of the jury . . . with the task of elected officials." *United States v. Taylor*, 514 F.3d 1092, 1095 (10th Cir. 2008). Clearly, the

prosecution must refrain from inciting the passions of the jury or suggesting that jurors have a civic duty to return a sentence of death.

In Section B. 23 of his Motion, Mr. Lujan asks the Court to prohibit the prosecution from denigrating defense counsel or the defense. "Attacks on defense counsel can at times constitute prosecutorial misconduct." *Wilson v. Sirmons*, 536 F.3d 1064, 1119 (10th Cir. 2009). At the same time, the duty to refrain from baseless attacks runs both ways. The Supreme Court has counseled: "It is clear that counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds." *United States v. Young*, 470 U.S. 1, 8 (1985). Both prosecutors and defense counsel "must not be permitted to make unfounded and inflammatory attacks on the opposing advocate." *Young*, 470 U.S. at 9. Counsel may not launch unwarranted attacks on opposing counsel.

Otherwise, at this stage in the proceedings, the Court is not in a position to predict what kind of arguments the prosecution might make in summation. Moreover, it is impossible to determine whether the other summations targeted by Mr. Lujan would be improper without knowledge of the context and the evidence. Any ruling on additional matters would be based on pure speculation and in the nature of an advisory opinion. *See Flast v. Cohen*, 392 U.S. 83, 95 (1968) (holding "no justiciable controversy is presented . . . when the parties are asking for an advisory opinion."). Of course, "Article III of the Constitution bars the federal courts from issuing advisory opinions." *Qwest Corp. v. Pub. Util. Com'n of Colo.*, 479 F.3d 1184, 1191 (10th Cir. 2007). The Court will refrain from issuing rulings on matters that are not ripe.

It is material that motions in limine normally concern evidentiary matters. *See, e.g. United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010); *United States v. Begay*, 602 F.3d 1150, 1151 (10th Cir. 2010); *United States v. Lopez-Medina*, 596 F.3d 716, 724 (10th Cir. 2010).

Mr. Lujan cites no authority to support the idea that the Court has authority to issue an advisory opinion limiting the prosecution's closing arguments prior to trial. The dearth of case law on this topic underscores the difficulty in predicting the arguments the United States might present during summation in the latter part of a twelve-week trial that is set to start three months from the present time. At this juncture, it would be premature to further curtail counsel's latitude in preparing for the penalty-phase summation.

The Court wishes to emphasize that this matter is prosecuted by two experienced Assistant United States Attorneys. These attorneys are now on notice as to the types of closing arguments that concern defense counsel. The Court has complete confidence in the professionalism of the prosecution team in this matter and trusts that they will avoid any of the pitfalls discussed in Mr. Lujan's Amended Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation.

## IV.     Conclusion.

The propriety of most arguments in summation derives from the context and the evidence admitted during the trial. Nonetheless, some arguments are always improper. Specifically, the prosecution may not vouch for the credibility of witnesses, bolster the evidence with facts not in evidence, misstate the evidence, incite the passions of the jury, or suggest that jurors have a civic duty to return a sentence of death. Furthermore, all counsel have a duty to refrain from unfounded and inflammatory attacks on opposing counsel. Other than the rulings discussed herein, the Court will deny the Amended Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation, without prejudice to Mr. Lujan's ability to raise specific objections prior to the United States' penalty-phase summation.

**THEREFORE,**

**IT IS ORDERED** that Mr. Lujan's Amended Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation (Doc. 695), filed on February 23, 2011, is **GRANTED IN PART** to the extent that the prosecution is prohibited from vouching, bolstering, misstating the evidence, inciting the passions of the jury, or suggesting that jurors have a civic duty to return a sentence of death.

**IT IS FURTHER ORDERED** that all counsel must refrain from unfounded and inflammatory attacks on opposing counsel.

**IT IS FURTHER ORDERED** that Mr. Lujan's Amended Motion in Limine to Prohibit Specified Types of Prosecutorial Misconduct in Penalty-Phase Summation is **OTHERWISE DENIED WITHOUT PREJUDICE**.

_____
    **ROBERT C. BRACK**
    **UNITED STATES DISTRICT JUDGE**