# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                              **NO. CR 05-0924 RB**

LARRY LUJAN,

      Defendant.

## <u>SEALED MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** came before the Court on Plaintiff's Ex Parte[1] Penalty Phase Motion in Limine (Doc. 687), filed on February 14, 2011; and Mr. Lujan's Intent to Call Social Historian at Sentencing Phase, (Doc. 588), filed on December 16, 2009.  The Court heard oral argument regarding these matters on April 4, 2011.  Having considered the submissions and arguments of counsel, record, relevant law, and being otherwise fully advised, the Court grants the Motion in Limine, in part, as further discussed herein; and otherwise denies this Motion.  Mr. Lujan may present the factual testimony of a social historian.

## I.    Background.

Mr. Lujan is charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2.  (Doc. 145).  The Third Superseding Indictment included a Notice of Special Findings against Mr. Lujan, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598.  (Doc. 145).  On July 12, 2007, and February 17, 2011, the United States filed Notices of Intent to Seek a Sentence of

---

[1] The Motion and Responses were filed ex parte as to the Co-Defendants.

Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA.  (Doc. 146 and Doc. 690).  Trial is set for June 20, 2011, through September 9, 2011.

II.    **Summary of Arguments.**

In the Ex Parte Penalty Phase Motion in Limine, the United States seeks an order excluding the following from the penalty phase:  (1) unsworn allocution by Mr. Lujan; (2) execution impact evidence; (3) testimony from a social historian or any teaching expert; (4) arguments relating to residual doubt; and, (5) Mr. Lujan's offers to plead guilty.  (Doc. 687). The United States also contends that family members of the victim should be allowed in the courtroom during the entire trial phase[2] and penalty phase.  (Doc. 687).

In his Ex Parte Response to the Ex Parte Penalty Phase Motion in Limine, Mr. Lujan references his Motion to Allow Allocution Without Cross-Examination During Penalty Phase (Doc. 689), and states: (1) unsworn allocution free from cross-examination should be allowed; (2) execution impact evidence should be permitted; (3) the request to exclude the testimony of a social historian is premature and should be handled by the firewall attorney; (4) evidence that Mr. Lujan offered to plead guilty is admissible; (5) any ruling on a residual doubt instruction would be premature and residual doubt is an appropriate mitigating factor; and, (6) the victim's mother should be excluded from the courtroom until she testifies during the trial phase.  (Doc. 719).

Mr. Lujan filed a separate Ex Parte Response to the Ex Parte Penalty Phase Motion in Limine Addressing Issue of Social Historian's Testimony, which was directed to the firewall attorney.  (Doc. 720).  Therein, Mr. Lujan asserts that testimony from a social historian is

---

[2] On November 30, 2008, the Court determined that the term trial phase should be used to refer to the guilt phase of the trial.  (Doc. 517).

admissible and he should not be required to provide discovery regarding this witness.  (Doc. 720).

On December 16, 2009, Mr. Lujan filed a Notice of Intent to Call Social Historian at Sentencing Phase.  (Doc. 588).  In this document, Mr. Lujan states that "[t]he social historian, although a forensic physiologist, will not have administered any psychological testing of Mr. Lujan and will not have reached any clinical diagnosis of Mr. Lujan under DSM-IV."  (Doc. 588 at 1).  Mr. Lujan elaborates that "[i]t is the defense position that Fed. R. Crim. P. 12.2.(b)(2) does not apply to an expert social historian employed as part of the sentencing phase."  (Doc. 588 at 1).

In the Response by Plaintiff's Firewall Attorney to Notice of Intent to Call Social Historian at Sentencing Phase (Doc. 592), the firewall attorney stated that, if the social historian is intended to provide expert testimony in any way related to Mr. Lujan's mental condition in the sentencing phase, the defense should disclose all materials reviewed by the social historian in reaching his or her opinion.  (Doc. 592).

In Defendant's Reply to Response by Plaintiff's Firewall Attorney to Notice of Intent to Call Social Historian at Sentencing Phase (Doc. 601), Mr. Lujan maintains that Rule 12.2 is inapplicable because the social historian will not have administered any psychological testing, will not have reached any clinical diagnosis, and will not testify as to Mr. Lujan's mental condition.  (Doc. 601).

## III.    Discussion.

### A.    Execution impact evidence will be excluded.

The United States requests the exclusion of execution impact testimony.  Mr. Lujan responds that the issue is not ripe because he has not given notice of what evidence he intends to

introduce; and he should be permitted to introduce such evidence as a mitigating factor, as well as to counter victim impact evidence and future dangerousness.

"[W]hile the FDPA specifically provides for victim impact evidence, 18 U.S.C. §3593(a), there is no parallel provision allowing for execution impact evidence." *United States v. Taylor*, 583 F.Supp.2d 923, 944 (E.D.Tenn. 2008). The Supreme Court has held that the scope of constitutionally protected mitigating evidence is evidence reflecting on the defendant's background or character, or on the circumstances surrounding the crime. *Lockett v. Ohio*, 438 U.S. 586, 604 n. 12 (1978) (authorizing the trial court to exclude "as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense"). Execution impact evidence is essentially a request for a life sentence, and as such, it is not mitigating evidence. *United States v. Mitchell*, 502 F.3d 931, 991 (9th Cir. 2007) (approving of district court prohibiting witnesses from offering opinions on what the jury's verdict should be). Because it does not reflect on the defendant's background, character, or the circumstances of the crime, execution impact evidence "has no mitigating value." *Jackson v. Dretke*, 450 F.3d 614, 618 (5th Cir. 2006).

Moreover, admission of such evidence would run contrary to the principles underpinning *Payne v. Tennessee*, 501 U.S. 808 (1991), where the Supreme Court overruled in part *Booth v. Maryland*, 482 U.S. 496 (1987), and *South Carolina v. Gathers*, 490 U.S. 805 (1989), to allow the admission of victim impact evidence as an aggravating factor. Nonetheless, *Payne* reaffirmed *Booth* and *Gathers*, to the extent they prohibit victim impact testimony that advocates for a sentence of death. *Payne*, 501 U.S. at 830 n. 2.

The FDPA, which was enacted after *Payne*, explicitly allows the jury to consider victim impact evidence as a non-statutory aggravating factor once the government proves the existence

4

of at least one statutory factor. 18 U.S.C. § 3593(a). Specifically, the FDPA provides:

> The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information.

18 U.S.C. § 3593(a). Consistent with *Booth* and *Payne*, the Tenth Circuit has held that victim impact evidence may not include opinions about the crime, the defendant, or the appropriate sentence. *Welch v. Workman*, ___ F.3d ____, 2011 WL 69547279 (10th Cir. 2011) (stating "the portion of *Booth* prohibiting family members of a victim from stating characterizations and opinions about the crime, the defendant, and the appropriate sentence during the penalty phase of a capital trial survived the holding in *Payne* and remains valid.") (citation omitted).

The rationale for prohibiting opinion testimony as to the proper sentence is that "any decision to impose the death sentence must be, and appear to be, based on reason rather than caprice or emotion. The admission of . . . emotionally charged opinions as to what conclusions the jury should draw from the evidence clearly is inconsistent with the reasoned decisionmaking we require in capital cases." *Booth*, 482 U.S. at 509. *Booth* stands for the concept that the sentence should not be based on sympathy for the victim's family and friends. *Id*. By extension, the sentence should not be based on sympathy for Mr. Lujan's family and friends. This parallel was recognized by the district court in *Taylor,* wherein the court stated: "Emotionally charged opinions should not form the basis for a verdict in a capital case regardless of whether the opinions favor death or life." *Taylor*, 583 F.Supp.2d at 944. "The parallel between defendant and victim supports prohibiting witnesses from opining on their desired sentence, regardless of their preference." *Id.*

Another important distinction between victim impact evidence and execution impact

evidence is the temporal aspect.  Victim impact evidence is concrete testimony about the void in the life of the witness caused by the victim's death that has already been experienced by the witness.  Execution impact evidence is speculation about how the witness might feel many years in the future in the event the defendant is executed.  Speculation is not relevant evidence.  *See Holmes v. South Carolina*, 547 U.S. 319, 327 (2006) (stating that evidence may be permissibly excluded "where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial") (internal quotation omitted).  The inherent speculative nature of execution impact counsels for its exclusion.

Application of these principles to execution impact evidence leads to a conclusion that the logical extension of *Payne* would allow the family and friends of Mr. Lujan to testify about his life and characteristics, but would prohibit them from specifically advocating against the death penalty, or its likely impact on their lives.  *See Taylor*, 583 F.Supp.2d at 944.  More specifically, Mr. Lujan's family and friends may testify about him as an individual.  This may include testimony as to Mr. Lujan's background, family history, his characteristics, and the circumstances surrounding the offense.  However, testimony as to the impact that Mr. Lujan's execution might have on his family and friends would not qualify as mitigating evidence under applicable legal standards.  The United States' Motion in Limine is granted with respect to execution impact evidence.

### B.    Mr. Lujan may present the factual testimony of a social historian.

Mr. Lujan intends to call a social historian during the sentencing phase.  (Doc. 588).  Mr. Lujan has explained that the social historian will not have administered any psychological testing, will not have reached any clinical diagnosis, and will not testify as to Mr. Lujan's mental condition.  (Doc. 601).

6

The United States[3] requests that the Court exclude the testimony of Mr. Lujan's social historian on the grounds that such testimony would not be based upon individual characteristics of Defendant, but would consist of general testimony regarding risk factors for predicting criminal behavior, the propensity for violence from persons raised under certain hardships, or the purported effects of neighborhood demographics. (Doc. 687). In the event that the Court allows the social historian to testify, the United States wants discovery regarding such testimony. (Doc. 687).

A defendant is entitled to have a sentencing jury hear and consider relevant mitigating evidence. *Lockett v. Ohio*, 438 U.S. at 604. This includes evidence which might not be considered admissible during a criminal trial. *Id. See also* 18 U.S.C. § 3593(c) (setting out a distinct evidentiary standard for the penalty phase under the FDPA). In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court recognized that, in a capital case, counsel's performance may be deficient if it does not include an adequate investigation into mitigating evidence, including research into a capital defendant's "family and social history." *Id.* 539 U.S. at 524 (recognizing as the applicable standard of professional conduct the American Bar Association Standards for Criminal Justice); *Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (same).

The Tenth Circuit has recognized that mitigation evidence in the form of family and social history is of vital importance to the jury's decision in the penalty phase. *Smith v. Mullin*, 379 F.3d 919, 942 (10th Cir. 2004). Indeed, the Tenth Circuit has observed that: "The sentencing stage is the most critical phase of a death penalty case. Any competent counsel knows the importance of thoroughly investigating and presenting mitigating evidence."

---

[3] In that the social historian proposed by the defense will not testify as to Mr. Lujan's mental health, there was no need to proceed through the firewall attorney and the matter was properly addressed by the United States' trial counsel.

*Anderson v. Sirmons*, 476 F.3d 1131, 1142 (10th Cir. 2007) (citation omitted).  As a result, evidence of the social history of a defendant is generally admissible during the penalty phase.

It bears underscoring that the FDPA does not require that evidence of aggravating and mitigating factors be admissible under the rules of evidence, only that its probative value not be outweighed by the danger of its confusing, misleading, or prejudicing the jury.  18 U.S.C. § 3593(c).  The balancing is committed to the discretion of the trial judge.  *United States v. Barrett*, 496 F.3d 1079, 1083 (10th Cir. 2007).

In order to balance the factors, the Court must first determine whether the testimony of a social historian is relevant to proving any mitigating factor or rebutting any Government aggravating factor.  *See* 18 U.S.C. § 3593(c).  At the hearing, defense counsel indicated that the social historian would testify as a fact witness "who would recount what we have been able to develop so far and relate it in terms of how it would affect the defendant's individualized situation."  (Tr. 25).  According to defense counsel, the testimony will be "prototypical *Wiggins* recounting in summary fashion" the social history of Mr. Lujan.  (Tr. 26.)  While the exact content of the proposed testimony from the social historian is unknown, it would undoubtedly be relevant to factors relating to Mr. Lujan's background, 18 U.S.C. § 3592 (a)(8), and to rebut the aggravating factor of lack of remorse.  Thus, the factual testimony of a social historian would be relevant during the penalty phase.

The next question is whether the probative value of the testimony of a social historian is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.  18 U.S.C. § 3593(c).  Defense counsel represented that the social historian would testify as a fact witness with special expertise in summarizing and explaining information about Mr. Lujan's family, education, and other aspects of his background.  In that the testimony will focus

on the social conditions of Mr. Lujan's background, the jury should be able to evaluate the testimony without becoming confused or misled. Factual testimony from a social historian would be admissible during the penalty phase under 18 U.S.C. § 3593(c). The United States' Motion in Limine will be denied as to the social historian.

The United States has requested that Mr. Lujan provide discovery on the social historian. This issue will be addressed in the context of the United States' Motion to Compel Discovery of Mitigating Factors, (Doc. 757), filed on April 7, 2011, which is not ripe for decision.

       **C.**    **Residual doubt will be excluded.**

The United States requests that the Court exclude any argument or jury instruction regarding residual doubt during the penalty phase. (Doc. 687). Mr. Lujan responds that it is premature to decide whether a residual doubt instruction is warranted and the law allows arguments and jury instructions regarding residual doubt as a mitigating factor. (Doc. 720).

The Supreme Court addressed residual doubt as a mitigating factor in *Franklin v. Lynaugh*, 487 U.S. 164, 174 (1988). In *Franklin*, the defendant argued that he was entitled to a jury instruction on residual doubt under the Court's decision in *Lockhart v. McCree*, 476 U.S. 162 (1986). After reviewing its previous decisions, a plurality found to the contrary and held that: "This Court's prior decisions, as we understand them, fail to recognize a constitutional right to have such doubts considered as a mitigating factor." *Franklin*, 487 U.S. at 174. The Court reasoned that residual, or "lingering," doubt about guilt is not a valid mitigating circumstance because such doubt does not concern any aspect of petitioner's "character," "record," or "circumstance of the offense." *Id*.

In *Oregon v. Guzek*, 546 U.S. 517 (2006), the Court reaffirmed that it has never held that the Eighth Amendment provides a defendant with the right to present residual doubt evidence at

a capital sentencing hearing. *Guzek*, 546 U.S. at 526-27. The Court, however, stopped short of rejecting all Eighth Amendment residual doubt claims by refusing to decide whether residual doubt evidence is actually unconstitutional. *Id*.

However, in a concurring opinion, Justice Scalia argued that the Court should have definitively ruled against residual doubt claims and emphasized how skeptical the *Franklin* Court had been about the propriety of residual doubt as a mitigating factor: "They [the *Franklin* plurality] were, moreover, quite doubtful that the purported right existed, because it is arguably inconsistent with the common practice of allowing penalty-only trials on remand of cases where a death sentence, but not the underlying conviction, is struck down." *Guzek*, 546 U.S. at 529 (citing *Franklin*, 487 U.S. at 173, n. 6 (internal quotations omitted). Notably, Justice Scalia also observed that, after *Franklin*, lower courts have unanimously held that a defendant has no constitutional right to argue residual doubt at sentencing. *Id.*

In that Mr. Lujan does not have a constitutional right to argue residual doubt or to include a jury instruction thereon, any entitlement to this concept must spring from the statute. The FDPA provides that "[i]n determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor." 18 U.S.C. § 3592(a). It lists seven mitigating factors, and additionally allows consideration of "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(1-8). Not surprisingly, residual doubt is not a listed mitigating factor.

The catch-all provision, 18 U.S.C. § 3592(a)(8), is similarly unhelpful to Mr. Lujan with respect to residual doubt. Notably, the *Franklin* Court stated that "lingering doubts are not over any aspect of petitioner's character, record, or a circumstance of the offense." *Franklin*, 487

U.S. at 174.  When read in conjunction with *Franklin*, the language of Section 3592(a)(8) suggests that residual doubt is not the type of non-statutory mitigating evidence authorized by Congress.

Mr. Lujan relies on *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000), and *Smith v. Gibson*, 197 F.3d 454 (10th Cir. 1999).  Neither case is helpful to Mr. Lujan.  In *Chandler*, the defendant had been sentenced to death for murder in furtherance of a continuing criminal enterprise under 21 U.S.C. § 848(e)(1)(A).  *Chandler*, 218 F.3d at 1309.  During trial and the sentencing proceeding, trial counsel did not expressly argue residual doubt; rather defense counsel stressed the lack of strong evidence that the defendant in fact caused the actual killer to shoot the victim.  *Chandler*, 218 F.3d at 1320 n. 26.  After the conviction and sentence were affirmed on direct appeal, the defendant moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. *Chandler*, 218 F.3d at 1309.  Therein, the defendant, inter alia, claimed that he received ineffective assistance of counsel because his trial counsel relied on residual doubt instead of presenting classic mitigation evidence  *Id*.  The district court held that counsel was not ineffective under the facts of the case and denied the motion.  *Id*.  In affirming the trial court's denial of the § 2255 motion, the Eleventh Circuit stated "that focusing on acquittal at trial and then on residual doubt at sentencing (instead of other forms of mitigation) can be reasonable." *Chandler*, 218 F.3d at 1320.  Based on this finding, the Eleventh Circuit held that trial counsel was not ineffective.  *Id.*

In *Smith*, the defendant was convicted of first degree murder and sentenced to death in Oklahoma state court.  *Smith*, 197 F.3d at 457.  The defendant petitioned for federal habeas relief, pursuant to 28 U.S.C. § 2254, claiming seven grounds for relief, including ineffective assistance of counsel.  *Id.*  During cross-examination, and the penalty phase closing argument,

trial counsel emphasized the bloodiness of the crime scene to support his contention that the murderer would have had to have blood all over him after the killing. *Id.* When combined with testimony that the defendant had only a single spot of blood on him, this vein of argument targeted any residual doubts that jurors might have had concerning petitioner's guilt. *Smith*, 197 F.3d at 461. In affirming the denial of the habeas petition, the Tenth Circuit observed that the evidence against the defendant was circumstantial, *Smith*, 197 F.3d at 461, and stated that trial counsel's strategy was reasonable under the circumstances of the case, and, therefore, trial counsel was not ineffective. *Smith*, 197 F.3d at 462. Neither *Chandler* nor *Smith* concerned a jury instruction on residual doubt and neither case held that courts should allow residual doubt as a valid mitigating factor under the FDPA.

Residual doubt "highlights the difficulty of ever proving anything with complete certainty." *United States v. Rodriguez*, 581 F.3d 775, 815 (8th Cir. 2009). While residual doubt is an interesting concept, it appears that it would have limited utility in this case. Mr. Lujan is charged with kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1). The elements of this crime are that: (1) Mr. Lujan, knowingly, acting contrary to law, kidnapped Mr. Grauke by seizing, confining, inveigling, decoying, kidnapping, abducting him or carrying him away; (2) Mr. Lujan kidnapped Mr. Grauke for some purpose or benefit; (3) Mr. Lujan willfully transported Mr. Grauke; (4) the transport was in interstate commerce; and, (5) in committing the offense, Mr. Lujan caused the death of Mr. Grauke. *See* 18 U.S.C. § 1201(a)(1); Tenth Cir. Pattern Jury Instructions (Criminal) § 2.55 (2011). Counsel's rendition of the facts of this case, and the United States' extensive witness list, indicates that the United States will have direct proof as to each of these elements. In light of the anticipated evidence, residual doubt would not be extremely helpful to Mr. Lujan as a mitigating factor in the penalty phase. Based on the lack

12

of legal support for the concept of residual doubt as an argument or a jury instruction, the

Motion in Limine will be granted with respect to residual doubt.

>    **D.    Mr. Lujan's offers to plead guilty will be excluded.**

The United States moves to exclude Mr. Lujan's multiple offers to plead guilty in

exchange for withdrawal of the notice of intent to seek the death penalty.  On May 23, 2008, Mr.

Lujan offered to plead guilty and accept a forty-year sentence.  On September 15, 2008,

February 19, 2009, January 8, 2010, and May 28, 2010, Mr. Lujan offered to plead guilty and

accept a sentence of life imprisonment.  The United States has refused all of these offers.  Mr.

Lujan responds that his plea offers should be admitted during the penalty phase in order to

counter the aggravating factor of lack of remorse and to show acceptance of responsibility.[4]

The plea offers will be excluded for several independent reasons.  Foremost, the Supreme

Court has held that a capital defendant has a constitutional right to present mitigation evidence

relating to "any aspect of a defendant's character or record and any of the circumstances of the

offense that the defendant proffers as a basis for a sentence less than death."  *Lockett v. Ohio*,

438 U.S. at 604.  The statutory mitigating factors are: (1) impaired capacity; (2) duress; (3)

minor participation; (4) equally culpable defendants; (5) no prior criminal record; (6) mental

disturbance; (7) the victim's consent; and, (8) "[o]ther factors in the defendant's background,

record, or character or any other circumstance of the offense that mitigate against imposition of

the death sentence."  18 U.S.C.A. § 3592(a) (1-8).  Mr. Lujan's offers to plead guilty in

---

[4] On October 29, 2008, Mr. Lujan filed, ex parte, a Sealed Motion in Limine Regarding Offer to Plead Guilty and Motion to Seal, (Doc. 477), in which he requested that the Court:  (1) Allow evidence that he had offered to plead guilty as mitigation evidence; (2) exclude evidence of the reasons why the offer was refused; and, (3) seal all documents relating to the motion.  (Doc. 477).  On November 7, 2008, the Court granted the Motion to Seal, but the Clerk's Office terminated the entire motion.  (Doc. 492). Mr. Lujan has taken no further action with respect to this Motion.  The ruling herein renders moot Mr. Lujan's Motion in Limine Regarding Offer to Plead Guilty.

exchange for a life sentence are not relevant to any of these factors.

Second, Mr. Lujan has not cited, and the Court did not find, any binding authority that holds a death penalty defendant has a constitutional right to introduce evidence of plea offers during the penalty phase.  Although there is no Tenth Circuit case on point, the Sixth Circuit has held, in two 28 U.S.C. § 2254 habeas cases, that the state courts' determination that plea negotiations did not constitute admissible evidence of mitigating circumstances was not an unreasonable application of federal law or contrary to clearly established federal law.  *Wright v. Bell*, 619 F.3d 586, 598-99 (6th Cir. 2010); *Owens v. Guida*, 549 F.3d 399, 420-21 (6th Cir. 2008) (indicating that a conditional plea offer does not show acceptance of responsibility). "Because the alleged offer of a life sentence in exchange for a guilty plea did not bear on the defendant's character, prior record, or the circumstances of the offense, [the defendant] was not constitutionally entitled to present evidence of the failed plea negotiations." *Wright*, 619 F.3d at 599.

Third, any probative value the plea offers might have is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.  18 U.S.C. § 3593(c).  If the jurors learned that Mr. Lujan offered to accept a life sentence without possibility of release in exchange for pleading guilty, they would undoubtedly question why they were spending eight to ten weeks in trial.  This would lead them to question the motives of the United States, hamper their ability to focus, and confuse the issues.  Knowledge that the United States refused to settle for a life sentence without the possibility of release could unfairly prejudice the jurors against the United States.

Finally, under the circumstances in this case, Mr. Lujan's plea offers are not relevant to counter any aggravating factor.  The United States asserted the non-statutory aggravating factor

of lack of remorse in its Notice of Intent to Seek the Death Penalty. (Doc. 690). Specifically, the Notice states: "Larry Lujan has demonstrated a lack of remorse for killing Dana Joseph Grauke II, as demonstrated by the defendant's statements following the offenses alleged in the Indictment." (Doc. 690 at 4). The Amended Informative Outline describes some of the statements and actions that demonstrate a lack of remorse as: "(a) After Lujan murdered the victim, he picked up his friends and immediately went to a motel that he rented and stocked with beer so that he could 'party.'( b.) At the motel room, Lujan washed his pants and showered to get the victim's blood off his body and clothes, and voiced anger because the shorts Quintana let him borrow were tight. (c) At the motel party, Lujan engaged in sexual intercourse with Reyna Quintana. (d) The day after Lujan murdered the victim, while still in New Mexico, he went shopping for pit bull puppies. (e) On the way back to San Antonio, Lujan told his co-defendants, and other companions, that if anybody asked where they went, to say that they went to Juarez to 'get fucked up.' (f) When Lujan returned to San Antonio after he murdered the victim, he went to parties and bragged to people, including a co-defendant and another witness, that he murdered the victim, that he stabbed the victim so hard that he punctured the victim's lungs, and that he slit the victim's throat so deep that he almost decapitated the victim." (Doc. 733).

The fact that Mr. Lujan offered to plead guilty over three years later, in exchange for a life sentence, would not serve to counter the callous actions and boastful statements that he allegedly engaged in after the killing and before he was charged. Moreover, the plea offers are simply attempts at settlement; they are not unqualified statements of remorse. It is material that the first offer was extended ten months after the first Notice of Intent to Seek a Sentence of Death was filed. The offers to plead guilty in exchange for a life sentence are evidence that Mr. Lujan wishes to avoid the death penalty. *See United States v. Caro*, 597 F.3d 608, 635 (4th Cir.

15

2010) (determining that offer to plead guilty to avoid a death sentence was not an expression of unqualified remorse). Negotiations are not remorse. Because the offers to plead guilty in exchange for a life sentence do not counter the United States' anticipated evidence of lack of remorse and they are not unqualified expressions of remorse, they are not relevant to any mitigating or aggravating factor.

Mr. Lujan relies on *United States v. Fell*, 531 F.3d 197 (2d Cir. 2008) in support of his contention that his offers to plead guilty in exchange for a life sentence would counter the United States' assertion of lack of remorse. In *Fell*, the parties negotiated a draft plea agreement before the government filed a notice of intent to seek the death penalty. *Fell*, 531 F.3d at 217. The draft plea agreement detailed substantial mitigating evidence. *Id.* The Attorney General rejected the agreement, and the government filed notice that it would seek the death penalty. *Id.* During the penalty phase, the district court excluded the draft plea agreement, but allowed a stipulation that the defendant offered to plead guilty in exchange for a life sentence without the possibility of release and the government had refused that offer. *Fell*, 531 F.3d at 218. On appeal, the defendant argued, inter alia, that the district court erred in excluding the draft plea agreement because the agreement was relevant to the mitigation factors. *Id.* In rejecting the defendant's argument concerning the plea agreement, the Second Circuit observed that "the FDPA's evidentiary standards do not mean that the defense has carte blanche to introduce any and all evidence that it wishes" and affirmed the district court's exclusion of the draft plea agreement. *Fell*, 531 F.3d at 219-20 (citations omitted). Not only is *Fell* factually distinct from the case at hand, it did not hold that plea offers are admissible to counter lack of remorse.

In another misplaced argument, Mr. Lujan asserts that the aggravating factor of lack of remorse requires "a showing of continuing glee, boastfulness or other affirmative conduct which

16

indicates a pervading and continuing lack of remorse" and he reasons that his offers to plead guilty would undermine a showing of a continuing lack of remorse. In support of his contention that lack of remorse must be continuing, Mr. Lujan relies on *United States v. Roman*, 371 F.Supp.2d 36, 50 (D. P.R. 2005). Mr. Lujan reads too much into *Roman*. The district court in *Roman* commented that "defendants' argument that there is no evidence of lack of remorse falls flat under the weight of the evidence." *Id*. Specifically, the jury in *Roman* heard testimony regarding the defendant's post-murder shopping spree and his "triumphant demonstration of his sharpshooting technique in prison, after the screening of a gangster movie." *Id*. The court held that "[t]his is precisely the sort of continuing boastfulness which indicates lack of remorse." *Id*. *Roman* held that the facts of that case were sufficient to show a lack of remorse; it did not hold that lack of remorse must continue for any specific time frame.

    *Roman* cited solely to *United States v. Davis*, 912 F. Supp. 938, 946 (E.D. La. 1996), for the notion that the lack of remorse must be continuing. *Davis* is similarly unhelpful to Mr. Lujan. In *Davis*, the government sought to show lack of remorse through the defendant's alleged jubilation in learning that the victim had been killed. After expressing concerns about the defendant's right to remain silent and his presumption of innocence, the district court in *Davis* stated "[w]ithout passing on whether lack of remorse is per se an inappropriate independent factor to consider, the court finds it inappropriate in this case." *Davis*, 912 F.Supp. at 946. The district court continued: "The only information proposed to sustain the factor is [the defendant's] alleged jubilation in learning that [the victim] had been killed. The government does not propose to introduce evidence of continuing glee, or boastfulness, or other affirmative words or conduct that would indicate a pervading and continuing lack of remorse." *Id*. The district court cited no authority for this statement. *Id*. It only held that the alleged jubilation was

17

insufficient to demonstrate a lack of remorse.  *Id.*  Thus, neither *Roman* nor *Davis* held that a defendant must continue to show a lack of remorse for any specific time period or indefinitely.

In Mr. Lujan's case, the victim was killed in March 2005.  Mr. Lujan's first offer to plead guilty was extended in May 2008, over three years after the alleged crime.  *Roman* and *Davis* do not stand for the notion that the lack of remorse must continue for years after the alleged crime.  Mr. Lujan cited no Tenth Circuit law, and none was found, that holds that lack of remorse must continue for years after the alleged crime.  Simply put, *Roman* and *Davis* are neither binding nor persuasive authorities, as applied to the facts and allegations of this case.

Mr. Lujan also relies on the concept of acceptance of responsibility reflected in the United States Sentencing Guidelines to give credence to his argument concerning admission of the plea offers.  Not only is this reliance misplaced, it compares apples and oranges.  The guidelines allow for a downward adjustment to reflect a defendant's acceptance of responsibility.  *See* U.S.S.G. § 3E1.1.  In practice, this adjustment is often applied to defendants who plead guilty.  However, the key to receiving the adjustment is the defendant's acceptance of responsibility, not a guilty plea.  *See* U.S.S.G. § 3E1.1, application n. 3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.").  Thus, the determination of acceptance of responsibility is not linked to plea offers under the sentencing guidelines.  Moreover, as more fully discussed *infra* in Section III. E., Mr. Lujan will have opportunities to demonstrate his acceptance of responsibility to the sentencing authority that are independent of his offers to plead guilty.  For all of these reasons, the Motion in Limine is granted with respect to Mr. Lujan's plea offers.

E.     **The Court has addressed the issue of unsworn allocution and alternative methods of allocution were discussed at the hearing of April 4, 2011.**

The issue of whether Mr. Lujan should be allowed unsworn allocution free from cross-examination was raised by Mr. Lujan in his Motion to Allow Allocution Without Cross-Examination During Penalty Phase.  (Doc. 689).  On March 15, 2011, the Court issued a Memorandum Opinion and Order that denied the Motion "[i]nsofar as Defendant asks this Court to allow him unfettered allocution to the jury during either the eligibility or selection phases of the penalty phase."  (Doc. 730 at 4-5).  Nonetheless, in light of nonbinding and nonuniform decisions that fashioned a compromise, the Memorandum Opinion and Order also indicated that the Court would entertain arguments on "some other accommodation to allow [Defendant] to allocute," and therefore, directed "the parties [to] be prepared to discuss alternative methods of allocution at the hearing set for April 4, 2011."  (Doc. 730 at 5).  At the hearing on April 4, 2011, counsel for Defendant requested that the Court adopt at least some of the procedures from *United States v. Wilson,* 493 F.Supp.2d 509, 510 (E.D.N.Y. 2007).  That is, Defendant asked that he be permitted to:  prepare a written statement; share that with the prosecutor before the selection phase; read a prepared statement from counsel table; and have the statement followed with an appropriate instruction to the jury.  Counsel for the United States requested that the Court fashion a limited cross-examination, and otherwise relied on its brief.  Counsel was also concerned that a prepared statement would not reflect Defendant's original and sincere thoughts and, instead, would reflect the thoughts of someone who may have helped prepare the statement.

My prior ruling discusses the approaches taken by the district judges in the reported decisions in *Wilson* and *United States v. Henderson,* 485 F.Supp.2d 831, 845 (S.D. Ohio 2007).  *See* Doc. 730 at 3-4.  I find a combination of those approaches is appropriate here, to fashion a

19

procedure that will address the concerns of all parties. As I understand it, part of the United States' concern is that Defendant's unsworn and uncross-examined statement will allow him to "tell the jury anything" without being subject to cross-examination. (Doc. 687 at 3). Similar to the *Wilson* court, however, I will confine his allocution remarks to a brief personal statement for the purposes of expressing his remorse and appealing for leniency. *See also United States v. Whitten,* 610 F.3d 168, 196 n. 21 (2d Cir.), *reh'g en banc denied,* 623 F.3d 125 (2d Cir. 2010). He **may not** comment upon any evidentiary issues.

I believe it is important to have the statement written ahead of time so that if there are portions the United States considers prejudicial, the Court can decide whether or not to exclude them. *Id.* However, counsel may not assist Defendant in preparing the statement. Defendant's statement will occur at the conclusion of the selection phase, right before closing argument. Counsel for Defendant shall provide the United States with a copy of the statement at least one week prior to closing arguments. This Court will give any limiting instruction the United States requests, provided the instruction is consistent with caselaw. For example, the *Henderson* decision provided that the jurors would be instructed that "they should carefully consider the credibility of such statements, given that they are not sworn or cross-examined." *Henderson,* 485 F.Supp.2d at 846.

Finally, I *sua sponte* considered whether to impose a requirement that the statement be sworn, but find no reason to do so. First, the parties did not cite, and I have not found, any decision that either permits or requires such statements to be sworn. Second, Defendant has not requested that his statement be sworn. In addition, further research revealed the *Whitten* case, which indicates that when an allocution statement is unsworn and not subject to cross-examination, those facts are a proper subject for prosecutor comment in summation, provided the

comments do not cross the line into the impermissible Fifth Amendment territory.[5]

The United States' review prior to Defendant's delivery of a limited personal statement, followed immediately by a limiting instruction, and coupled with the potential for proper comment in summation, in my view, adequately addresses the concerns of the United States, yet still allow Defendant the opportunity to allocute. I find this a particularly appropriate balance given my conclusions that Mr. Lujan's family and friends are prohibited from advocating against imposing the death penalty and the defense may not introduce evidence concerning Mr. Lujan's offers to plead guilty and accept a life sentence. Accordingly, the United States' motion in limine to exclude such an unsworn statement is denied.

**F.    Family members of the victim may be present during the trial.**

The United States requests that the Court allow the victim's family members, including his mother and sister, to be present during the trial. Mr. Lujan concedes that 18 U.S.C. § 3510 allows the family to be in the courtroom during the trial phase, even if those individuals might testify during the penalty phase. However, Mr. Lujan points out that the victim's mother is also a fact witness in the trial phase. Mr. Lujan requests that the victim's mother be excluded from the courtroom until she testifies and given a cautionary instruction not to discuss her testimony with any other witness.

In *United States v. Visinaiz*, 428 F.3d 1300, 1314-15 (10th Cir. 2005), the district court

---

[5]    In *Whitten,* the defendant conceded that "it was within bounds for the prosecution to comment in summation that the allocution was not made under oath and was not subject to cross-examination," and the majority opinion noted that "approach accords with the view of some courts, which have distinguished between comments that focus on the fact that an allocution was unsworn and uncrossed (deemed permissible) and comments that emphasize the defendant's failure to testify (deemed impermissible)." *Whitten,* 610 F.3d at 198 (citing a state decision and federal decisions in *DePew v. Anderson,* 311 F.3d 742, 750 (6th Cir. 2002) and *United States v. Aguilar,* 2007 WL 6362887 (E.D.N.Y. 2007)).

allowed the son of a murder victim to remain in the courtroom for the remainder of the trial after

he testified. *Visinaiz*, 428 F.3d at 1314-15. On appeal, the defendant challenged, inter alia, the

presence of the son in the courtroom. The Tenth Circuit observed that the son qualified as a

victim under 18 U.S.C. § 3510, and, thus, was "a person authorized by statute to be present."

*Id.*, 428 F.3d at 1315 (citing Fed. R. Evid. 615(4)). In that there was no request for a cautionary

instruction and no suggestion that the son discussed his testimony with others, the Tenth Circuit

held there was no error. *Id.*

At the hearing of April 4, 2011, the parties agreed that the victim's mother will not be

present in the courtroom until after she testifies during the trial phase. Accordingly, the victim's

mother will be excluded from the courtroom until she testifies during the trial phase and she will

be instructed not to discuss such testimony. After she testifies during the trial phase, the victim's

mother will be permitted to stay in the courtroom for the duration of the trial. Other family

members, who will not testify during the trial phase, will be permitted to be present in the

courtroom for the entire trial.

## IV. Conclusion.

With regard to execution impact evidence, the Motion is granted. Mr. Lujan's family and

friends may testify about him as an individual, but they may not testify as to the possible impact

that Mr. Lujan's execution might have on them. Mr. Lujan may present the testimony of a social

historian. Discovery regarding the social historian will be addressed in a separate document.

The Motion in Limine is granted with respect to residual doubt and Mr. Lujan's offers to plead

guilty in exchange for a life sentence. With regard to allocution, the Court will allow Mr. Lujan

to read a statement prepared by Mr. Lujan without assistance. The allocution statement must be

provided to the prosecution one week prior to its intended submission to the jury. The Court will

give any limiting instruction the United States requests, provided the instruction is consistent with caselaw.  By agreement of the parties, the victim's mother will be excluded from the courtroom until she testifies in the trial phase, after which time she may stay in the courtroom for the duration of the trial.  Other family members of the victim, who will not testify during the trial phase, may be present in the courtroom for the entire trial.

**THEREFORE,**

     **IT IS ORDERED** that the United States' Ex Parte Penalty Phase Motion in Limine (Doc. 687), filed on February 14, 2011, is **GRANTED IN PART AND DENIED IN PART AS DISCUSSED HEREIN**.

     **IT IS FURTHER ORDERED** that Mr. Lujan may present the factual testimony of a social historian during the penalty phase.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**