IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                NO. CR 05-0924 RB

LARRY LUJAN,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion for Order to Strike Death Penalty Notice Because Adequate Mitigation Investigation Cannot be Done (Doc. 612), filed on March 19, 2010. The Court heard oral argument regarding this Motion on April 5-6, 2011. Having considered the submissions and arguments of counsel, record, relevant law, and being otherwise fully advised, the Court denies this Motion.

**I.     Background.**

Mr. Lujan is charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment included a Notice of Special Findings against Mr. Lujan, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (Doc. 145). On July 12, 2007, and February 17, 2011, the United States filed Notices of Intent to Seek a Sentence of Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA. (Doc. 146 and Doc. 690). Trial is set for June 20, 2011, through September 9, 2011.

**II.    Summary of Arguments.**

Mr. Lujan moves to strike the Notice of Intent to Seek a Sentence of Death because the violence in Ciudad Juárez in Chihuahua, Mexico (Juárez) precludes counsel from conducting a

constitutionally adequate mitigation investigation. (Doc. 612). As grounds, Mr. Lujan contends that without an adequate mitigation investigation, imposition of the death penalty would violate his constitutional rights to due process and effective assistance of counsel under the Fifth and Sixth Amendments; and violates the Eighth Amendment's prohibition of cruel and unusual punishment. (Doc. 612).

In support of this Motion, Mr. Lujan attached the affidavit of Mary C. Goody, his mitigation specialist since November 2007. (Doc. 612, Def. Ex. A). According to Ms. Goody, "a significant amount of important information both in the form of documents and witnesses exists in the Mexican City of Juárez." (Def. Ex. A ¶ 17). Ms. Goody believes that "there is a reasonable probability that the Juárez evidence would lead to information that would strongly support the mitigation themes developed in this case, and that the powerful information learned from such a trip would be relied upon at trial." (Def. Ex. A ¶ 17).

Ms. Goody believes that she needs to personally travel to Juárez because: (1) many of Mr. Lujan's relatives and family friends live there; (2) Mr. Lujan's mother and her family grew up in Juárez; (3) Mr. Lujan's father has family living in Juárez; (4) Mr. Lujan received medical care in Juárez and he may have medical records there; (5) family vital records are located at governmental offices in Juárez; (6) Mr. Lujan's brother's funeral and burial took place in Juárez; (7) when Mr. Lujan was a teenager, his mother spent extended periods of time in Juárez and her children often visited her; (8) Mr. Lujan spent a summer in Juárez with his mother and uncle; and, (9) important cultural information exists in Juárez regarding the Lujan family. (Def. Ex. A ¶ 17). According to Mr. Lujan, hiring an investigator in Juárez would not ameliorate the problems because the investigator would not have the specialized knowledge and training of a mitigation specialist. (Doc. 612).

The United States responds that Mr. Lujan's inability to obtain mitigation evidence does not support dismissal of the Notice of Intent to Seek a Sentence of Death, because the United States is not responsible for the violence in Juárez and any claim of ineffective assistance of counsel is not ripe for adjudication. (Doc. 622). The United States points out that dismissal of a Notice of Intent to Seek a Sentence of Death is a drastic remedy, similar to dismissal of an indictment and neither Mr. Lujan nor the United States has found any precedent in support of dismissal. (Doc. 622).

The United States further notes that it is purely speculative that additional, non-cumulative mitigation evidence exists in Juárez because Mr. Lujan has lived most of his life in west Texas and southern New Mexico. (Doc. 622). The United States also questions why the defense is unable to conduct the necessary investigation remotely since many people routinely cross from El Paso into Juárez; on a typical day approximately 37,000 vehicles and 14,000 pedestrians cross from the United States into Juárez. (Doc. 622).

In reply, Mr. Lujan maintains defense counsel cannot conduct the necessary mitigation investigation, dismissal is the appropriate remedy, and the Court has the authority to strike the Notice of Intent to Seek a Sentence of Death. (Doc. 626).

**III.   Discussion.**

Defense counsel has a fundamental duty to reasonably investigate and develop available mitigating evidence in all capital cases. *See, e.g., Strickland v. Washington*, 466 U.S. 668, 691, (1984) (holding that counsel must "make reasonable investigations or . . . make a reasonable decision that makes particular investigations unnecessary."); *Brecheen v. Reynolds*, 41 F.3d 1343, 1366 (10th Cir. 1994) (stating that a defense attorney "has a *duty* to conduct a reasonable investigation, including an investigation of the defendant's background, for possible mitigating

evidence.") (emphasis in original).  Making the sentencing authority aware of all relevant mitigating circumstances is necessary to give practical meaning to the bedrock Eighth Amendment principle that, in a capital case, " 'respect for humanity . . . requires consideration of the character and record of the individual offender.' "  *Lockett v. Ohio*, 438 U.S. 586, 605 (1978); (*quoting Woodson v. North Carolina*, 428 U.S. 280, 304 (1976)).  However, the law "imposes only the obligation to conduct a reasonable investigation - not a perfect one."  *Wilson v. Sirmons*, 536 F.3d 1064, 1135 (10th Cir. 2008) (Tymkovich, J., dissenting) (citing *Strickland*, 466 U.S. at 688).  Therefore, reasonable mitigation investigation, which includes making reasonable decisions not to pursue certain inquiries, is an absolute prerequisite for constitutional assistance of counsel in a death-penalty case.

Three guiding principles, distilled from three relatively recent Supreme Court cases, illuminate the contours of this duty.  *See Williams v. Taylor*, 529 U.S. 362 (2000); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Rompilla v. Beard*, 545 U.S. 374 (2005).[1]  These principles are: (1) counsel must conduct a reasonable investigation and pursue reasonable leads when they become apparent; (2) the American Bar Association (ABA) guidelines serve as reference points for what is an adequate mitigation investigation for the penalty phase of a capital case; and (3) due to the crucial mitigating role that evidence of a difficult childhood or mental health disorders can have in the penalty phase, defense counsel must investigate mitigation factors with due diligence.  *Wilson v. Sirmons*, 536 F.3d 1064, 1084-5 (10th Cir.), *rehearing en banc granted by Wilson v. Sirmons*, 549 F.3d 1267 (10th Cir. 2008), *reinstated in part and remanded in part on other*

---

[1] The cases discussed herein arose from habeas corpus petitions.  The cases are cited solely for principles concerning counsel's duty to investigate and what constitutes an adequate, or inadequate, mitigation investigation.  Counsel should rest assured that this Court is aware that distinct standards apply cases in a habeas posture and understands its role in addressing the motion at hand.  *See* Order Denying Motion to Reconsider (Doc. 769).

*grounds by Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009). While these three Supreme Court cases are not directly on point factually, brief summaries serve to illustrate the extent of counsel's duty to conduct reasonable mitigation investigations in capital cases.

In *Williams*, the Supreme Court determined that the defendant's trial counsel failed to investigate and present mitigating evidence during the sentencing phase of his capital murder trial. *Williams*, 529 U.S. 362. The Court found that the record established that Williams' trial counsel had (1) not begun preparation for sentencing until a week beforehand, (2) failed to "uncover extensive records graphically describing Williams' nightmarish childhood," (3) failed to introduce evidence available to them that Williams did not attend school beyond the sixth grade and was found to be "borderline mentally retarded," (4) failed to examine prison records demonstrating Williams' commendations and positive actions in prison, including assistance in breaking a prison drug ring and returning a stolen wallet, and (5) failed to elicit testimony from prison officials who "described Williams as among the inmates least likely to act violently, dangerously, or provocatively, and from a prison minister that Williams seemed to thrive in a more regimented environment." *Williams*, 529 U.S. at 364-65. The Court held that the state court's decision "failed to accord appropriate weight to the body of mitigation evidence available to trial counsel." *Williams*, 529 U.S. at 398.

Subsequently, in *Wiggins*, the Court held that trial counsel's decision not to expand their investigation of the defendant's life history, beyond the presentence report and records of the department of social services, was unreasonable and that counsel's inadequate investigation prejudiced the defendant. *Wiggins*, 539 U.S. at 510. The Court focused on whether counsel's investigation supporting their decision not to introduce mitigating evidence in the defendant's background "was itself reasonable." *Id.*, 539 U.S. at 523. The Court held that the scope of trial

counsel's investigation was unreasonable in light of what the department of social services' records revealed, including Wiggins' mother's chronic alcoholism and abuse of her children, as well as the fact that Wiggins was "shuttled from foster home to foster home," and had "lengthy absences from school." *Wiggins*, 539 U.S. at 526.

During post-conviction proceedings, Wiggins' new counsel hired a social worker who testified regarding a social-history report he prepared based on evidence of "severe physical and sexual abuse" Wiggins suffered throughout his childhood. *Wiggins*, 539 U.S. at 516. The Court found that Wiggins' trial counsel were aware of some, but not all, of his history, and that they chose not to present all of the mitigating evidence they had in favor of trying to persuade the jury that Wiggins did not personally kill the victim. *Wiggins*, 539 U.S. at 517. The Court found this decision unreasonable. Comparing the facts of *Williams* with the facts in *Wiggins*, the Court noted that, in *Wiggins*, the mitigating evidence was stronger and the state's evidence in support of the death penalty was "far weaker" than in *Williams*, thus concluding that "the available mitigating evidence, taken as a whole, 'might well have influenced the jury's appraisal' of Wiggins' moral culpability." *Wiggins*, 539 U.S. at 537-38 (*quoting Williams*, 529 U.S. at 398).

In *Rompilla*, the Supreme Court held that a "lawyer is bound to make reasonable efforts to obtain and review material that counsel knows the prosecution will probably rely on as evidence of aggravation at the sentencing phase of trial." *Rompilla*, 545 U.S. at 388. The defense counsel in *Rompilla* failed to examine the police file on the defendant's prior conviction for rape and assault, which they knew the prosecution would use against the defendant in seeking the death penalty. *Id*. The Court held that counsel's failure to review the file "fell below the line of reasonable practice." *Rompilla,* 545 U.S. at 390. The omission also prejudiced the defendant because it was "uncontested they would have found . . . a range of mitigation leads that no other

source had opened up." *Id*. That range of leads included matters such as information about Rompilla's childhood living in the slums, early incarcerations, dropping out of school, problems with alcohol, a likely mental-health disorder, and test scores demonstrating that Rompilla had "a third grade level of cognition after nine years of schooling." *Rompilla,* 545 U.S. at 391. The Court held that the "accumulated entries" in the prison records "would have destroyed the benign conception of Rompilla's upbringing and mental capacity defense" that his counsel had acquired after conferring with some of his family members and from mental-health expert reports. *Id*. The Court concluded that the evidence taken as a whole bore no relation to the evidence presented by Rompilla's counsel at trial, which was made up of a "few naked pleas for mercy," and that Rompilla was prejudiced by its omission. *Rompilla*, 545 U.S. at 393. The limited investigation performed in *Rompilla* stands in stark contrast to the comprehensive investigation underway on behalf of Mr. Lujan. Ms. Goody has already invested over a thousand hours of investigation over a period in excess of three years on top of the original estimate of eight to 10 months. The ongoing investigation for Mr. Lujan aims to uncover mitigating factors from his upbringing and social history.

Based on this trilogy of cases, it is clear that counsel must conduct a reasonable mitigation investigation and pursue reasonable leads when they become evident. Applying these principles, the motion to strike will be denied for several independent reasons. First and foremost, Mr. Lujan's time in Juárez is temporally insignificant. With the exception of one summer when Mr. Lujan was fourteen and brief visits to Juárez, Mr. Lujan has lived his entire life in the United States. Mr. Lujan was born and raised in El Paso, Texas. As a child, he visited Juárez and sometimes stayed overnight with his family and family friends. In approximately 1992, at the age of fourteen, Mr. Lujan spent one summer in Juarez with his mother and uncle.

When he was about sixteen years old, Mr. Lujan moved with his family to Chamberino, New Mexico.  He moved to San Antonio, Texas, at age twenty, and returned to Chamberino on a regular basis.  Mr. Lujan was arrested in 2005, and he has been detained in southern New Mexico ever since.  With the exception of one summer, almost two decades ago, and brief visits to Juárez, Mr. Lujan has lived his entire life in the United States.  Thus, while Mr. Lujan has relatives and family friends in Juárez, most, if not all, of the mitigation information is located in, or readily accessible from, the United States.

Second, all investigations have limitations.  The law does not require "defense counsel to 'investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing.' "  *Gray v. Branker*, 529 F.3d 220, 228-29 (4th Cir. 2008) (*quoting Wiggins*, 539 U.S. at 533).  "Instead, the cases impose upon counsel a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id.*  (quotation omitted).  Undoubtedly "there comes a point at which evidence from more distant relatives can reasonably be expected to be only cumulative, and the search for it distractive from more important duties."  *Bobby v. Van Hook*, 130 S.Ct. 13, 19 (2009).

For instance, in *Valle v. Quarterman*, the defendant filed a motion pursuant to 28 U.S.C. § 2255, claiming that his rights were violated because he wanted to present witnesses who were beyond the subpoena power of the trial court.  *Valle v. Quarterman*, 2008 WL 416241 at \*6 (S.D. Texas 2008).  The witnesses lived in Cuba and, due to the state of diplomatic relations between Cuba and the United States, the witnesses were unable to travel to Texas to testify.  *Id*.  On § 2255 review, the district court observed that the defendant "cite[d] no case holding that the United States Constitution prohibits the death penalty when potential mitigation witnesses the

defendant desires to call are unavailable." *Id.*  The district court continued "[i]n practical effect, Valle's situation is no different than one who desires the testimony of witnesses who are deceased or who are unwilling to testify and who are beyond the subpoena power of the court. Clearly, one would have no constitutional claim under those circumstances." *Id.*

*Valle* is not precisely on point in that the potential witnesses in this case would be from Mexico and they would be able to travel to the United States to testify.  Nonetheless, *Valle* supports the notion that the inaccessibility of evidence does not prohibit a death penalty prosecution.  It bears underscoring that, based on the types of incidents that Ms. Goody wishes to investigate (e.g., violence, drug dealing), it is highly unlikely that the witnesses would talk to her under the best of circumstances.  Thus, the fact that Ms. Goody's mitigation investigation in Juárez is limited by her reluctance to travel to Juárez does not mandate dismissal of the Notice of Intent to Seek a Sentence of Death.

Third, the defense is unwilling to consider other available options.  Ms. Goody admitted that an investigator can only do the best she can with the hand that is dealt.  Mr. Lujan has the advantage that his mother is alive and willing to share embarrassing information about herself and her family.  Mr. Lujan's mother was present during the summer he spent in Juárez.  Mr. Lujan's sister is also able to provide information and assist in making a case for mitigation. While it might be ideal to have corroborating evidence from Juarez, it is not necessary to establish an effective case in mitigation.  Moreover, the same information should be accessible through the testimony of Mr. Lujan's mother and other close relatives who shared the experiences and cultural aspects of Juárez with Mr. Lujan, during their time in Juárez.

A similar situation was discussed in an unpublished opinion by the Fourth Circuit in reviewing the denial of a 28 U.S.C. § 2254 habeas corpus petition.  *See Syriani v. Polk*, 118 Fed.

Appx. 706 (4th Cir. 2004). The defendant/petitioner had been convicted of capital murder of his wife and sentenced to death. *Syriani*, 118 Fed. Appx. at 707. The defendant was a Palestinian, born in Jerusalem, and he had immigrated to the United States from Jordan at age thirty-seven, approximately fifteen years before the murder. *Syriani*, 118 Fed. Appx. at 710. At trial, the defendant and his sister testified about the defendant's difficult childhood and cultural background. *Id.* In his habeas petition, the defendant claimed inter alia that his trial counsel should have traveled to Jordan to conduct a complete mitigation investigation and should have engaged the services of a cultural expert. *Id.*

On habeas review, the federal court determined that trial counsel's investigation into the defendant's background and social history was not constitutionally deficient. *Syriani*, 118 Fed. Appx. at 715. "[T]here was no reason for counsel to believe that he would be unable to present a competent mitigation case without traveling to Palestine and Jordan, or sending an investigator there, to interview family members, friends, and co-workers who had known Syriani more than a decade earlier." *Syriani*, 118 Fed. Appx. at 716. On habeas review, the federal district court and court of appeals found that trial counsel had presented constitutionally adequate information about the defendant's unique cultural background to the jury through the testimony of the defendant and his sister. *Id*. Since the defendant was not a recent immigrant, trial counsel had no reason to believe that travel to Jordan was necessary to present a competent mitigation case. *Id*. The Fourth Circuit affirmed the district court in holding that trial counsel undertook reasonable efforts to investigate the defendant's cultural background, and trial counsel understood and adequately presented the cultural aspects of the case. *Id*.

The holding in *Syriani* illustrates how the duty to present mitigation evidence in a capital case is limited by pragmatism and common-sense. The fact that Mr. Lujan spent a very limited

amount of time in Juárez while he was growing up, years before the charged crime, suggests that the need for the investigation there is limited.  The same information can be presented through Mr. Lujan, his mother, and other close family members.  Indeed, the evidence that might be uncovered in Juárez would be merely corroborative of the evidence that has already been secured through family.

Additionally, the mitigation information sought could, likely, have been uncovered during the more than three years that Ms. Goody has been working on this case.  On February 29, 2008, the trial date of August 18, 2008, was continued because Mr. Lujan's original mitigation specialist, Linda Mockeridge, resigned due to medical issues and Ms. Goody estimated that ten to twelve months would be required to complete the mitigation investigation. (Docs. 236 and 244).  Several months later, in May 2008 the situation in Juárez had deteriorated to the point that investigators with the Federal Public Defender's Office in El Paso stopped crossing the border.  Over two years later, in September 2010, the United States Department of State issued its travel warning.  Certainly, the mitigation investigation could have been accomplished before the danger in Juárez escalated to current levels.

Finally, a reasonable mitigation investigation to gather any information that might exist in Juárez can be accomplished with a Juárez-based investigator, internet resources (e.g., Google maps), and telephone contact, all without the necessity of Ms. Goody's physical presence in Juárez.  Notably, much of the desired evidence involves Mr. Lujan's relatives and family friends who should be sympathetic to his case and willing to cooperate with his defense team. Thousands of people routinely cross into Juárez on a daily basis.  While it is undeniably dangerous, 1.3 million men, women, and children live in Juárez.  The defense team could obtain a reasonable amount of mitigation evidence from Juárez without compromising Ms. Goody's

safety. It became apparent at the hearing that there were alternative investigative techniques that could be pursued. In essence, the defense has weighed the costs against the benefits and elected not to investigate in Juárez.

## IV.     Conclusion.

The fact that the violence in Juárez makes it dangerous and difficult for defense counsel to investigate mitigation evidence concerning the time Mr. Lujan spent in Juárez is not grounds to strike the death penalty notice.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Order to Strike Death Penalty Notice Because Adequate Mitigation Investigation Cannot be Done (Doc. 612), filed on March 19, 2010, is **DENIED**.

_____
 **ROBERT C. BRACK**
 **UNITED STATES DISTRICT JUDGE**