IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                    NO. CR 05-0924 RB

LARRY LUJAN,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion to Exclude Evidence for Failure to Disclose in a Timely Manner (Doc. 780), filed on April 15, 2011. Having considered the submissions of counsel, the record, relevant law, and being otherwise fully advised, the Court denies this Motion.

**I.    Background.**

Mr. Lujan is charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment included a Notice of Special Findings against Mr. Lujan, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (Doc. 145). On July 12, 2007, and February 17, 2011, the United States filed Notices of Intent to Seek a Sentence of Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA. (Doc. 146 and Doc. 690). Trial is set for June 20, 2011, through September 9, 2011.

**II.    Summary of Arguments.**

Mr. Lujan moves to exclude evidence and testimony from five trial-phase witnesses and eighteen penalty-phase witnesses on the ground that the United States has not provided the tape

recordings of prior interviews of the witnesses, pursuant to Fed. R. Crim. P. 26.2.  Mr. Lujan also requests that the Court exclude a home videotape seized in connection with the investigation from evidence because the United States failed to disclose it, in violation of Fed. R. Crim. P. 16.  (Doc. 780).  Finally, Mr. Lujan also contends that the United States failed to timely disclose Jencks Act and Rule 26.2 materials.  (Doc. 780).

The United States points out that the deadline to disclose Jencks Act and Rule 26.2 materials has not passed, the United States has complied with Rule 26.2 in advance of the deadline, the loss of audio recordings does not warrant exclusion of the witnesses' testimony, and a DVD of the home videotape was disclosed twice; on August 18, 2005, and on April 19, 2011.  (Doc. 796).

**III.    Discussion.**

The prior recorded statements of Government witnesses are covered by the Jencks Act and Rule 26.2.  *See United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) ("The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only after the witness has testified on direct examination at trial.").  The purpose of the Jencks Act and Rule 26.2 is to permit a trial lawyer to have the materials necessary to impeach a witness.  *See United States v. Rosa*, 891 F.2d 1074, 1076-77 (3d Cir.1989) (citing *Jencks v. United States*, 353 U.S. 657, 667 (1957)).  The Jencks Act and Rule 26.2 require the Government to disclose prior recorded statements of its witnesses after they testify. 18 U.S.C. § 3500(b); Fed. R. Crim. P. 26.2.

A rigid application of the Jencks Act and Rule 26.2 would lead to the conclusion that the statements need not be disclosed before trial.  Nonetheless, the United States agreed to early disclosure of Jencks Act and Rule 26.2 materials in the interest of avoiding interruptions and delays at trial.  *See United States v. Lujan*, 530 F.Supp.2d 1224, 1254 (D. N.M. 2008).  Based on this concession, as well as the interests of justice, the Court ordered early production of Jencks Act and Rule 26.2 materials two

2

weeks prior to trial.  *Lujan*, 530 F.Supp.2d at 1255.  The applicable Scheduling Order provides that final disclosures, pursuant to the Jencks Act and Rule 26.2, must be completed no later than June 6, 2011.  (Doc. 784).  Thus, the deadline has not expired.

Notably, consistent with the Court's stated preference that counsel cooperate in trial preparation, the United States has disclosed transcripts, summaries, and/or recordings of all witness interviews in advance of the deadline.  (Doc. 796-1, Govt. Ex. 1.)  Additionally, on April 29, 2011, the United States disclosed numerous audio recordings that it received from the Doña Ana County Sheriff's Office on April 28, 2011.  (Doc. 796-1, Govt. Ex. 1.)  With regard to the rest of the audio recordings, the Government explained that "[a]lthough some audio recordings of witness interviews have apparently been lost during the course of this lengthy, multi-agency investigation, the United States has disclosed every audio recording it has been able to find.  For those recordings that are missing, the United States has provided transcripts of those witness interviews, along with police reports of the interviews."  (Doc. 796).

It bears underscoring that the United States has disclosed the transcripts of the interviews, which are adequate for impeachment purposes.  Mr. Lujan has not explained why he needs the audio recordings in addition to the transcripts.  Conversely, the United States has cited authorities holding the loss of audio recordings does not merit exclusion of evidence.  *See United States v. Moore*, 452 F.3d 382, 389 (5th Cir. 2006); *United States v. Femia*, 9 F.3d 990, 993-94 (1st Cir. 1993).  While these authorities are not controlling, the Court finds them to be persuasive.  Moreover, the United States cites to the Tenth Circuit case of *United States v. Monaco*, 700 F.2d 577, 579-80 (10th Cir. 1983), wherein the tape recorded statement of the government's star witness was lost.  *Monaco*, 700 F.2d at 579.  The government justified the loss by emphasizing that the investigation covered two states and required cooperation among federal agents and various state and local police.  *Id.*  The Tenth Circuit held that

"when there is no evidence of governmental misconduct, the crucial question is whether the defendant could receive a fair trial without the missing evidence." *Id.* (*citing United States v. Baca*, 687 F.2d 1356 (10th Cir.1982)).  The Tenth Circuit underscored that (1) there was no evidence the lost tape was exculpatory, (2) the witness testified at trial and was subject to cross examination, and, (3) the evidence against the defendants was overwhelming. *Monaco*, 700 F.2d at 580.  Based on these considerations, the Tenth Circuit held that the defendants were not sufficiently prejudiced to justify reversal. *Id.* Although *Monaco* predated controlling Supreme Court jurisprudence on the topic of lost evidence, discussed *infra*, the Court finds *Monaco* was well-reasoned and generally consistent with current law.

In *California v. Trombetta*, 467 U.S. 479 (1984), the Supreme Court held that "the Due Process Clause of the Fourteenth Amendment does not require [ ] law enforcement agencies [to] preserve breath samples in order to introduce the results of breath-analysis tests at trial." *Id.*, 467 U.S. at 491. The Court noted the officers in *Trombetta* were "acting in good faith and in accord with their normal practice." *Id.*, 467 U.S. at 488 (quotations omitted).  It further concluded that any duty the Due Process Clause imposes on the government to preserve evidence, "must be limited to evidence that might be expected to play a significant role in the suspect's defense." *Id.*

To meet this standard of constitutional materiality, destroyed evidence must (1) possess exculpatory value which was apparent before it was destroyed, and, (2) be of such a nature that the defendant could not obtain comparable evidence by other reasonably available means. *Trombetta*, 467 U.S. at 489.  In this case, the defense has not established the exculpatory value of the audio recordings within the meaning of *Trombetta* due to the existence of the transcripts of the interviews. *See United States v. Beckstead*, 500 F.3d 1154, 1159-61 (10th Cir. 2007) (discussing how exculpatory value of meth lab equipment seized from co-defendant's apartment and defendant's car was not apparent).

In *Arizona v. Youngblood*, 488 U.S. 51 (1988), the Court extended *Trombetta* and held that,

4

where the government fails to preserve "evidentiary material of which no more can be said than it could have been subjected to tests, the results of which might have exonerated the defendant," no due process violation occurs unless the defendant demonstrates the government acted in bad faith. *Youngblood*, 488 U.S. at 57.  Therefore, "if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense," then the defendant must also show (3) "that the government acted in bad faith in destroying the evidence." *United States v. Bohl*, 25 F.3d 904, 910 (10th Cir. 1994) (*quoting Youngblood*, 488 U.S. at 58).

In that audio recordings did not have apparent exculpatory value within the meaning of *Trombetta*, Mr. Lujan must show bad faith under *Youngblood*.  The inquiry into bad faith looks to the government's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed. *See Bohl*, 25 F.3d at 911 (*citing Youngblood*, 488 U.S. at 57).  The defendant bears the burden to prove bad faith by the government.  *Bohl*, 25 F.3d at 913.  Mere negligence in failing to preserve evidence is insufficient.  *Bohl*, 25 F.3d at 912.

The Tenth Circuit has identified five factors relevant to the bad faith determination:  (1) whether the government had explicit notice that defendant believed the evidence to be potentially exculpatory; (2) whether the defendant's assertion that the evidence possessed potential exculpatory value was merely conclusory or was supported by objective, independent evidence; (3) whether the government had possession of or the ability to control disposition of the evidence at the time it received notice of its potential exculpatory value; (4) whether the lost or destroyed evidence was central to the government's case; and, (5) whether the government offers an innocent explanation for its failure to preserve the evidence.  *Bohl*, 25 F.3d at 911-13; *see also Beckstead*, 500 F.3d at 1159-61.

In this case, there is no indication that the audio recordings contained any information that is not reflected in the transcripts.  Mr. Lujan has neither demonstrated that the audio recordings are

5

potentially exculpatory, nor are they central to the Government's case. The response indicates that the United States intends to call the witnesses to testify in person at trial. Thus, the interviews are potential impeachment evidence. Mr. Lujan may impeach the Government's witnesses with the information contained in the transcripts of the interviews and the police reports. The circumstances of this case are similar to those in *Monaco*, which involved an investigation covering two states and several law enforcement agencies. *Monaco*, 700 F.2d at 580. In the case sub judice, the United States has explained that the audio recordings were lost during the course of an investigation involving local and federal law enforcement agencies that spanned six-years and two states. This explanation is reasonable. Under these circumstances, the Court concludes that Mr. Lujan has not met his burden of showing bad faith. Accordingly, Mr. Lujan's request to exclude the testimony and evidence from the five trial-phase witnesses and eighteen penalty-phase witnesses on the grounds that the United States has not provided the tape recordings of prior interviews of the witnesses will be denied.

Finally, the United States has produced the home videotape not once, but twice. In that the contents of this videotape have been disclosed to the defense on two occasions, Mr. Lujan's motion will be denied as moot with respect to the home videotape.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Exclude Evidence for Failure to Disclose in a Timely Manner (Doc. 780), filed on April 15, 2011, is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**

6