IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                 NO. CR 05-0924 RB

LARRY LUJAN,

        Defendant.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Larry Lujan's ("Defendant's")

Motion To Require The Government To Prove All The Elements Of The Offense In The Trial

Phase And To Be Allowed To Instruct The Jury In A Manner Which Preserves His Rights Under

The *Beck* Doctrine, filed April 15, 2011. *Doc. 774.* Robert E. Kinney, Supervisory Assistant

Federal Public Defender and Appointed CJA Counsel Peter Schoenburg represent Defendant on

this motion. The United States, represented by Mark Saltman, filed a response on April 29,

2011. *See Doc. 795.* I find no need for a reply or hearing, and deny the motion.

The United States indicted Defendant on two counts. Count 1 charges him with

kidnapping resulting in death in violation § 1201(a)(1). Count 2 charges him with tampering

with a witness in violation 18 U.S.C. 1512(a)(1)(C).[1] *See, e.g., Docs. 1, 145.* Years ago, the

parties agreed that the tampering count should be dismissed and the Court did so. *See Docs.*
*285, 363, 375.*

---

[1] Both counts also cite 18 U.S.C. § 2, the statutes that punishes those who "aid, abet" etc. the same "as
a principal."

The Federal Death Penalty Act ("FDPA") contemplates separate trial phase and penalty phases. *See, e.g.,* 18 U.S.C. §§ 3591(a); 3592(c), 3593(b), (d), (e); *Doc. 454* at 2; *Doc. 475* at 1-2; *Doc. 497* at 1-2.  Early in the matter, the Court required the parties to brief phase procedures and held hearings on the subject.  Ultimately, instead of simply "bifurcating" the proceedings, the Court "trifurcated" them. *E.g., Docs. 230, 254, 447, 454, 497.*  As such, our common understanding of how the proceedings will unfold has long been that:  (1) in the trial phase, the United States bears the burden of proving the charged crime, that is, the elements comprising the crime of kidnapping resulting in death; (2) if the jury finds Defendant guilty, then in the "eligibility" phase, the United States bears the burden of establishing at least one or more of the statutory "threshold" and "aggravating" factors, without which death is not a penalty option; and (3) if the jury finds the requisite statutory factors, then the parties will submit their aggravating and mitigating factors to the jury to weigh in deciding whether to impose a death penalty. *E.g., Doc. 497* at 1-2.

To meet its obligation of showing a "threshold" factor, the United States intends to show that Defendant was over age eighteen at the time of the crime and that he intentionally:  killed the victim; inflicted serious bodily injury that resulted in the victim's death; "participated in an act, contemplating that the life of a person would be taken and intending that lethal force would be used;" and/or, in a reckless disregard for human life, engaged in a violent act knowing it created a grave risk of death. *Doc. 733* at 4, 11 (citing 18 U.S.C. §§ 3591(a); 3591(2)(B), (C), (D)).[2]  To meet its obligation of showing a statutory "aggravating" factor, the United States intends to show that Defendant:  caused the death of the victim during the commission of the

---

[2] The parties sometimes refer to these threshold "intent" factors as the "gateway intent factors" or the *mens rea* requirement. *E.g., Doc. 774* at 6; *Doc. 795* at 1 & n.2.

kidnapping; committed the offense in a manner "such that it involved torture or serious physical

abuse;" committed the offense after "substantial planning and premeditation;" and/or committed

the offense against a particularly vulnerable victim.  *Id.* at 12, 15,16 (citing 18 U.S.C. §§

3592(c)(1), (6), (9), (11).

As noted in an earlier opinion, in order to convict Defendant for violating § 1201(a)(1),

the United States must prove that he:

(1) knowingly, acting contrary to law, kidnapped the victim;

(2) for some purpose or benefit;

(3) willfully transported the victim;

(4) in interstate commerce; and

(5) the act of kidnapping proximately caused the victim's death.

*See Doc. 725* at 2-3 (citing TENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) (2006),

*United States v. Mayhew,* 380 F. Supp. 2d 936, 958 (S.D. Ohio 2005), and *United States v.*

*Foghorn,* 2006 WL 4017477 (D.N.M. 2006)).[3]

Defendant contends the Supreme Court's decision in *Ring* holds that "death penalty

aggravating factors operate as the functional equivalent of an element of a greater offense."

*Doc. 774* at 6 (internal quotations to *Ring v. Arizona,* 536 U.S. 584, 609 (2002), and *Apprendi v.*

*New Jersey,* 530 U.S. 466, 494 n.19 (2000), omitted).  He also contends that the Supreme

Court's decisions in *Ring, Apprendi,* and *Sattazahn v. Pennsylvania,* 537 U.S. 101 (2003), make

it "clear that the intent and statutory aggravators are elements of 'capital murder'" and "make it

---

[3] The 2011 version of the Tenth Circuit's pattern instructions has since been published.  The first four elements above are identical.  Comments to the instruction note that an "additional element" is required under "*Apprendi* . . . when the indictment alleges that the kidnapping resulted in the death of a person and the prosecution is seeking the death penalty."  *See* TENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 2.55 (2011).  The fifth element above is that additional element.

clear that jury fact-finding on the intent and statutory aggravators cannot be constitutionally

included in the penalty phase." *Doc. 774* at 4, 6.  Defendant thus redefines the "elements' of the

charge the United States must prove during the trial phase.  He asserts that to prove "capital

murder" under the FDPA, the United States must prove during the trial phase:

> (1) a "murder" occurred during a kidnapping in violation of 18 U.S.C. § 1201(a)(1);
>
> (2) Defendant was over the age of 18 at the time of the crime;
>
> (3) one or more of the "threshold intent" factors; and
>
> (4) one of the statutory "aggravating" factors.

*Doc. 774* at 6.

Accordingly, the defense now takes the position that the trial and eligibility "intent"

phases must be combined.  If they are not combined, Defendant argues he will be unable to

pursue a "lesser-included offense" instruction for "second-degree murder" in violation of *Beck v.*

*Alabama,* 447 U.S. 625 (1980).  *See Doc. 774.*  The United States asserts that the defense

misreads *Ring,* asks the Court to construe the FDPA contrary to its plain terms, asks the Court to

inject prejudicial information into the trial phase, and is not entitled a lesser-included instruction

until the Court sees what evidence justifies any such instruction.  *See Doc. 795.*

Admittedly, the defense arguments are creative and evidence counsel's zealous advocacy

of their client.  As indicated on several occasions, the Court is not inclined to adopt a novel

position in the absence of precedent justifying such action.  *E.g., Doc. 772.*  The defense cites no

decision, much less binding or persuasive authority, that embraces the position counsel urge the

Court to adopt.  The Court has been unable to locate any such case.  Moreover, I am wholly

unpersuaded by the defense arguments.

Foremost, defense counsel read the Supreme Court opinions much to broadly.  While

those cases speak in terms of the "elements" of an offense, they do so in terms of what is

constitutionally necessary for the prosecution to prove ***to a jury.***  The procedures outlined in the

FDPA, urged by counsel at the outset and embraced, not only by this Court but many others,

does not interfere with the United States' burden of proof or the jury's role with respect to each

of the "elements" as redefined above by the defense.[4]

I do not read Justice Scalia's use of a "lesser-included" analogy in *Sattazahn* as a signal

that this Court should unblinkingly reinvent the FDPA scheme, upset the plan we have long

adhered to on the eve of trial, and cause a number of pretrial rulings to be revisited.  *See*

*Sattazahn v. Pennsylvania,* 537 U.S. 101, 110-13 (2003).  Justice Scalia's discussion appears in

part III of the opinion of the Court, which only two other Justices joined.  *See* 537 U.S. at 102

(Rehnquist and Thomas, JJ.).  Furthermore, Justice Scalia used that discussion to contrast why

he believed the Court's established double jeopardy precedent proved unhelpful in resolving the

issue at hand.  As he explained, those decisions were decided when capital-sentencing

proceedings were "just that:  *sentencing proceedings*" in contrast to the post-*Apprendi* situation

where some sentencing factors must be decided by a jury.  537 U.S. at 110 (emphasis original).

---

[4]  *E.g., Ring,* 536 U.S. at 609 ("we hold that *Walton* and *Apprendi* are irreconcilable; our Sixth
Amendment jurisprudence cannot be home to both.  Accordingly, we overrule *Walton* to the extent that it
allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for
imposition of the death penalty. . . .  Because Arizona's enumerated aggravating factors operate as the
functional equivalent of an element of a greater offense, . . .  the Sixth Amendment requires that they be
found by a jury.") (internal quotations and citations omitted); *id.* at 610 (Scalia, J. and Thomas, J.,
concurring) ("I believe that the fundamental meaning of the jury-trial guarantee of the Sixth Amendment
is that all facts essential to imposition of the level of punishment that the defendant receives—whether the
statute calls them elements of the offense, sentencing factors, or Mary Jane—must be found by the jury
beyond a reasonable doubt.").

*Sattazahn* holds that, depending on the procedures employed, penalty phase proceedings will result in an "acquittal" for double jeopardy purposes and others will not.[5]

Not one of the Supreme Court decisions cited by Defendant addresses federal criminal statutes or the FDPA procedures.  Not one of them requires trial procedures to unfold in a certain manner.  Not one of them condemns use of a bifurcated or trifurcated procedure in death penalty cases.  Not one of them dictates how trial phases should be segregated or combined.  Moreover, the procedures currently in place protect the "core concern" of the *Beck* decision.  As Defendant explains, the Supreme Court emphasized that *Beck* was concerned with the situation where a capital jury "is forced into an all-or-nothing choice between capital murder and innocence." *Doc. 774* at 9 (internal quotations and citation to *Schad v. Arizona,* 501 U.S. 624, 646-47 (1991), omitted).  Defendant's jury will not face that choice precisely because the trial phase is separate from the penalty phases.  By maintaining a clear demarcation between the trial and penalty phases, Defendant's jury also will be shielded from certain "other crimes" information that arguably could appeal to its emotions in deciding his guilt or innocence.  *See, e.g., Doc. 718* at 15-18.

---

[5] As Justice Scalia went on to explain that "[f]or purposes of the Double Jeopardy Clause," the "first-degree murder" offense is, in terms of what the jury must  decide under *Ring* and *Apprendi,* "properly understood to be a lesser included offense of "first-degree murder plus aggravating circumstance." *Sattazahn,* 537 U.S. at 112.  Viewed that way, "if petitioner's first sentencing jury had unanimously concluded that Pennsylvania failed to prove any aggravating circumstances, that conclusion would operate as an 'acquittal' of the greater offense-which would bar Pennsylvania from retrying petitioner on that greater offense (and thus, from seeking the death penalty) on retrial." *Id.* "But that is not what happened. Petitioner was convicted in the guilt phase of his first trial of the lesser offense of first-degree murder" and "[d]uring the sentencing phase, the jury  deliberated without reaching a decision on death or life, and without making any findings regarding aggravating or mitigating circumstances." 537 U.S. at 112-13.  The trial judge then "dismissed the jury as hung and entered a life sentence in accordance with Pennsylvania law." 537 U.S. at 113.  As such, "neither judge nor jury 'acquitted' petitioner of the greater offense of 'first-degree murder plus aggravating circumstance" and, therefore, "when petitioner appealed and succeeded in invalidating his conviction of the lesser offense, there was no double-jeopardy bar to Pennsylvania's retrying petitioner on both the lesser and the greater offense; his 'jeopardy' never terminated with respect to either." *Id.*

Equally unavailing is the suggestion that Defendant would be entitled to a lesser-included instruction on second-degree murder.  The United States has never charged Defendant with "murder."  As a general matter, the federal murder statute defines first-degree murder either as "willful, deliberate, malicious . . . premeditated" *or* as a murder committed during a felony such as kidnapping.  18 U.S.C. § 1111(a).  "Any other murder is in the second degree."  *Id.,* § 1111(b).  The Tenth Circuit decision cited by Defendant unequivocally holds, as a matter of law, that second-degree murder *is not* a lesser-included offense of felony murder under the federal statute.  *United States v. Chanthadara,* 230 F.3d 1237, 1257-59 (10th Cir. 2000), *cert. denied,* 534 U.S.992 (2001).  That is so because felony murder requires no proof of "malice aforethought" and the felony itself supplies that element.  "Because malice aforethought is proved by commission of the felony, there is no actual intent requirement with respect to the homicide."  230 F.3d at 1258; *see also* TENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 2.52.1 (2011) (Comment to first degree felony murder instruction under 18 U.S.C. § 1111 provides that the "government need not establish some proof of a state of mind other than the intent to commit the underlying felony, and the fact that the killing occurred during the commission of that felony."); *id.,* § 2.53 (Comment to second degree murder instruction under 18 U.S.C. § 1111 provides that "[s]econd degree murder is not a lesser included offense of first degree felony murder because of the different malice aforethought that is required.") (citing *Chanthadara,* 230 F.3d at 1258-59).

The kidnapping statute operates the same way.  By the terms of the statute and the elements of the crime, kidnapping does not require proof of a homicide to invoke the death penalty.  Instead, by the plain terms of the kidnapping statute the crime "shall be punished by death or life imprisonment" if the kidnapping simply "results" in death.  18 U.S.C. § 1201(a).  I

have so held in at least one prior opinion on the subject. "Unlike [a] first degree murder charge

. . . the charge against Mr. Lujan does not require the United States to prove that Mr. Lujan

killed Mr. Grauke with malice aforethought." *Doc. 725* at 4 (internal citation omitted). Thus,

even if kidnapping under § 1201(a) could be equated with felony murder under § 1111(a),

Defendant would not be entitled to the instruction he seeks as a matter of law.

Finally, comments to the Tenth Circuit pattern jury instructions illustrate when a lesser-

included instruction is appropriate in a kidnapping resulting in death case. "If a disputed issue is

whether a death resulted, a court should consider giving a lesser included offense instruction."

TENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 2.55 (2011) (Comment)). In all the

years this case has been pending, the parties have never suggested that the victim's death was not

the result of the kidnapping. Defense counsel do not make any such suggestion in the instant

motion. If the evidence unfolds along those lines, the Court will reconsider an appropriate

lesser-included instruction.

**IT IS THEREFORE ORDERED** that Defendant's motion *(Doc. 774)* is DENIED.

ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE