IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                               NO. CR 05-0924 RB

LARRY LUJAN,

        Defendant.

# **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the United States' Notice To Use Inextricably Intertwined Evidence, Or In The Alternative, Notice Of Other Crimes Or Bad Acts Pursuant To Rule 404(b), filed November 3, 2008. *Doc. 481*. The Court heard oral argument on April 18, 2011. Having considered the submissions and arguments of counsel, the record, relevant law, and being otherwise fully advised, I deny Defendant's oral request made at the hearing, find that two categories of information are admissible in the United States' case-in-chief, and find that the final category of information is not admissible in the United States' case-in-chief.

## I.    **Introduction**

The Third Superseding Indictment charges Defendant Larry Lujan ("Defendant") with kidnapping resulting in the death of the victim Dana Joe Grauke II, in violation of 18 U.S.C.

§ 1201(a)(1).  *See Doc. 145.*  The United States also filed notices that it intends to seek the death penalty, and informational outlines pertaining to the charge and penalty.  *See Docs. 146, 437, 690, 733.*  Collectively, these documents provide considerable detail about the evidence the United States will introduce.  The Tenth Circuit accurately summarized this evidence as depicting "a gruesome scene" where, over a prolonged period, Defendant and others severely beat the victim, sexually assaulted him, and engaged in other acts designed to "terrify and isolate" him.  *United States v. Lujan,* 603 F.3d 850, 852 (10th Cir. 2010), *cert. denied,* 2011 WL 941019 (3/21/11).  The majority decision noted that the "handful of allegations ***necessary to understand this case*** begin when Lujan visited Grauke at his home to collect on a drug debt." *Id.* (emphasis added).

After initial efforts to collect the debt failed, Defendant and another person first forced the victim into the trunk of a car, then blindfolded and bound him and transferred him to another vehicle, and drove him from Texas to New Mexico.  Among other things, Defendant allegedly taunted the victim by threatening to kill him and saying:  "[t]his is what happens when you mess with me.'' *Id.* (internal quotations and citation omitted).  Later, the victim's body "was discovered with a butcher knife . . . connected" to Defendant.  *Id.*  In its notice, the United States calls this knife found with the body a "meat cleaver."  *See Doc. 481* at 1, 6.  At the hearing, counsel for the United States used the terms interchangeably.  I refer to the implement as a "meat cleaver" and ask the parties to maintain a distinction between knives and meat cleavers during trial.

## II.   The Two Incidents At Issue

The United States intends to present two incidents during the trial phase.  One incident

involved an altercation between Defendant and the victim.  The other involved an altercation

between Defendant and Robert "Teddy" Orozco ("Orozco").  Precisely when the Orozco

incident took place is not clear.[1]  However, both incidents clearly preceded the kidnapping and,

in context, the Orozco incident appears to have occurred first.

    ***The Orozco Incident.***  According to the United States' notice, Defendant allegedly lured

Orozco to an apartment in San Antonio, Texas.  Once inside, Defendant and others began

beating Orozco.  Defendant wanted Orozco to reveal where he kept his drugs, where the victim,

Mr. Grauke, was located, and who supplied the victim with drugs.  Defendant wielded a meat

cleaver and threatened to slit Orozco's throat if he did not reimburse Defendant $300 for

"wasting" Defendant's time.  *Doc. 481* at 1-2.  According to the United States' informational

outlines, Defendant also told Orozco that he "did not care if he spent ten or twenty years in jail"

– he "would come after Orozco when he got out."  *Doc. 733* at 5; *see also Doc. 437* at 5 (same).

    At the hearing, the United States presented more detail about the events during the

Orozco incident, including:  how Defendant lured Orozco to the apartment; the substances

Defendant and his "associates" ingested; that Defendant drove Orozco to the victim's apartment;

while Defendant was banging on the victim's door and looking in the windows, Orozco saw the

victim slide off of his couch and go hide; that Defendant demanded Orozco find drugs for him

and sell drugs for him; and, that after Defendant left, Orozco's mother took Orozco to the doctor.

The United States also mentioned other statements Defendant allegedly made, such as:  boasting

he had people willing to "kick . . . ass for me;" telling Orozco he had a gun; demanding $200 a

week until Orozco paid $1,000; mentioning that Orozco better not "go to the police" and better

---

[1]  Based on one of Mr. Orozco's interviews, the incident took place two weeks before the kidnapping.
Based on another, it took place eight weeks before the kidnapping.

"keep his mouth shut" if he did not want "anything bad" to happen to his mother; threatening to steal Orozco's car and to hide it;  threatening to "dump" Orozco's body in "El Paso" where no one would "find it;" and, saying the victim is "going to get it worse" than Orozco.

**The Victim Incident.**  On a different occasion, Defendant arrived at the victim's home uninvited and unannounced.  Gabriel Rendon ("Rendon") was visiting and overheard the conversation that ensued between Defendant and the victim.  According to the United States' notice and counsel's representations at the hearing, Rendon is expected to testify that Defendant demanded that the victim either stop selling drugs in his territory, or use Defendant as his exclusive supplier.  *Doc. 48* at 2.

## III.    The Parties' Positions

The parties filed the notice and response to it in November 2008.  The United States did not file a reply.  At the April 18, 2011 hearing, the parties supplemented their written positions with additional arguments and citations to authority.

The United States argues in favor of admissibility under different theories.  It asserts that the incidents constitute either "*res gestae*" evidence that is "part and parcel" of the charged offense, "intrinsic" and "inextricably intertwined" background evidence necessary to avoid jury confusion, or Rule 404(b) evidence relevant to show motive, opportunity, knowledge, identity, and absence of mistake.  The United States also asserts that any statements made by Defendant during the two incidents are admissible, as admissions of a party opponent under Rule 801(d)(2)(A).

Defendant argues that the United States' rendition of the Orozco incident at the hearing "enlarged" what it provided in its notice, and, as such, the Court should only consider the

admissibility of what is listed in the notice.  Defendant disagrees with the United States'

characterization of the evidence as "*res gestae*" or "inextricably intertwined," and makes

arguments for distinguishing the cases cited by the United States.  He asserts that the jurors will

not be confused if the two incidents are excluded because United States has eyewitnesses to the

kidnapping, and subsequent events, who will testify about the relationship and dispute between

Defendant and the victim.  As for the suggestion that the incidents show Defendant planned the

kidnapping, counsel believes that the evidence will show the abduction and ensuing events were

impulsive decisions fueled by drugs.  Defendant further asserts that the threat to Orozco with a

meat cleaver is a "red herring" because knives were used during the abduction and to kill the

victim, and the meat cleaver found with the victim's body is indistinguishable from other

common meat cleavers.

## IV.    Defendant's Oral Request Regarding Belated Disclosure

Rule 404(b) provides in pertinent part that, upon the request of Defendant,[2] the

government "shall provide ***reasonable notice*** in advance of trial . . . of the ***general nature*** of any

such evidence it intends to introduce at trial."  FED. R. EVID. 404(b) (emphasis added).

Information that accompanies the 1991 amendments to the rule provide that a court has

discretion to "decide that the particular request or notice was not reasonable, either because of

the lack of timeliness or completeness."  *Id.* (Advisory Committee Notes to the 1991

Amendments) (hereinafter "Committee" and "Committee Notes").  The Committee Notes further

provide that, because notice is a "condition precedent to admissibility of 404(b) evidence," the

---

[2] As discussed later in this opinion, the Court set Rule 404(b) deadlines early in the case.  However Defendant also made a formal request "that the Court order that the government provide specific information regarding any 404(b) or 'prior bad act' evidence it intends to introduce."  *Doc. 464* at 2.

"offered evidence is inadmissible if the court decides that the notice requirement has not been met." *Id.* Binding authority is in accord with the views of the Committee. "If the government does not comply with the notice requirement of Rule 404(b) after a request by the accused, the offered evidence is inadmissible." *United States v. Lopez-Gutierrez,* 83 F.3d 1235, 1241 (10th Cir. 1996) (citing Committee Notes).

Rule 404(b) only requires that the government disclose the "general nature" of the evidence. It does not define the type of information that must be disclosed, or the degree of specificity that must be provided. This was not an oversight. The Committee opted for a "generalized notice" over a "specific form of notice" and "rejected a requirement that the notice satisfy the particularity requirements normally required of language used in a charging instrument." Rule 404(b) (Committee Notes). It also did not intend for the Rule 404(b) notice requirement to "supercede other rules of admissibility or disclosure," or to broaden the United States' obligations under Rule 16. *Id.*

Few decisions have found notices insufficient under the "general nature" requirement. For example, the Tenth Circuit held that a notice advising the government "might offer prior and subsequent conduct involving the distribution of controlled substances" was sufficient, because it described the "general nature" of the evidence the United States in fact used against the defendant. *United States v. Russell,* 109 F.3d 1503, 1507 (10th Cir.), *cert. denied,* 521 U.S. 1126 (1997). A more recent unpublished Tenth Circuit decision also underscores that the notice need only be of a "general nature" to satisfy Rule 404(b). *United States v. Aguilar,* 59 Fed. App'x 326, 328 (10th Cir. 2003). The disclosures held to be sufficient in *Aguilar* contained the "names of the witnesses and the content of their testimony" and a "supplemental notice specified in

further detail the testimony of certain witnesses."  *Id.*  A district judge held that notice of "prior

incidents involving inappropriate conduct with minors and prior use of counterfeit currency,"

when coupled with discovery, provided to counsel for defendant, was grounds to deny a request

for more specific disclosure.  *United States v. Downes,* 2001 WL 121951 (D. Kan. 2001) (Crow,

J.).

       If a notice is insufficient to resolve the issue of admissibility, it fails the "general nature"

requirement.  Thus, a district judge held insufficient a notice that a witness "will testify

consistent with his prior statement . . . previously provided to you," because it did not "describe

the nature of the defendant's prior conduct [that] the government intends to introduce."  *United*

*States v. Long,* 814 F. Supp. 72, 73-74 (D. Kan. 1993) (Saffels, J.) (internal quotations omitted);

*see also, e.g., United States v. Barnes,* 49 F.3d 1144, 1149 (6th Cir. 1995) ("notice . . .  must be

sufficiently clear so as 'to permit pretrial resolution of the issue of its admissibility'") (quoting

*Long,* 814 F. Supp. at 74).  When a notice is insufficient to resolve admissibility, however, a

court can require the United States to provide more detail.  *See Long,* 814 F. Supp. at 74; Rule

404 (Committee Notes) ("When ruling *in limine,* the court may require the government to

disclose to it the specifics of such evidence which the court must consider in determining

admissibility.").  Supplementation, rather than exclusion, is consistent with the purpose of the

notice requirement, which is "to reduce surprise and promote early resolution of the issue of

admissibility."  Rule 404(b) (Committee Notes).

       The detail provided by the United States exceeds the more cryptic notices that have been

held to be sufficient.  Moreover, at the hearing, the United States explained that the additional

details counsel recited came from transcribed interviews with Orozco.  Defendant's counsel did

not dispute that they have had the "reports" and the "transcribed statements" for "years."  Thus, the only conceivable issue is whether the supplementation given during the hearing was "reasonable" under the timeliness aspect of the notice requirement.

Rule 404(b) does not define what period of time is "reasonable."  Committee Notes indicate that this omission also was intentional because "what constitutes a reasonable request . . . will depend largely on the circumstances of each case."  *Id.*  Our local criminal rules require that, in capital cases, the Court confer with counsel before setting case-specific scheduling deadlines.[3]  Early in the case, I set a deadline that required the United States to disclose Rule 404(b) material five days before trial.[4]  Later, Defendant requested that I extend the deadline and require the United States to make the disclosures by the end of November 2008, which would have been "60 days prior" to the trial setting in place at that time.  *Doc. 464* at 2.  I denied this motion as moot when the United States filed its notice.  *See Doc. 514.*

Presently, jury selection will commence on June 20, 2011.  The deadline for motions in limine has not passed and is set for May 13, 2011.  The United States announced additional details about the Orozco incident at the April 18, 2011 hearing.  *Doc. 762* at 2; *Doc. 766* at 1.  By my calculation, the additional details were thus disclosed more than sixty days prior to trial.  Therefore, the United States' supplemental disclosure was timely under not only the Court's deadline, but also under the extended period Defendant previously requested.

---

[3]  *See* D.N.M.LR-CR. 16.2 (effective 11/1/05) ("If a case is . . . a capital punishment case, the Court will enter a Scheduling Order after meeting with counsel."); D.N.M.LR-CR. 16.2 (effective 12/1/09) (same).

[4]  *See, e.g., Doc. 73* at 2 (order filed 11/16/05 that sets certain deadlines and defers setting others); *Doc. 158* at 1-6 (order filed 7/30/07 setting discovery and motions deadlines, including the Rule 404(b) deadline).

Under these circumstances, sanctioning the United States for belated supplementation would not advance the purposes of the rule.  Given the discovery that has taken place, counsel for Defendants should not have been surprised by the United States mentioning what Orozco said in his interviews.  Also, the United States supplemented its notice in time for Defendant to contest the admissibility of the evidence before trial.  Defendant had the opportunity to address the additional evidence at the hearing, and I will entertain those arguments.  He may raise other arguments to defeat admissibility of the incidents in the trial phase[5] in a motion in limine.[6] Accordingly, I decline Defendant's oral request to confine the United States to what was raised in the written notice.  *See Long,* 814 F. Supp at 73 ("Although the notice does not comply with Rule 404(b), the court does not agree . . . that the government should be precluded from introducing Rule 404(b) evidence at trial . . . sufficient time remains before trial for the government to amend its notice to provide defendant with sufficient information . . . to enable the defendant to file a motion in limine to contest its admissibility if he chooses to do so."); *cf., United States v. Davis,* ___ F.3d ___, 2011 WL 668117 at *12, n.5 (10th Cir. 2/25/11) (no error in admitting evidence not timely disclosed under court's scheduling order where defense counsel had access to the information at the U.S. Attorney's office, but did not avail himself of it, and had a chance to raise the timeliness issue at the court's pretrial hearing on defense motion in limine concerning admissibility of the evidence).

---

[5]  Defendant previously challenged the admissibility of the Orozco incident as it pertains to the penalty phase and I denied that motion.  *See Docs. 456, 718.*

[6]  If this opinion is filed later than May 9, 2011, I will permit Defendant to a motion in limine challenging admissibility of any Orozco incident material not otherwise excluded by this opinion.  He may do so within seven days of the date of this opinion.  No extensions will be granted.

## V.      The Terminology – "Extrinsic," "Intrinsic," & Other Phrases

The paths to determine the admissibility of evidence characterized as "extrinsic" or "intrinsic" involve different inquiries. Therefore, I first set forth my understanding of the terminology. This discussion is largely academic. On the other hand, it also seems prudent to afford counsel my views on the subject before trial, so that we will have a shared understanding of definitions and terms.

Evidence of a defendant's "bad character" is the cornerstone of Rule 404 because "'[p]roof of a defendant's sociopathic disposition is not a valid object'" and "'[s]howing that a man is generally bad has never been under our system allowable.'" *United States v. Hogue,* 827 F.2d 660, 552 (10th Cir. 1987) (quoting *United States v. Burkhart,* 458 F.2d 201, 204 (10th Cir. 1972)); *see also, e.g., Michelson v. United States,* 335 U.S. 469, 475 (1948) ("Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt."). Instead, a "'defendant has a right to be tried on the truth of the specific charge contained in the indictment.'" *Hogue,* 827 F.2d at 552 (quoting *Burkhart,* 458 F.2d at 204).

Evidence of "bad character" is not a concern because "the law invests the defendant with a presumption of good character" or because "character is irrelevant." *Michelson,* 335 U.S. at 475-76. To the contrary, "such facts might logically be persuasive that [a defendant] is by propensity a probable perpetrator of the crime." 335 U.S. a 475. Evidence of "bad character" is disallowed because of the undue prejudicial effects that flow from its extrinsic nature. "[I]t is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *Id.; see*

*also, e.g., United States v. Commanche,* 577 F.3d 1261, 1267 (10th Cir. 2009) ("Using other bad

acts to demonstrate conformity with a particular character trait is prohibited because it is

prejudicial") (citing same passage from *Michelson*).  Therefore, the "overriding policy of

excluding such evidence, despite its potential probative value, is the practical experience that its

disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."

*Michelson,* 335 U.S. at 476.

      Consistent with these principles, Rule 404 generally prohibits the use of evidence of

"character" to show a person acted "in conformity therewith," and subsection (b) specifically

prohibits use of evidence of "other crimes, wrongs or acts" for that impermissible purpose.  The

Rule also provides exceptions and allows "other wrongs" evidence to be used for valid purposes

"such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence

of mistake or accident."

      Rule 404 does not use the terms "extrinsic" or "intrinsic" to distinguish between evidence

that is admissible and evidence that is not admissible.[7]  Tenth Circuit authority, however, does

draw a bright line between the two terms for Rule 404(b) purposes. "Rule 404(b) ***does not apply***

to other act evidence that is ***intrinsic*** to the crime charged."  *United States v. Parker,* 553 F.3d

1309, 1314 (10th Cir. 2009) (internal quotation and citation omitted and emphasis added).  "Rule

404(b) ***applies only to*** prior bad acts ***extrinsic*** to the crime charged."  *United States v. Kravchuk,*

335 F.3d 1147, 1155 (10th Cir.) (emphasis added), *cert. denied,* 540 U.S. 941 (2003).

      The difficulty lies in defining "intrinsic" and "extrinsic."  The inquiry is complicated by

---

   [7]  The Committee Notes contrast those terms, but do not define them.  *See, e.g.,* Rule 404(b)
("amendment [to the rule] requires the prosecution to provide notice, regardless of how it intends to use
the extrinsic act evidence at trial . . . amendment [to the rule] does not extend to evidence of acts which
are 'intrinsic' to the charged offense").

the fact that one decision allows for the possibility evidence may be neither "extrinsic" or

"intrinsic."  In that instance, the Court will default to the "extrinsic," in other words, the 404(b)

analysis.[8]  That said, I note that cases defining "extrinsic" and "intrinsic" generally tend to track

the reasons why bad character evidence is excluded.  Some cases use the phrase "wholly apart"

to contrast the two types of evidence in terms of relatedness to the offense at issue.  Evidence

that is "directly related to" or "part of" or "part and parcel" of the charged crime is labeled

"intrinsic."  This makes sense when viewed in terms of the reason for the rule.  Evidence directly

related to the crime generally should not be problematic because the focus lies on the crime

itself.  Evidence that is "wholly apart" and not related to the charged crime, or at least not

"intricately so," is labeled "extrinsic."  This evidence is potentially more problematic because

the focus lies farther afield of the charged crime.[9]  Some decisions do not use the phrase "wholly

apart," but the definition chosen illustrates the same concept.  The words describe the distance

between the crime and the evidence that will put the evidence into either the intrinsic or extrinsic

---

[8]  *United States v. Record,* 873 F.2d 1363, 1372 & n. 5 (10th Cir. 1989) (prosecution for conspiracy to import and distribute drugs where defendant told another co-conspirator of his prior experience in smuggling, namely a 1978 transaction where [he] had brought 32,000 pounds of marijuana into Louisiana on a shrimp trawler; Court noted that an "uncharged act may not be extrinsic if it was part of the scheme for which a defendant is being prosecuted . . . or if it was "inextricably intertwined" with the charged crime such that a witness' testimony would have been confusing and incomplete without mention of the prior act. . . .  Record's statement to Jamieson, although during the time of the charged conspiracy, fits into neither of these categories, so we will analyze its admission under Rule 404(b) as involving an extrinsic act") (internal quotations and citations omitted).

[9]  *E.g., Elliot v. Turner Constr. Co.,* 381 F.3d 995, 1004 (10th Cir. 2004); *see also United States v. Doles,* 335 Fed. App'x 736, 740 (10th Cir. 2009) (citing *Elliot* definition of extrinsic); *United States v. James,* 217 Fed. App'x 776, 781 n.1 (10th Cir. 2007) (citing *Elliot* definition of extrinsic and intrinsic); *see also, e.g., Kravchuk,* 335 F.3d at 1155 (defendant and "co-participants" removed an ATM machine; co-participant witness spontaneous revelation that defendant threatened to "kill us" if "we opened our mouths" was not extrinsic; the "act that the witness described here was part and parcel of the events for which Kavchuk was on trial").

camp.[10]

Other cases use the phrase "wholly apart" to describe the impermissible prejudice that Rule 404(b) and Rule 403 seek to avoid. That is, evidence is unfairly prejudicial if it "make[s] a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Smith,* 534 F.3d 1211, 1219 (10th Cir.), *cert. denied,* 129 S. Ct. 654 (2008). This actually is not so different from the above definitions, because it too is expressed in terms of where juror attention should be focused.

However, another set of phrases seeps into this arena, in part because Rule 404(b) also does not contain an exhaustive list of all of the valid purposes for which other crimes can be introduced. *See, e.g., United States v. Masters,* 622 F.2d 83, 86 (4th Cir. 1980) (noting there could be "infinite" circumstances where evidence is admissible because the list of proper purposes under the Rule is merely illustrative and nonexhaustive); *United States v. Tan,* 254 F.3d 1204, 1208 (10th Cir. 2001) (same). Tenth Circuit decisions use various terms such as, "*res gestae,*" "intextricably linked," "environment," "background," or "context."

As an initial matter, I will eschew using the phrase "*res gestae*" and ask the parties to do so as well. The Third Circuit recently discussed the history of use of the phrase "*res gestae*" in connection with admission of "intrinsic" or "inextricably linked" evidence. Among other things, the decision details why use of the phrase has long been criticized, and how it has been

---

[10]  *E.g., Parker,* 553 F.3d at 1314-15 ("Generally speaking, [i]ntrinsic evidence **is directly connected** to the factual circumstances of the crime **and provides contextual or background** information to the jury. Extrinsic evidence, on the other hand, is extraneous and is not intimately connected or blended with the factual circumstances of the charged offense. . . . evidence of acts or events that are part of the crime itself, or evidence essential to the context of the crime, does not fall under the other crimes limitations of Rule 404(b)") (internal quotations and citations omitted; emphasis added).

superceded by the other phrases in light of Rule 404(b).  *See United States v. Green,* 617 F.3d

233, 239-45 & nn. 9, 11 (3rd Cir.), *cert. denied,* 13 S. Ct. 363 (2010).  I agree with *Green* that use

of the phrase "*res gestae*" is particularly unnecessary in light of the Federal Rules of Evidence.[11]

In addition, the phrase largely duplicates what is meant by "inextricably intertwined."  *See*

BLACK'S LAW DICTIONARY (9th ed. 2009) (online version for "*res gestae*") (Latin for "things

done," meaning the "events at issue, or other events contemporaneous with them").

Some definitions of "intrinsic evidence," like that urged by the United States here, are

quite broad.  That is, that evidence "inextricably intertwined with the charged crime such that a

witness' testimony would have been confusing and incomplete without mention of the prior act."

*United States v. Record,* 873 F.2d 1363, 1372 & n. 5 (10th Cir. 1989) Or, evidence is intrinsic if

the evidence of "other acts" and evidence of the "crimes charged" are "part of a single criminal

episode" or the "other acts were necessary preliminaries to the crime charged."  *Lambert,* 995

F.2d at 1007; *see also Doc. 481* at 2-3 (citing the *Record* and *Lambert* definitions above).  I am

of the view that the phrases "intrinsic evidence" and ""inextricably intertwined" and "valid other

purpose" under Rule 404(b) all either mean the same thing, or at least yield the same result.

Some Tenth Circuit decisions equate the phrases.  *E.g., United States v. Ford,* 613 F.3d 1263,

1267 (10th Cir. 2010) (equating the phrases "*res gestae,*" "intrinsic evidence," "inextricably

intertwined," and "part and parcel of . . . the offense charged"); *Lambert,* 995 F.2d at 1007

("evidence is intrinsic when the evidence of the other act and the evidence of the crime charged

---

[11]  I do not adopt the other holdings embraced by *Green* and other courts, or suggest that I am inclined
to do so.  The *Green* decision and at least one other Circuit reject the "inextricably intertwined" standard
as problematic.  *Green* therefore rejected the "inextricably intertwined" standard in favor of a very narrow
definition of "intrinsic evidence."  617 F.3d at 247-48*; see also United States v. Bowie,* 232 F.3d 923, 928
(D.C. Cir. 2000); *United States v. Ameri,* 297 F. Supp. 2d 1168, 1169 (E.D. Ark. 2004).  Here, binding
authority requires that I consider the "inextricably intertwined" avenue for admission.

are inextricably intertwined").  Also, the decision that the Tenth Circuit has "repeatedly relied on

. . .*for a list of other possible purposes* for admitting evidence of other acts **under Rule 404(b)**"

is the Fourth Circuit's decision in *Masters*.  *James,* 217 Fed. App'x at 781 (emphasis added)

(citing *Masters,* 622 F.2d at 86).  The terms "context," "environment," and "background" used in

some decisions to help define "inextricably intertwined," are directly from the *Masters* decision.

*Masters,* 622 F.2d at 86.[12]

    *Masters* lists several examples of what had been "accepted bases for the admissibility of

evidence of other crimes."  One example is the situation where the evidence "furnishes part of

the context of the crime."  *Id.* (internal quotations omitted) (quoting *United States v. Smith,* 446

F.2d 200, 204 (4th Cir. 1971)).  Another is where the evidence "is necessary to a full presentation

of the case."  *Id.* (internal quotations omitted) (quoting *United States v. Weems,* 398 F.2d 274,

275 (4th Cir. 1968)).  Another describes the situation where the evidence "is so intimately

connected with and explanatory of the crime charged . . . and is so much a part of the setting of

the case and its environment" that the evidence is "appropriate in order to complete the story of

the crime on trial by proving its immediate context or the *res gestae*."  *Id.* (same) (quoting *State*

*v. Spears,* 58 Ohio App.2d 11, 15, 387 N.E. 2d 648, 651 (Ohio App. 1979), and *United States v.*

---

[12] *See also, e.g., Elliot,* 381 F.3d at 1004 (citing one of the *Masters'* examples as an instance of where "evidence is direct or intrinsic to the plaintiff's claim if it is part of the same tortious event"); *United States v. Sarracino,* 131 F.3d 943, 949 (10th Cir. 1997) (citing *Masters* as support for proposition that "[o]ne proper purpose for admitting Rule 404(b) evidence is to show the context of a charged crime."); *United States v. Kimball,* 73 F.3d 269, 272 (10th Cir. 1995) (citing *Masters* as support for the proposition that "other crimes should not be suppressed when those facts come in as *res gestae* [meaning] part and parcel of the proof of the offense," and acknowledging that "[e]vidence admissible for one of the purposes specified in . . . 404(b) and *res gestae* evidence are not always separated by a bright line"); *United States v. Cook,* 745 F.2d 1311, 1317-18 (10th Cir. 1984) (citing *Masters* as a court that "articulated the accepted bases for admissibility of evidence of other acts," though decision turned on two of the specific exceptions listed in Rule 404(b)), *cert. denied,* 469 U.S. 1220 (1985); *United States v. Starr,* 276 Fed. App'x. 761, 764 (10th Cir.) (citing *Masters* in affirming portion of district court's decision to admit certain evidence as "inextricably intertwined"), *cert. denied,* 129 S. Ct. 285 (2008).

*Howard,* 504 F.2d 1281, 1284 (8th Cir. 1974)).  This can encompass a situation where an "uncharged offense is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other . . . part of the *res gestae* of the crime charged."  *Id.* (same) (quoting *United States v. Beechum,* 582 F.2d 898, 912 n.15 (5th Cir. 1978), *cert. denied,* 440 U.S. 920 (1979)).

The *Masters* decision also explained that when evidence is admissible to "provide this full presentation of the offense," a court has "no reason to fragmentize the event under inquiry by suppressing parts of the *res gestae.*"  *Id.* (same) (citing *Weems,* 398 F.2d at 275, *United States v. Copeland,* 295 F.2d 635 (4th Cir. 1961), *cert. denied,* 368 U.S. 995 (1962), and *United States v. Gano,* 560 F.2d 990, 993-94 (10th Cir. 1977)).  It concluded by quoting a Sixth Circuit decision where it states that a "jury is entitled to know the setting of a case [and] cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge."  *Id.* (same) (quoting *United States v. Roberts,* 548 F.2d 665, 667 (6th Cir.), *cert. denied,* 431 U.S. 920 (1977)).

Despite these broadly-worded definitions, the cases cited by *Masters* are not that liberal in application.  Though the decisions cite the above language, the actual facts make the decision much narrower.  For example, despite being labeled as "context" or "background," in all but one of the cases cited by *Masters* and the *Masters* decision itself, the challenged evidence either:  had a direct relationship to an element of the offense;[13] was introduced to counter a defense to one of

---

[13]   *See Masters*, 622 F.2d at 87-88 (defendant boastful statements to undercover officers negotiating a sale admissible as proof of element of  defendant's "dealer" status in prosecution for dealing in firearms and ammunition without a license; same also found to be "negotiations  . . . which eventuated in the commission of the crime charged," without which the "government's proof of the crime" would be "fragmentized," "distort[ed]," "impair[ed]"); *Howard,* 504 F.2d at 1283-84 (counterfeit state licenses held admissible as "part and parcel" of prosecution for counterfeiting twenty-dollar bills because defendant offered to sell both the money and licenses to the undercover agent and secreted both in the same place;

those elements;[14] involved the situation where the other conduct was committed during, and in

furtherance of, the conspiracy at issue;[15] and/or, was a fact that occurred simultaneously with the

acts that constituted the charged crime.[16]  The vast majority of the Tenth Circuit decisions I have

reviewed are in the same posture.[17]

        However, the sole Tenth Circuit decision cited in *Masters* and one other Tenth Circuit

decision admitted context evidence that involved more attenuated circumstances.  *Masters* cited

---

jury properly instructed that it could consider the licenses for the purpose of "shedding light . . . on the intent or the purpose with which the defendant did any acts with which he is charged"); *Smith,* 446  F.2d at 201-04 (admission of one stolen postal money "admissible to show" that defendant "possessed" the other charged money order "and had knowledge that it had been stolen, the essential elements of the federal crime," the "episode furnishes part of the context of the crime for which the defendant was on trial"); *Weems,* 398 F.2d at 275 (details of a rape "admissible to show that the victim was held against her will [and] items found at the scene of the attack which were used by the victim to take care of her personal needs, were corroborative of the charge that the kidnappers had transported their victim interstate;" court thus concluded evidence of the rape was "essential to a full presentation" of the kidnapping offense and there was "no reason to fragmentize" the kidnapping because the rape "details are integral parts of the offense charged").

  [14]  *Beechum,* 582 F.2d at 903-12 & n.15 (mail carrier charged with stealing a silver coin also found with stolen credit cards; cards held admissible to impeach the defendant's testimony controverting element of intent).

  [15]  *See Copeland,* 295 F.2d at 637 (co-conspirator statements to the government witness admissible in prosecution for distilling liquor; court queried:  "What more direct evidence can be adduced to prove the existence of the conspiracy?").

  [16]  *Roberts,* 548 F.2d at 667 (inmates participating in work release program to attend college robbed a bank and sought to exclude any mention that they were inmates the time of the robbery; evidence admitted under Rule 403and held not abuse of discretion because the jury is "entitled to know" the "setting" and "cannot be expected to make its decision in a void without knowledge of the time, place and circumstances of the acts which form the basis of the charge;" government also did not "unduly" emphasize their status as inmates and the trial judge issued a cautionary instruction); *Spears,* 58 Ohio App. 2d at 15-17, 386 N.E. 2d at 651 (state kidnapping charge during which victim was driven to different places and raped on several occasions; at one point, defendant told victim he had prior conviction and incarceration; statement held inadmissible as part of the prosecution's case-in-chief because immaterial to the elements of kidnapping or any valid 404(b) purpose but admissible as "verbal acts doctrine of" *res gestae* because the comment to the victim was a fact that formed "the environment of [the] litigated case.").

  [17]  *E.g., United States v. Johnson,* 42 F.3d 1312, 1315 (10th Cir. 1994) (conspiracy), *cert. denied,* 514 U.S. 1055 (1995).

*Gano,* as one of the "full presentation" cases where there was "no reason" to fragment the United States' presentation of the actual offense. *Masters,* 622 F. 2d at 86 & n.9. The *Gano* case involved a Veterans Administration social worker who was counseling a family and he was prosecuted for "the crime of having carnal knowledge of a female under the age of 16." 560 F.2d at 991. The trial court admitted evidence that the defendant had sex once with the mother, supplied the mother with marijuana for herself and to give to her daughter (the victim) and supplied the victim with marijuana directly.

On appeal, the Tenth Circuit commented that the incident involving sex with the mother constituted an act "against another victim . . . separated in time from that which took place with the person described in the indictment." 560 F.2d at 993. It nevertheless affirmed the introduction of the evidence as proof that "helped to establish the offenses charged by proving motive, preparation, plan and knowledge." *Id.* The Court reasoned that sex with the mother and the subsequent series of episodes with the daughter were indistinguishable because the "method employed by defendant was essentially the same; using the "guise of therapy or treatment," the defendant "manipulated both the mother and the daughter and played them one against the other even using marijuana to aid him in carrying out his scheme." *Id.* The decision observed that "[n]ot only do we consider the evidence relevant and material, it appears to us that it would be difficult to divide up the numerous incidents since they were closely interrelated so as to be indispensable to a complete showing. *Id.*

In *Sarracino,* the United States prosecuted the defendant for kidnapping and second-degree murder, and the trial court admitted evidence that, while evading arrest for those offenses, Sarracino "attacked a couple babysitting his children." *United States v. Sarracino,* 131 F.3d 943,

944 (10th Cir. 1997).  In his conversation with the babysitters he said:  "I'm down for two, what's

two more."  *Id.* at 948 (internal quotations omitted).   When defendant testified, he admitted

making the remark, but dismissed it as "drunk talk."  *Id.* (same).  Defense counsel argued that

this "admission" to the babysitters could have referred to a prior conviction instead of the

murders that caused him to flee, but the trial judge refused to strike the evidence or declare a

mistrial.  *Id.*

   The Tenth Circuit affirmed.  It recognized that the "context evidence at issue . . . relates

to the admission rather than directly to the charged crime" and was "unable to find any cases

applying the context principle to a once-removed situation like the one before [it]."  131 F.3d at

949.  The Court held that  "[o]ne proper purpose for admitting Rule 404(b) evidence is to show

the context of a charged crime," and a "jury cannot be expected to make its decision in a void."

The decision explained that the "jury had to determine what weight to give Sarracino's

admission, and to do so they had to know the circumstances under which the admission was

made."  *Id.*  The admission also was "relevant to whether Sarracino committed the crimes for

which he was indicted."  *Id.*

   The Court cautioned that although defendant's remarks were properly admitted, the

"testimony about the details of [his physical] attack [on the babysitters] may have been carried

too far."  *Id.*  That was so because "testimony about Sarracino putting the rifle into her mouth

and the recurring headaches she suffers as a result of the beating" were "not necessary to explain

the context of Sarracino's admission."  *Id.*  That evidence "was more prejudicial than probative

because those details tended merely to highlight Sarracino's violent nature."  *Id.*  In the end,

however, the testimony was held harmless under appellate review.  *Id.*

As final observations, I note that there can be certain consequences for labeling evidence as "intrinsic" or "extrinsic."  For example, if the evidence is correctly characterized as intrinsic, then under Tenth Circuit precedent it would appear to be exempted from the Rule 404(b) notice requirement.  I express no opinion on the subject for this or any other case, because that consequence is not in play here.  From the outset in this case, I have required that the United States give advance notice of the information it will be using at trial, and the notice at issue evidently included the evidence the United States considers to be "intrinsic."

One of the "'protection[s] against . . . unfair prejudice'" of extrinsic evidence admitted under Rule 404(b) is the Rule 403 balancing test.  *See Davis,* ___ F.3d at ___, 2011 WL at *11 (quoting *Huddleston v. United States,* 485 U.S. 681, 692 (1988)).  No consequences in this regard flow from how the evidence is labeled.   In the Tenth Circuit, however, no matter how evidence is characterized, the decision whether to admit the evidence ultimately turns on the balancing test under Rule 403.  *See, e.g., Ford,* 63 F.3d at 1268 ("Despite its relevance, *res gestae* evidence is nonetheless subject to Rule 403's balancing test."); *Tan,* 254 F.3d at  1211 ("other act evidence that is relevant and offered for a proper purpose under Rule 404(b) must still survive the Rule 403 balancing test in order to be admitted"); *Lambert,* 995 F.2d at 1007-08 ("Such intrinsic . . . evidence, although not excluded by 404(b), is still subject to the requirement of [Rule] 403 that its probative value is not substantially outweighed by the danger of unfair prejudice.").

Another protection against unfair prejudice from extrinsic evidence admitted under Rule 404(b) is a limiting instruction under Rule 105.  *See Davis,* ___ F.3d at ___, 2011 WL at *11 (quoting *Huddleston,* 485 U.S. at 692).  One of the consequences of labeling evidence "intrinsic"

is that a limiting instruction is not required. *E.g., United States v. Green,* 175 F.3d 822, 831 (10th Cir.), *cert. denied,* 528 U.S. 852 (1999). I have found no decision, however, that holds a court is prohibited from giving a limiting instruction for intrinsic evidence if appropriate. Nor do I read Rule 105 as imposing any such restriction – the rule applies to "evidence" without qualification. *See* FED. R. EVID. 105 ("When evidence . . . is admissible . . . for one purpose but not admissible . . . for another purpose . . . the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."). Here, I will give limiting instructions where appropriate, without regard to the "intrinsic" or "extrinsic" nature of the evidence.

Lastly, at the hearing, counsel for the United States mentioned that some of the evidence consists of statements of the Defendant, which qualify as non-hearsay under Rule 801(d)(2)(A). It is true that type of evidence defined as non-hearsay are any statements "offered against a party" that are the 'party's own statement." However, I do not interpret the United States' hearsay position as suggesting Defendant's statements are admissible without further analysis. *See, e.g., Record,* 873 F.2d at 1372-76.

## VI.   Substantive Analysis

The Supreme Court's decision in *Huddleston* sets forth the four areas of consideration in deciding whether to admit evidence under Rule 404(b). *E.g. Davis,* ___ F.3d at ___, 2011 WL at *11 (quoting *United States v. Zamora,* 222 F.3d 756, 762 (10th Cir.), *cert. denied,* 531 U.S. 1043 (2000), which in turn cites *Huddleston*). I have already noted that, regardless of how I characterize the evidence, the Rule 403 balancing test is applicable and a Rule 105 limiting instruction may be appropriate. "The threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a ***material issue***

-21-

other than character." *Huddleston,* 485 U.S. at 686 (emphasis added).  The evidence must also

be "relevant," in other words, have "any tendency to make the existence of any fact that is of

consequence to the determination of the action more probable or less probable."  FED. R. EVID.

401.

 "In order to aid the district court's determination of whether evidence is offered to prove

an issue other than character, the government must precisely articulate the purpose of the

proffered evidence."  *Commanche,* 577 F.3d at 1226 (internal quotations omitted) (quoting

*United States v. Birch,* 39 F.3d 1089, 1093 (10th Cir. 1994)); *see also e.g., Record,* 873 F.2d at

1373, 1375 n.7 (same) (quoting *United States v. Kendall,* 766 F.2d 1426, 1436 (10th Cir. 1985),

*cert. denied,* 474 U.S. 1081 (1986)).  The United States was required to provide notice

"regardless of how it intends to use the extrinsic act[s] at trial, i.e., during its case-in-chief, for

impeachment, or for possible rebuttal."  Rule 404(b) (Committee Notes).  The notice provides

that the United States intends to use the evidence "in its case-in-chief."  *Doc. 481* at 1.  In order

to convict Defendant for violating § 1201(a)(1), the United States must prove that he:

knowingly, acting contrary to law, kidnapped the victim; for some purpose or benefit; willfully

transported the victim; in interstate commerce; and the act of kidnapping proximately caused the

victim's death.  *See Doc. 725* at 2-3 (citing TENTH CIRCUIT PATTERN JURY INSTRUCTIONS

(CRIMINAL) (2006), *United States v. Mayhew,* 380 F. Supp. 2d 936, 958 (S.D. Ohio 2005), and

*United States v. Foghorn,* 2006 WL 4017477 (D.N.M. 2006)); *see also* TENTH CIRCUIT PATTERN

JURY INSTRUCTIONS (CRIMINAL) § 2.55 (2011) (same).

 As I see it, the potentially admissible material from the incidents fall into three analytical

categories.

-22-

### A.  *The First Category Of Information Is Admissible*

The first category encompasses what I consider as evidence relating to Defendant's "business relationship" (or lack thereof) with the victim.  As I am defining it, this category includes statements Defendant made to others that either:  asked where the victim was located; asked who the victim was using as his drug supplier; indicated Defendant considered the victim to be operating a drug business in what was Defendant's "territory;" indicated Defendant's aim was to have the victim use Defendant as his sole source for drugs; or, threatened use of violence against the victim, e.g., "Joe Grauke is going to get it . . . when I find him" and Defendant has people who are willing to "kick . . . ass for me."  It includes statements Defendant made to the victim regarding the same:  the identity of the victim's supplier; the victim's drug business; Defendant's territory; using Defendant as his sole source of supply; what Defendant considered due and owing from the victim, and any verbal threats he made directly to the victim to persuade the victim to comply.  It includes the episode where Defendant had Orozco drive Defendant to the victim's apartment, Defendant's efforts to locate the victim while there and the victim's response that Orozco witnessed.  It includes the victim's response to Defendant that Rendon witnessed.  Thus, this category encompasses the entire incident with the victim as it has been defined in the notice and at the hearing.

This evidence is admissible for several reasons.  Foremost, a material issue in this case is the element of "purpose or benefit" that the United States must prove.  This "business relationship" evidence supplies proof of that element because it shows the reason the victim was kidnapped.  Thus, the evidence is "intrinsic" direct evidence of the charged crime.  The evidence also happens to fall into the definition of "inextricably intertwined" context evidence, and it

-23-

shows motive, a proper purpose under Rule 404(b).[18]  Indeed, as I noted at the outset, the Tenth

Circuit has already observed that Defendant's "visit" to the victim's "home to collect on a drug

debt" is among the "allegations necessary to understand this case." *Lujan,* 603 at 852.

Under Rule 403, the Court may exclude evidence if its probative value is "substantially

outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or

by considerations of undue delay, waste of time, or needless presentation of cumulative

evidence." FED. R. EVID. 403.  "In considering whether evidence is unfairly prejudicial," this

Court "may consider the availability of alternative probative evidence."  *United States v.*

*Hargrove,* 382 Fed. App'x 765, 781 (10th Cir. 2010) (citing *Old Chief v. United States,* 519 U.S.

172, 184-85 (1997)), *cert. denied,* 131 S. Ct. 1676 (2011).  Defendant cites cumulativeness and

unfair prejudice as the basis to exclude the evidence.  *See Doc. 519* at 4.

Defendant asserts that the United States has "numerous witnesses regarding the alleged

nature of the relationship between the two and [Defendant's] alleged motive," namely, those

who "are said to have discussed the events of [the] day [of the kidnapping] and the following

day." *Doc. 519* at 3-4.  At the hearing, counsel for Defendant surmised that the United States

may have fifteen to twenty people who can testify to the kidnapping and events thereafter.

However, this category of evidence pertains to Defendant's queries about the victim, his

attempts to locate the victim, and his statements directly to the victim, ***prior to*** the kidnapping,

---

[18]  *See, e.g., Doc. 481* at 3 (without the business relationship evidence the "jury will have to speculate
about what precipitated the kidnapping and murder because otherwise the story begins when Defendant
pushed his way into the victim's house the day he kidnaped him"); *id.* (the business relationship evidence
"explains the nature of the relationship between the victim and Defendant, and the history that led up to
Defendant kidnapping"); *id.* at 4 (the business relationship evidence "shows Defendant was trying to
locate and intimidate the victim, and his source of supply because he wanted to control the victim's drug
trafficking activities, and profit from them"); *id.* at 6 (the business relationship evidence "establishes
Defendant's motive to kidnap and murder the victim, that is, that the victim was selling drugs in
Defendant's territory, and using somebody other than Defendant as his source of supply.").

that non-associates of Defendant witnessed at the time they occurred.  Conversely, post-kidnapping conversations of Defendant's associates or other non-eyewitnesses, while probative, are not an equivalent substitute for eyewitness evidence that relates directly to an element of the crime, and is introduced for a proper purpose of showing motive for subsequent events.  In my view, the eyewitness accounts have "significant probative value" that is not "diminished by the existence of alternative means of proving" the relationship between Defendant and the victim. *Tan,* 254 F.3d at 1212; *cf., United States v. Jordan,* 485 F.3d 1214, 1221 (10th Cir.) (Unlike *McVeigh,* the proffered evidence in this case was more closely connected to the scene of the crime, elevating its probative value.  While most of this evidence is of limited value, as a whole it is not nearly as speculative as the proffer in *McVeigh* . . .  or so totally lacking of a connection with the crime . . . to be easily disregarded.") (internal quotations and citations omitted), *cert. denied,* 552 U.S. 1032 (2007).

"[U]nfair prejudice does more than damage the Defendant's position at trial."  *Tan,* 254 F.3d at 1211.  "Indeed, relevant evidence of a crime which the government must introduce to prove its case is by its nature detrimental to a defendant who asserts that he is not guilty of the charged offense."  *Id.*  Defendant argues that the two incidents pose a danger of unfair prejudice because, "[i]n essence, the evidence would be nothing more than propensity evidence, offered to show that [Defendant] is a bad and violent person."  *Doc. 519* at 4.

However, the business relationship category of evidence, as I have defined it, is stripped of the physical violence and other such behavior that accompanies the Orozco incident. Moreover, Rendon did not see the discussion between Defendant and the victim, and nothing in the United States' presentation of that incident suggests that Rendon could testify to or speculate

about any menacing behavior on the part of Defendant.  Thus, there is little if any danger that

this category would make a conviction "more likely because it provokes an emotional response"

from the jury or "otherwise tends to affect adversely the jury's attitude toward the defendant

wholly apart from its judgment" as to his guilt or innocence.  *Tan,* 254 F.3d at 1212.  Whatever

prejudicial value the business relationship evidence holds, it certainly does not "substantially

outweigh" its probative value.  Accordingly, I find no basis to exclude this category of evidence.

### B.  The Second Category Of Information Is Not Admissible In The United States' Case-In-Chief, And The Court Reserves Decision Whether It Will Be Admissible For Impeachment Or Rebuttal

The second category contains all of the other events and statements that occurred during

the Orozco incident, except for the incident with the meat cleaver, which comprises my final

category.  Thus, the second category includes evidence during the Orozco incident regarding

Defendant  or his associates:   wielding sharp instruments in a menacing manner; threatening to

slit throats; issuing other threats accompanied by physical violence to obtain information; taking

drugs; giving drugs to others; having others do his bidding; threatening violence against those

who do not comply with his wishes or who would go to the police; abducting and killing those

who do not comply with his wishes; and, dumping bodies.

These events are what counsel for the United States generally characterized at the hearing

either as "modis operandi," or as "intrinsic" to the kidnapping because they constitute "part and

parcel" of the "same scheme" – the "chain of events" leading to the kidnapping; the "hunt before

the kill."  These events are what Defendant characterizes as impermissible propensity evidence

to show he is a violent person.  Indeed, I cannot ignore the fact that it is precisely because this

category of evidence tends to show a violent propensity that the United States included the

Orozco incident among the evidence it seeks to introduce during the penalty phase on the threshold issue of intent and the nonstatutory aggravating factor of future dangerousness.  *See, e.g., Doc. 733* at 4-5, 17, 20; *Doc. 718* at 2-4, 16-17.

At this juncture, I will disallow this category of evidence for purposes of proof of the United States' ***case-in-chief,*** but do so without prejudice.  As it presently stands on the record of evidence and arguments before me, none of this evidence is necessary to establish the elements of the kidnapping resulting in death.  For example, "drug use is not . . . part and parcel" of the offense."  *United States v. Marcks,* 1997 WL 163522 at * 3 (10th Cir. 1997).  Furthermore "the Tenth Circuit has indicated that a defendant's assault of one person generally has no bearing on whether a defendant intentionally assaulted another person."  *United States v. Zuni,* 2006 WL 4109664 at * 8 (D.N.M. 2006) (Browing, J.) (citing *Hogue,* 827 F.2d at 663, and holding the fact that defendant battered one person fails the relevancy requirement because the prior battery "does not make it more probable that he intentionally or knowingly kidnapped and raped the alleged victim, unless one draws from this evidence the conclusion that [defendant's] character is abusive in nature – the forbidden propensity purpose").

Also, none of this evidence is necessary as "background" evidence.  With the introduction of the business relationship category of evidence, which is what the Tenth Circuit deemed necessary to understanding the case and is relevant to show motive, the "tale is coherent without mention of" these other aspects of the Orozco incident.  *United States v. Cerpa,* 2000 WL 1570464 at * 2 (10th Cir. 2000).   This is not a conspiracy case where the activities of Defendant and his associates during the course of the conspiracy are admissible.  *E.g., Smith,* 534 F.3d at 1218.  And, like the *Sarracino* case, the fact that some parts of the Orozco incident

-27-

are admissible does not require the admission of the evidence that simply points to a violent propensity on the part of a defendant. *See e.g., United States v. Starr,* 276 Fed. App'x 761, 764-65 (10th Cir.) (that defendant beat a person with a firearm was "intextricably intertwined" with the felon in possession charge, but the details of the beating were not because they were "not necessary preliminaries to the crime charged, nor are they part and parcel of the proof of the offense charged;" as extrinsic evidence the details "may have exceeded the bounds of permissible evidence under Rule 404(b)" under *Sarracino,* which "explain[ed] excessive details establishing context were prejudicial because they highlighted defendant's violent nature"), *cert. denied,* 129 S. Ct. 285 (2008).

I recognize that the United States attempts to justify admission of the Orozco incident as necessary to identify Defendant as the person who kidnapped and murdered the victim, and to establish an absence of mistake or accident. *See Doc. 481* at 6, 8. However, simply articulating a proper purpose is insufficient to allow introduction of the evidence when the impermissible "propensity for violence" conclusion is inseparable from the proper purpose. *See Commanche,* 577 F.2d at 1265-68 ("Were we to condone the use of 404(b) evidence that reflects on a permissible purpose only if a jury first concludes that the defendant acted in conformity with a particular character trait, we would undercut the primary operative effect of the rule—to exclude a form of relevant evidence that is highly prejudicial."). Moreover, the United States' arguments about these two proper purposes are not based on deficiencies in the evidence available to it. Rather, they appear to be based on the United States anticipating a defense that points to the codefendants as the perpetrators, a situation where the meat cleaver and other bits of evidence might take on a different cast. But that event has not transpired, and will not until trial, so the

Court expresses no opinion on the use of this category of evidence for impeachment or rebuttal purposes.

### C.  The Meat Cleaver Is Admissible "Signature" Evidence

Defendant carried a meat cleaver during the Orozco incident.  As mentioned at the outset, the notice asserts that Defendant threatened to slit Orozco's throat with it.  *Doc. 481* at 1-2.  At the hearing, counsel for the United States reiterated that Defendant "brandished" the meat cleaver and "threatened" Orozco with it but did not "use" it.  A meat cleaver was found near the victim's body.  *E.g., Doc. 733* at 11.

I previously denied Defendant's motion to exclude the Orozco incident from the ***penalty phase.***  Among other things, I held that evidence showing Defendant "assaulted" Orozco and "threatened to slit his throat" prior to the kidnapping is "relevant to future dangerousness" because, the "time elapsed between the incident and the charged crime is brief," the "conduct is similar to what befell the victim," the evidence "has a high probative value," and while "prejudicial," it is not "unfairly prejudicial in the sense that it would inflame the passions of the jury or divert its focus" during the penalty phase deliberations.  *Doc. 718* at 16-17.  Thus, during the penalty phase, the jurors ***will*** hear evidence that speaks directly to Defendant's propensity for violence.

The same evidence is likewise highly relevant to the trial phase.  Even if, as counsel suggested at the hearing, the meat cleaver was not the weapon that inflicted the victim's fatal wounds, the fact that meat cleavers were present in both places ties Defendant to both scenes.  I realize that the presence of a meat cleaver in either place alone suggests violence.  That Defendant threatened to slit Orozco's throat with it clearly shows a propensity for violence.

Thus, by allowing the jury to hear that Defendant carried a meat cleaver and threatened to slit Orozco's throat with it during the trial phase will introduce the very sort of evidence that I deemed should be excluded in the category discussed above.

However, similar conduct may be admissible for proper purposes under Rule 404(b), and "signature quality" evidence can be a means of showing identity by "modus operandi." *United States v. Mares,* 441 F.3d 1152, 1159 n. 3 (10th Cir. 2006) (citing *United States v. Oberle,* 136 F.3d 1414, 1419 (10th Cir.), *cert. denied,* 525 U.S. 885 (1998)), *cert. denied,* 551 U.S. 1162 (2007).  At the hearing, counsel described the meat cleavers as "generic."  Nevertheless, the fact that the item was a meat cleaver alone is a sufficiently "unique factor" to constitute a "signature."  In my view, the choice of a meat cleaver as a sharp implement makes it a "distinctive device."  When coupled with the fact that it was Defendant who carried the weapon and threatened to slit Orozco's throat with it, the evidence presents an even stronger "signature." "[T]o prove identity, evidence of prior illegal acts need not be identical to the crime charged, so long as, based on a totality of the comparison, the acts share enough elements to constitute a signature quality." *United States v. Shumway,* 112 F.3d 1413, 1420 (10th Cir. 1997) (internal quotations and citations omitted).  "[A] few highly unique factors may constitute a signature, while a number of lesser unique factors although insufficient to generate a strong inference of identity if considered separately, may be of significant probative value when considered together." *Id.*

Evidence is unfairly prejudicial if it "make[s] a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant ***wholly apart*** from its judgment as to his guilt or innocence of the

crime charged." *Smith,* 534 F.3d at 1219 (emphasis added).  That Defendant carried a meat

cleaver and threatened Orozco with it  could "inflame" a jury.  However, I do not consider the

signature evidence to be "wholly apart" from the jurors' judgment as to Defendant's guilt or

innocence.  *C.f., United States v. Watkins,* 591 F.3d 780, 784 -785 (5th Cir. 2009) ("Because of

the many similarities between the crime of conviction and the two previous drug runs, we find

no error in the district court's determination that the evidence of the previous runs was relevant

to establish how the conspiracy was structured and operated, and thus intrinsic.  All of the

conduct involved a nearly identical modus operandi: the same co-conspirators, the same

tractor-trailer transporting vehicles carrying drugs, and the same pick-up and destination

cities."); *United States v. Geter ,* 274 Fed. App'x 805, 808 (11th Cir. 2008) (conspiracy case) ("In

*Muscatell,* we held that testimony regarding a continuing course of conduct involving the same

principal actors, in the same roles, employing the same modus operandi, was properly admissible

as intrinsic evidence, despite the fact that some of the acts occurred outside the time frame of the

charged offenses.") (internal quotations and citation omitted); *United States v. Collins,* 97 Fed.

App'x 818, 825 (10th Cir. 2004) (conspiracy case) ("By comparison, the instant case involves

prior acts that are virtually indistinguishable in kind from the charged activity and for the most

part involve the same parties.  Based on our precedent, then, the court did not abuse its discretion

in admitting them as inextricably intertwined evidence.").

      Therefore, I find admission of this category of evidence is not "unfairly" prejudicial.

Furthermore, I will give a limiting instruction in connection with the meat cleaver category of

evidence, and ask Defendant to tender his proposal prior to trial.

      **IT IS THEREFORE ORDERED** that Defendant's oral request to confine the United

States to what was raised in the written notice is DENIED.

**IT IS FURTHER ORDERED** that the "business relationship" and "meat cleaver" categories of evidence are admissible in the United States' case-in-chief during the trial phase.

**IT IS FINALLY ORDERED** that the "propensity for violence" category is not admissible in the United States' case-in-chief during the trial phase.

ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE