IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

              Plaintiff,

vs.                                      NO. CR 05-0924 RB

LARRY LUJAN,

              Defendant.


## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Larry Lujan's ("Defendant's") "Motion To Strike The Nonstatutory Aggravating Factor Of Future Dangerousness," filed April 15, 2011. *Doc. 776.* Robert E. Kinney, Supervisory Assistant Federal Public Defender, and Appointed CJA Counsel Peter Schoenburg represent Defendant on this motion. The United States, represented by Maria Y. Armijo and Michael S. Warbel, filed a response, to which Defendant replied. *See Docs. 794, 816.* Having considered the submissions and arguments of counsel, record, relevant law, and being otherwise fully advised, I find no need for a hearing and deny the motion.

## I.    Background

The Court's recent decisions discuss the background of this case in detail. In a few weeks, the Court will commence a trifurcated trial where Defendant faces the death penalty for kidnapping resulting in death. The trial phase is separate from the two penalty phases where the

jury will first decide the issue of "eligibility."  Depending on the outcome of the trial and eligibility phases, the jury will then move on to the selection phase where the defense will present mitigation evidence and the United States will present additional aggravating evidence. One of the non-statutory aggravating factors the United States intends to present during the selection phase is "future dangerousness."  The "future dangerousness" factor was the subject of the interlocutory appeal, and I recently have issued other opinions concerning it.  *See, e.g., United States v. Lujan,* 603 F.3d 850, 853-55 (10th Cir. 2010), *cert. denied,* 131 S. Ct. 1718 (2011); *see also, e.g., Doc. 718* at 7-8; *Doc. 711* at 16-18.  In the instant motion, Defendant essentially asks the Court to now eliminate the "future dangerousness" factor from consideration in this case.

## II.    Constitutional Arguments

Defendant first contends that the "future dangerousness" factor is unconstitutional because research studies show no one can accurately predict whether a particular defendant will be violent in the future.  Defendant asserts these studies conclude that capital offenders housed in federal facilities have lower rates of violence than non-capital inmates and the United States public at large and that jurors in capital cases render "arbitrary" and "over-inclusive" decisions. He also cites the fact that, if he is convicted, the only likely alternative sentence is life without the possibility of parole in a federal maximum security prison, which will "effectively incapacitate[e] him" from any future violence.  *See Doc. 776* at 5, 7-19.

Defendant acknowledges that the Supreme Court decisions in *Jurek* and *Barefoot* allow proof of future dangerousness.  However, he takes the position that the constitution requires more "heightened reliability" in evidence for the death penalty decision-making process under *Furman* and *Woodson.  E.g., Doc. 766* at 2-5, 25-26 (citing *Barefoot v. Estelle,* 463 U.S. 880

(1983), *Woodson v. North Carolina,* 428 U.S. 280 (1976), *Jurek v. Texas,* 428 U.S. 262 (1976), and *Furman v. Georgia,* 408 U.S. 238 (1972)).

The United States responds that "it is well-settled that the Constitution permits consideration of evidence relating to future dangerousness" in the penalty phase of a capital trial and that courts uniformly hold "future dangerousness is a permissible non-statutory aggravating factor." *Doc. 794* at 2. It asserts that Defendant's "present motion is a near duplicate of a defense motion rejected last year in . . . *Umana*" and that other "district courts have refuted similar defense motions." *Doc. 794* at 3, 4 (citing *United States v. Umana,* 707 F. Supp. 2d 621 (W.D.N.C. 2010), *United States v. Concepcion Sablan*, 555 F. Supp. 2d 1177 (2006); *United States v. Varela*, 2008 WL 5056984 (S.D. Fla. 2008), and *United States v. Bradley*, 880 F. Supp. 271, 287 (M.D. Pa. 1994)).

As for this case in particular, Defendant points out that the United States intends to prove that the Defendant is only "***likely*** to commit criminal acts of violence." *Doc. 776* at 20. He contends that the "'likely' standard undermines the requirement that aggravating circumstances be proved beyond a reasonable doubt" and "does not comport with the constitutional requirements for reliability." *Doc. 776* at 20. He characterizes proving "likelihood or probability beyond a reasonable doubt" as "incoherent." *Doc. 776* at 23. The United States responds that the term "likely" is not problematic because "aggravating factors need only have 'some common-sense core meaning.'" *Doc. 794* at 6-7 (quotations to *Tuilaepa v.California,* 512 U.S. 967, 973 (1994) omitted). It cites two circuit decisions that endorse defining "future dangerousness evidence as "'evidence that a defendant is likely to commit criminal acts of violence in the future.'" *Doc. 794* at 7 (quoting *United States v. Basham*, 561 F.3d 302, 331 (4th

Cir. 2009), *cert. denied,* 130 S. Ct. 3353 (2010) (*Basham,* in turn, quotes *United States v. Bernard*, 299 F.3d 467, 482 (5th Cir. 2002), *cert. denied,* 539 U.S. 928 (2003)).

## III.   Analysis

### A.   *The Court Will Not Address Admissibility At This Time*

Despite the parties' arguments, I will not prejudge admissibility of any such studies at this time.  Forensic psychologist Dr. Mark D. Cunningham and his colleagues are the authors of most of the studies Defendant cites, and they have published several studies concerning "future dangerousness."  In his reply, Defendant attaches Dr. Cunningham's recent testimony during the penalty phase of the Western District of North Carolina case in *Umana,* one of the cases cited by the United States above.  *Doc. 816-1* at 1-106.  He concludes by saying that he "anticipates Dr. Cunningham's testimony would be similar in this case."  *Doc. 816* at 8.  Defendant also contends that, even though the Federal Rules of Evidence "are inapplicable to a penalty phase," the studies pass the five-factor test for reliability and admissibility under *Daubert* and *Kumho.  See Doc. 776* at 6 (citing *Kumho Tire Col, Ltd. v. Charmichael,* 526 U.S. 137 (1999), and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1983)).

Defendant further asserts that because the studies show predictions of future dangerousness are "unreliable" the Court should find that the probative value of any such evidence is outweighed by the danger of unfair prejudice under 18 U.S.C. §  3593(c).  He argues that if the United States presents "future dangerousness" evidence by way of an expert, the danger of unfair prejudice is more heightened because of the 'great deference' jurors may give to expert psychiatrist testimony.  *See Doc. 776* at 26-27 (citing *United States v. Sampson,* 335 F. Supp. 2d 166 (D. Mass. 2004)).

The United States argues that the *Umana* and *Sablan* cases specifically reject applying *Daubert/Kumho* in capital sentencing proceedings.  It urges this Court to "find the defendant's statistical studies . . . inappropriate  and unpersuasive" and to follow courts that  "reject" them in federal death penalty proceedings.  Thus, the United States is asking this Court to disregard the studies, not allow testimony by experts about them, and find that the jury in this case "is, in fact, capable of determining whether the defendant is likely to be a future danger" without any such testimony.  *See Doc. 794* at 8-9.

I need not, and do not, decide the admissibility of the studies or testimony by Dr. Cunningham.  To do so would be premature.  I specifically declined to require Defendant "to disclose a list of the specific mitigating factors" or "a list of witnesses, including non-mental health expert witnesses" he intends to present during the penalty phase of trial."  Instead, in the event the jury returns a guilty verdict, the Court will consider whether to recess the proceedings to allow the Government to prepare for the penalty phase."  *Doc. 823* at 4-5.  I do not read Defendant's characterization of what Dr. Cunningham would say as an acknowledgment the doctor will in fact be called to testify if we reach the selection phase.  Accordingly, I will address the issues of admissibility of Dr. Cunningham's studies or testimony if and when we arrive at that juncture.

### B.    *The Court Finds No Reason To Alter Its Prior Rulings*

For the purposes of the constitutional arguments Defendant raises, I accept the conclusions he contends the studies reach.  Nonetheless, I decline to strike the nonstatutory factor of future dangerousness.  I have already held that the "Supreme Court has recognized future dangerousness as a legitimate non-statutory aggravating factor in capital proceedings." *Doc. 718* at 8 (citing *Simmons v. South Carolina*, 512 U.S. 154, 162-63 (1994)).  I further noted

that "[f]uture dangerousness *is defined as* evidence that a defendant is 'likely to commit criminal acts of violence in the future that would be a threat to the lives and safety of others.'"  *Id.* (emphasis added) (quoting *Bernard*, 299 F.3d at 482); *see also Doc. 711* at 10.  The arguments raised by Defendant at this late date do not persuade me to change my prior rulings that future dangerousness is a legitimate factor and is defined in terms of what Defendant is "likely" to do in the future.

First, the Supreme Court has not avoided the term "likely" in describing future dangerousness of a capital defendant.  I noted, for example, that "it may well be that the evidence in a substantial proportion, if not all, capital cases will show a defendant *likely* to be dangerous in the future."  *See, e.g., Kelly v. South Carolina,* 534 U.S. 246, 252, n.4 (2002) (emphasis added).

In any event, the Fourth Circuit decision in *Basham* uses the identical definition and source I have used:  "Future dangerousness is best defined as evidence that a defendant is '*likely* to commit criminal acts of violence in the future that would be a threat to the lives and safety of others.'"  *Basham,* 561 F.3d 302, 331 (4th Cir. 2009) (emphasis added) (quoting *Bernard,* 299 F.3d at  482).  After defining the factor, the *Basham* decision discussed why the district court did not err in allowing the United States to introduce that "while a prisoner, [the defendant] engaged in sexually aggressive and threatening behavior towards female employees" to show future dangerousness.  *Basham,* 561 F.3d at 332.  Among other things, *Basham* held that this evidence was "clearly 'relevant' to the future dangerousness aggravator" because relevance for penalty phase purposes is defined "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Id.* (quotation to FED. R. EVID. 401 omitted).

The Tenth Circuit Pattern jury instructions for death penalty cases do not define "future dangerousness."  *See* TENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) §§ 3.01 - 3.12 (2011).  However, the Tenth Circuit's decision in the interlocutory appeal cites *Basham* approvingly for its definition of relevance.  *See Lujan,* 63 F.3d at 854.  The Tenth Circuit also agreed with my conclusion that prior homicides by Defendant are "relevant" to the "future dangerousness" factor because that would show "a '***tendency***' to make it '***more probable***'  that he poses a future danger, even if that future danger is limited to a penal setting."  It also stated that this sort of evidence "has a strong tendency to show Lujan has a ***propensity*** for violence and future dangerousness."  *Lujan,* 603 F. 3d at 854-55 (emphasis added).  The Second Circuit recently approved a penalty phase jury instruction that defines future dangerousness in terms of what is "likely," finding the terms "likely" and "probable" synonymous.[1]  The Tenth Circuit did not take exception to the *Basham* definition of "future dangerousness" that includes the word "likely."  I find that its use of terms largely synonyms with "likely," as an indication it did not disapprove of that definition.

Furthermore, the *Umana* decision mentioned above specifically adopts the *Basham* definition, rejects arguments that studies of the sort cited here render the future dangerousness factor unconstitutional, and rejects the argument that use of the term "likely" impermissibly undermines the reasonable doubt standard.  *See Umana,* 707 F. Supp. 2d at 634-35.  Indeed, even

---

[1]  *See United States v. Whitten,* 610 F.3d 168, 203 (2nd Cir. 2010) ("The district court instructed the jury that in order to decide that Wilson constituted a future danger (a nonstatutory aggravating factor), it needed to find that 'the defendant is *likely* to commit criminal acts of violence in the future that would constitute a continuing and serious threat to the lives and safety of others.' . . . Wilson argues that the district court erred in rejecting his proposed jury instruction, which used both "likely" and "probable" to describe future dangerousness.  Since the two words are synonymous, the court's instruction viewed as a whole . . . did not mislead the jury as to the correct standard.") (emphasis original); *see also, e.g., United States v. Corley,* 519 F.3d 716, 723 (7th Cir. 2008) (noting penalty phase instruction for factor of future dangerousness was that "'the Defendant is *likely* to commit criminal acts of violence in the future which would be a continuing and serious threat to others, as demonstrated by proof of a continuing pattern of violence, the Defendant's low rehabilitative potential, and/or his mental condition.'") (emphasis added)

the *Sampson* decision the defense relies upon concerning admissibility, allowed the introduction of prior prison incidents to show future dangerousness.  In doing so, *Sampson* reasoned that the evidence was relevant and "was sufficient to permit a rational jury to conclude, beyond a reasonable doubt, that Sampson was **likely** to commit criminal acts of violence in the future which would be a continuing and serious threat to the lives and safety of prison officials and inmates."  *Sampson,* 335 F. Supp. 2d at 226 (emphasis added).

Finally, as I have noted on previous occasions, in the absence of binding authority, I am not inclined to adopt the novel positions taken by Defendant.  *See Doc. 803* at 4; *Doc. 772* at 3. Defendant has not cited, and I have not found, any decision that prohibits the United States from introducing evidence of future dangerousness because studies show future predictions of violence are "unreliable" or because the evidence will be introduced to show whether Defendant is "likely" to engage in future violence.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Strike The Nonstatutory Aggravating Factor Of Future Dangerousness *(Doc. 776)* is DENIED.

_____
ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE