IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**vs.**                                            **NO. CR 05-0924 RB**

**LARRY LUJAN,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion to Strike the Venire Based Upon the Systematic Exclusion of Hispanic-American Citizens (Doc. 974), filed July 8, 2011. The Court finds that there is no need for an evidentiary hearing or for a response. Having considered the motion, the record, relevant law, and being otherwise fully advised, the Court denies this Motion.

Defendant contends that "[a] disproportionate number of Hispanic-Americans citizens were removed [from the venire] at the government's request during the death qualification." Doc. 974 at 1. Defendant acknowledges that the United States Supreme Court has "never invoked the fair-cross-section principle to invalidate the use of either for-cause or peremptory challenges to prospective jurors," because "groups defined solely in terms of shared attitudes that would prevent or substantially impair members of the group from performing one of their duties as jurors, such as the '*Witherspoon*-excludables' at issue here, are not 'distinctive groups' for fair-cross-section purposes." *Lockhart v. McCree*, 476 U.S. 162, 173-74 (1986). The Supreme Court held that "'*Witherspoon*-excludables,' or for that matter any other group defined solely in terms of shared attitudes that render members of the group unable to serve as jurors in a particular case, may be excluded from jury service without contravening any of the basic objectives of the

fair-cross-section requirement." *Id.* at 176-77.

> "Death qualification," unlike the wholesale exclusion of blacks, women, or Mexican-Americans from jury service, is carefully designed to serve the State's concededly legitimate interest in obtaining a single jury that can properly and impartially apply the law to the facts of the case at both the guilt and sentencing phases of a capital trial. There is very little danger, therefore, and McCree does not even argue, that "death qualification" was instituted as a means for the State to arbitrarily skew the composition of capital-case juries

*Id.* at 175-76. Defendant concludes, however, that he nonetheless has been denied his "right to a fair cross-section of the community" because Hispanic jurors were excluded for cause in what he believes was a "disproprotionate number," citing *Berghuis v. Smith,*__U.S. __, ___, 130 S. Ct. 1382, 1392 (2010). The Court concludes that *Lockhart* controls and that it need not engage in a fair-cross-section examination under the facts of this case. But even if *Lockhart* did not control, the Defendant would not be entitled to strike the venire based upon his claims and statistics.

> To establish a prima facie violation of the fair-cross-section requirement, this Court's pathmarking decision in *Duren* instructs, a defendant must prove that: (1) a group qualifying as "distinctive" (2) is not fairly and reasonably represented in jury venires, and (3) "systematic exclusion" in the jury-selection process accounts for the underrepresentation.

*Berghuis*, 130 S. Ct. at 1392.

In support of his argument, Defendant states that,

> [o]ne hundred and seventy-six jurors were brought to court for general examination. One hundred and twenty (120) were white, fifty (51) were minority jurors (primarily Hispanic). The remaining five jurors are unknown. The Government challenged eighteen jurors for cause. Eight of these jurors were Hispanic. Six of these cause challenges were granted.

Doc. 974 at 2. Thus, of the prospective jurors in the venire whose ethnicity is known (171 jurors), 70.17% of them were white and 29.82% were Hispanic. But the Defendant's other statistical information does not match his factual contentions. According to his statistics, set out in footnote

2 of his motion, (Doc. 974), the government challenged 19, not 18, jurors for cause, and only 7, and not 8, of those challenged jurors are Hispanic: jurors number 130, 4, 184[1], 248, 290, 569, and 1013.  *See id.* n. 2.  According to the Court's records, only 5, and not 6, of the challenges regarding Hispanics, were granted.  *See* Doc. 967 (Order listing retained jurors, which includes challenged Hispanic jurors number 184 and 569).  Thus, the Court granted exclusions for cause of only 5 of the potential 51 Hispanic jurors based on the government's challenges.  The government moved to exclude 12 of the potential 120 non-Hispanic jurors, and the Court retained 3 of those challenged jurors.  *See* Doc. 967 (retaining non-Hispanic government-challenged jurors number 320, 989, and 966).  Thus 9 non-Hispanic potential jurors were excluded.  Therefore, after excluding the 14 potential government-challenged jurors for cause, 70.7% of the venire was non-Hispanic, and 29.3% were Hispanic[2].  This is hardly a "disproportionate number" of Hispanic exclusions from the venire.  Defendant has not shown that Hispanics are "not fairly and reasonably represented in jury venires" or that their "systematic exclusion in the jury-selection process accounts for the underrepresentation."  *Berghuis*, 130 S. Ct. at 1392.  Defendant has wholly failed to raise even a colorable claim that he has been denied a fair cross-section of representation in the venire.

**IT IS ORDERED** that the Defendant's motion [Doc. 974] is DENIED.

_____
UNITED STATES DISTRICT JUDGE

---

[1] The Defendant appears to have made a typographical error in stating that the government challenged juror 174 in the second line of his footnote but that it challenged juror 184 in the fourth line of that footnote.  Based on his contention that the Court denied the challenge of two of the Hispanic jurors, the Court concludes that 184, and not 174, is the correct juror number.

[2] The Court notes that four of the twelve selected jurors and three of the six alternate jurors are Hispanic.