IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                            NO. CR 05-0924 RB

LARRY LUJAN,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Supplemental Motion Under *Giglio* for Disclosure of Information Concerning Inducements, Incentives, Compensation or Other Assistance Provided to Government Witnesses, as Well as All Information Necessary to Effectively Cross-Examine Government Witnesses, (Doc. 868), filed June 7, 2011. The Court held a hearing on July 13, 2011. Having considered the motion, the parties' arguments, the record, and the relevant law, and being otherwise fully advised, the Court denies this Motion.

As the Defendant notes, *see* Doc. 868 at 1, the Court has already addressed the United States' discovery and disclosure obligations under *Giglio* in a comprehensive Memorandum Opinion and Order, filed January 14, 2008. *See* Doc. 228. As the Defendant also notes, the "government has indicated that it will disclose, pursuant to court order, all *Giglio* material by June 6, 2011," Doc. 868 at 1-2, which was the day before Defendant filed his supplemental motion. The government states, and the Defendant does not dispute, that "the United States has provided Defendant with all known potential *Giglio* information relating to all witnesses who are expected to testify in this case." Doc. 894 at 4-5 (detailing information requested and provided). At the hearing, the United States noted that it had found additional *Giglio* materials that it would be turning over, pending a protective order. Defendant does not contend that the government is actually withholding any pertinent *Giglio*

information.

Defendant seeks in his briefs to "school" the government on its obligations by quoting from and citing a Department of Justice memo issued in January 2010 to its federal prosecutors [hereinafter "Ogden memo"] that outlines a prosecutor's discovery duties under *Giglio* and *Brady*. *See* Doc. 868 at 2 ("particulariz[ing] his *Giglio* request to place the Government on notice regarding what constitutes *Giglio* evidence in this case, and what should be disclosed to the defense"). According to the Defendant, his supplemental motion simply "places the Government on notice, and makes the Court aware, of the painstaking requirements of the requested review of their case files, and the particular information to be disclosed, under Department of Justice guidelines to ensure that the Government has completely fulfilled its *Brady* and *Giglio* obligations." Doc. 868 at 8. As an example, at the hearing, Defendant questioned the absence of any e-mail communications between the government, its agents, and prospective witnesses that may contain exculpatory or impeachment evidence. The United States also stated that its prosecutors and agents do not send or receive substantive e-mail communications regarding witnesses and that no e-mails with exculpatory or impeachment information exist, which explains why none have been turned over to the Defendant.

In his reply brief, the Defendant also contends that the United States must turn over all *Giglio* information - *i.e.*, evidence of "inducements, incentives, compensation or other assistance" regarding witnesses who do *not* testify at trial, plus "any evidence favorable to the Defense that would impeach the integrity of the Government's investigation," citing *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995). Doc. 928 at 2. The Court disagrees that *Giglio* information must include all compensation or assistance about any person the government has investigated or talked to in gathering evidence for trial. The issue in *Giglio* was whether a new trial was warranted because a prosecutor stated "that he promised [the government's key witness] that he would not be prosecuted

2

if he cooperated with the Government," but did not inform the defendant of that promise before trial. *Giglio v. United States*, 405 U.S. 150, 152 (1972). The Supreme Court held:

> When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within th[e] general rule [of *Brady*]. We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict . . . .' *United States v. Keogh*, 391 F.2d 138, 148 (CA2 1968). A finding of materiality of the evidence is required under *Brady*, *supra*, at 87, 83 S.Ct., at 1196, 10 L.Ed.2d 215. A new trial is required if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .' *Napue, supra*, at 271, 79 S. Ct., at 1178.

*Id.* at 154. *Giglio* evidence is a subset of *Brady* evidence - impeachment or inducement evidence - that specifically relates to a testifying witness. *See United States v. Bagley*, 473 U.S. 667, 681-84 & n.11 (1985) (noting that the "Court has rejected any such distinction between impeachment evidence and exculpatory evidence;" noting that it had "identified *Brady* as a case in which specific information was requested by the defense . . . for the extrajudicial statements of Brady's accomplice" and applying the same materiality standard to impeachment evidence: "whether there is a reasonable probability that, had the inducement offered by the Government to [testifying witnesses] been disclosed to the defense, the result of the trial would have been different"). The Court concludes that the government must make *Giglio*-type materials - *i.e.,* evidence of inducements to testify, including assistance payments or compensation for relocation, etc. - available only for testifying witnesses, and, as noted above, the government has assured the Court that it has already done that for all testifying witnesses. *See* Doc. 894 at 4-5 (detailing information requested and provided).

That does not mean, however, that the government may fail to disclose that it has unsuccessfully attempted to induce testimony by offering assistance of some sort to an individual who refuses to testify for the government or who the government decides not to call as a witness.

*Kyles* specifically deals with a prosecutor's "affirmative duty to disclose evidence favorable to a defendant" under *Brady* and the prosecutor's failure to disclose prior statements by both the key testifying witnesses and a non-testifying witness. 514 U.S. at 441-46 & n.13. *Kyles*, like *Brady*, requires the prosecutor to disclose all information and evidence that may "have had some value as exculpation and impeachment" of which the prosecutor is aware, regardless of whether it relates to a testifying witness. *Id.* at 449-50 (holding that the government had a duty to disclose a list of cars in a parking lot because it "would also have shown that the police either knew that it was inconsistent with their [non-testifying] informant's second and third statements . . . or never even bothered to check the informant's story against known fact. Either way, the defense would have had further support for arguing that the police were irresponsible in relying on [the non-testifying informant] to tip them off to the location of evidence damaging to [the defendant].").

Defendant urged the Court at the hearing to issue an order compelling the United States to comply with the Ogden memo and to sift through and "scrub" the last six years' worth of records, statements, and reports to look for more evidence of *Giglio* and *Brady* materials, using my discretionary authority to oversee discovery. But Defendant concedes in his reply brief that "the Ogden Memo is not intended to have the force of law." Doc. 928 at 4. The Court will not compel the United States to produce what it states it has already produced, nor will it order the United States to conduct the specific searches suggested in the Ogden memo. First of all, Defendant waited until only a month before trial is to begin to suggest that such an extensive effort should be conducted, and he bases his request only on the speculation that the United States may not have been as rigorous in its efforts as the Ogden memo suggests it should be.

But principally, the Court is unwilling to accord the weight of law to the Ogden internal policy memo by judicial fiat. An internal policy does not create any additional constitutional or

4

otherwise enforceable rights for a defendant.  *See United States v. Thompson*, 579 F.2d 1184, 1189 (10th Cir. 1978) ("We also consider ill-founded the notion that a departmental policy such as the present one is capable of giving rise to an enforceable right in favor of the defendant.  The decisions hold that a press release expressing a policy statement and not promulgated as a regulation of the Department of Justice and published in the Federal Register is simply a 'housekeeping provision of the Department.' *Sullivan v. United States*, 348 U.S. 170, 75 S. Ct. 182, 99 L. Ed. 210 (1954)").  Although a United States attorney is required to comply with federal regulations or statutes, he is not mandated by statute, regulation, or by the constitution to comply with the best practice guidelines contained in an internal policy memo.

>In addition, Defendant states that
>
>Deputy Attorney General Ogden requested that each United States Attorney's Office in each district develop a discovery policy that establishes a discovery practice within the district or component consistent with the guidance given by the memos issued that date.  Defendant Lujan hereby requests a copy of that discovery policy so that additional issues and obligations brought to light by the local plan be available to the defendant.

Doc. 868 at 7.  Nothing in Fed. R. Crim. P. 16, *Brady, Giglio*, or *Kyles* requires the government to disclose its internal discovery policies; the Rule and those cases simply require the prosecutor to inquire about and then disclose material impeachment and exculpatory evidence and information in the government's possession that is related to the crime.

**IT IS ORDERED** that the Defendant's motion [Doc. 868] is DENIED.

_____
UNITED STATES DISTRICT JUDGE