IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                             NO. CR 05-0924 RB

LARRY LUJAN,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Brief in Support of Motion for Mistrial or, in the Alternative, for Disqualification of Government Counsel and Dismissal of Notice of Intent to Seek Death, (Doc. 1107), filed August 4, 2011. Having considered this document, relevant law, and the record, the Court finds that the requested relief is denied.

**I.    Background.**

Defendant is charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment included a Notice of Special Findings against Defendant, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (Doc. 145). On July 12, 2007, and February 17, 2011, the United States filed Notices of Intent to Seek a Sentence of Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA. (Docs. 146 and 690). The trial phase commenced on July 18, 2011. The government rested its case-in-chief on July 27, 2011. The defense rested its case on August 3, 2011. The government rested its rebuttal case and the jury was instructed on August 8, 2011. Following arguments, the jury returned a guilty verdict on August 9, 2011.

Defendant maintains that Assistant United States Attorney Maria Armijo committed prosecutorial misconduct during trial either by (1) presenting "perjured" testimony or (2) failing to "correct witness's perjury." (Doc. 1107 at 5).

As Ms. Armijo previewed in her opening statement, the testimony during trial recounted the injuries, threats, and other torturous behavior the victim endured, including that he was transported from Texas to New Mexico in the luggage area of a Jeep. See Doc. 1074 at 21-22 (opening statement of Ms. Armijo). The defense emphasized in opening statement that, although the victim was blindfolded at some points during the trip, he was never bound and Defendant, who was heavily sedated with the drugs he was ingesting, slept for almost the entire time. Doc. 1074 at 42-43 (opening statement of defense counsel Robert Kinney). The defense further previewed for the jurors that several of the witnesses connected with the events had already been prosecuted, but received very light punishment compared to the penalty sought against Defendant, and asked the jurors that when they "listen to the testimony of these individuals . . . consider them in light of what benefit they're going to get." Doc. 1074 at 48.

Defendant seeks a mistrial or disqualification of Ms. Armijo and dismissal of the death penalty notice. As grounds, Defendant asserts that, in his statements during early interviews and to the Court's specific question during a plea colloquy, government witness Eugenio Medina maintained the victim was not bound while he was transported in the Jeep. Then, in a June 11, 2011, interview where Ms. Armijo was present, Mr. Medina changed his story and "for the first time since his . . . plea . . . stated that [the victim] was blindfolded and his hands were tied with a . . . bandana on the trip from San Antonio to El Paso." Doc. 1107 at 3. At trial, Mr. Medina testified that when the victim was transferred from the trunk of his car to the Jeep, the victim remained blindfolded with a bandana. He also testified that he "believed" the victim's hands were "tied [at that point] too,"

2

because, sometime later, Mr. Medina saw the victim in the Jeep with his hands tied. *See* Doc. 1075 at 60-61.

Earlier in the ordeal, the victim was bound and placed in the trunk of Mr. Medina's car and was driven around San Antonio. Mr. Medina testified that Defendant placed a belt around the victim to serve as a collar, placed the victim in the trunk with the belt hanging out, would pull the belt causing the victim to gag and hit his head on the top of the top of the trunk. Although Mr. Medina's testimony is not entirely clear on this point, the victim evidently remained tethered to the trunk by the belt for some portion of the time they drove around. At some point, a bandana was added to blindfold the victim. *See* Doc. 1075 at 39-44, 58-60.

Mr. Medina did not specify whether the Jeep was in Texas or New Mexico when he discovered the tied hands, and neither the government nor the defense sought to clarify the murkiness in his testimony about precisely when the victim's hands were tied. All of the other witnesses on the trip testified that the victim was not bound – only blindfolded. See Transcript 7/20/11 (testimony of Jalisco Holmes at approx. p.164-65, 173-79; at some point during the trip a bandana was placed on victim's face, and at some point on the journey to El Paso, Holmes gave the victim cigarettes and the victim grabbed them using his hands); Transcript 7/21/11 (continued testimony of Kacey Lamuyon from clerk's minutes at 39; victim had bandana over eyes); Transcript 8/1/11 (testimony of Ashley Almorejo at approx. 14:35; she did not "notice" whether the victim was tied, although "he was blindfolded").

Defense attorney Mr. Robert Kinney cross-examined Mr. Medina intensively on the discrepancy between his representations at the plea hearing versus his testimony at trial. *See* Doc. 1075 at 239-49.

**II.     Discussion.**

Perjured testimony, knowingly used by the prosecution to obtain a conviction, is a "contrivance . . . as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation." *United States v. Agurs,* 427 U.S. 97, 103 n. 7 (1976) (citing *Mooney v. Holohan,* 294 U.S. 103, 112 (1935)). The "same result obtains when the [prosecution], although not soliciting false evidence, allows it to go uncorrected when it appears" – the conviction is unconstitutional. *Napue v. Illinois,* 360 U.S. 264, 269 (1959). And, it matters not

> that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the [prosecutor] has the responsibility and duty to correct what he knows to be false and elicit the truth." . . . That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.

*Id.* at 269-70 (internal quotations and citation omitted).

Citing the Second Circuit's decision in *Wallach,* Defendant argues that if a prosecutor "knowingly" permits the introduction of "false testimony," then reversal is "virtually automatic." *United States v. Wallach,* 935 F.2d 445, 456 (2d Cir. 1991). *Wallach,* in turn, cites *Stofsky* for the "virtually automatic" proposition. *United States v. Stofsky,* 527 F.2d 237, 243 (2d Cir. 1975). The actual test announced in *Wallach,* however, did not dispense with the requirement that the tainted testimony must have an impact on the jury. "Where the prosecution ***knew or should have known*** of the perjury, the conviction must be set aside ***if there is any reasonable likelihood*** that the false testimony ***could have affected the judgment of the jury.***" *Id.* (emphasis added, internal quotations ultimately attributed to *Agurs* omitted).

Tenth Circuit authority is similarly stated. "If there is any reasonable likelihood that the government knowingly relied on perjury to obtain a guilty verdict, reversal is required." *United States v. Rangel,* 519 F.3d 1258, 1265 (10th Cir. 2008) (quoting *United States v. Crockett,* 435 F.3d 1305, 1317 (10th Cir. 2006)). However, like the Second Circuit, the Tenth Circuit does not divorce the inquiry from the effect of the testimony. To warrant a mistrial, Defendant must "establish that (1) the testimony at issue was false, (2) the testimony was material, and (3) the prosecutor nevertheless knowingly and intentionally relied on the testimony. *Crockett,* 435 F.3d at 1317 (citing *United States v. Wolny,* 133 F.3d 758, 762 (10th Cir. 1998)).

Significantly, Defendant "does not sustain his burden of demonstrating perjury merely by proving that a government witness has testified falsely or has given testimony that conflicts with other statements." *Id.* (citing *Smith v. Roberts,* 115 F.3d 818, 820 (10th Cir. 1997)). Moreover, it is dispositive that where, as here, "evidence refuting a false statement is revealed in cross-examination," because, in such a case "the government cannot be said to have relied on the false direct examination testimony to obtain a guilty verdict." *Id.* (*citing United States v. Langston,* 970 F.2d 692, 701 (10th Cir. 1992)). Because Defendant simply shows inconsistent statements by a witness, and because the jurors were made aware of this discrepancy through cross-examination, I find that the motion should be denied.

**THEREFORE**,

**IT IS HEREBY ORDERED** that Defendant's request for a mistrial, or to disqualify Ms. Armijo and dismiss the death penalty notice, (Doc. 1107), is DENIED.

*/s/ Robert Brack*

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**