IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

vs.                                    No. CR 05-0924 RB

LARRY LUJAN,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on the United States' Objections to Defendant's Proposed Guilt-Phase Jury Instructions, (Doc. 1072), Defendant's Response to the United States' Objections to Defendant's Proposed Guilt-Phase Jury Instructions, (Doc. 1091), and to settle jury instructions. Having considered the arguments of counsel, evidence of record, and relevant law, the Court finds as follows.

**I.      Background.**

Defendant is charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment included a Notice of Special Findings against Defendant, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (Doc. 145). On July 12, 2007, and February 17, 2011, the United States filed Notices of Intent to Seek a Sentence of Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA. (Docs. 146 and 690). The trial phase commenced on July 18, 2011. The government rested it case on July 27, 2011. The defense rested its case on August 3, 2011. The government presented its rebuttal case and the jury was instructed

on August 8, 2011. After hearing closing arguments, the jury returned a verdict of "guilty" on

August 9, 2011.

**II.    Discussion.**

Section 1201(a)(1) (2006) provides:

(a)  Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when–

(1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary, or the offender travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense;

. . . .

shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

"Although the crime of kidnapping is complete upon the unlawful seizing and detention of the

victim, federal jurisdiction over the crime attaches only upon meeting one of the jurisdictional

predicates set forth in [18 U.S.C. § 1201]." *United States v. Toledo*, 985 F.2d 1462, 1466 (10th Cir.

1993). As in *Toledo*, "a federal crime has occurred only if predicated on the victim being 'willfully

transported in interstate or foreign commerce.' 18 U.S.C. § 1201(a)(1) (1988)," thus Congress

criminalized in this section "those abductions where the victim was transported in interstate

commerce against his or her will." *Id.*  And § 1201(a)(1) becomes a capital offense if "the death

of any person results . . . ."

Defendant requests a lesser-included offense instruction for non-capital kidnapping in

violation of 18 U.S.C. § 1201(a)(1). *See* Doc. 1106 at 7 (Requested Supplemental Instruction "G").

A proper instruction on non-capital kidnapping under § 1201(a)(1) simply deletes the fifth element

of the charge of capital kidnapping: that the kidnapping resulted in the death of a person, and

requires the jury to find only that the first four elements have been proved beyond a reasonable

doubt. *See* TENTH CIR. PATTERN JURY INSTRUCTION § 2.55 and Comment (2011). A

> defendant is entitled to a lesser offense instruction if four conditions are met: (1)
> there is a proper request; (2) the lesser included offense contains some, but not all,
> of the elements of the offense charged; (3) the element differentiating the two
> offenses is a matter in dispute; and (4) a jury could rationally convict on the lesser
> offense and acquit on the greater offense. *United States v. Joe*, 831 F.2d 218, 219
> (10th Cir. 1987). "Failure to meet any part of the test is fatal for the defendant." *Id.*

*United States v. James*, 257 F.3d 1173, 1183 (10ᵗʰ Cir. 2001). The Tenth Circuit has held that,

"[a]bsent some evidence to counter the strong inference of [the charged offense] . . . the issue is not

elevated to a truly disputed one." *United States v. Joe*, 831 F.2d 218, 220 (10th Cir.1987). "Thus,

the third part of the test is not met by the mere expedient of denial and 'putting the government to

its proofs,' but requires a dispute in the evidence." *United States v. Grant*, 233 Fed. App'x 840, 844,

2007 WL 1445183, *4 (10ᵗʰ Cir. 2007). Further, as the Court noted in its prior Opinion,

> comments to the Tenth Circuit pattern jury instructions illustrate when a lesser
> included instruction is appropriate in a kidnapping resulting in death case. "If a
> disputed issue is whether a death resulted, a court should consider giving a lesser
> included offense instruction." TENTH CIRCUIT PATTERN JURY INSTRUCTIONS
> (CRIMINAL) § 2.55 (2011) (Comment)).

Doc. 803 at 8.

The Court has previously noted that, "[i]n all the years this case has been pending, the parties

have never suggested that the victim's death was not the result of the kidnapping." *Id.* And there

was absolutely no evidence at trial from which a jury could conclude that Grauke's kidnapping did

not result in his death, or that Grauke's kidnapping ended before he was killed, or that there was

some independent, intervening cause of his death not associated with the kidnapping.

At the jury-instruction hearing after the presentation of evidence had concluded, however,

3

counsel for Defendant suggested that there is evidence sufficient to support a "step-down" instruction to non-capital kidnapping – kidnapping that did not result in death. In support, counsel pointed to testimony indicating that Defendant took large quantities of drugs that prevented him from having the *intent* to kill Grauke; that Quintana may have assisted Defendant in killing Grauke; that Defendant's plans changed from time to time during the course of the kidnapping regarding what he was going to do with Grauke; and that Grauke's body may have been moved from the place where he was actually killed. But none of this evidence supports a conclusion that the kidnapping did not result in death. Thus, the element differentiating the two offenses - whether a death occurred as a result of the kidnapping - is not truly in dispute. Defendant's intent to kill Grauke is not relevant at this stage of the proceedings, nor is the fact that someone may have helped Defendant kill Grauke or that someone else may have moved Grauke's body after he was killed. There simply is no evidence to create a truly disputed issue whether the kidnapping resulted in death. The Defendant is therefore not entitled to a lesser-included offense instruction on non-capital kidnapping. *See Gilson v. Sirmons*, 520 F.3d 1196, 1254 (10th Cir. 2008) ("A trial court may properly deny a defendant's request for a lesser included offense instruction only when there is no evidence to reasonably support that conviction.")

For this same reason, the Court rejects Defendant's requested Instruction "E," *see* Doc. 1090 at 4, which would instruct the jury that "you should consider whether the original kidnapping ended at some point prior to the death of Dana Joe Grauke II. If you conclude that the kidnapping and the death were separate events, you may conclude that any detention or asportation of Dana Joe Grauke II that was incidental to his death is not kidnapping . . . ." *Id.* The requested instruction then additionally instructs the jury on four factors used to determine "whether a kidnapping has taken place" in situations in which "asportation is merely incidental to the commission of other substantive

4

crimes" under *Government of Virgin Islands v. Berry*, 604 F.2d 221, 227 (3d Cir.1979).  *See* Doc. 1090 at 4-5.

The test in *Berry* is used when it appears that a prosecutor is attempting to use "overzealous enforcement of kidnapping statutes" against defendants "who have committed such substantive crimes as robbery or assault which *inherently* involve the temporary detention or seizure of the victim."  *Berry*, 604 F.2d at 226 (italics added).  The Tenth Circuit has noted that *Berry* does not apply to "§ 1201(a)(1), which criminalizes the interstate transportation of an abducted person.  *See United States v. Jones*, 808 F.2d 561, 565-66 (7th Cir.1986) (rejecting as "wholly irrelevant" the argument that an interstate kidnapping was merely incidental to the interstate transportation of a woman for an "immoral purpose" in violation of the Mann Act, on the grounds that kidnapping and Mann Act offenses were "distinct and separately punishable"); *United States v. Lowe*, 145 F.3d 45, 52 (1st Cir.1998) (same)."  *United States v. Gabaldon*, 389 F.3d 1090, 1097 (10th Cir. 2004).  Further, there is no danger of overzealous prosecution in this case because here, there is **no** evidence that Grauke was only temporarily detained or that he was seized while Defendant robbed or assaulted him and then released.  The testimony that Grauke was taken and detained for over 36 hours in the back of a Jeep Cherokee, and driven hundreds of miles away across state lines while Defendant decided what he was going to ultimately do with him, is undisputed and overwhelming.  *See Gabaldon*, 389 F.3d at 1097 ("An abduction or seizure that involves enough distance traveled and time elapsed in order for the captor and the victim to cross state lines will generally constitute a bona fide kidnapping.").  Thus, a *Berry* instruction is inappropriate.

Further, there is absolutely no evidence that Grauke's kidnapping ended at ***any*** point prior to his death, thus Defendant is not entitled to this instruction for that reason as well.  *See United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006) ("A defendant is not entitled to an

5

instruction which lacks a reasonable legal and factual basis."); *United States v. Haney*, 318 F.3d 1161, 1163 (10th Cir. 2003) (en banc) ("A criminal defendant is entitled to an instruction on his theory of defense *provided that* theory is supported by some evidence and the law.") (emphasis added).

> As the Supreme Court made clear in *Chatwin*, "the involuntariness of the seizure and detention . . . is the very essence of the crime of kidnapping." *Chatwin*, 326 U.S. at 464, 66 S.Ct. at 237 (emphasis added). If the victim is no longer being held against [his] will, the kidnapping has ended . . . .

*United States v. Toledo*, 985 F.2d 1462, 1467 (10th Cir. 1993). Because there is no evidence to support Defendant's theory that Grauke's killing did not occur during the course of his kidnapping - *i.e.*, that the kidnapping did not result in death, the Defendant is not entitled to requested instructions E and G. *See United States v. Fritz*, 580 F.2d 370, 371, 378 (10th Cir. 1978) (holding, even in situation in which the defendant ordered the kidnapping victim to get out of the truck and purchase a drink, and the victim did not attempt to escape at that time, "that the evidence simply does not support" an instruction that the victim "may have consented to accompany [the defendant]" such that a kidnapping did not occur).

The Court rejects Defendant's requested Instruction "A," *see* Doc. 866 at 3-4 for several reasons. That instruction, which he entitled "Capital Kidnapping (Intentional Murder)" states, as a fifth element to prove violation of § 1201(a)(1) that, "in the course of the kidnapping the defendant Larry Lujan intentionally killed Dana Joe Grauke." *Id.* at 3. It then instructs that,

> [i]f you unanimously find the defendant not guilty of the offense charged, or if, after all reasonable efforts, you are unable to agree on a verdict as to that offense, then you must determine whether the defendant is guilty or not guilty of two, and potentially three, separate offenses: (1) Kidnapping (not intentional murder), (2) Murder in the Second Degree, and potentially, (3) Voluntary Manslaughter.

*Id.* at 3-4. The Court has previously explained that the Defendant is not entitled to an instruction

on intent to kill Grauke at this stage in the proceedings because intent to kill is not an element of §
1201(a)(1) capital kidnapping, which is the only crime for which he has been charged. *See* Doc. 803
at 4-6 (rejecting Defendant's position "that the trial and eligibility 'intent' phases must be
combined"). As noted *supra*, § 1201(a)(1) becomes a capital offense "if the death of any person
results" from the kidnapping, and does not require an intent-to-kill element. *See United States v.
Woodlee*, 136 F.3d 1399, 1405 (10th Cir. 1998) (holding that similar provision in 18 U.S.C. § 245
that increased sentence "if bodily injury results" requires the government to only show that the
defendant's "illegal conduct resulted in bodily injury; not that the defendants intended bodily injury"
and that "the standard 'is one of causation, not state of mind.'"). And the Tenth Circuit has held,
in another case construing a similar statute that, "even if the phrase 'if death results' were to be
construed as an element of the offense rather than a sentencing enhancement, it would not be an
intent element but only an element of factual consequences." *United States v. Nichols*, 38 Fed.
App'x. 534, 538, 2002 WL 511731, *3 (10th Cir. Apr. 5, 2002). *See also United States v. Barraza*,
576 F.3d 798, 807 (8th Cir. 2009) ("[t]he statute does not require that the deaths result from
voluntary and intentional conduct, only that 'the death of any person results' in the course of the
kidnaping").

The Court has also explained why second-degree murder and voluntary manslaughter are not
lesser-included offenses of kidnapping resulting in death and need not repeat that analysis. *See* Doc.
803 at 6-8 and Doc. 725 at 4. The United States has not charged Defendant with any degree of
murder.

In his brief responding to the Government's objections to his proposed instruction,
Defendant now contends that an instruction on intent to kill Grauke is required during the
guilt/innocence stage of the proceedings because "simple felony murder is insufficient to support

imposition of the death penalty. *Enmund v. Florida*, 458 U.S. 782 (1982)." Doc. 1091 at 4. But *Enmund* does not stand for that broad proposition and also does not require that an instruction on intent to kill be given at the guilt/innocence stage of a trial when the elements of the underlying crime do not require such an instruction. Instead, the Court held in *Enmund* that the Eighth Amendment does not permit "imposition of the death penalty on one such as Enmund who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." *Enmund,* 458 at 797. The Court indicated that the Eighth Amendment poses no hurdle to the imposition of capital punishment on "the felony murderer who actually killed, attempted to kill, or intended to kill." *See id.*

Defendant also contends that "the government *is* required to prove malice aforethought in order to seek the death penalty." Doc. 1091 at 4. But in *Tison v. Arizona*, 481 U.S. 137 (1987), the Supreme Court held that the Eighth Amendment does not prohibit the death penalty as disproportionate in the case of a defendant whose participation in a felony that resulted in murder is major and whose mental state is only one of reckless indifference. The Court held "that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result." *Id.* at 157-58. In analyzing whether the defendants in *Tison* could be sentenced to death, the Court noted that, "[f]ar from merely sitting in a car away from the actual scene of the murders acting as the getaway driver to a robbery, each petitioner was actively involved in every element of the kidnaping-robbery and was physically present during the entire sequence of criminal activity culminating in the murder of the Lyons family and the subsequent flight." *Id.*

8

at 158.  The Court concluded that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement," noting that, "[a]lthough we state these two requirements separately, they often overlap.  For example, we do not doubt that there are some felonies as to which one could properly conclude that any major participant necessarily exhibits reckless indifference to the value of human life. Moreover, even in cases where the fact that the defendant was a major participant in a felony did not suffice to establish reckless indifference, that fact would still often provide significant support for such a finding."  *Id.* & n.12.  Again, *Tison* expressed no opinion regarding when an element of intent that will satisfy imposition of the death penalty should be given.

Subsequently, however, in *Cabana v. Bullock*, 474 U.S. 376 (1986), the Supreme Court "determine[d] in whose hands the [ *Enmund/Tison*-mandated] decision that a defendant possesses the requisite degree of culpability properly lies."  474 U.S. at 378.  And critically, the Court emphasized that its "ruling in *Enmund* d[id] not concern the guilt or innocence of the defendant" and "establishe[d] no new elements of the crime of murder that must be found by the jury."  *Id.* at 385.

Thus, while, in the eligibility-for-the-death-penalty phase of ***sentencing***, the United States will be required to prove beyond a reasonable doubt one of the "gateway" intents that make Defendant eligible for the death penalty, *see* 18 U.S.C. § 3591(a)(2); TENTH CIRCUIT PATTERN JURY INSTRUCTIONS (CRIMINAL) § 3.06 (2011),  no statute or legal precedent requires the Government to prove at the guilt/innocence stage of this trial that Defendant intended to kill Grauke.

Insofar as the Defendant may be arguing that it is impermissible to allow the United States to charge him only with a single offense for which no lesser-included offense is available,

> [i]t is settled law that as long as a prosecutor's charging decision is not based on an impermissible factor such as race, which is not alleged by Defendant in this case, a prosecutor may exercise broad discretion with respect to his charging decisions. As

9

we stated in *United States v. Andersen*, 940 F.2d 593 (10th Cir. 1991):

> Although a prosecutor obviously cannot base charging decisions on a defendant's race, sex, religion, or exercise of a statutory or constitutional right, *see Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file . . . generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) (footnote omitted).
>
> *Id.* at 596.

*United States v. Curtis*, 344 F.3d 1057, 1064 (10th Cir. 2003).

Insofar as Defendant contends that his due-process rights will be violated under *Beck v. Alabama*, 447 U.S. 625 (1980), if he is not allowed to instruct the jury on some lesser-included offense, that argument also has been soundly rejected. The Supreme Court held in *Beck* that "a sentence of death [may not] constitutionally be imposed after a jury verdict of guilt of a capital offense, when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." 447 U.S. at 627 (internal quotation marks omitted). "*Beck's* rule [is] that a State may not erect a capital-specific, artificial barrier to the provision of instructions on offenses that actually are lesser included offenses under state law." *Hopkins v. Reeves*, 524 U.S. 88, 97-98 (1998). When a defendant's requested instructions involve "crimes that are not lesser included offenses" of the charged crime, however, rejecting those instructions does "not create an 'artificial barrier' for the jury; nor [does] it treat capital cases differently from noncapital cases." *Id.*

Here, as discussed above, Defendant's requested instructions on second-degree murder or manslaughter are not valid lesser-included-offense instructions of § 1201(a)(1), and the jury may choose a life sentence instead of the death penalty even having found Defendant guilty of the crime

10

for which he is charged.  There is, therefore, no constitutionally imposed barrier to the death

sentence under *Beck.  See Hooks v. Ward,* 184 F.3d 1206, *1226 (10th Cir. 1999) (noting that

*Hopkins* "instructed that a defendant facing a capital charge has no constitutional right to an

instruction on a non-capital offense if such offense is not a lesser included offense of the capital

charge").

Defendant maintains that the United States must prove that the kidnapping was the

"proximate cause" of the death, and submits an instruction on proximate cause described as "D

(alternative)".  *See* Doc. 1086 at 3 ("A proximate cause is one that played a substantial part in

bringing about the death of the victim, so that the death was the direct result or a reasonably

probable consequence of the defendant's act.").  Defendant also submits an instruction, entitled "D"

stating that

> the government must also prove to your satisfaction beyond a reasonable doubt that
> 1. The death was a foreseeable result of the kidnapping; and
> 2. The kidnapping was a significant cause of the death of Dana Joe Grauke II. The
> kidnapping was a significant cause of death if it was an act which, in a natural and
> continuous chain of events, uninterrupted by an outside event, resulted in the death
> and without which the death would not have occurred.

Doc. 1090 at 3.  Although the Court had previously indicated that the fifth element to be proved for

a capital violation of § 1201(a)(1) is that "the act of kidnapping proximately caused the death of Mr.

Grauke", Doc. 725 at 2-3, the Court later recognized that the proper instruction on the fifth element

is simply that the jury must find the factual consequence that the "kidnapping resulted in death."

In *United States v. Guillette*, 547 F.2d 743 (2d Cir. 1976), the Court cogently explained when

the concept of "proximate cause" is applicable to a set of facts in a criminal case.  There, the

defendants *did not themselves* commit an act of killing, but they were charged with conspiracy to

deprive a citizen of his civil rights under 18 U.S.C. § 241, which provided that a sentence of life

imprisonment may be imposed "if death results" from a prohibited conspiracy:

> The concept of proximate cause incorporates the notion that an accused may be charged with a criminal offense even though his acts were not the immediate cause of the victim's death or injury. *See generally* 40 C.J.S. Homicides 11, at 854. In many situations giving rise to criminal liability, the death or injury is not directly caused by the acts of the defendant but rather results from intervening forces or events, such as negligent medical treatment, escape attempts, or the negligent or intentional acts of a third party. Where such intervening events are foreseeable and naturally result from a perpetrator's criminal conduct, the law considers the chain of legal causation unbroken and holds the perpetrator criminally responsible for the resulting harm.

547 F.2d at 749. Here, Defendant admits to killing Grauke and there are **no** facts indicating that Grauke's death was "not directly caused by the acts of" Defendant, *see id.* so the use of the words "proximately caused" and the concept of foreseeability are not applicable and would only confuse the jury. The Tenth Circuit has held, in a case construing another statute that, "even if the phrase 'if death results' were to be construed as an element of the offense rather than a sentencing enhancement, it would not be an intent element but only an element of factual consequences." *United States v. Nichols*, 38 Fed. App'x. 534, 538, 2002 WL 511731, *3 (10th Cir. Apr. 5, 2002).

A simple instruction that the government must prove only that the "kidnapping resulted in death" is also supported in *United States v. Mayhew*, 380 F. Supp. 2d 936, 958 (S.D. Ohio 2005), and *United States v. Foghorn*, 2006 WL 4017477 (D.N.M. Oct. 20, 2006). The *Mayhew* court held "that the 'if the death of any person results' phrase in 18 U.S.C. § 1201 is a separate element that needs to be charged in the indictment and proved beyond a reasonable doubt to the petit jury," and that the indictment properly charged the defendant when it alleged that he had kidnapped his daughter "resulting in [her] death." 380 F. Supp. 2d at 960. The defendant in *Mayhew* also argued that

> using the kidnapping and subsequent death of Kristina in both the Indictment and as a statutory aggravating factor will fail to narrow adequately the class of individuals

12

>eligible for the death penalty, thereby violating Defendant's constitutional rights. *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) ("To pass constitutional muster, a capital sentencing scheme must 'genuinely narrow the class of persons eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' ").

380 F. Supp. 2d at 946. But the district court also held that, because the language of the indictment required a jury to implicitly find that "this act proximately caused [the daughter's] death," the Federal Death Penalty Statute was not unconstitutional. *Id.* at 960.

Similarly, although the *Foghorn* opinion refers to "proximate causation," *see* 2006 WL 4017477 at *25 ("at Foghorn's second trial, neither the United States nor Foghorn made any request that a direction regarding proximate causation be included in the Court's kidnaping instruction"), the Court held that, "[b]ecause the Court's instructions to the jury did not require them to find that any kidnaping resulted in Williams' death, the Court finds that the jury was not charged with all the elements of kidnaping resulting in death," 2006 WL 4017477 at *26.

The Defendant cites *United States v. Woodlee*, 136 F.3d 1399 (10th Cir. 1998), in support of his proximate-cause and "foreseeable result" instructions. *See* Doc. 1106 at 3; Doc. 1090 at 3. There, the two Woodlee brothers and their friends harassed and threatened three African-American men, causing the African-American men to leave the bar where all of them were drinking. *See* 136 F.3d at 1403. After the African-American men left the bar, the Woodlee brothers and Robert Kinslow pursued them into the parking lot, and they began a high-speed chase during which (at least one-half mile from the bar), Kinslow shot at the African-American men's car, hitting one of them. *See id.* at 1403-04. The Woodlee brothers were charged and convicted of violating 18 U.S.C. § 245(b), which provides, in relevant part, that

>Whoever ... by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with—

. . . .

(2) any person because of his race, color, religion or national origin and because he is or has been—

. . . .

      (F) enjoying the goods, services, facilities, privileges, advantages, or accommodations of any ... facility which serves the public ...

shall be fined under this title, or imprisoned not more than one year, or both; and if bodily injury results ... shall be fined under this title, or imprisoned not more than ten years, or both

*Id.* at 1405.  On appeal of their conviction, the Tenth Circuit held that, "[t]o prove a felony conviction of this section, the government must show: (1) by use of force or threat of force; (2) the defendant willfully injured, intimidated or interfered with, or attempted to injure, intimidate or interfere with any person; (3) because of his race, color, religion or national origin; (4) because the person was, or had been, enjoying a public facility; and **(5) bodily injury resulted**." *Id.* (emphasis added).  Thus, the Tenth Circuit did not require an instruction using the term "proximate cause" as an element of the crime, even where the brothers themselves did not shoot the African-American man.

In response to the Woodlee brothers' contention that the United States had to *also* prove an intent to injure, the Court stated, "Section 245(b) expressly provides the government need only show the defendants' illegal conduct resulted in bodily injury; not that the defendants intended bodily injury.  As the government maintains, the standard 'is one of causation, not state of mind.'" *Id.*  But because it was undisputed that the brothers did not themselves shoot the victim, the Tenth Circuit held that "the bodily injury element of the felony crime is satisfied if injury was a foreseeable result of the [defendants'] intimidation or interference.  In addition, the defendants need not have foreseen the actual injury that occurred; merely foreseeing some bodily injury is sufficient." *Id.* at 1406.  Foreseeability was required because the Woodlee brothers had not committed the act that resulted

14

in the victim's injury.  In the case at bar, in contrast, it is uncontroverted that Defendant killed Grauke - that he caused Grauke's death.  Therefore, foreseeability is not an issue and may only confuse the jury.

Defendant requested a voluntary intoxication instruction.  *See* Doc. 866 at 9 (Instruction "B" stating: "You may consider evidence of Mr. Lujan's intoxication or diminished capacity in deciding whether the government has proved beyond a reasonable doubt that the defendant acted with the intent required to commit intentional murder.").  As noted *supra*, however, Defendant has not been charged with "intentional murder" in the indictment, and an instruction on Defendant's intent to kill Grauke is premature at this stage of the proceedings, thus the proposed instruction is improper.  The Court instructed the jury on the defense of intoxication, however, as it applies to "knowingly acting contrary to law" when kidnapping Grauke; of "willfully" transporting him; and of aiding and abetting in his kidnapping.  *See United States v. Jackson*, 248 F.3d 1028, 1031-32 (10th Cir. 2001) (noting that "§ 1201(a)(1) may require specific intent because of inclusion of the word 'willfully'"); 18 U.S.C. § 2; *United States v. Jackson*, 213 F.3d 1269, 1292 (10th Cir. 2000) (the crime of aiding and abetting is a specific intent crime because it requires the defendant to act willfully by participating in the venture and also requires the defendant to have the specific intent to make the venture succeed through his or her acts.  Therefore, voluntary intoxication is a potential defense for an aiding and abetting charge.); *cf. United States v. Headman*, 594 F.3d 1179, 1184-88 (10th Cir. 2010) (rejecting, in case where defendant was charged both with commission of the substantive offense of murder and with aiding and abetting, and where "the verdict form did not indicate whether he was convicted as the actual killer or as an aider and abettor," the defendant's argument "that the instructions should have explicitly linked the intoxication defense and aiding and abetting" and holding that, "[p]erhaps it would have been prudent for the instructions to state explicitly that

15

the intoxication defense applies to aiding and abetting [the substantive offense]. But there was no plain error in failing to do so.").

Defendant requested a separate instruction defining the term "willfully."  *See* Doc. 1106 at 6 (Requested Instruction "F").  The Tenth Circuit Pattern Jury Instruction Committee does not recommend any general instruction defining the term due to the different meanings this term has in federal criminal law.  *See* Comment, TENTH CIRCUIT PATTERN INSTRUCTION § 1.38 (2011).  When, as here, a statute uses the term, the Committee suggests that care be taken to distinguish between its meanings.  *See id.*  The pattern instruction for kidnapping includes a definition of this term that the Court has included in its instructions.  *See* TENTH CIRCUIT PATTERN INSTRUCTION § 2.55 (2011). Because the term "willfully" is correctly defined in the Court's instructions, the Court declines to give a separate instruction defining the term.

Defendant requests a separate unanimity instruction, *see* Doc. 1160 at 8 (Requested Instruction "H").  The requested instruction purports to be a modification of TENTH CIRCUIT PATTERN INSTRUCTION § 1.24 (2011), and states:

> Your verdict must be unanimous. The government has presented two theories of the offense: as a principal and aiding and abetting. The government does not have to prove both theories for you to return a guilty verdict on count 1. But in order to return a guilty verdict, all twelve of you must agree upon which theory to convict.

*Id.*  But the pattern instruction on unanimity is given when a defendant is accused of committing multiple individual alternative "acts" - not "theories" and requires the jury to agree upon "which of the listed acts, if any, the defendant committed . . . ."  PATTERN INSTRUCTION § 1.24.  Here, the jury has been asked to give a unanimous decision regarding whether the Defendant committed a single criminal act: kidnapping Grauke and transporting him across state lines.  The aiding and abetting instruction properly instructs the jury that Defendant may be held liable as a principal if he has the

requisite intent.  There is no need to give a separate unanimity instruction.  *See United States v. Horton*, 921 F.2d 540, 545 (4th Cir. 1990) (rejecting claim that "it [was] impossible to tell whether individual jurors convicted [the defendant] as a principal or as an aider and abettor," thus defendant was deprived of unanimous verdict under 18 U.S.C. § 1111 and 18 U.S.C. § 2 because "[o]nly one act—the stabbing murder of [the victim]—was charged.  Only evidence pertaining to this one act was presented.  To convict [defendant], the jury had to find that defendant was at the scene, actively participating in the crime of murder with the necessary mens rea. Whether some jurors found [defendant] guilty as a principal, believing that he delivered the fatal blow to the heart, while other jurors found him guilty as an aider and abettor, doubting exactly who delivered the fatal blow, is not controlling."); *United States v. Eagle Elk*, 820 F.2d 959, 961 (8th Cir. 1987) (holding that, because general unanimity instruction was given and 18 U.S.C. § 2 "makes an aider or abettor in an offense against the United States 'punishable as a principal[,]' [e]ven if the jury was divided on whether Eagle Elk committed the principal crime or aided or abetted in its commission, there can be no question that the illegal act was murder," thus rejecting defendant's contention that the "instruction on unanimity was too general to insure that the jury understood that it must unanimously agree to a particular set of facts"); 75A AM. JUR. 2d Trial § 1207, Unanimity-Separate acts or theories (2011) ("It is necessary to give instructions that a unanimous verdict is required regarding which of several acts constituted the offense or as to legally separate incidents, if the alternative acts are materially distinct or there is reason to believe the jurors might be confused or disagree about the factual basis of the verdict. . . . An instruction that the jurors must unanimously agree on a single theory is required when any one of several alternative actions would subject the defendant to criminal liability, the actions are conceptually different, and the prosecution has presented evidence on each alternative. It is not necessary to instruct that the jury must unanimously agree whether the

17

defendant was the principal or the accomplice, since this does not affect the degree of the crime.")
(footnotes omitted).

Although the United States initially requested the Tenth Circuit pattern instruction on expert
witness testimony, *see* Doc. 873 at 3 (Requested Instruction "4"), after the Defendant's expert on
neuropharmacology testified, and citing *United States v. Sowards*, 339 F.2d 401, 402 (10th Cir.
1964) and *United States v. Affleck*, 776 F.2d 1451, 1457 (10th Cir. 1985), the Government requested
the addition of the following language to the expert-witness instruction:

> You have heard evidence and opinions from expert witnesses in this case. Those
> opinions were, in part, based on out-of-court statements. An expert witness may
> base his or her opinions on out-of-court statements. However, the out-of-court
> statements that form the basis of the expert's opinion are not evidence for the jury's
> consideration. They merely inform the expert's opinion.

The Court concludes that, although this is a correct statement of the law, the pattern instruction
adequately instructs the jury on the weight to give expert-witness testimony.

Defendant opposes the giving of any *Allen* instruction, but, if the Court were later inclined
to give an *Allen* instruction, requests that it be included with the original packet of instructions. The
Defendant submitted Requested Instruction "E," *see* Doc. 1106 at 4, which significantly follows the
modified *Allen* TENTH CIRCUIT PATTERN INSTRUCTION § 1.42 (2011). The Court did not include
the Defendant's proposed modified *Allen* instruction in the original jury packet. Given the guilty
verdict, this issue is moot.

The Court deleted the terms "inveigled" and "decoyed" from the United States' proposed
verdict form, *see* Doc. 873 at 12, as these terms are unsupported by the evidence.

**THEREFORE,**

**IT IS ORDERED** that the United States' Objections [Doc. 1072] are GRANTED in part and

DENIED in part, and the jury instructions are settled as set forth above.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**