IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                          NO. CR 05-0924 RB

LARRY LUJAN,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Amended Motion to Exclude Unfairly Prejudicial Information of the Chamberino Homicides, (Doc. 1117), filed on August 8, 2011. The government filed a response in opposition to this Motion on August 16, 2011. (Doc. 1162). Defendant filed a reply on August 23, 2011. (Doc. 1200). Having considered the submissions of counsel, the record, relevant law, and being otherwise fully advised, the Court denies this Motion in part, as further discussed herein.

**I.      Background.**

Defendant was charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment included a Notice of Special Findings against Defendant, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (Doc. 145). On July 12, 2007, and February 17, 2011, the government filed Notices of Intent to Seek a Sentence of Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA. (Docs. 146 and 690). The trial phase commenced on July 18, 2011. The government rested its case-in-chief on July 27, 2011. The defense rested its case on August 3, 2011. The government rested its rebuttal case

and the jury was instructed on August 8, 2011. Following closing arguments, the jury returned a guilty verdict on August 9, 2011. After the eligibility phase, on August 11, 2011, the jury found Defendant eligible for the death penalty. The sentence selection phase will commence on August 29, 2011.

In order to prove the non-statutory aggravating factor of future dangerousness, the government intends to introduce evidence of that Defendant previously committed a double homicide in Chamberino, New Mexico in December 1998.

The Tenth Circuit described the Chamberino homicides as follows:

> As a result of a drug dispute between Lujan and Alfredo Gonzales, in early December 1998, Lujan went to Gonzales's home in Chamberino, New Mexico, at which Juana Olmeda also resided. Lujan slit Alfredo's throat because of the drug dispute and slit Olmeda's throat because she witnessed Lujan killing Alfredo. Lujan left the Gonzales home, obtained gasoline, and returned with a friend, Pablo Renteria, only to find Alfredo still alive. At this point, Lujan repeatedly kicked Alfredo in the head and body, telling him "[t]his is what happens when you mess with me." Lujan then searched the house for drugs and, ultimately, poured gasoline over the victims' bodies, including the apparently still-breathing Alfredo, and set them on fire. Lujan then absconded to El Paso, Texas, where he called Daniel Quintana and told him what happened. The victims' eleven-year-old daughter discovered the bodies the next afternoon.

*United States v. Lujan*, 603 F.3d 850, 853 (10th Cir. 2010).

**II.    Summary of Arguments.**

Defendant moves to exclude the details and photographs of the Chamberino homicides, the fact that the victims' eleven-year-old daughter discovered the bodies, as well as victim impact evidence relating to these killings. The government responds that it will narrowly tailor evidence of the Chamberino homicides, it will not call the victims' daughter to testify, nor will it present victim impact evidence about the Chamberino homicides.

**III.     Discussion.**

The Tenth Circuit has held that evidence of the Chamberino homicides is strongly probative of future dangerousness. *Lujan*, 603 F.3d at 854-55. Moreover, the gruesome nature of the evidence does not outweigh its high probative value. *Id.*, 603 F.3d at 858. At the same time, the Tenth Circuit concluded that this Court "maintains broad discretion to limit the scope, content, and presentation of the evidence and to instruct the jury as necessary to avoid unfairly prejudicing" Defendant. *Id.*, 603 F.3d at 861.

The government does not intend to present the testimony of the victims' daughter or other victim impact evidence. In the context of Defendant's earlier Motion in Limine, (Doc. 814), the Court reviewed the government's photographic evidence of the Chamberino crime scene and autopsies and ruled on their admissibility at the penalty phase. (*See* Doc. 877). Thus, the point of contention is the fact that Defendant kicked and mocked Gonzales upon finding him alive before setting him on fire.

28 U.S.C. § 3593(c) controls the admissibility of evidence at the penalty stage. In applying § 3593(c), the Tenth Circuit stated that the standard of Federal Rule of Evidence 401 governs and "information is admissible at a capital sentencing if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information].' " *Lujan*, 603 F.3d at 854 (*quoting* Fed. R. Evid. 401). The Tenth Circuit has determined that the Chamberino evidence is relevant to the aggravating factor of future dangerousness. *Id.*, 603 F.3d at 854.

In that the information is relevant, § 3593(c) provides that it should be admitted unless "its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). Section 3593(c) grants the district court

greater discretion to exclude unfairly prejudicial or confusing information than the district court has during the guilt phase of the trial. *Lujan*, 603 F.3d at 854. However, the Tenth Circuit has emphasized that "[t]he objective of the sentencing stage of a capital case is to allow the jury a full appraisal of the defendant." *Id.*, 603 F.3d at 858 (*citing Gregg*, 428 U.S. at 203-04).

The probative value must be balanced against "the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). The Tenth Circuit has observed that "Section 3593(c) permits balancing of probative value against *unfair* prejudice, not all prejudice." *Lujan*, 603 F.3d at 858 (internal quotation omitted) (emphasis supplied). "Where the defendant has wide latitude to put on mitigating evidence of his positive characteristics and sympathetic past, there is nothing inherently 'unfair' with allowing the government some latitude to present the unfavorable aspects of the defendant, so long as that evidence is relevant to a properly identified aggravator and does not involve gratuitous gruesomeness or inflammatory detail beyond what is necessary to reveal to the jury the true nature of what happened." *Id*.

The fact that Defendant repeatedly kicked the injured Gonzales in the head while telling him "[t]his is what happens when you mess with me" is relevant to the properly identified aggravator of future dangerousness and is necessary to reveal to the jury the true nature of what happened. It would also allow the jury a full appraisal of the defendant. *Id.*, 603 F.3d at 853. Balancing the high probative value against the danger of creating unfair prejudice, confusing the issues, or misleading the jury, leads to the conclusion that the evidence is admissible at the sentence selection phase. *See* 18 U.S.C. § 3593(c); *Lujan*, 603 F.3d at 858. The Court will entertain any limiting instruction that Defendant chooses to present on this topic. Any proposed limiting instruction must be tendered by August 29, 2011.

    **THEREFORE,**

**IT IS ORDERED** that Defendant's Amended Motion to Exclude Unfairly Prejudicial Information of the Chamberino Homicides, (Doc. 1117), filed on August 8, 2011, is **DENIED** in part as further discussed herein.

**IT IS FURTHER ORDERED** that any proposed limiting instruction must be tendered by August 29, 2011.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**