# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

v.                                                                                                        **NO. CR 05-0924 RB**

**LARRY LUJAN,**

      **Defendant**.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on the Defendant's motion, filed at 5:25 p.m. on August 25, 2011, for an order excluding the expert testimony of Dr. Kurt Nolte, M.D. *See* Doc. 1221. Due to the exigency of the ongoing penalty phase, the government was ordered to respond to, or be prepared to argue, this Motion by August 31, 2011. The government responded to the motion, and Defendant replied, in open court on August 31, 2011.

**I.    Background.**

Defendant was charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment included a Notice of Special Findings against Defendant, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (Doc. 145). On July 12, 2007, and February 17, 2011, the government filed Notices of Intent to Seek a Sentence of Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA. (Docs. 146 and 690).

The trial phase commenced on July 18, 2011. The jury returned a guilty verdict on August 9, 2011.  After the eligibility phase, on August 11, 2011, the jury found Defendant eligible for the death penalty.  The sentence selection phase began on August 29, 2011.

The government intends to call Kurt B. Nolte, M.D., an Assistant Chief Medical Investigator with the Office of the Medical Investigator, State of New Mexico, to testify on September 1 or 6, 2011.  Dr. Nolte's testimony is relevant to the Government's contention that Defendant has engaged in a continuing pattern of violence that makes more likely his propensity for future dangerousness.

**II.     Discussion.**

Defendant contends that allowing Dr. Nolte to testify as the supervising forensic pathologist about an autopsy performed on persons that Defendant is alleged to have murdered in 1998 would violate his constitutional right to confront witnesses against him under the Sixth Amendment of the United States Constitution and *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011).  *See* Doc. 1221 at 1.

The Government disclosed the relevant autopsy reports on October 14, 2008.  Dr. Amy Hart, who was a pathology fellow at the time, physically and principally conducted the autopsies under Dr. Nolte's direct supervision, and Dr. Nolte also signed the autopsy report.  Dr. Hart is now a chief medical examiner in San Francisco, California.  The Government filed its detailed notice regarding Dr. Nolte's expected testimony on May 16, 2011.  *See* Doc. 820.  The notice states:

> The United States may call as a witness Kurt B. Nolte, M.D., an Assistant Chief Medical Investigator with the Office of the Medical Investigator, State of New Mexico. As an expert in Forensic Pathology, the United States anticipates that Dr. Nolte will testify regarding the conclusions contained in his autopsy reports regarding the cause and manner of death for Alfredo Gonzales and Juana Olmeda,

> which were previously disclosed to Defendant.  Specifically, Dr. Nolte will indicate that each victims' cause of death was multiple stab wounds and the manner of death was homicide.

Doc. 820 at 2.

In response to the Government's challenge to the timeliness of the motion to exclude, Defendant's counsel stated at the August 31, 2011 hearing that he did not interview Dr. Nolte until the first week in July, 2011, because Dr. Nolte had been on a sabbatical.  He did not explain, however, why he waited until the last business day before the Government's presentation in the selection-phase of this case was to begin to file the motion to exclude, and the Court concludes that the delay was a trial strategy.  Apparently, counsel hoped that, if the Court excluded Dr. Nolte as a witness, the Government would be unable to get Dr. Hart here from San Francisco.

At the August 31, 2011 hearing, counsel established that, in 1998, Dr. Nolte was at the morning briefing and discussed the autopsies to be done that day.  Dr. Nolte observed the injuries to each body, and was in and out of the room throughout the autopsies, looking over Dr. Hart's shoulder and directing her activities while she performed them.  He met with Dr. Hart afterward to go over her findings in her draft report and to review them with the photographs and make any changes he felt were warranted.  He was comfortable signing off on the autopsy reports.

As the Court has previously noted in its written orders, *see* Docs. 718 at 11-12; Doc. 497 at 3-4, "[i]t is far from clear that the Confrontation Clause applies to a capital sentencing proceeding," *United States v. Higgs*, 353 F.3d 281, 324 (4th Cir. 2003), and neither the Supreme Court nor the Tenth Circuit have ruled on this issue, *see United States v. Barrett*, 496 F.3d 1079, 1100 (10th Cir. 2007) (quoting *Higgs*); *cf. United States v. Bustamante* , 454 F.3d 1200, 1202

(10th Cir. 2006) (noting that "*Crawford* concerned the use of testimonial hearsay statements at trial and does not speak to whether it is appropriate for a court to rely on hearsay statements at a sentencing hearing. . . . . We see nothing in *Crawford* that requires us to depart from our precedent "that constitutional provisions regarding the Confrontation Clause are not required to be applied during sentencing proceedings.") (internal quotation marks omitted).

But even if the Confrontation Clause does apply in the selection phase, the Court concludes that it would not be violated by permitting Dr. Nolte to testify. Dr. Nolte's anticipated testimony is not hearsay. Defendant may cross-examine Dr. Nolte regarding Dr. Nolte's own observations of the victims' bodies, their injuries, the autopsy processes that he directed and observed, and his own findings. Dr. Nolte has indicated that his findings are consistent with Dr. Hart's written findings in the autopsy reports that he also signed. This case is, therefore, easily distinguishable from *Bullcoming*[1] both because testimony in that case was presented during the guilt stage of the trial and because there, the state sought only to introduce a forensic laboratory report establishing that the defendant was legally drunk through the testimony of a scientist who did not sign, perform, or observe the tests underlying the report. Dr. Nolte is competent to testify about the cause and manner of the victims' deaths based upon his personal observations of the bodies and injuries during the autopsy process, his contemporaneous observations and discussions with Dr. Hart about the findings made during the autopsy proceedings, and his

---

[1] In *Bullcoming*, "[t]he question presented is whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification—made for the purpose of proving a particular fact—through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification. We hold that surrogate testimony of that order does not meet the constitutional requirement. The accused's right is to be confronted with the analyst who made the certification, unless that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." 131 S. Ct. at 2710.

experience and training as a forensic pathologist. Consistent with the Court's duty as a gatekeeper regarding admissible testimony, the Court concludes that Dr. Nolte's testimony is both relevant and reliable.

**IT IS ORDERED THAT** the Defendant's Motion to Exclude the Testimony of Dr. Kurt Nolte [Doc. 1221] is DENIED.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**