IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

      **Plaintiff,**

**v.**                                                                                               **NO. CR 05-0924 RB**

**LARRY LUJAN,**

      **Defendant**.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on the Defendant's Motion to Prohibit Cross-Examination of Mark Bezy on Personnel Matters, (Doc. 1295), filed on September 6, 2011. The government responded to Defendant's motion later that day. (Doc. 1297.) Defendant filed his reply to the government's response on September 7, 2011. (Doc. 1302.) Having considered the submissions of counsel, the record, relevant law, and being otherwise fully advised, the Court denies this Motion in part, as further discussed herein.

**I.      Background.**

Defendant was charged with Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2. (Doc. 145). The Third Superseding Indictment included a Notice of Special Findings against Defendant, pursuant to the Federal Death Penalty Act (FDPA), 18 U.S.C. §§ 3591-3598. (Doc. 145). On July 12, 2007, and February 17, 2011, the government filed Notices of Intent to Seek a Sentence of Death, pursuant to the requirements of 18 U.S.C. § 3593(a) of the FDPA. (Docs. 146 and 690).

The trial phase commenced on July 18, 2011. The jury returned a guilty verdict on August 9, 2011. After the eligibility phase, on August 11, 2011, the jury found Defendant eligible for the death penalty. The sentence selection phase began on August 29, 2011.

The defense intends to call Mark Bezy, a former warden in the Bureau of Prisons ("BOP"), as an expert to testify in the sentence selection phase of this proceeding. Mr. Bezy plans to testify regarding the security features available at BOP facilities, BOP's ability to control inmates such as Larry Lujan, and his opinion that, if sentenced to life without the possibility of parole, it is unlikely Lujan will commit future criminal acts of violence that would constitute a serious and continuing threat to the safety of others. (Defendant's Motion to Prohibit Cross-Examination of Mark Bezy on Personnel Matters, at 2) (Doc. 1295).

Mr. Bezy recently testified for the defense in a different capital proceeding which took place in the District of Connecticut. Defendant contends that based on the government's line of questioning in that case, he anticipates that government counsel in this proceeding may seek to cross-examine Mr. Bezy regarding specific personnel-related incidents that occurred while he served as a warden for BOP. Defendant moves this Court to prohibit the government from cross-examining Mr. Bezy regarding these incidents and specifically asserts that the following matters should be excluded from the government's cross-examination:

1. A complaint made against Mr. Bezy by a deputy warden for using crude language during a staff meeting; and

2. Allegations that Mr. Bezy, while acting as warden, made improper use of BOP staff for, among other things, asking a staff member to take care of his dogs while he was away from the prison.

(Doc. 1295 at 1.)

The "other things" referenced in number 2 (above) include allegations that in addition to asking a staff member to take care of his dogs, Mr. Bezy:

(a) Asked another staff member to teach Mr. Bezy's son how to box;

(b) Asked a staff member to write a paper on the death penalty for Mr. Bezy's son; and

(c) Asked a staff member to prepare an employment application for a position at a private prison.

(Doc. 1295 at 3.)

In its response, the government states that it has no intention to question Mr. Bezy on allegations or findings relating to his misuse of prison staff for walking his dog or making appointments, and that Defendant's motion is therefore moot as to matter (2) above. (Doc. 1297.) Because Defendant's matter (2) also includes the incidents (a) - (c) listed above, the Court reads the government's response as an intention to cross-examine Mr. Bezy only on the incident involving his use of crude language directed at a staff member and not on any of the remaining allegations.  The Court takes the government at its word and accordingly will limit its evaluation of admissibility to matter (1) above.

**II.    Discussion**

The incident involving Mr. Bezy's use of crude language took place while he was serving as warden in the BOP.  During a staff meeting where prison knives and weapons were being discussed, Mr. Bezy directed a comment to a deputy warden to the effect of "where the fuck do you work?" and "are you really that stupid?" (Def. Exhibit B, at 14-15) (Doc. 1295-2).

Following an investigation into the incident, the OIG found sufficient evidence to establish that Mr. Bezy had directed unprofessional comments and profanity toward a deputy warden during a staff meeting. The OIG also examined the remaining allegations against Mr. Bezy and found that "Bezy's action [sic] regarding this matter were not determined to be a misuse of his official position." (Def. Motion, at 3) (Doc. 1295) (quoting OIG report).[1] Mr. Bezy retired from the BOP during the pendency of the OIG investigation, just two years before he would have received a lucrative federal pension.

Defendant asserts that the government should be precluded from cross-examining Mr. Bezy on this incident because it is not relevant to the issue of Mr. Lujan's future dangerousness, lacks probative value, would confuse the jury, and would be unfairly prejudicial under 18 U.S.C. § 3593(c). The government responds that total exclusion of cross-examination of the misconduct finding would be improper, and urges the Court to adopt the approach recently taken by the District of Connecticut on the same issue in the capital proceeding *United States v. Azibo Aquart*, Case No. 6 CRL 60 (D. Conn.). In that case, Judge Arterton ruled that the prosecution would be allowed to inquire into OIG's finding of professional misconduct, but would be precluded from asserting any connection between that incident and Mr. Bezy's decision to retire. More specifically, the judge found that the warden's own failure to follow prison policy – even though this failure was not "major" – bore upon the issue of security at BOP as well as upon the defendant's contentions that he would be safely and securely housed in that institution:

> [I]f [Mr. Bezy] violated Bureau of Prisons' policy which he knew existed in the context . . . there is some challenge to his authoritativeness on why all of these polices will be followed such that Mr. Aquart can be safely and securely housed. . . . And to the extent

---

[1] The defendant did not make the OIG report available to the Court.

>that failure to follow policy is an indication that all may not be perfect in the Bureau of Prisons . . . .

(Def. Exhibit B, at 10) (Doc. 1295-2).

The Court finds the District of Connecticut approach well-reasoned. During the sentencing selection phase of a capital proceeding, "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. 18 U.S.C. § 359(c). Section 3593(c) further provides that the Government "may present any information relevant to an aggravating factor for which notice has been provided" and that a defendant "may present any information relevant to a mitigating factor." 18 U.S.C. § 3593(c). In applying §3593(c), the Tenth Circuit has stated that "information is admissible at a capital sentencing if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the [information].' " *Lujan*, 603 F.3d at 854 (quoting Fed. R. Evid. 401). Further, both "the government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death." 18 U.S.C. § 3593(c).

In its motion to prohibit cross-examination of Mr. Bezy, Defendant states that Mr. Bezy will testify to the security features available at BOP, to the ability of BOP to control prisoners, and to the likelihood that Lujan will commit acts of violence in future. The government is therefore permitted to rebut Mr. Bezy's testimony on these points and to "present argument as to

the adequacy of the information . . . ." 18 U.S.C. § 3593(c).  The warden's violation of prison policy, although not "major," is relevant to whether employees consistently follow the policies of the BOP.  This in turn bears directly upon the effectiveness of BOP security features, and serves to challenge the adequacy of testimony regarding BOP's ability to comply with procedure in controlling the prisoners housed in its institutions.  Further, the Court disagrees with defendant's contention that the incident is "wholly unrelated to whether Mr. Lujan himself might be dangerous in a penal setting."  Whether a prisoner is dangerous in a penal setting entails consideration of the dynamic between both motive *and* opportunity for dangerousness.  Motive is impossible to predict.  It is opportunity which BOP procedures seek to control.  The ability or willingness of BOP employees – and in this case the warden himself – to strictly follow procedure is relevant to the BOP's competence in limiting opportunity for violent behavior through compliance with organizational policy.  Defendant is putting this matter at issue by offering Mr. Bezy for the purpose of testifying to the security features of the BOP and BOP's ability to control prisoners.  Therefore, the government is permitted to rebut by inquiring into the incident of professional misconduct to the extent it bears upon prison security.  The defense may then make its own case to the jury regarding the importance, or lack thereof, of this incident in evaluating the aggravating factor of future dangerousness.

  Finally, the Court does not believe that the probative value of the incident is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury.  Although Defendant characterizes this issue as the government's attempt to "attack Mr. Bezy's credibility and credentials before the jury on the basis of a relatively minor personnel incident," section 3593(c) permits the government to challenge the adequacy of defense testimony to the

extent of its relevance to any fact of consequence to the action. Here, relevance is established. The defense will be able to fully address the issue with Mr. Bezy in the presence of the jury, and introduction of the incident will not be unduly prejudicial. The Court will restrict the prosecution's inquiry to the conduct itself. The government may not question Mr. Bezy regarding the relation of the misconduct investigation to his resignation or imply that Mr. Bezy retired because of the investigation.

**THEREFORE,**

**IT IS ORDERED THAT** Defendant's Motion to Prohibit Cross-Examination of Mark Bezy on Personnel Matters (Doc. 1295) is denied as to matter (1), Mr. Bezy's crude language directed at a BOP staff member, subject to the aforementioned restrictions on the scope of the government's inquiry. The government does not intend to address any allegations falling under matter (2) and Defendant's motion is therefore moot as to that issue.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**