# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs.                                                                                             **No. CR 05-0924 RB**

**LARRY LUJAN,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on the Defendant's Memorandum Brief in Support of Defendant's Requested Jury Instructions, Mitigating Factors, and Verdict Form for the Sentence Selection Phase, filed September 28, 2011 [Doc 1365]; and on the United States' Brief Regarding Selection Phase Jury Instructions, filed Aug. 31, 2011 [Doc. 1276]. The Court held a hearing on the parties' proposed instructions on September 30, 2011, and issues this Memorandum Opinion and Order to settle the sentence selection phase jury instructions. Having considered the arguments of counsel, evidence of record, and relevant law, the Court rules as follows.

**I.    Background.**

Defendant was found guilty of Kidnapping Resulting in Death of Dana Joe Grauke II, and Aiding and Abetting, in violation of 18 U.S.C. § 1201(a)(1) and 18 U.S.C. § 2 on August 9, 2011. After the eligibility phase, on August 11, 2011, the jury found Defendant eligible for the death penalty. The sentence-selection phase commenced on August 29, 2011. The Government rested its case on September 8, 2011, and the Defendant rested his mitigation-phase case on September 29, 2011. The Court instructed the jury on October 4, 2011.

**II. Discussion.**

The Court's jury instructions generally follow the Tenth Circuit Pattern Instructions on the FDPA, except they are modified to reflect the bifurcated sentencing proceeding followed in this case. The following Tenth Circuit Pattern Instructions, with some modifications, are included: §§ 3.01; 3.02; 3.03; 3.04; 3.07; 3.09; 3.10; 3.10.1; 3.10.4; 3.10.8; 3.11; and 3.12. The Court's jury instructions also incorporate Tenth Circuit Pattern Instructions § 1.05 (reasonable doubt - modified); § 1.08 (credibility of witnesses - modified); § 1.08.1 (non-testifying defendant - modified); § 1.14 (accomplice); and § 1.30 (similar acts - modified to address the Chamberino homicides).

Regarding mercy, Defendant has requested the following instruction:

> As I told you earlier, this is a heavy burden. More than a strong probability is required. You must be certain beyond any reasonable doubt that a death sentence should be imposed before voting for it. Whether or not the circumstances in this case persuade you that a sentence of death is called for is a decision that the law leaves entirely to you. Remember that before a sentence of death can be imposed, all twelve jurors must agree that death is in fact the appropriate sentence, but that no juror is ever required by the law to impose a death sentence. The decision is yours as individuals to make. Any one of you may decline to impose a death sentence, even where your findings make consideration of the death penalty possible. You do not have to give a reason for your decision. You may decline to impose a death sentence because of mercy or for any reason you deem to be relevant. It is an individual and personal decision that is each juror's alone. The law has given each of you the discretion to temper justice with mercy.

Doc. 1277, Defendant's Requested Sentence Selection Instruction U.

Additionally, Mr. Lujan has requested these mitigating factors:

> 59. One or more members of the jury may decide to bestow or extend mercy to Larry in this case.
> 60. One or more members of the jury may decide to bestow or extend mercy to Larry's family in this case.

*Id.,* Defendant's Requested Verdict Form.

The extension of mercy is not a mitigating *factor* - it cannot be proved by a preponderance

of the evidence and, in fact, it cannot be proved at all.  Mercy is not included in the statutory list of mitigating factors, nor is it another "factor[] in the defendant's background, record, or character or any other circumstance of the offense . . . ." 18 U.S.C. § 3592(a)(1-8).  Certainly, as the Court informed counsel at the September 30, 2011 hearing, the parties may argue that extending mercy to the Defendant is or is not appropriate, but mercy itself is not a mitigating factor, and none of the cases cited by the Defendant stand for that proposition.  The Court concludes that the Tenth Circuit pattern instructions 3.01 and 3.02 fully and adequately instruct the jury on the process by which it may extend mercy to the Defendant if it chooses to do so, thus the Court rejects Defendant's proposed instruction.

Defendant also objects to the use of the word "justify" in the phrase "whether the proven aggravating factors sufficiently outweigh the proven mitigating factors and information to justify a sentence of death" in the "deliberation process" instruction and special-findings form.  At oral argument, Defendant contended that the use of "justify" subtly implies that if the death sentence is appropriate, the jury would feel an obligation to impose it.  *See* Sept. 30, 2011 Tr. at 562.  He contends that the "reference to death being 'justified' must be modified because the jury's decision is not merely whether death is justified, but also whether death is the better choice compared to life imprisonment without the possibility of release." Doc. 1277 at 6 n.1.  In support, he cites only *Simmons v. South Carolina*, 312 U.S. 154 (1994), arguing that the case requires the Court to make it clear to the jury that its choice is between death and life imprisonment without the possibility of release.  *See id.*  The Court disagrees that the use of the word "justify" implies that the jury does not have the choice to impose life imprisonment.  The Court's instructions, which include Tenth Circuit Pattern Instruction 3.01 and 3.02 (explaining that the "justification and selection of sentence"

3

process includes considering and weighing the relevant factors), fully inform the jury of its choices in choosing which sentence should be imposed and clearly instruct the jury that it has no obligation to impose the death penalty.

Defendant requests long, repetitive, and more detailed instructions on the effect of non-unanimity regarding the death penalty; that the jury "is never required to return a death sentence;" and that the Government must prove "beyond a reasonable doubt that the aggravating factors have been established ." *See* Doc. 1277, Proposed Instructions E, F, N, R, W, X; Doc. 1365 at 5-14, 21-23. Again, the Court concludes that the Tenth Circuit pattern instructions 3.01, 3.02, 3.07, 3.09, 3.10, and 3.11, as modified by the Court, fully and adequately instruct the jury on all of these issues. *See also* Comment to Tenth Circuit Pattern Instruction 3.02 (discussing the debate regarding whether a jury should be instructed that it is "never required to impose a death sentence").

The Court finds no merit in Defendant's contention that the jury should be instructed that there is a "presumption that a sentence of death is not appropriate." Doc. 1365 at 21. Simply put, none of the cases cited by Defendant stand for that proposition. The jury has already determined, beyond a reasonable doubt, that the Defendant is guilty of kidnapping resulting in death and that he is eligible for the death penalty. Any presumptions about innocence or whether a sentence of death may be appropriate, therefore, have vanished. The doctrine requiring heightened reliability for a death sentence is satisfied in that the Government must prove the aggravating factors beyond a reasonable doubt, and the jury is able to consider all of the relevant mitigating factors by a preponderance of the evidence.

The Court also rejects the Defendant's contention that the "jury be told that it must find that aggravating factors outweigh mitigating factors beyond a reasonable doubt" as requested by his

4

proposed instruction L.  *See* Doc. 1365 at 24.  As Defendant notes, this proposition has been expressly rejected by the Tenth Circuit, and the Court is bound by the law of this Circuit.  *See Matthews v. Workman*, 577 F.3d 1175, 1195 (10th Cir. 2009) (noting that the weighing process is not a factual determination subject to *Ring* and *Apprendi*, but, rather, a "highly subjective, largely moral judgment regarding the punishment that a particular person deserves") (internal quotation marks omitted); *United States v. Fields*, 516 F.3d 923, 950 (10th Cir. 2008) (holding that "a reasonable-doubt standard is not required in the [aggravating factors versus mitigating evidence] weighing process").  *See also Zant v. Stephens*, 462 U.S. 862, 875-76 n.13 (1983) (stating, "[i]t is settled law that, under the federal constitution, specific standards for balancing aggravating against mitigating circumstances are not constitutionally required").

The Defendant also contends that his proposed two-page repetitive instruction T must be given.  This instruction states, *inter alia*, that the jury "must consider only the possible danger that Mr. Lujan might present to other inmates and prison officials;" that the Government "is also required to prove beyond a reasonable doubt that Mr. Lujan is 'likely' to commit criminal acts of violence;" and that

> there's a particular degree of risk that the prosecution must prove before you can consider the future danger that Mr. Lujan might present in determining the appropriate sentence for his crime.  The law requires that for you to consider Mr. Lujan's alleged future dangerousness, the prosecution must prove beyond a reasonable doubt to each and every one of you that it is more probable than not that Mr. Lujan will commit criminal acts of violence in the future, which would be a continuing and serious threat to the lives and safety of prison officials.

*See* Doc. 1277 at 39-40.  The Court concludes that this instruction misstates the law in a number of ways and ignores the fact that inmates may come into contact with other persons besides inmates and prison officials such as health-care workers, transport drivers, and court personnel, for example.

*See, e.g., Fields*, 516 F.3d at 943 (holding that "an explicit prison-setting limitation need not be included in a future-dangerousness aggravator where, as here, the jury is clearly informed that the defendant would not be eligible for parole if a life sentence were imposed"); *United States v. Lujan*, 603 F.3d 850, 854 (10th Cir. 2010) ("If proven, Lujan's commission of a double homicide has a 'tendency' to make it 'more probable' that he poses a future danger, even if that future danger is limited to a penal setting."). The Supreme Court holds only that, "whenever future dangerousness is at issue in a capital sentencing proceeding . . . due process requires that the jury be informed that a life sentence carries no possibility of parole." *Shafer v. South Carolina*, 532 U.S. 36, 51 (2001). The Court's instruction informs the jury of that fact in this case.

Defendant cites no authority for his contention that the Government should not be allowed to expand the future-dangerousness instruction by including the four types of alleged conduct, or sub-factors, that support that aggravating factor. But as the Court has previously held, the sub-factors were properly noticed and are proper aggravating factors. The Comment to Tenth Circuit Pattern Instruction 3.09 states:

> The courts have held that "the prosecutor's authority to define non-statutory aggravating factors is a constitutional delegation of Congress' legislative power." *See, e.g., United States v. McCullah*, 76 F.3d 1087, 1106–07 (10th Cir. 1996) (upholding similar delegation of authority to specify non-statutory aggravating factors under 21 U.S.C. § 848).

The Court also rejects the Defendant's contention that the Government must prove each supporting allegation, or sub-factor, regarding future dangerousness beyond a reasonable doubt. *See Lujan*, 603 F.3d at 856-58 (implying that the beyond-a-reasonable-doubt standard need not be satisfied regarding the Chamberino murders although the Government must prove future dangerousness beyond a reasonable doubt); *Huddleston v. United States*, 485 U.S. 681, 682 (1988)

(holding that evidence of other crimes under Fed. R. Evid. 404(B) may be admitted for consideration by the jury without a preliminary finding by the court and need be proved only by a preponderance of the evidence); *Turner v. Johnson*, 106 F.3d 1178, 1188-89 (5th Cir. 1997) (observing that unadjudicated offenses need not be proved beyond a reasonable doubt at capital penalty phase); *United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1990) (recognizing that any unadjudicated conduct considered in determining sentence must be supported by a preponderance of the evidence); *United States v. Edelin*, 134 F. Supp. 2d 59, 76 n.18 (D. D.C. 2001) ("While Section 848(j) requires that each aggravating factor be proved beyond a reasonable doubt to a unanimous jury, each piece of evidence used to support the aggravating factor need not be proved beyond a reasonable doubt.").

The Defendant complains that the Court removed or combined several of his mitigation "factors." But the items that the Court removed or reorganized as underlying allegations to support a factor had nothing to do with any of the seven statutorily-enumerated mitigating factors, nor were they "factors in the defendant's background, record, or character or any other circumstance of the offense." 3592(a)(1-8). Instead, they were allegations related to other family members, and the jury has no duty to make specific findings regarding those allegations. The jury's focus must be on the actual mitigating factors themselves, and whether a jury member found those factors to exist by a preponderance of the evidence. Further, many of the mitigating factors were repetitive or cumulative.

Defendant asked for "a broader definition of mitigation [] than the Court provides," Sept. 30, 2011 Tr. at 565, and requests addition of the sentence "Mitigating factors need not be related to the offense in order to support a sentence less than death" from his proposed instruction J. *See id.*, Doc. 1277 at 11. While that sentence may be a true statement, there has never been an issue in this case

regarding the necessity of a nexus between a mitigating factor and the crime, and there is no need to advise the jury of that premise. Pattern instruction 3.07, which the Court gave, sufficiently defines mitigating factors.

In the special-findings form, the Court gave the following instruction regarding mitigating factors:

> The defendant has alleged that the following mitigating factors are present in this case. For each of these factors, answer "yes" or "no" according to whether any juror (or jurors) finds that the defendant has proved the existence of the factor by a preponderance of the evidence. (Answer "yes" if *any one or more jurors* finds that the corresponding factor was proved by a preponderance of the evidence. Answer "no" if no juror finds that corresponding factor was proved by a preponderance of the evidence).

Defendant requested that the Court also insert the language "at least one of you must find that the defendant has proved by a preponderance of the evidence any of the following mitigating factors" into this instruction, as provided in pattern instruction 3.10.1, for example. But the Court finds that this language, if used in the general instructions before the fifty-one mitigating factors that the Defendant wants the jury to find, would imply that it is *mandatory* for "at least one" juror to find that any mitigating factor exists, and that is not a correct implication. The Court concludes that the better way to ask the jury which mitigating factors it finds to exist under the circumstances of this case is by the wording the Court used.

The Defendant contends that the Court errs by replacing the language "anally raped" with "sexually abused" in mitigating factor #11. Because all of the testimony regarding the incident of sexual abuse was hearsay, and Defendant's initial reporting of it referred to sexual abuse, the Court concludes that the less graphic term "sexually abused" adequately describes the mitigating factor for the jury.

As to Defendant's request for a mitigating factor that, "At all stages in this case, through counsel, Larry has admitted responsibility for killing Dana Joe Grauke," Doc. 1277 at 21, the Court notes that counsel's statements are not evidence. Insofar as Defendant alternatively requested a mitigating factor at the September 30 hearing that, Defendant "admitted responsibility for killing Dana Joe Grauke to friends and family," counsel stated that none of the witnesses testified that Defendant "factually" confessed to them. *See* Sept. 30, 2011 Tr. at 582-83. The Court concludes that it would neither be helpful nor mitigating to Defendant to remind the jury that his associates testified that Defendant boasted at a party about how he killed Mr. Grauke.

**THEREFORE,**

**IT IS ORDERED** that the jury instructions are settled as set forth above.

                                                                           _[signature]_
                                                                           **ROBERT C. BRACK**
                                                                           **UNITED STATES DISTRICT JUDGE**